JS 44 ✥AND (Rev. 12/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Sergio L. Ramirez

## DEFENDANTS
Trans Union, LLC

**(b)** County of Residence of First Listed Plaintiff  Alameda
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Pennsylvania
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Andrew J. Ogilvie, Esq.   (415) 651-1952
Anderson, Ogilvie & Brewer, LLP
600 California St., 18th Floor, San Francisco, CA 94108

Attorneys *(If Known)*

12-632 JSC

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*  and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | | | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district *(specify)*
☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq., et al.
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  Claudia Wilken
DOCKET NUMBER  11-cv-0180 CW

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*
☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA

DATE  02/09/2012
SIGNATURE OF ATTORNEY OF RECORD

Andrew J. Ogilvie     SBN 57932
    andy@aoblawyers.com
Carol McLean Brewer     SBN 214035
    carol@aoblawyers.com
ANDERSON, OGILVIE & BREWER, LLP
600 California Street, 18th Floor
San Francisco, CA 94108
    Telephone: (415) 651-1952
    Facsimile: (415) 956-3233

James A. Francis (pro hac vice application to be submitted)
    Jfrancis@consumerlawfirm.com
John Soumilas (pro hac vice application to be submitted)
    JohnSoumilas@consumerlawfirm.com
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
    Telephone: (215) 735-8600
    Facsimile: (215) 940-8000

Attorneys for Plaintiff, Sergio L. Ramirez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>Defendant. | CV12 0632<br><br>CLASS ACTION<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**PRELIMINARY STATEMENT**

1. This is a consumer class action based upon the widespread violations by defendant Trans Union, LLC ("Trans Union" or "Defendant") of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA"). Trans Union is regulated as a consumer

reporting agency ("CRA") under the FCRA. Trans Union is also regulated as a consumer credit reporting agency ("CCRA") under the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1 – 1787.3. The rights of consumers to inspect and correct consumer information sold about them are at the heart of the FCRA and the CCRAA. Trans Union deprives consumers of these rights by willfully failing to comply with the FCRA and the CCRAA and refusing to follow their requirements and provide consumers with all information it sells about them to third parties, specifically, information about whether a given consumer is reported as purportedly included in the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons ("OFAC") list. As a result, Trans Union deprives consumers of rights afforded to them by the FCRA and the CCRAA to obtain a copy of and review the information that Trans Union sells about them, to dispute and to have corrected any inaccurate or incomplete information that Trans Union is reporting, and to require that Trans Union maintain reasonable procedures to assure the maximum possible accuracy of that information before it sells it to any third party in a consumer report.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff Sergio L. Ramirez is an adult individual who resides in Fremont, California.

5. Defendant Trans Union, LLC is a consumer reporting agency that regularly conducts business in the Northern District of California and which has a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022.

## FACTUAL ALLEGATIONS

**A. Trans Union Fails To Provide Consumers With All Information In Their Files, And Fails To Report Consumer Information Accurately**

6. Defendant is one of the "big three" credit reporting agencies (singular "CRA") in the U.S.

7. Defendant sells consumer reports (commonly called "credit reports") about millions of consumers annually.

8. Defendant is regulated by the FCRA and its state analogue the CCRAA.

9. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

10. In furtherance of that goal, the FCRA mandates that each CRA provide consumers with access to the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their credit files. *See* 15 U.S.C. §§ 1681g(a) and 1681i(a).

11. Specifically, each CRA is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances. *See* 15 U.S.C. § 1681g(a).

12. The term "file," when used in connection with information on any consumer, means "*all* of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *See* 15 U.S.C. § 1681a(g) (emphasis added).

13. "Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report" and an FCRA " 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on

that consumer." *Cortez*, 617 F.3d at 711-12 (*citing Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007)).

14. After obtaining and reviewing a copy of their files, consumers have the right to dispute any inaccurate information in their credit files, and to have errors corrected by the CRA, usually within 30 days of their disputes. *See* 15 U.S.C. § 1681i(a).

