IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similar situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>Defendant. | Case No.: 3:12-cv-00632 JSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY COUNSEL AND FOR SANCTIONS (Dkt. No. 51)** |

Now pending before the Court is Defendant's Motion to Disqualify Counsel and for Sanctions (Dkt. No. 51). Defendant asks the Court to disqualify Plaintiff's counsel because of statements posted about this case on counsel's website. After carefully considering the pleadings and evidence submitted by the parties, and having had the benefit of oral argument on March 13, 2013, the Court DENIES Defendant's motion.

**BACKGROUND**

In this putative class action, Plaintiff Sergio Ramirez alleges that Defendant Trans Union, LLC, a credit reporting agency, violated the Federal Credit Reporting Act ("FCRA")

1  and the California Consumer Credit Reporting Agencies Act ("CCRAA") by failing to ensure
2  "maximum possible accuracy" of its credit reports and failing to provide consumers with
3  proper disclosures.  In particular, Plaintiff alleges that he was denied an auto loan after Trans
4  Union provided a car dealer with a credit report which indicated that Plaintiff's name matched
5  a name on the federal government's Office of Foreign Assets Control ("OFAC") list. This
6  OFAC alert, as it is known, is a specific type of data provided by consumer reporting agencies
7  on credit reports signifying that the subject of the report is purportedly included in the list of
8  the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons,
9  which includes terrorists, money launderers and narcotic traffickers. (Dkt. No. 1 at ¶¶ 15-16.)

Plaintiff's wife was subsequently able to qualify by herself and purchased the car.  The next day, Plaintiff contacted Trans Union to inquire as to the OFAC alert.  He was told he was not on the OFAC list and that he would be sent a copy of his credit report. (Dkt. No. 60-2, 37:2-6.)  Plaintiff received a mailed copy of his credit report, and separately, a letter from Trans Union which indicated that he "potentially matched to the OFAC list."  (Dkt. No. 60-2, 42:13-14.)  Upon receipt of the letter, Plaintiff contacted legal counsel, spoke with Trans Union "a lot of times," and sent Trans Union a letter asking that it take him "off the OFAC list." (Dkt. Nos. 51-2, 54:6-11, p. 29; 60-2, 43:11-25.)  Plaintiff then received another letter from Trans Union stating that "we have removed your name from the OFAC name screen alert list." (*Id.* at 46:15-47:4.)  This lawsuit followed.

This motion arises out of a posting Plaintiff's counsel, the law firm Anderson, Ogilvie & Brewer, posted on their website after this lawsuit was filed late last year. The posting discussed the underlying action and a prior action brought by Plaintiff's counsel against Trans Union.  In that case, *Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010), the court held as a matter of first impression that an OFAC alert on a credit report is subject to FCRA reporting requirements.  The court also held that Trans Union had negligently failed to comply with FCRA's requirement that consumer reporting agencies follow reasonable procedures to assure the maximum possible accuracy of the information in credit reports.  The posting, which Defendant characterizes as a "solicitation," appears on the "California Credit

2

Law Blog" portion of Anderson, Ogilvie & Brewer's website and is entitled "Credit Reports Tag Consumers as Terrorists or Drug Dealers." (Dkt. No. 51-4.) It was written by Mark F. Anderson a partner at Anderson, Ogilvie & Brewer. The posting describes the *Ramirez* and *Cortez* cases, and of particular relevance here, provides the following description of what happened with Plaintiff's attempt to purchase a car:

> When Mr. Ramirez applied for a car loan at a dealership in Dublin, CA but the dealer rejected his application after the finance manager pulled a Trans Union credit report indicating that he may be a drug trafficker. When Ramirez disputed the report, Trans Union told him there was nothing Ramirez or the credit bureau could do to fix the problem!

*Id*. at 2. The posting also states:

> If a consumer learns that an OFAC alert tied to your name is being reported to lender, the consumer should write or call the credit bureau that is making the report and ask to be taken off the list. If a credit bureau refuses to remove the false alert, the consumer may wish to contact this law firm for further advice.

*Id*.

