UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TRANS UNION, LLC,<br><br>　　　　Defendant. | Case No. 12-cv-00632-JSC<br><br>**ORDER ON PLAINTIFF'S ADMINSTRATIVE MOTION TO FILE TESTIMONY AND DOCUMENTS UNDER SEAL**<br><br>Re: Dkt. No. 110 |

In this putative class action, Plaintiff Sergio Ramirez alleges that he was denied an auto loan after Defendant Trans Union, LLC mistakenly informed a car dealership that Plaintiff was on the federal government's Office of Foreign Assets Control ("OFAC") list. Plaintiff contends that Defendant violated the Federal Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agencies Act ("CCRAA") by failing to ensure "maximum possible accuracy" of its credit reports, and failing to provide consumers with proper disclosures. (Dkt. No. 1 ¶ 1.) Now pending before the Court is Plaintiff's Administrative Motion to File Under Seal (Dkt. No. 110) portions of its Motion to Certify Class and certain exhibits submitted therewith (Dkt. No. 111). Plaintiff seeks to file the documents under seal because Defendant designated the testimony and documents in question as "confidential" or "highly confidential" pursuant to the stipulated protective order governing this action (Dkt. No. 37-1). In accordance with Local Rule 79-5(e)(1), Defendant, as the party asserting that the documents are confidential, submitted declarations in support of Plaintiff's motion to seal. (Dkt. Nos. 112-2, 112-3.) For the reasons explained below, Plaintiff's motion is GRANTED in part and DENIED in part.

**LEGAL STANDARD**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Comm'ns, Inc.*, 435

1 U.S. 589, 597 n.7 (1978*); see also Foltz v. State Farm Mutual Auto Ins. Co.*, 331 F.3d 1124, 1134
2 (9th Cir. 2003) ("In this circuit, we start with a strong presumption in favor of access to court
3 records."). The right is justified by the interest of citizens in "keep[ing] a watchful eye on the
4 workings of public agencies." *Nixon*, 435 U.S. at 598. The right, however, "is not absolute and
5 can be overridden given sufficiently compelling reasons for doing so." *Foltz*, 331 F.3d at 1135;
6 *see, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). "A narrow
7 range of documents is not subject to the right of public access at all because the records have
8 traditionally been kept secret for important policy reasons." *Kamakana v. City and Cty. of
9 Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citations omitted); *see, e.g., Times Mirror
10 Co.*, 873 F.2d at 1219 (grand jury transcripts and warrant materials in the midst of a pre-
11 indictment investigation not subject to right of public access).

12 The right of public access to judicial records "applies fully to dispositive pleadings,
13 including motions for summary judgment and related attachments." *Kamakana*, 447 F.3d at 1179.
14 The Ninth Circuit "adopted this principle of disclosure because the resolution of a dispute on the
15 merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the
16 public's understanding of the judicial process and of significant public events." *Id.* (internal
17 citations and quotation marks omitted). Thus, "[a] party seeking to seal a judicial record then
18 bears the burden of overcoming this strong presumption by meeting the 'compelling reasons'
19 standard." *Id.* at 1178-79. The reasons must "outweigh the general history of access and the
20 public policies favoring disclosure." *Id.* at 1179 (internal quotation marks and citations omitted).
21 Such compelling reasons include "the use of records to gratify private spite, promote public
22 scandal, circulate libelous statements, or release trade secrets." *Id.* (internal quotation marks and
23 citation omitted). "The mere fact that the production of records may lead to a litigant's
24 embarrassment, incrimination, or exposure to further litigation will not, without more, compel the
25 court to seal its records." *Id.* A parties' request for sealing must be "narrowly tailored" and
26 establish that the "document, or portions thereof, are privileged, protectable as trade secret or
27 otherwise entitled to protection under the law." L.R. 79-5(b).
28 The Court must "conscientiously balance[ ] the competing interests" of the public and

those of the party seeking to keep certain judicial records secret. *Foltz*, 331 F.3d at 1135. In considering these interests, the court must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (internal citations omitted).