15. In a seminal decision against Trans Union, the United States Court of Appeals for the Third Circuit held that "OFAC alerts" are part of a consumer's credit file and must be included in a file disclosure provided to the consumer. "We hold that information relating to the OFAC alert is part of the consumer's 'file' as defined in the FCRA." *Cortez*, 617 F.3d at 712.

16. An OFAC alert is a specific type of data provided by consumer reporting agencies on credit reports signifying that the subject of the report is purportedly included in the list of the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons, which includes terrorists, money launderers and narcotics traffickers.

17. In *Cortez*, Trans Union argued that an OFAC alert is not part of its file on the consumer.

18. Trans Union also argued in *Cortez* that it does not need to reinvestigate or correct an erroneous OFAC alert that it has placed on in a consumer's file.

19. Trans Union also argued in *Cortez* that it is not required to disclose an OFAC alert in a consumer's file when that consumer asks for a disclosure of the contents of his/her file.

20. In *Cortez*, the Court of Appeal rejected Trans Union's argument that an OFAC alert is not part of its file on the consumer.

21. In *Cortez*, the Court of Appeal also rejected Trans Union's it does not need to reinvestigate or correct an erroneous OFAC alert that it has placed on in a consumer's file.

22. In *Cortez*, the Court of Appeal also rejected Trans Union's argument that it does not have to disclose an OFAC alert in a consumer's file when that consumer asks for a disclosure of the contents of his/her file at Trans Union.

23. The United States Court of Appeals in *Cortez* held that Trans Union was liable for failing to disclose OFAC alerts in consumer files and for failing to reinvestigate and correct an OFAC alert erroneously attributed by Trans Union to the wrong consumer. *Id.* at 712-13.

24. Nonetheless, despite this clear Third Circuit precedent directed to the same Defendant, Trans Union continues to compile and sell reports about consumers that include OFAC alerts, without including the same OFAC alerts in the consumer file disclosures Defendant provides to those same consumers.

25. Defendant further misinforms consumers about their right to dispute such inaccurate OFAC alert information and have it corrected pursuant to the FCRA, and in fact fails to reinvestigate and correct such errors.

26. At all times relevant to this action, Defendant, as a matter of its normal course and practice, and despite the Third Circuit's decision in *Cortez*, fails to include the OFAC alerts that it reports about consumers to third parties in the consumer's own files which consumers, as of right, may request and obtain from the Defendant.

27. Also as a matter of common practice, Defendant does not advise consumers that they may dispute inaccurate OFAC alerts, and thus does not reinvestigate such disputes or correct such errors.

28. Defendant also fails to maintain reasonable procedures to assure the maximum possible accuracy of the OFAC alert information it sells about consumers in the first place. *See* 15 U.S.C. § 1681e(b).

29. One of the most well known and prevalent inaccuracies that occurs in Trans Union's consumer files is a "mixed file."

<mark>30.</mark>     A mixed file is a consumer report in which some or all of the information in the report pertains to a person other than the person who is the subject of the report.

31.     Defendant has known since entering into a Consent Order agreeing to correct the mixed file problem on October 26, 1992, in *The State of Alabama, et al. v. Trans Union Corp.*, 92-C-7101 (N.D. Ill.), that it has a widespread problem of reporting one consumer's information in the credit report of another.

32.     In the above-referenced litigation brought by the Attorneys General of seventeen states, Defendant agreed to take affirmative action to remedy the "mixed file" problem, specifically by using "full identifying information" to properly identify each individual consumer.

33.     Indeed, the main cause of the mixed file problem is Defendant's failure to use full identifying information to match credit records on its database to the information of consumers actually applying for credit, insurance or employment.