The parties dispute whether this posting preceded or followed a news article posted on creditcards.com entitled "Credit reports falsely tag consumers as terrorists, drug traffickers" written by Kelly Dillworth. (Dkt. No. 51-5.) The Dillworth article has been republished by many other news outlets. Anderson's posting states that it was posted on November 23, 2012 and the creditcards.com article was published December 6, 2012. However, Anderson has filed a declaration under oath stating that although the post is dated November 23, 2012, that is the date Anderson began to draft the post. He did not actually post it on the website until the day after the creditcards.com article ran because he "thought she had expressed some ideas better than my draft post so I edited my draft borrowing some words and phrases from her story." (Dkt. No. 70-1 ¶ 6.)

Defendant thereafter filed the underlying motion for disqualification of counsel and sanctions based on the statements in Anderson's posting and the creditcards.com article.

## DISCUSSION

Attorneys who appear before the United States District for the Northern District of California must comply with the California Rule of Professional Conduct. *See* Civ. L.R. 11–

3

4(a) (1) (requiring that all members of the bar of this Court and attorneys permitted to practice before the Court pro hac vice be "familiar and comply with the standards of professional conduct required of members of the State Bar of California"). To determine whether to disqualify counsel, the court applies California law. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Because motions to disqualify are often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and imposed only when absolutely necessary. *See Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal citations omitted) (particularly strict judicial scrutiny should be given to a motion to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage). "The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof." *Kelly v. Roker*, No. 11-05822, 2012 WL 851558, at *2 (N.D. Cal. Mar. 13, 2012) *citing Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). The decision to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers. *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996).

      Defendant seeks disqualification of Plaintiff's counsel on the ground that their public statements violate professional standards and are false, deceptive and misleading. In particular, Defendant contends that the posting on Plaintiff's counsel's website contains material and false statements regarding Trans Union and prompted a news article which also quotes Plaintiff's counsel and contains numerous allegedly misleading, deceptive, and incorrect statements. Defendant maintains that counsels' conduct violates the California and Pennsylvania Rules of Professional Conduct and therefore warrants disqualification of Plaintiffs' counsel, revocation of pro hac vice status, and sanctions. Defendant first contends that Anderson's posting qualifies as an unlawful solicitation made in violation of California Rule of Professional Conduct 1-400. Rule 1-400 describes a solicitation as a communication which is "(a) delivered in person or by telephone, or (b) directed by any means to a person known to the sender to be represented by counsel in a matter which is a subject of the communication." Because the posting on counsel's website does not fall within either

4

category, it is not a solicitation and therefore did not violate Rule 1-400. *See Rand ex rel. Dolch v. Am. Nat. Ins. Co.*, No. 09-639 SI, 2010 WL 2758720, at *2 (N.D. Cal. July 13, 2010) (finding that a communication by mail was not a solicitation because "the plain language of Rule 1–400(B) states that a solicitation is a communication "delivered" in person or by telephone") citing *Parris v. Superior Court*, 109 Cal.App.4th 285, 298 n. 6, 135 Cal.Rptr.2d 90 (2003) (neither mail notice nor web site was "solicitation" under Rule 1–400(B)).

Next, Defendant argues that the statements in Anderson's posting and the creditcards.com article violated California Rule of Professional Responsibility 5-120. Rule 5-120 states that an attorney "shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." The attorney can, however, state the "claim . . . involved and, except when prohibited by law, the identity of the persons involved" and "the information contained in a public record." Cal. Rule 5-120(B)(1)-(2); Penn. Rule 3-6(b)(1)-(2). This rule is in accord with the United States Supreme Court's ruling "that speech otherwise entitled to full constitutional protection may nonetheless be sanctioned if it obstructs or prejudices the administration of justice." *Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1442 (9th Cir. 1995) (*citing Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074-75 (1991)). Thus, "the prejudice to the administration of justice must be highly likely before speech may be punished." *Id.*

The Court is unpersuaded that Anderson's post violated Rule 5-120(B)(1)-(2). Defendant focuses primarily on the statements concerning Plaintiff's efforts to have the OFAC alert removed from his report. In particular, the positing states: "When Ramirez disputed the report, Trans Union told him there was nothing Ramirez or the credit bureau could do to fix the problem!" (Dkt. No. 51-4.) Defendant insists that this statement is directly contradicted by Plaintiff's deposition testimony: Plaintiff testified that when he asked Trans Union to remove the OFAC alert, they sent him a letter stating that they had done so. Defendant, however, omits Plaintiff's deposition testimony where he states that when he first