In contrast to the "compelling reasons" required to overcome the presumption of public access to dispositive pleadings, the Ninth Circuit imposes a lower "good cause" standard for keeping judicial records attached to non-dispositive motions. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (internal quotation marks omitted). Because non-dispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," there is a "weaker public interest" in accessing these materials. *Id.*

**DISCUSSION**

Defendant, the Designating Party, contends that Exhibits 1, 2, 4, and 5 should be sealed because "they consist of confidential, proprietary business information and trade secrets that are entitled to protection from public disclosure." (Dkt. No. 112 at 5.)[1] In particular, "TransUnion's non-public data, internal analysis and business strategies provide valuable intelligence in positioning a competitor's own products, marketing, and strategies." (*Id.*) Defendant argues that the public's interest in accessing the information sought to be sealed is low because the motion for class certification is a non-dispositive, "procedural" matter. (Dkt. No. 112 at 4.)

"The Ninth Circuit has not ruled as to whether a motion for class certification is a dispositive motion for the purposes of determining whether the 'compelling reasons' standard applies." *Labrador v. Seattle Mortgage Co.*, 08-2270 SC, 2010 WL 3448523, at *2 (N.D. Cal. Sept. 1, 2010). Although courts in the Northern District "have generally considered motions for class certification nondispositive," *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 09-CV-01967 CW NC, 2013 WL 3014138, at *3 (N.D. Cal. June 17, 2013), some have recognized

---

[1] Plaintiff also moved to seal portions Exhibits 11 and 16 to the Soumilas Declaration. (Dkt. No. 110-1 at ¶ 3(a)(iv)–(v).) Because Defendant has not submitted a declaration pursuant to Local Rule 79-1(e) to establish that these two exhibits are sealable, the Court DENIES Plaintiff's motion to seal these documents.

1    that "there may be circumstances in which a motion for class certification is case dispositive," *In*

2    *re High-Tech Emp. Antitrust Litig.*, 11-CV-02509-LHK, 2013 WL 163779, at *2 n.1 (N.D. Cal.

3    Jan. 15, 2013).  For example, "a motion for class certification might be dispositive if 'a denial of

4    class status means that the stakes are too low for the named plaintiffs to continue the matter.'" *Id.*

5    (quoting *Prado v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000)); *see also Dugan v. Lloyds TSB*

6    *Bank*, PLC, 12-CV-02549-WHA NJV, 2013 WL 1435223 (N.D. Cal. Apr. 9, 2013) (recognizing

7    that courts in the Ninth Circuit generally treat class certification motions as non-dispositive unless

8    the motion's denial "would constitute the death knell of a case.").

9          The Court need not decide whether Plaintiff's motion to certify should be treated as

10   dispositive motion because its rulings on the motion to seal do not hinge on whether the good

11   cause or compelling reason standard applies. The portions of documents that will not be sealed do

12   not meet even the lower good cause standard; the portions that will be sealed meet even the stricter

13   compelling reasons standard.

14         It significant to this motion that the many of the subjects discussed in the deposition

15   testimony is already in the public domain.  The Third Circuit's opinion in *Cortez v. Trans Union*,

16   LLC, 617 F.3d 688 (3d Cir. 2010), affirming a jury verdict for a consumer's FCRA claim against

17   Defendant, contains much of the same information Defendant now wants to seal.  For example, the

18   substance of many of the proposed redactions of the motion for class certification appears

19   throughout the *Cortez* opinion.  *See, e.g.*, 617 F.3d at 703 ("The information in Trans Union's

20   OFAC alert is provided to purchasers through a third party vendor called 'Accuity.' . . . Trans

21   Union does not sell the OFAC alert information as a stand alone product creditors must first

22   purchase a Trans Union product such as credit report services and the OFAC alert is added to that

23   product."); 704 ("[W]hen retrieving OFAC information, Trans Union sends only a name to

24   Accuity, even though Trans Union may have more information about the person who is the subject

25   of the inquiry.  Trans Union reports a match whenever names are similar. . . . Trans Union does no