34.     In *The State of Alabama, et al. v. Trans Union Corp.*, 92-C-7101 (N.D. Ill.), Defendant agreed to collect and use "full last name and first name; middle initial; full street address; zip code; year of birth; any generational designation; <u>and</u> social security number" in preparing any report about any given consumer. *Id.* at ¶ F(8) (emphasis added).

35.     Despite those representations by Defendant, to date more than a hundred thousand possible mixed files are known to occur every year in Defendant's credit reporting databases.

36.     Despite those representations by Defendant, to date Defendant's common practice is to use only partial matching, and not full identifying information, in preparing consumer credit reports.

37.     Indeed, Defendant's practice is to prepare and sell a consumer credit report using only the name and address of the consumer purportedly applying for credit.

38. Defendant's practice is not to require a match to "full last name and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number" before preparing a report that it will attribute to a particular consumer and sell about that same particular consumer.

39. OFAC alert information, as part of the consumer's file and report, is also subject to the maximum possible accuracy standard, as the Third Circuit has specifically advised Trans Union: "OFAC information included in a consumer report and sold about a consumer falls within the purview of the FCRA, and the 'maximum possible accuracy standard.' Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here." *Cortez*, 617 F.3d at 710.

40. In *Cortez*, Defendant had mixed the plaintiff in the case with the OFAC records of a person with a similar, but not identical name, who was some twenty years younger than that plaintiff.

41. Despite the abundant notice it has regarding the unlawfulness of its practices, Defendant continues to use a "name only" match in determining whether a given consumer will be reported on his/her Trans Union consumer credit report as an alleged criminal on the OFAC list.

42. Moreover, not even the name only match needs to be an exact match between the actual name of the alleged criminal on the OFAC list and the actual name of the innocent consumer applying for credit.

43. Thus, Defendant will place an OFAC alert on a consumer's report based solely on a partial name match.

7

44. Defendant continues to employ policies and procedures which frequently allow the information belonging to one consumer to appear in the credit file of another.

45. Defendant does so because Defendant always seeks to have some credit information available for sale to its customers (accurate or not), in order to maximize its profits. Defendant thus intentionally employs procedures that maximize the likelihood of match between any credit inquiry and some data in its database about one or more consumers. Defendant thus intentionally compromises accuracy in its efforts to increase sales.

46. Defendant's reporting of OFAC alert information is not accidental, nor a result of simply negligence, but instead a result of deliberately designed policies and procedures.

**B.    The Experience Of The Representative Plaintiff**

47. Plaintiff is but one consumer about whom Defendant sold inaccurate OFAC information which it did not disclose on his file.

48. On or about February 27, 2011, Plaintiff applied for an automobile loan at Dublin Nissan.

49. On or about February 27, 2011, Dublin Nissan ordered a Trans Union consumer report for Plaintiff, after obtaining the Plaintiff's name, address, social security number and date of birth, which Plaintiff provided as part of his credit application, and which Dublin Nissan transmitted to Defendant in seeking a credit report about Plaintiff.

50. Defendant sold Dublin Nissan a Trans Union consumer report purportedly about Plaintiff on the same day for a fee.

51. Despite having been provided with Plaintiff's name, address, social security number and date of birth, Defendant used a partial "name only" match in determining whether Plaintiff was on the OFAC list.

52. Plaintiff was advised by representatives at Dublin Nissan after they reviewed his Trans Union consumer report that it refused to extend him credit since there

was an "OFAC alert" on his credit report. Plaintiff understood this to mean that he had been identified as a terrorist.

53. Representatives from Dublin Nissan showed Plaintiff a copy of the Trans Union consumer report they reviewed in making their credit determination and it included the names of two unknown and unrelated individuals, "Sergio Humberto Ramirez Aguirre" ("Aguirre') and "Sergio Alberto Cedula Ramirez Rivera" ("Rivera"), both of whom appear on the United States Department of the Treasury OFAC list of specially designated nationals and blocked persons.