5

1 called Trans Union, Trans Union told him that there was no OFAC alert on his account, but
2 then Trans Union mailed him a notice indicating that his name potentially matched the OFAC
3 list. Only after he spoke with Trans Union "a lot of times" and sent it a letter requesting that
4 his name be removed from the OFAC list did Trans Union in fact remove his name. (Dkt.
5 Nos. 51-2, 54:6-11, p. 29; 60-2, 42-13-15, 43:11-25.) In light of this testimony, the Court
6 does not find that the postings' statements are "patently false and misleading" as Defendant
7 proclaims. Moreover, the statements fall well below the prohibition on extrajudicial
8 statements that an attorney "knows or reasonably should know will have a substantial
9 likelihood of materially prejudicing an adjudicative proceeding." *See* Cal. Rule P.R. 5-120.
10 Indeed, Defendant does not cite a single case in which an attorney was found to have violated
11 Rule 5-120 based on a website posting, and certainly no case in which a court disqualified
12 counsel based on a website posting about a case.

13 The thrust of Defendant's motion concerns the contents of the creditcards.com article.
14 However, the Court questions whether there is any basis for imputing the statements in the
15 article to Plaintiff's counsel except for those statements which appear as direct quotes from
16 Plaintiffs' counsel Andrew Ogilvie and James Francis. Counsel Anderson has provided a
17 declaration under penalty of perjury that his posting did not appear on the firm's public
18 website until after the creditcards.com article was published. Moreover, even if the article
19 followed Anderson's posting, it is unreasonable to impute all of the article's contents to
20 Plaintiff's counsel and hold counsel responsible for the contents of an article by a third-party.
21 Again, Defendant cites no authority for this proposition.

22 In any event, even if counsel could be held responsible for the entire article, the Court
23 still finds no violation of Rule 5-120. Defendant focuses on two particular quotations. The
24 first, by counsel Ogilvie, states: "[i]t is horribly embarrassing… nobody wants to be sitting in
25 somebody's finance office [having someone tell you] I'm sorry. I can't sell you a car because
26 you appear to be a terrorist or a money launderer or a drug trafficker." (Dkt. No. 51-5.)
27 Ogilvie does not state that this is in fact what happened to Plaintiff here. Moreover, the gist

of the OFAC alert is that the named person appears to be someone who has done something unlawful which makes him or her ineligible to obtain credit.

The article also contains the following statement attributable, in part, to counsel Francis:

> "Get legal assistance immediately," says Francis. The OFAC alert "will not go away." You "will continue to be the subject of OFAC alerts" until the credit bureau is forced to remove the alert, he says.

(*Id.*) Defendant objects to this statement because it does not disclose that Plaintiff was able to have the OFAC information removed from his file merely by sending Trans Union a letter. The Court is not persuaded. Defendant does not dispute that Plaintiff had to take affirmative actions, beyond just a simple phone call, before Trans Union would remove the OFAC information from his file. That Trans Union ultimately did so does not alter that Plaintiff had to take repeated affirmative action to have the alert removed from his file.

Accordingly, the Court concludes that Defendant has failed to meet the heavy burden required to justify the drastic remedy of disqualification of Plaintiff's counsel. *See In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000) (noting that an order of disqualification of counsel is a drastic measure which courts should hesitate to impose except in circumstances of absolute necessity). Defendant has also failed to demonstrate that Plaintiff's counsels' conduct warrants sanctions of any kind.

## CONCLUSION

For the reasons explained above, the Court in its discretion DENIES Defendant's Motion for Disqualification of Counsel and for Sanctions (Dkt. No. 51).

Defendant's Administrative Motion to File Under Seal (Dkt. No. 68) is GRANTED.

**IT IS SO ORDERED.**

Dated: March 20, 2013

                                              _____
                                              JACQUELINE SCOTT CORLEY
                                              UNITED STATES MAGISTRATE JUDGE