26   other comparison or due diligence with the data it receives from Accuity to attempt to match it to

27   the consumer whose credit report is being furnished.") (internal quotation marks and citations

28   omitted).  There is no reason to seal information in this case that has already been made public in

1   *Cortez*. *See Optimize Tech. Solutions, LLC. v. Staples, Inc.*, 14-MC-80095-LHK-HRL, 2014 WL

2   1477651, at *4 (N.D. Cal. Apr. 14, 2014) (holding that "parties may not seek to seal information

3   that is contained in publicly filed papers"). To the extent that TransUnion seeks to protect the fact

4   that it has continued to use Accuity's OFAC product post-*Cortez*, the Court finds no good cause to

5   do so. "The mere fact that the production of records may lead to a litigant's embarrassment,

6   incrimination, or exposure to further litigation will not, without more, compel the court to seal its

7   records." *Kamakana*, 447 F.3d at 1179.

8   On the other hand, the Court recognizes compelling reasons to seal certain segments of

9   Exhibits 1, 2, 4, and 5, including discussions about consumer disputes and related policies and

10  procedures and the search logic and functioning of the OFAC product. These two topics concern

11  trade secrets, which in the Ninth Circuit "may consist of any formula, pattern, device or

12  compilation of information which is used in one's business, and which gives him an opportunity to

13  obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F.

14  App'x 568, 569-70 (9th Cir. 2008) (quoting *Restatement of Torts* § 757, cmt. b, adopted in *Clark*

15  *v. Bunker*, 453 F.2d 1006, 1009 (9th Cir.1972)).

16  With these overarching holdings in mind, the Court addresses in turn each set of excerpts

17  in Plaintiff's motion to seal.

18  **A.   Deposition of Michael O'Connell (Exhibit 1)**

19  Exhibit 1 to Plaintiff's Motion for Class Certification consists of excerpts of the deposition

20  of Michael O'Connell. (Dkt. 110-7 at 2.) O'Connell has been a Vice President of Product

21  Development and Management at TransUnion for approximately 12 years. (Dkt. 112-2 ¶ 1.)

22  **(1) Page 36:** The Court finds no reason to seal O'Connell's testimony that Trans Union

23  wanted a reputable product to provide OFAC data and considered some others companies—whose

24  names O'Connell did not recall—before selecting Accuity.

25  **(2) Pages 43-46**: Page 43:1-6 will not be sealed because it merely confirms that

26  TransUnion continued to use Accuity software for its OFAC add-on product, as discussed in

27  *Cortez*. O'Connell's understanding of how the software works, which appears on page 43:7

28  through 46, is proprietary, confidential, and could lead to competitive damage if disclosed.

Accordingly, this portion will be sealed.

**(3) Pages 52-56:** In this excerpt, O'Connell testified that Trans Union sold public record data like civil judgments, tax liens, and bankruptcies as part of credit reports. Trans Union did not list civil judgments, tax liens, bankruptcies, credit cards, or collection accounts on a credit report if only the subject's name matched—an address match was also required for the record to be included on the report. O'Connell testified that from 2004 to the date of the deposition, in contrast, TransUnion required only a name match for the purposes of OFAC data. Because this fact was discussed throughout *Cortez*, the only issue is whether TransUnion's continued practice to list an OFAC match based on a name match alone is sealable. The Court finds that it is not. In light of the fact that the core allegation of *Cortez* was TransUnion's name-only matching and the core allegation here is that TransUnion's OFAC matching continues to be unlawful post-*Cortez*, discussion of TransUnion's OFAC matching practice as based on name only will not be sealed.

**(4) Pages 58-63:** Pages 58, 59, and 60:1-10 encompass O'Connell's testimony that TransUnion relies on name match alone for OFAC matches, but has procedures beyond name-matching to match public records, credit cards, and collection accounts to the correct consumer file. The substance of this excerpt is essentially the same as pages 52 through 56 and will be left unsealed for the same reasons. Page 60:11-19 is simply a discussion of a break in the deposition and need not be sealed. As for pages 60:25 through 63, the Court finds no reason to keep confidential O'Connell's testimony that he has never seen information confirming that a purported OFAC match was either a true match or a false positive. The fact that O'Connell is not aware of such information does not warrant protection.