54. Contrary to the information contained in the Trans Union report prepared for and sold to Dublin Nissan, Plaintiff Ramirez is not an individual included on the OFAC list, and is not related to either Aguirre or Rivera.

55. Dublin Nissan refused to extend credit to Mr. Ramirez, since businesses in the United States are generally prohibited from dealing with anyone listed on OFAC's specially designated national and blocked persons list. *See e.g.*, 31 C.F.R. § 536.201.

56. Shocked and embarrassed, Mr. Ramirez promptly called Trans Union to dispute Trans Union's erroneous reporting of his purported inclusion on the OFAC list.

57. Plaintiff was falsely informed by Trans Union representatives that there was no OFAC alert included in his consumer file, and that there was no way for him to make a dispute for information that did not appear in his file.

58. Mr. Ramirez called Trans Union specifically to dispute the OFAC alert included in the consumer report sold about him by Trans Union, but once Trans Union representatives told him he could not dispute OFAC alert, he asked that Trans Union send him a copy of his file so that he could verify that there was no OFAC alert being reported about him.

59. Trans Union's representatives told Plaintiff that the OFAC alert would not be included in his credit file when sent to him.

9

60. Plaintiff thereafter received a Trans Union file disclosure, dated February 28, 2011 and mailed to Plaintiff from Defendant's consumer relations center in Chester, Pennsylvania.

61. The February 28, 2011 file disclosure included Plaintiff's personal identifying information, his account information, information about inquiries for his credit, including the credit inquiry by Dublin Nissan.

62. Plaintiff's February 28, 2011 consumer file disclosure, however, did not include any OFAC alert or information whatsoever, and thus was not a complete and proper file disclosure as required by FCRA section 1681g(a).

63. Upon information and belief, neither Plaintiff nor any of the Class members as set forth below were provided upon request with consumer file disclosures which included the false OFAC alert that the Defendant was reporting about them to third parties.

64. As a result of Defendant's failure to provide Plaintiff with all of the information it maintains and/or sells about him, specifically the OFAC alert information, Plaintiff was misled concerning the information that Defendant was reporting about him to third parties and deprived of the opportunity to dispute and correct the inaccurate OFAC alert that Defendant inaccurately associated with him on his report.

65. Several days later, under separate cover, Plaintiff received a letter from Defendant's Woodlyn, Pennsylvania facility dated March 1, 2011, "Regarding: OFAC (Office of Foreign Assets Control) Database" (the "March 1, 2011 correspondence").

66. Upon information and belief, Defendant sends this form correspondence only to those consumers, like Plaintiff, who have contacted Defendant about its erroneous reporting of an OFAC alert on their reports, but not to all persons about whom Defendant has sold any report that included an OFAC alert.

67. The March 1, 2011 correspondence sent to Plaintiff Sergio L. Ramirez, born in 1976, stated: "[t]he OFAC record that is considered a potential match to the name on

10

your credit file is. . . Ramirez Aguirre, Sergio Humberto, Tijuana Mexico, date of birth, XX/XX/1951; and Ramirez Rivera, Sergio Alberto Cedula, Cali Columbia, date of birth, XX/XX/1964."

68. The March 1, 2011 correspondence does not constitute a proper consumer file disclosure as defined in the FCRA, 15 U.S.C. §§ 1681a(g) and 1681g.

69. The March 1, 2011 correspondence is a standardized form letter, which is customized with the subject consumer's name and address and which includes the purportedly matching OFAC alert information, but no other public records or credit information relating to that consumer.

70. The March 1, 2011 correspondence contained no summary of rights prepared by the Commission, as required by FCRA § 1681g(c)(2)(A) and CCRAA § 1785.15(f).

71. The March 1, 2011 correspondence contained no toll-free telephone number established by the CRA, at which personnel are accessible to consumers during normal business hours, as required by FCRA § 1681g(c)(2)(B) and CCRAA § 1785.15(f).