On pages 60:20 through 62:24, O'Connell describes how a name search functions, and thereby provides proprietary, sensitive information that should be sealed.

**(5) Pages 66-67:** O'Connell explained that it is not TransUnion's role to determine whether an individual identified as an OFAC match is actually on the OFAC list and takes no action in this regard. This information will not be sealed as confidential. TransUnion's response to purported matches is central to the claim that TransUnion does not follow reasonable procedures to insure the accuracy of its reports. The public's interest in this information

outweighs any competitive sensitivity.

**(6) Page 122:** The only portion of this page that will be sealed are lines 10 through 13 in which O'Connell discusses the specific search logic used. The remainder of the page retreads the subject of OFAC matches as based on name alone and will not be sealed for aforementioned reasons.

**(7) Pages 133-35.** The Court will not seal page 133, which contains no substance except the name on line 25. Plaintiffs do not explain whether this individual's name is confidential, and nor is page 133 even referenced in Plaintiff's brief. The testimony on pages 134 and 135 concerns O'Connell's discussion with Accuity about its search logic and will therefore be sealed.

**(8) Pages 160-63:** Here, O'Connell stated that he was responsible for implementing the decision to add the word "potential" to reports of an OFAC match to clarify the significance of the information, but, apart from stemming from the *Cortez* litigation, did not recall how the idea came about. O'Connell communicated with Mark Roethel to make the change, but was not involved in the technical implementation of the change and did not know whether it was assigned to a contractor. He recalled the change took effect in November 2011. None of this information creates any risk of competitive disadvantage and will not be sealed.

**(9) Pages 166-68**: Nothing in this segment warrants sealing. First, O'Connell stated that he was not involved in either blocking consumers from name matches or responding to consumer disputes. The extent of his knowledge about preventing a consumer from being a name match in the future is "[j]ust the fact that it is done." (O'Connell Dep. at 166:13.) O'Connell also testified about a slide, Bates TU9485, which is part of Exhibit 5 to Plaintiff's Motion to Certify that Defendants seek to seal. In contrast to the substance of the PowerPoint itself, which the Court addresses below, O'Connell did not provide any testimony that should be kept confidential. The fact that an internal group at TransUnion performed an analysis of "different matching scenarios" is not sensitive information (*id.* at 166:25-167:1), nor is his description of the document as comparing the number of potential hits versus potential false positives or the approximate date of the document.

**(10) Page 281:** The only lines at issue on this page are 11 through 23, which need not be

1  sealed. O'Connell stated that TransUnion only sells its OFAC product in conjunction with another
2  product. In addition to having been discussed in *Cortez*, the Court sees no reason why
3  TransUnion's marketing of OFAC as an add-on is confidential information. The earlier lines
4  discuss a break in the deposition, and the last two lines concern a question that O'Connell answers
5  on the next page, which Defendants do not seek to seal.

In sum, pages 43:7-46, 60:20-62:24, 122:10-13, 134, and 135 of O'Connell's deposition will be sealed.

### II. Deposition of Robert Lytle (Exhibit 2)

Exhibit 2 consists of excerpts of the deposition of TransUnion employee Robert Lytle. (Dkt. 110-9.)

**(1) Pages 68-70:** This excerpt discusses the chronology of the OFAC project in 2010 and 2011. Page 68 need not be sealed because it merely mentions an individual named Mr. Jothidoss, who was not a TransUnion employee at the time of the OFAC project, as well as an individual named Mr. Keating, who, according to the testimony, gave Lytle a chronology of the OFAC project. Defendant does not explain why the identity of either individual must be kept confidential.