72. The March 1, 2011 correspondence contained no list of all Federal agencies responsible for enforcing any provision of the FCRA, nor the address and any appropriate phone number of each such agency, as required by FCRA § 1681g(c)(2)(C) and CCRAA § 1785.15(f).

73. The March 1, 2011 correspondence contained no statement that the consumer may have additional rights under state law, and that the consumer may wish to contact a state or local consumer protection agency or a state attorney general (or the equivalent thereof) to learn of those rights, as required by FCRA § 1681g(c)(2)(D) and CCRAA § 1785.15(f).

74. The March 1, 2011 correspondence contained no statement concerning the right of a consumer to dispute information in the file of the consumer under section 1681i of this title, as required by 15 U.S.C. § 1681g(c)(1)(B)(iii) and CCRAA § 1785.15(f).

11

75. The March 1, 2011 correspondence provides no instructions or methods by which Plaintiff may dispute or request that Trans Union stop selling reports about him with any OFAC alert or information on them.

76. As of result of Defendant's conduct, Plaintiff has suffered damages in the form of (a) lost credit opportunity, (b) harm to reputation, and (c) emotional distress.

77. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

78. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CLASS ACTION ALLEGATIONS

79. Plaintiff brings this action on behalf of the following Classes:

   (a) **For Defendant's violations of FCRA § 1681g(a):** All persons residing in the United States and its Territories who during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case had a consumer report sold about them by Trans Union, which included any OFAC record, and to whom Trans Union subsequently sent a file disclosure substantially similar in form to the February 28, 2011 file disclosure from Defendant to Plaintiff, excluding Sergio Humberto Ramirez Aguirre and Sergio Alberto Cedula Ramirez Rivera.

   (b) **For Defendant's violations of CCRAA § 1785.10:** All persons residing in the State of California who during the period beginning two (2) years prior to the filing of this Complaint and

continuing through the date of the resolution of this case had a consumer report sold about them by Trans Union, which included any OFAC record, and to whom Trans Union subsequently sent a file disclosure substantially similar in form to the February 28, 2011 file disclosure from Defendant to Plaintiff, excluding Sergio Humberto Ramirez Aguirre and Sergio Alberto Cedula Ramirez Rivera.

80. Plaintiff also brings this action on behalf of the following Classes:

(a) **For Defendant's violations of FCRA §§ 1681g(a) & (c):** All persons residing in the United States and its Territories to whom, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, Trans Union sent a letter substantially similar in form to the March 1, 2011 correspondence from Defendant to Plaintiff.

(b) **For Defendant's violations of CCRAA §§ 1785.10 & 1785.15(f):** All persons residing in the State of California to whom, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, Trans Union sent a letter substantially similar in form to the March 1, 2011 correspondence from Defendant to Plaintiff.

81. Plaintiff also brings this action on behalf of the following Classes:

(a) **For Defendant's violations of FCRA § 1681e(b)**: All persons residing in the United States and its Territories with the first name "Sergio" and the last name "Ramirez" who, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, had a

consumer report sold about them by Trans Union which included an OFAC record, excluding Sergio Humberto Ramirez Aguirre and Sergio Alberto Cedula Ramirez Rivera.

(b) **For Defendant's violations of CCRAA § 1785.14(b):** All persons residing in the State of California with the first name "Sergio" and the last name "Ramirez" who, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, had a consumer report sold about them by Trans Union which included an OFAC record, excluding Sergio Humberto Ramirez Aguirre and Sergio Alberto Cedula Ramirez Rivera.

82. The Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Classes number in the thousands.

83. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether the Defendant willfully and/or negligently violated the FCRA and/or the CCRAA by failing to provide consumers with access to all information contained in their consumer files, as well as whether the Defendant follows reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' files with respect to OFAC information.

84. Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

85. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

86. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

87. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the CCRAA Classes each as a whole.

88. Whether Defendant violated the FCRA and/or the CCRAA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

89. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records.