Pages 69 and 70 discuss three phases of TransUnion's response to *Cortez*, beginning in the fall of 2010, by disclosing OFAC information to consumers. The first phase included a form letter to consumers found to be a possible match to the OFAC list and the creation of a dispute mechanism. During the second phase, TransUnion introduced an improved dispute system, and began providing the disclosure with the credit report itself rather than in a form letter. In the third phase, TransUnion began delivering the OFAC disclosure through the website when an affected consumer requested his file. There is no purpose in sealing the fact that TransUnion changed its OFAC procedures post-*Cortez*, nor the descriptions of what methods of disclosure TransUnion implemented. This procedure is known to each of the consumers who received the disclosures and the existence of these steps being made public poses no competitive disadvantage to TransUnion.

**(2) Pages 72-73:** In the relevant portion of this excerpt, pages 72:13 to 73:9, Lytle testified that he was "generally aware" of how TransUnion's computer systems obtained OFAC

data to deliver the information to a third party and to deliver the information to a consumer. (Lytle Dep. at 72:17.) Lytle explained that the two methods are functionally the same "for the purpose of a logical system design," though technically two different systems. Without any more specific detail about either system, the Court sees no reason to keep this segment confidential. The other lines concern discussions Lytle had with an individual named Mr. Skopets and include no information that warrants sealing.

**(3) Pages 83-86:** This portion of the deposition retreads the post-*Cortez* disclosures including sending the form letter about OFAC to consumers, then disclosing the OFAC information directly in the consumer's file. The testimony adds nothing to that on pages 69 and 70 and will be left unsealed for the same reasons.

**(4) Pages 98-99:** In this segment, Lytle appeared to be reviewing Plaintiff's credit report and confirms counsel's reading of its section titles. There is nothing remotely confidential on these pages, nor does Plaintiff's even cite them in their motion. The pages will not be sealed.

**(5) Pages 112-113:** Lytle testified that a customer who subscribes to TransUnion's credit reports with the OFAC add-on would typically receive both the credit report and OFAC information in a single report or transmission. In addition to already having been discussed in *Cortez*, the Court sees no need for this testimony to be sealed.

**(6) Pages 139-41:** Lytle stated that an individual named Mark Roethel is his counterpart at Accuity. He had never seen any OFAC queries, so could not testify as to whether a middle name is ever queried into the Accuity library. Lytle testified that only first and last name are required to search the OFAC database. No other information, including birthdate, is needed. In contrast, a consumer's birth date might be used when retrieving some of TransUnion's other products. This excerpt will not be sealed for the same reasons as the other discussions of TransUnion's OFAC search being based on name only.

**(7) Page 146:** Lytle was not aware of any limit on record retrievals from Accuity as the result of a search, and not aware of anything Trans Union does to determine whether any particular record is a true match. The fact that Lytle is not aware of a process that may or may not exist is not sensitive, and this page need not be sealed.

9

**(8) Pages 203-05:** Lytle is not aware of any reason that the typical name-only OFAC search process would not have been followed in Plaintiff's case. Because this is simply a reiteration that TransUnion employs a name-only search for OFAC matches, these pages will not be sealed.

**(9) Pages 220-21, 223-25, 243-45, and 247:** In these segments, Lytle discusses the number of consumer disputes that TransUnion has received regarding the OFAC search and TransUnion's procedure for handling the disputes. The Court agrees that this information is highly sensitive, not directly relevant to Plaintiff's claim and the conduct alleged, and meets even the stricter "compelling reasons" standard for sealing. Accordingly, Lytle's deposition pages 220:6-221, 223-225:14, 243:8-245:19, and 247 will be sealed.

**(10) Page 299-300:** Lytle stated that he did not know whether resellers are required to use new header indicating a potential OFAC match. Although he is aware that TransUnion generally permitted resellers to package its data, he was not familiar with the reseller's particular contractual obligations. Lytle's lack of knowledge in this area need not be kept confidential, and the pages need not be sealed.

In sum, pages 220:6-221, 223-225:14, 243:8-245:19, and 247 of Lytle's deposition will be sealed.

### III.   Newman Deposition (Exhibit 4).

Exhibit 4 consists of excerpts of the deposition of Brent Newman (Dkt. 110-12), who is an executive vice president at third-party Accuity, "responsible for the product management, product development, and professional services groups for our risk and compliance business lines." (Dkt. 112-3 at ¶ 3.)