## CLAIMS

### COUNT I – VIOLATION OF THE FCRA § 1681g(a)

90. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

91. Pursuant to section 1681n of the FCRA, Defendant is liable for willfully failing to provide consumers such as Plaintiff, upon request, with all information in the consumer's file in violation of 15 U.S.C. § 1681g(a).

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and

the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. §1681g, pursuant to 15 U.S.C. § 1681n; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n; and that the Court grant such other and further relief as may be just and proper.

### COUNT II – VIOLATION OF THE CCRAA § 1785.10

92. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

93. Defendant is a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

94. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

95. The above-mentioned credit reports were "consumer credit reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

96. Pursuant to Cal. Civ. Code § 1785.31, Defendant is liable for violating the CCRAA by failing to provide consumers, upon request, with a copy of their disclosure containing all information on that consumer in violation of Cal. Civ. Code § 1785.10 with respect to Plaintiff and the Class.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for damages of $100 to $5,000 per Class member per violation under the CCRAA; that the Court award injunctive relief under the CCRAA; that the Court award costs and reasonable attorney's fees under the CCRAA; and such other and further relief as may be necessary, just and proper.

### COUNT III – VIOLATIONS OF THE FCRA § 1681g(c)

97. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

98. Pursuant to section 1681n of the FCRA, Defendant is liable for willfully failing to provide consumers such as Plaintiff with a summary of their rights, which are required to be included with consumer disclosures, including the right to dispute information contained therein, in violation of 15 U.S.C. § 1681g(c).

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. § 1681g, pursuant to 15 U.S.C. § 1681n; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n; and that the Court grant such other and further relief as may be just and proper

### COUNT IV – VIOLATION OF THE CCRAA § 1785.15(f)

99. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

100. Defendant is a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

101. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

102. The above-mentioned credit reports were "consumer credit reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

103. Pursuant to Cal. Civ. Code § 1785.31, Defendant is liable for violating the CCRAA by willfully failing to provide consumers such as Plaintiff with a summary of their rights, which are required to be included with consumer disclosures, including the right to dispute information contained therein, in violation of CCRAA § 1785.10, with respect to Plaintiff and the Class.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing


Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for damages of $100 to $5,000 per Class member per violation under the CCRAA; that the Court award injunctive relief under the CCRAA; that the Court award costs and reasonable attorney's fees under the CCRAA; and such other and further relief as may be necessary, just and proper

### COUNT V – VIOLATION OF THE FCRA § 1681e(b)

104. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

105. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully failing to maintain reasonable procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for statutory, actual and punitive damages for violation of 15 U.S.C. §1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other and further relief as may be just and proper

### COUNT VI – VIOLATION OF THE CCRAA § 1785.14(b)

106. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

107. Defendant is a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

108. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

109. The above-mentioned credit reports were "consumer credit reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

18

110. Pursuant to Cal. Civ. Code § 1785.14(b), Defendant is liable for violating the CCRAA by failing to follow reasonable procedures to assure "maximum possible accuracy" of the reports it sold, in violation of Cal. Civ. Code § 1785.14(b) with respect to Plaintiff and the Class.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for damages of $100 to $5,000 per Class member per violation under the CCRAA; that judgment be entered for Plaintiff and the Class against Defendant for actual damages under the CCRAA; that judgment be entered for Plaintiff and the Class against Defendant for actual damages under the CCRAA; that the Court award injunctive relief under the CCRAA; that the Court award costs and reasonable attorney's fees under the CCRAA; and such other and further relief as may be necessary, just and proper

Dated: February 8, 2012

ANDERSON, OGILVIE & BREWER, LLP
and
FRANCIS & MAILMAN, LLC

By: _____
Andrew J. Ogilvie

### JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues.

ANDERSON, OGILVIE & BREWER, LLP
and
FRANCIS & MAILMAN, LLC

By: _____
Andrew J. Ogilvie