**(1) Pages 14-15:** The Court finds no reason to keep confidential Newman's testimony that he oversaw two Accuity products related to OFAC data called FAC file and OFAC Enhancement Lists, that Accuity sold the FAC Filter product to TransUnion since 2002, that Accuity sold their OFAC products to other clients, and that he did not believe Accuity sells the OFAC products to Experian or Equifax. The Court will seal, however, Newman's description of the two OFAC products at page 14:13-19 because that information could raise competitive risk.

10

**(2) Pages 50-52, 58, 60-62:** At page 50:1-19, Newman testified about his understanding that once Accuity's OFAC product is delivered to TransUnion, it is in TransUnion's possession and control, and did not know where they actually maintain the product. This information need not be sealed. In contrast, Newman's testimony from page 50:20 through 52:24, 58, and 60 through 62 relates to discussions between TransUnion and Accuity about the operation of the OFAC product and provides details about how the product functions. Because this information is sensitive, confidential, and could cause competitive disadvantage, it will be sealed.

**(3) Pages 81-89:** At page 81:1-14, Newman apparently testified about the report listing four OFAC matches for Plaintiff. The substance of this report appears unredacted in Plaintiff's Motion to Certify (Dkt. 111 at 12) and forms the basis of Plaintiff's allegations in this action. This portion will not be sealed. The remainder of this excerpt, pages 81:15 through 89 discusses the functioning and logic of Accuity's product and will be sealed for the reasons stated in support of sealing earlier excerpts of Newman's deposition.

**(4) Pages 100-06:** Newman states that Accuity released software called Compliance Link in September 2011 that allows multi-criteria matching, which, for example, could be used to search by both name and birthdate. As of the date of the deposition, some of Accuity's customers had the Compliance Link product, but not TransUnion or any credit reporting agency. The existence of this product and the fact that TransUnion did not have it at the date of the deposition, discussed on pages 100 through 102:10, need not be sealed. Relatedly, Newman's testimony on page 109:8 through 110:24 about the implementation of Compliance Link does not warrant sealing.

On pages 102:11 through 103:14, Newman states that Accuity would not typically learn that Accuity's product has led to the arrest of anyone on the OFAC list because it does not have any involvement with its customers' use of the information it provides. The Court sees no reason this information should be sealed. Pages 107:6 through 108:12 involve a similar discussion and will also be left unsealed. In the remainder of this excerpt, from page 103:15 through 104:5, Newman explains that so-called false positives arise with any filtering software because not all potential matches will be actual matches. This is not confidential.

11

In the testimony on page 104:6 through 106:17, Newman discussed how Accuity works with customers, including TransUnion to minimize false positives. This is potentially proprietary and will be sealed. Lines 106:18-107:5 concern administration of the deposition and do not require sealing.

**(7) Pages 108-09:** Pages 108:13 through 109:7, concern discussions between Accuity and its customers about its OFAC product and warrant sealing.

In sum, pages 14:13-19, 50:20-52:24, 58, 60-62, 81:15-89, 104:6-106:17, and 108:13-109:7 of Newman's deposition will be sealed.

### IV.     PowerPoint Document (Exhibit 5)

Exhibit 5 is a TransUnion PowerPoint document, Bates numbered TU0009481-87. The Court agrees that sealing this document is appropriate because its content is propriety, confidential, and could raise issues for competition. The title of the presentation "OFAC Hit Analysis" need not be redacted, however.

### V.      Motion to Certify

Consistent with the Court's rulings with respect to Exhibits 1, 2, 4, and 5, the following portions of Plaintiff's Motion to Certify (Dkt. 111) shall be redacted as proposed: pages 4:1-15 and footnotes 5, 8, and 16.

Defendant's motion to seal is DENIED in all other respects.

**IT IS SO ORDERED.**

Dated:  April 28, 2014

_Jacqueline S. Corley_
JACQUELINE SCOTT CORLEY
United States Magistrate Judge