Andrew J. Ogilvie     (SBN 57932)
Carol M. Brewer        (SBN 214035)
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street, Suite 914
San Francisco, California 94104
        Telephone:     (415) 651-1952
        andy@aoblawyers.com
        carol@aoblawyers.com

James A. Francis       (*pro hac vice*)
John Soumilas          (*pro hac vice*)
David A. Searles       (*pro hac vice*)
Francis & Mailman, P.C.
Land Title Bldg, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
        Telephone:     (215) 735-8600
        Facsimile:     (215) 940-8000
Email: jfrancis@consumerlawfirm.com
        jsoumilas@consumerlawfirm.com
        dsearles@consumerlawfirm.com

Attorneys for Plaintiff, Sergio L. Ramirez

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similarly situated, | Case No. 12 cv-00632-JSC |
| Plaintiff, | Class Action |
| v. | PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO CERTIFY CLASS |
| TRANS UNION, LLC, | |
| Defendant. | Date:  May 22, 2014<br>Time: 2:00 p.m.<br>Place: Courtroom F |

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   DEFENDANT'S CHALLENGES TO TYPICALITY FAIL............................ 3

III.  COMMONALITY IS SATISFIED IN THIS CASE ..................................... 6

      A.  Disclosure Claims ............................................................................ 6

      B.  Unreasonable Procedures Claims...................................................... 7

      C.  Damages ........................................................................................... 8

IV.   PLAINTIFF HAS ESTABLISHED NUMEROSITY ................................... 9

V.    RAMIREZ IS AN ADEQUATE CLASS REPRESENTATIVE ................... 10

VI.   A CALIFORNIA SUBCLASS CAN BE CERTIFIED UNDER RULE 23(b)(2) ......... 11

VII.  THE COMMON ISSUES HERE WILL PREDOMINATE ......................... 12

      A.  Disclosure Claims .......................................................................... 12

      B.  Unreasonable Procedure Claims ..................................................... 15

VIII. THE SUPERIORITY REQUIREMENT IS SATISFIED HERE.................. 18

IX.   CONCLUSION ......................................................................................... 21

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

i

# TABLE OF AUTHORITIES

**CASES**

*Ackerman v. Coca-Cola Co.*,
    2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................................................ 13

*Acosta v. Trans Union, LLC*,
    240 F.R.D. 564 (C.D. Cal. 2007) .................................................................................. 18

*Acosta v. Trans Union, LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007) .................................................................................... 9

*Aho v. AmeriCredit Fin. Servs., Inc.*,
    277 F.R.D. 609 (S.D. Cal. 2011) .................................................................................. 13

*Allapattah Servs. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) .................................................................................... 23

*Alonzo v. Maximus*,
    275 F.R.D. 513 (C.D. Cal. 2011) .................................................................................... 6

*Ashby v. Farmers Ins. Co. of Oregon*,
    592 F. Supp. 2d 1307 (D. Or. 2008) ................................................................ 10, 20, 22

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ........................................................................... 9, 18, 22

*Beaudry v. Telecheck Servs., Inc.*,
    579 F.3d 702 (6th Cir. 2009) ........................................................................................ 15

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
    242 F.3d 290 (5th Cir. 2001) ........................................................................................ 23

*Birmingham v. Experian Info. Solutions, Inc.*,
    633 F.3d 1006 (10th Cir. 2011) .................................................................................... 15

*Blanco v. El Pollo Loco, Inc.*,
    2007 WL 1113997 (C.D. Cal. Apr. 3, 2007) ................................................................ 15

*Boothe v. TRS Credit Data*,
    768 F. Supp. 434 (S.D. NY 1991) ................................................................................ 21

*Bonner v. Home123 Corp.*,
    2006 U.S. Dist. LEXIS 54418, (n.d. Ind. Aug. 4, 2006) .............................................. 16

*Campos v. Choicepoint, Inc.*,
    237 F.R.D. 478 (N.D. Ga. 2006).................................................................................... 7

*Chajekian v. Equifax Info. Servs., LLC*,
    256 F.R.D. 492 (E.D. Pa. 2009) ........................................................................... passim

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

ii

*Cicilline v. Jewel Food Stores, Inc.,*
    542 F. Supp. 2d 831 (N.D. Ill. 2008) ........................................................... 17

*Claffey v. River Oaks Hyundai, Inc.,*
    238 F.R.D. 464 (N.D. Ill. 2006) ................................................................ 12

*Clark v. Experian Info. Solutions, Inc.,*
    2001 WL 1946329 (D.S.C. Mar. 19, 2001) ............................................... 9

*Cortez v. Trans Union, LLC,*
    617 F.3d 688 (3d Cir. 2010)........................................................... passim

*Gardner v. Equifax Info. Servs., LLC,*
    2007 WL 2261688 (D. Minn. Aug. 6, 2007) ............................................. 8

*Gillespie v. Equifax Info. Servs. LLC,*
    2008 WL 4614327 (N.D. Ill. Oct. 15, 2008)........................................ 7, 19

*Gomez v. Kroll Factual Data, Inc.,*
    2014 WL 1456530 (D. Colo. Apr. 14, 2014) ........................................... 18

*Grimes v. Rave Motion Pictures Birmingham, LLC,*
    264 F.R.D. 659 (N.D. Ala. 2010) ............................................................. 9

*Guimond v. Trans Union Credit Info. Co.,*
    45 F.3d 1329 (9th Cir. 1995)..................................................................... 2

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)............................................................... 4, 6

*Harris v. Experian Info. Solutions, Inc., et al.,*
    CA 606-CV-01808-GRA, Dkt. No. 88 ......................................................

*Holman v. Experian Info. Solutions, Inc.,*
    2013 WL 4873496 (N.D. Cal. Sept. 12, 2013) ........................................ 21

*In re Farmers Ins. Co., FCRA Litig.,*
    2006 WL 1042450 (W.D. Okla. Apr. 13, 2006) ...................................... 19

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001)................................................................... 23

*Klotz v. Trans Union, LLC,*
    246 F.R.D. 208 (E.D. Pa. 2007) ............................................................... 8

*Lanovaz v. Twinings N. Am., Inc.,*
    2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ........................................ 13

*Llewellyn v. Allstate Home Loans, Inc.,*
    711 F.3d 1173 (10th Cir. 2013) .............................................................. 15

*McCall v. Drive Fin. Servs.,*
    236 F.R.D. 246 (E.D. Pa. 2006) ............................................................. 12

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

iii

*Medrano v. WCG Holdings, Inc.*,
    2007 WL 4592113 (C.D. Cal. Oct. 15, 2007) ................................................ 24

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) .............................................................. 8, 12

*Morgan v. Gay*,
    471 F.3d 469 (3d Cir. 2006) ........................................................................ 23

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ................................................... 7, 16, 17, 23

*Price v. Trans Union, LLC*,
    737 F. Supp. 2d 281 (E.D. Pa. 2010) ....................................................... 20

*Ries v. Arizona Beverages USA, LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) .............................................................. 13

*Robins v. Spokeo, Inc.*,
    742 F.3d 409 (9th Cir. 2014) .................................................................... 15

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .................................................................... 4

*Soutter v. Equifax Info. Servs, LLC*,
    498 F. App'x 260 (4th Cir. 2012) ............................................................... 5

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) .................................................................. 23

*Stillmock v. Weis Mkts., Inc.*,
    385 Fed. Appx. 267 (4th Cir. 2010) .......................................................... 18

*Summerfield v. Equifax Information Services LLC*,
    264 F.R.D. 133 (D.N.J. 2009) ...................................................... 16, 19, 24

*Visa U.S.A. Inc. v. Wal–Mart Stores, Inc.*,
    536 U.S. 917 (2002) .................................................................................. 23

*Wal-Mart v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................... 6

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) .................................................................... 12

*Wang v. Chinese Daily News, Inc.*,
    2014 WL 1712180 (C.D. Cal. Apr. 15, 2014) ........................................... 13

*Whelan v. Trans Union Credit Reporting Agency*,
    862 F. Supp. 824 (E.D. NY 1994) ............................................................ 21

*White v. E-Loan, Inc.*,
    2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) .......................................... 24

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

iv

*White v. Experian Info. Solutions*,
    No. 05-cv-01070, Dkt. No. 338 (C.D. Cal. Aug. 19, 2008)............................................ 9

*White v. Imperial Adjustment Corp.*,
    2002 WL 1809084 (E.D. La. Aug. 6, 2002) ................................................................ 19

*Williams v. LexisNexis Risk Management, Inc.*,
    2007 WL 2439463 (E.D. Va. Aug. 23, 2007) ......................................................... 7, 16

**STATUTES & REGULATIONS**

15 U.S.C. § 1681a ................................................................................................................... 2

15 U.S.C. § 1681c(g) .............................................................................................................. 8

15 U.S.C. § 1681e(b) ......................................................................................................... 7, 8, 15

15 U.S.C. § 1681g ............................................................................................................... 6, 12

15 U.S.C. § 1681i(a)(6) ......................................................................................................... 14

15 U.S.C. § 1681n(a) ............................................................................................................. 13

Cal. Civ. Code § 1785.10 ................................................................................................... 6, 12

Cal. Civ. Code § 1785.14(b) ........................................................................................ 7, 8, 11, 15

Cal. Civ. Code § 1785.15 ................................................................................................... 6, 15

Cal. Civ. Code § 1786.15 ........................................................................................................ 12

31 C.F.R. § 535.201 ................................................................................................................ 15

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................................... 3, 10

Fed. R. Civ. P. 23(b)(2) ...................................................................................................... 6, 8, 11

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 12, 15, 18, 20

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

v

# I.    INTRODUCTION

In its Opposition to Plaintiff Sergio L. Ramirez's Motion to Certify Class, Defendant Trans Union, LLC (Trans Union) attempts to defeat certification by mischaracterizing Plaintiff's claims and by improperly suggesting that Ramirez was a victim of unique circumstances.  Dkt. No. 120.  As will be discussed in detail below, Trans Union's arguments fail, and this matter should be maintained as a class action.

Trans Union deals in volume.  It sells tens of millions of credit reports and communicates with tens of millions of consumers annually.  It does not reinvent the wheel with respect to each of these transactions.  Rather, it uses a set of uniform procedures and boilerplate communications with consumers.  That is also the case when it comes to its OFAC Advisor alert product, which is the subject of this lawsuit.  Ramirez's experience, as it relates to the claims he has actually brought in this lawsuit, was not unique in any way.

It is undisputed that Trans Union sent to Ramirez and every member of the class a "personal credit report," in a standardized disclosure format which failed to actually disclose all of the information in the class members' files inasmuch as it did not reference OFAC at all.  Trans Union then followed that up with a misleading boilerplate form letter to class members regarding OFAC, which failed to provide the required summary of their consumer rights, including the right to dispute inaccurate or misleading OFAC information.[1]

---

[1]    These two standardized communications form the basis for Plaintiff's claims that Trans Union furnished improper "file" disclosures with respect to OFAC alerts, in violation of the Fair Credit Reporting Act (FCRA) at section 1681g(a)  and (c), and the parallel provisions of California Consumer Credit Reporting Agencies Act (CCRAA) at sections 1785.10 and 1785.15. There is no doubt in this case that Trans Union sent to every class member these standardized form communications.  The question is whether these communication were in compliance with law.  Although the merits of Plaintiff's claims are not yet squarely before this Court, there is also no doubt that Trans Union has a duty to properly and fully disclose to consumers OFAC alerts that exist in its files, as well as their right to dispute inaccurate OFAC alerts.  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010).  Nevertheless, throughout its opposition brief Trans Union continues to largely ignore the only Court of Appeals authority on this subject, *Cortez*, and continues to intimate the same arguments that it lost in *Cortez* – namely that its OFAC alert does not really affect credit determinations, and it is not really in a consumer's Trans Union file because Trans Union obtains OFAC list data through a vendor, Accuity, and that Defendant is not really responsible for the accuracy of its reports because it tries to pass its own

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

1

It is also undisputed that Trans Union uses the same procedure (a "name-only" matching logic) to determine whether to include an OFAC alert on any given consumer's report. The procedure was the same for Ramirez as it was for every member of the class. Because this procedure is so flawed, the OFAC alerts are always inaccurate, and there is no evidence to the contrary. Here, Trans Union prepared inaccurate "consumer reports" for Plaintiff and every member of the class employing its uniform name-only matching procedure for OFAC alerts.[2]

There is nothing unique about these procedures or these communications. They were the same for Plaintiff and every member of the class. Plaintiff's claims here are not dependent upon

---

statutory responsibilities concerning the OFAC data that it sells to Accuity as well as the users of Trans Union's reports, such as Dublin Nissan. All these defense argument failed in *Cortez* and will fail again here once this Court considers the merits of Plaintiff's claims. At the present certification stage, however, and as will be discussed in detail in the reply memorandum, the issue of whether Trans Union made proper and lawful file disclosures to consumers regarding OFAC is the pivotal and common question that applies to every member of the class and that will predominate in this litigation.

[2]     Trans Union assumes erroneously that that Plaintiff's FCRA claim under section 1681e(b), and parallel CCRAA claim under section 1785.14(b), *must* concern *third party* reports *sold* directly by Trans Union, or by one of its resellers, to end users, such as car dealerships. But that is not Plaintiff's claim here. "Consumer reports" need not be third party reports, or sold or disseminated to anyone, and Trans Union itself has already lost this exact argument before the Ninth Circuit. *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333-34 & n.3 (9th Cir. 1995). The FCRA clearly defines "consumer report" to include "*any...communication* of *any information*" by a consumer reporting agency [CRA] bearing on a consumer's credit worthiness…character, general reputation…which is…*expected to be used or collected* in whole or in part for the purpose of *serving as a factor* in establishing a consumer's eligibility for…credit." 15 U.S.C. § 1681(a)(d)(1) (emphasis added). This broad definition says nothing about third party credit reports, as the *Guimond* court pointed out. Here Trans Union admits, as it must, that it is a CRA which *collected* OFAC *information* in its consumer files (as it explicitly tells consumers in its form OFAC letter) and further *expected* such information to be used on credit reports it provided to financial institutions and others about those consumers for the purpose of credit-based decisions about those consumers, and minimally Trans Union communicated that OFAC information in its OFAC letters to every class member. Trans Union thus prepared "consumer reports" for every class member regardless of whether it sold reports for all class members to third party users, and regardless of whether those third party reports were sold via a reseller in one particular format or another. By focusing upon the Dublin Nissan credit report and the resellers that delivered that report to Dublin Nissan, Defendant is trying to mischaracterize Plaintiff's claim.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

2

anything else other than Trans Union's uniform name-only matching procedure and boilerplate personal credit reports and form letter communications regarding OFAC. That is precisely why this case is suitable for class treatment.

Trans Union would like for this Court to believe that Plaintiff's claims are something far more individualized, because that would self-servingly aid Defendant's challenges to certification, but they are not. Plaintiff's claims do not revolve around the actions and understandings of third parties who resell or use Trans Union's reports, any more than they revolve around whether Ramirez was seeking to buy a red car or a blue one.

It is conceivable for consumer-plaintiffs to bring fair credit reporting claims like the ones that Trans Union envisions, which revolve around other procedures or other communications, or which may be more dependent upon a particular type of third party report or upon some unique circumstance or a upon a nuanced actual damages claim, but those are not the claims here.[3] At the end of the day, Plaintiff is the master of his lawsuit, and he has elected to bring certifiable statutory damages claims revolving around a common procedure and two common communications concerning OFAC alerts. As will be discussed more fully below, the actual claims brought here are eminently certifiable.

## II. DEFENDANT'S CHALLENGES TO TYPICALITY FAIL

Despite Defendant's arguments to the contrary, the claims that Plaintiff actually brings here are entirely typical of those of all other class members. In order to satisfy the requirements of Rule 23(a)(3), a typical representative need only have claims that are "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Typicality is present when the claims alleged arise from the same course of events, and each class member makes similar legal arguments in support of liability. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

---

[3] For example, Trans Union's opposition brief suggest that Plaintiff's claims here are somehow focused upon Latin-sounding surnames. Dkt. No. 120 at p. 14. Plaintiff, however, has never made such a claim here. Trans Union says that Plaintiff seeks to pursue a class claim for consumers who disputed an OFAC alert sold via the reseller ODE via DealerTrack software. *Id.* at p. 17. Again, Plaintiff has never made such a claim and does not move to certify the class that Trans Union conjures up for purposes of trying to defeat Plaintiff's certification motion.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

3

Here, Plaintiff's claims are not only co-extensive, but they are in fact identical to those of all other class members. Trans Union prepared a file disclosure which it calls a "personal credit report" regarding each member of the proposed class, including Plaintiff. Dkt. No. 110-20 (D.'s Supp. Rog. Resp. at No. 1, 3); Dkt. No. 110-23 (2/28/2011 File Disclosure to Plaintiff). Trans Union prepared these documents using a standardized, uniform procedure which was the same for Plaintiff and all other class members. Dkt. No. 122-1 at 56:10-22 (Revised Redacted Version of O'Connell Dep.); Dkt. No. 122-2 at 72:13-73:9, 203:5-205:20 (Revised Redacted version of Lytle Dep.). Trans Union admits that each of these documents failed to disclose all of the information in class members' files, because none included the OFAC information Trans Union associated with the consumers to whom the disclosures were sent. Dkt. No. 122-2 at 83:2-9, 85:23-86:11 (Revised Redacted Version of Lytle Dep.); Dkt. No. 110-23 (2/28/2012 File Disclosure to Plaintiff). Plaintiff's claim under FCRA section 1681g(a) and the parallel CCRAA provision is thus identical to that of all other class members.

Plaintiff is likewise a typical representative of the class for the claims under FCRA section 1681g(c), because Trans Union sent the same form letter regarding OFAC information to each member of the class, including Ramirez. Dkt No. 110-24 (OFAC Letter); Dkt. No. 110-20 (D.'s Supp. Rog. Resp. at No. 1, 3). None of the letters included a statement of rights or informed consumers of their right to dispute the inaccurate OFAC information. Dkt. No. 110-24; Dkt. No. 122-2 at 68:14-70:21.

Finally, Ramirez's claim under FCRA section 1681e(b) is based upon the same course of events and will be proved based upon the same legal arguments, rendering him an entirely typical representative. Trans Union admits that it collects OFAC information with respect to each class member and expects such information to be used on credit reports for the purpose of credit-based determinations. Dkt. No. 110-24 (OFAC Letter); Dkt. No. 110-20 (D.'s Supp. Rog. Resp. at No. 1, 3). Further, Trans Union admits that it used the same name-only matching logic to inaccurately associate OFAC information with Plaintiff that it used to mis-associate OFAC information with all other class members, and continues to use this name-only procedure to this day. Dkt. No. 122-1 at 56:14-22, 66:12-67:9 (Revised Redacted Version of O'Connell Dep.); Dkt. No. 122-2 at 72:13-73:9; 146:13-18 (Revised Redacted Version of Lytle Dep.). Trans Union communicated this misleading and inaccurate OFAC information to each class member, including Ramirez.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

4

Dkt. No. 110-24 (OFAC Letter); Dkt. No. 110-20 (D.'s Supp. Rog. Resp. at No. 1, 3).  Defendant thus prepared consumer reports regarding every member of the class, including Plaintiff.  The fact that Defendant *also* separately prepared and sold a report to a third-party end user, and the details of such a transaction, are not essential to the claims here and do not render Plaintiff's claims atypical.

Defendant argues that it has "unique defenses" which render Plaintiff atypical, but such "defenses" relate to claims that Plaintiff does not make.  Dkt. No. 120 at pp. 21-22.  Furthermore, Defendant's assertion that Plaintiff made a "false statement" on the credit application submitted to Dublin Nissan is at best a gross exaggeration which has no effect on the typicality of Plaintiff's claims or his adequacy as a class representative.  Trans Union bases its assertion on a single checked box on a joint credit application, which referred equally to Plaintiff's wife as the primary applicant.  Dkt. No. 110-16 (Credit Application).  None of Plaintiff's claims concern Dublin Nissan's reliance on the existence (or lack thereof) of a prior repossession, and in any event Dublin Nissan's representative testified that she believed that portion of the credit application pertained to Plaintiff's wife as the primary applicant.

Defendant's reference to *Soutter v. Equifax Info. Servs, LLC*, 498 F. App'x 260, 264 (4th Cir. 2012) in an attempt to defeat typicality is unpersuasive.  Dkt. No. 120 at p. 20.  In *Soutter*, the court found the representative plaintiff's claim to be atypical because the defendant CRA used at least four different methods to produce the reports challenged as inaccurate.  498 F. App'x at 265.  In contrast, in this case Defendant used a single method – "name-only" matching logic – for associating OFAC alerts with consumers.

Moreover, *Soutter* did not involve any disclosure claims under FCRA section 1681g, or any state law analogue, and thus has no effect whatsoever upon Plaintiff's disclosure claims here. Nor is there any doubt that the personal credit reports and OFAC letters that Defendant sent to consumers compromising the class were prepared via a single method during the time period relevant to this action.  Dkt. No. 122-2 at 83:2-9, 85:23-86:11 (Revised Redacted Version of Lytle Dep.).

In sum, typicality is satisfied because Plaintiff's and the class's interests are symmetrical and co-extensive – by proving his claims under the FCRA and CCRAA, Ramirez will also prove the class claims.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

5

## III. COMMONALITY IS SATISFIED IN THIS CASE

Next, Trans Union argues that Plaintiff does not satisfy the commonality requirement of Rule 23. Dkt. No. 120 at p. 22. Commonality is satisfied in this case because there is both a "common core of salient facts" and a series of shared legal issues that will result in common answers. *Hanlon*, 150 F.3d at 1019 (citing Fed. R. Civ. P. 23). Commonality is satisfied when claims are based upon a uniform policy or practice by the Defendant. *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2553 (2011); *Alonzo v. Maximus*, 275 F.R.D. 513, 521 (C.D. Cal. 2011).

As described above, Plaintiff's claims and those of the class are based upon Defendant's uniform practices and procedures for preparing consumer reports, and for disclosing the contents of consumers' files. Contrary to Defendant's assertions, no individualized inquiry is necessary to resolve the common legal questions posed by these uniform practices, nor do individual issues exist with respect to damages.

### A. Disclosure Claims

Plaintiff and the class claim that Trans Union violated FCRA section 1681g and CCRAA sections 1785.10 and 1785.15 by failing to provide complete and accurate disclosure of all information in class members' files, including information related to OFAC and a statement of rights, including the right to dispute inaccurate OFAC information. Dkt. No. 120 at 1-2. Defendant admits that it maintained a uniform practice and procedure of sending "personal credit reports" to consumers with no reference to OFAC information, despite the fact that Trans Union's files on these same consumers contained a name considered a potential match to the OFAC SDN list. Dkt. No. 122-2 at 83:2-9, 85:23-86:11 (Revised Redacted Version of Lytle Dep.); *see, e.g.* Dkt. No. 110-23 (2/28/2011 File Disclosure to Plaintiff). Further, it is uncontested that Trans Union's subsequent, separate letters to these same consumers regarding OFAC information did not advise consumers of their FCRA or CCRAA rights, including the right to dispute and correct inaccurate information. Dkt. No. 110-24 (OFAC Letter); Dkt. No. 110-20 (D.'s Supp. Rog. Resp. at No. 1, 3).

The shared legal issue stemming from this common core of facts is whether these form documents, sent to Ramirez and all other class members, constitute a proper file disclosure under the FCRA and CCRAA. No individualized proof if necessary to resolve this common legal issue, because the "effect" of Trans Union's disclosures, including the circumstances of when

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

6

1   and how they were received by consumers, is irrelevant to determining whether the disclosures
2   were complete and accurate.  Courts have routinely affirmed the existence of commonality in
3   FCRA class actions asserting that a CRA failed to provide statutorily-mandated disclosures.
4   *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006); *Gillespie v. Equifax Info.
    Servs. LLC*, 2008  WL 4614327, at *9 (N.D. Ill. Oct. 15, 2008); *Campos v. Choicepoint, Inc.*,
5   237 F.R.D. 478, 490 (N.D. Ga. 2006); *Williams v. LexisNexis Risk Management, Inc.*, 2007 WL
6   2439463, at *4-6 (E.D. Va. Aug. 23, 2007); *Chajekian v. Equifax Info. Servs., LLC*, 256 F.R.D.
7   492, 498 (E.D. Pa. 2009).

8       **B.  Unreasonable Procedures Claims**

9       Plaintiff's claims under FCRA section 1681e(b) and CCRAA section 1785.14(b) likewise
    present common questions suitable for class-wide resolution.  Plaintiff asserts, and Defendant
10  does not contest, that none of the 8,192 class members nationwide is on the OFAC list.  Dkt. No.
11  122-1 at 62:25-63:12 (Revised Redacted Version of O'Connell Dep.).  In fact, Trans Union has
12  been unable to identify a single instance in which its OFAC alert product accurately identified
13  an individual as a terrorist or drug smuggler actually on the OFAC list.  *Id.*  Trans Union cannot
14  manufacture individualized accuracy issues given that there is no evidence whatsoever that its
15  OFAC alerts have ever been accurate.  *See Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d
16  1036, 1042 (9th Cir. 2012) (affirming existence of commonality in class action claim under the
    Telephone Consumer Protection Act because, although the defendant argued that there were
17  individualized issues of consent, defendant "did not show a single instance where express consent
18  was given"). [4]

19      None of the cases Defendant cites support its assertion that accuracy claims brought under
20  the FCRA and CCRAA lack commonality, because none in fact addresses claims under FCRA

21

22  [4]     Defendant's reference to common proof regarding Latin-sounding surnames is likewise
    unavailing.  Not only does this argument mischaracterize Plaintiff's claim, it in fact supports
23  Plaintiff's claim that the use of name-only matching logic is inherently flawed and unreliable,
    and consistently leads to inaccurate results.  Dkt. No. 119-11 (Cronshaw Decl. at ¶ 9(c))("Even
24  where the name is not of Spanish derivation, name screening cannot be calibrated to avoid all
25  unintended matches.").

26

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

7

section 1681e(b) or CCRAA section 1785.14(b). Dkt. No. 120 at p. 22.[5] In reality, courts find no difficulty in determining that class actions under FCRA section 1681e(b) present common questions. *See, e.g.*, *Clark v. Experian Info. Solutions, Inc.*, 2001 WL 1946329, at *2 (D.S.C. Mar. 19, 2001) (holding commonality satisfied and certifying FCRA class action alleging violations of section 1681e(b)); *Acosta v. Trans Union, LLC,* 243 F.R.D. 377, 384 (C.D. Cal. 2007) (finding commonality satisfied in FCRA class action under section 1681e(b)); *White v. Experian Info. Solutions*, No. 05-cv-01070, Dkt. No. 338 (C.D. Cal. Aug. 19, 2008) (commonality satisfied in settlement of class action under FCRA section 1681e(b) and CCRAA section 1785.14(b)).

## C. Damages

Finally, Trans Union argues that Ramirez's election of the statutory damages remedy is an "end-run" around Rule 23(a)(2) because statutory damages allegedly present individualized issues. Dkt. No. 120 at p. 23. This position has been rejected by federal courts across the country, including the Ninth Circuit, which have frequently held that actions seeking only statutory damages are well-suited for class treatment because no individualized showing of harm is required. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, (9th Cir. 2010); *Acosta*, 243 F.R.D. at 385; *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008).[6] Thus, Plaintiff's and the class's claims for statutory damages present no barrier to a finding of commonality.

---

[5] *Gardner v. Equifax Info. Servs., LLC*, 2007 WL 2261688 (D. Minn. Aug. 6, 2007) and *Klotz v. Trans Union, LLC,* 246 F.R.D. 208 (E.D. Pa. 2007) both involved claims under FCRA section 1681i for failure to properly *reinvestigate* information in a consumer file after a consumer disputed, and did not relate to any uniform procedures for assuring maximum possible accuracy. *Grimes v. Rave Motion Pictures Birmingham, LLC,* 264 F.R.D. 659 (N.D. Ala. 2010) involved a claim against a movie theater under 15 U.S.C. § 1681c(g) for failure to properly truncate credit card numbers on receipts.

[6] *See also* section VII.B., n.11-12, *infra*.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

8

# IV. PLAINTIFF HAS ESTABLISHED NUMEROSITY

In an effort to argue that the class is not sufficiently numerous to warrant class treatment, Trans Union attempts to redefine the class by limiting it to what it considers "the most typical population," thereby excluding most of the class that Plaintiff seeks to represent. Dkt. No. 120 at p. 24. The "class" that Trans Union discusses, however, is simply not the one that Plaintiff pleads or moves to certify.

Plaintiff decides what the class definition is, not Defendant. Ramirez has defined the class in this case as all persons in the U.S. "to whom Trans Union sent a letter similar in form to the March 1, 2011 letter Trans Union sent to Plaintiff regarding "OFAC (Office of Foreign Assets Control) Database" from February 9, 2010 through the present." There are 8,192 such persons. They have been identified from Trans Union's records. Ramirez has also defined a California subclass under the CCRAA, seeking damages and injunctive relief for the 1,518 members of the class who live in California. Those consumers also have been identified from Trans Union's records. The class is clearly numerous.

With respect to Plaintiff's *disclosure* claims, Trans Union admits that it sent to all 8,192 class members (as defined by Plaintiff above) a personal credit report with no OFAC disclosure whatsoever, and then a subsequent OFAC letter with no statement of rights, including the right to dispute the inaccurate OFAC alert. Since the claims revolve around whether these boilerplate documents constitute a proper lawful disclosure, the class must consist of the persons to whom Trans Union sent those documents, and not the 28 people who happened to have a Trans Union report resold to a car dealership by ODE, as Trans Union suggests.

The same is true for Plaintiff's *reasonable procedures* claims under the FCRA and CCRAA. All 8,192 class members had a misleading OFAC alert associated with their name because of Trans Union "name-only" matching logic. Plaintiff has never limited the class to Latin-sounding surnames, those seeking car loans, those who disputed, or those for whom Trans Union reports were resold via ODE, or any other subgroup that Trans Union proposes.[7]

---

[7]    Trans Union argues with respect to the reasonable procedures claims that it was as accurate as it could be with its OFAC alerts because the computer system was not sufficiently fine-tuned to allow it to weed out the false positives. But that argument assumes that the

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

9

The California class claims track the national class claims. There are 1,518 members in the California subclass. They seek injunctive relief as authorized by the California statute which, as the Court has already determined, has not been preempted by the FCRA. Dkt. No. 45.

Plaintiff plainly satisfies the numerosity requirement of Rule 23(a).

## V. RAMIREZ IS AN ADEQUATE CLASS REPRESENTATIVE

Trans Union offers no valid reason why Ramirez will not adequately represent the Class, even though it challenges Ramirez's adequacy as a class representative. Defendant cites to no alleged conflict between Plaintiff and the Class (because none exists), and does not assert that Plaintiff is unwilling or unable to vigorously prosecute his claims. Dkt. No. 120 at pp. 24-25. The interests of Plaintiff and the Class are aligned, because as described in section II *supra*, Plaintiff's claims are co-extensive with those of the Class.

Defendant suggests that it has a "unique defense" specific to Plaintiff based upon Plaintiff's application for credit to a third party. Dkt. No. 120 at p. 25. As noted above, however, defenses to claims that Plaintiff *does not bring* cannot form the basis for finding him inadequate or atypical. Furthermore, the purported "false statement" referenced by Trans Union and discussed in section II *supra*, is entirely insufficient to disqualify Plaintiff as class representative and Defendant cites no authority suggesting that it is. *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming adequacy of class representative despite prior convictions for crimes of dishonesty); *Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464, 467 (N.D. Ill. 2006) (class representative's failure to include two creditors on

---

reasonable procedures contemplated by the FCRA include only automated procedures and never require a CRA to actually use a human to determine if the information is accurate. That is a false premise. There is no authority for Trans Union's assumption that it has no obligation to use human eyes to determine if its reports are accurate. Moreover, as discussed in Plaintiff's opening brief, better automated procedures were available, and evidently used by other CRAs which did not identify Ramirez as an SDN in the same car loan transaction, but Trans Union did not bother to use more sophisticated technology, despite the warning that it received in *Cortez*. *See* Dkt. No. 122 at pp. 3-5, 9. Rather, Trans Union decided to simply add the word "potential" in front of the word "match" in describing its OFAC alerts, as if that one qualifying word was a *procedure* to *assure accuracy*. *Id.* Where the information is as important as these OFAC alerts and where Trans Union already knows that it has never accurately matched a person to the OFAC list, a jury could easily find that its procedures were unreasonable and willfully deficient.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

10

unrelated bankruptcy petition did not render her inadequate); *McCall v. Drive Fin. Servs.*, 236 F.R.D. 246, 250-51 (E.D. Pa. 2006) (felony convictions and false testimony insufficient to render class representative inadequate).

Finally, Trans Union's argument that Ramirez is inadequate because his claims are moot must fail. Dkt. No. 120 at p. 25. As set forth in section VI *infra,* Plaintiff's claim for injunctive relief for Defendant's violations of CCRAA section 1785.14(b) is far from moot, because Trans Union continues to use its name-only matching logic to inaccurately mis-associate consumers with the OFAC list. Trans Union's theory that Plaintiff's claims were mooted by its Rule 68 offer of judgment has been soundly rejected by the Court, and forms no obstacle to class certification. Dkt. Nos. 76, 100. Plaintiff is thus an adequate class representative.

## VI. A CALIFORNIA SUBCLASS CAN BE CERTIFIED UNDER RULE 23(b)(2)

Trans Union argues that the California subclass's claims cannot be certified under 23(b)(2) allegedly because the class has also sought monetary damages. Dkt. No. 120 at pp. 25-26. Simply put, that is wrong. The fact that the subclass has also sought monetary damages does not necessarily preclude certification pursuant to Rule 23(b)(2). The Ninth Circuit acknowledged this in *Wang v. Chinese Daily News, Inc.* 737 F.3d 538, 544 (9th Cir. 2013) where it remanded the case with instructions that the district court could certify an injunctive relief if there was a class member who still worked for the defendant newspaper.[8] In *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012), which Trans Union cites, Judge Seeborg certified a Rule 23(b)(2) class for declaratory and injunctive relief, while denying certification of the claims for monetary damages and restitution. Judge Whyte reached the same conclusion in *Lanovaz v. Twinings N. Am., Inc.,* 2014 WL 1652338, at *4-6 (N.D. Cal. Apr. 24, 2014); *see also Aho v. AmeriCredit Fin. Servs., Inc.,* 277 F.R.D. 609, 619 (S.D. Cal. 2011); *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *16-17 (E.D.N.Y. July 18, 2013). Thus even if the Court concludes that it cannot certify the California subclass claims under Rule 23(b)(3), it has the power to certify the claims for injunctive relief under Rule 23(b)(2).

---

[8]     Ultimately class certification under Rule 23(b)(2) was denied because no class member still worked for the defendant. *Wang v. Chinese Daily News, Inc.,* 2014 WL 1712180, at *4 (C.D. Cal. Apr. 15, 2014).

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

11

Trans Union further argues that the California subclass's claims are moot because Trans Union has stopped sending the OFAC letter separately. Dkt. No. 120 at pp. 26-27. That may moot the claims for injunctive relief under the disclosure claims, but it ignores the California subclass's claim that Trans Union is failing to follow reasonable procedures to assure maximum possible accuracy in their reports. *See* Dkt. No. 122 at pp. 9-10 (Plaintiff's Motion to Certify Class, describing Trans Union's procedures). Trans Union's procedures for matching consumers to the OFAC list continue to be woefully deficient. Dkt. No. 122-1 at 56:14-22, 66:12-67:9 (Revised Redacted Version of O'Connell Dep.); Dkt. No. 122-2 at 72:13-73:9; 146:13-18 (Revised Redacted Version of Lytle Dep.). If the California subclass prevails on this claim, the Court should enjoin Trans Union from continuing to use its flawed name-only matching logic procedures when it prepares reports on Californians.

## VII. THE COMMON ISSUES HERE WILL PREDOMINATE

Next, Trans Union argues that Plaintiff cannot satisfy the predominance requirement of Fed. R. Civ. P. 23(b)(3). Dkt. No. 120 at pp. 27-31. Trans Union is again mistaken.

### A. Disclosure Claims

First, with respect to Plaintiff's improper disclosure claims (under FCRA section 1681g and the parallel claim under CCRAA sections 1785.10 and 1786.15), Trans Union argues that the only reason common issues will allegedly not predominate is because of the "effect" those disclosures may have had upon consumers. Dkt. No. 120 at p. 30. Yet "effect" has nothing to do with the claims actually brought.

Trans Union is required to make complete and accurate disclosures to consumers of all information in their files, including OFAC alerts. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010); 15 U.S.C. § 1681g(a). In this case, it is undisputed that Trans Union sent to 8,192 individuals nationwide (of whom 1,518 are California residents) a personal credit report with no reference to OFAC whatsoever, even though Defendant admitted in subsequent letters to these same class members that their "Trans Union credit file" contained a name considered a potential match to the OFAC list. Dkt. No. 110-20 (D.'s Supp. Rog. Responses at No. 3). It is also clear that the subsequent letters did not advise consumers that they have a right to dispute

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

12

inaccurate or misleading OFAC information, and did not reference any consumer rights under the FCRA or CCRAA. *See* Dkt. No. 110-24 (OFAC letter).

The common and predominating issues, therefore, will revolve around these two form documents sent to all class members. Whether these documents constitute a proper disclosure under the FCRA and CCRAA will require the same proofs for every class members. Trans Union suggests that it should not have to provide a "second" statement of rights with the letter and that the "two mailings" together amount to one proper disclosure. Dkt. No. 120 at p. 30. Plaintiff, by contrast, will show that these documents fail to abide by both the letter and spirit of the disclosure requirements of the FCRA and CCRAA, and deliberately ignore guidance from the Third Circuit Court of Appeals in *Cortez*. No matter the ultimate outcome on the merits of these claims, however, there is no doubt that the predominating issues will be exactly the same for every class member.

The "effect" of the personal credit report and subsequent letter upon consumers are simply not elements of the disclosure claims, despite Trans Union's argument to the contrary. Ramirez and the class here claim that Trans Union's violations are *willful*, which requires no showing of effect or of actual damages. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413-414 (9th Cir. 2014) (FCRA plaintiffs may recover statutory damages of $100-$1,000 for willful violation even absent a showing of actual damages); *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702, 705-06 (6th Cir. 2009) (with respect to willfulness claim in FCRA class case, holding that "[b]ecause 'actual damages' represent an alternative form of relief and because the statute permits a [statutory damages] recovery when there are no identifiable or measurable actual damages, this subsection [1681n] implies that a claimant need not suffer (or allege) consequential damages to file a claim.").[9]

---

[9]    *See also Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1179 (10th Cir. 2013) ("'Under [FCRA] § 1681n(a), however, the consumer need not prove actual damages if the violation is willful….'") (quoting *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011)); *Blanco v. El Pollo Loco, Inc.*, 2007 WL 1113997, at *2 (C.D. Cal. Apr. 3, 2007) ("section 1681n contains no such requirement" of actual harm).

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

13

It is also false, however, for Trans Union to suggest that its misleading disclosures concerning OFAC have no effect at all upon consumers. Rather, Trans Union's practices deprived every class member of the exact same valuable information to which they were entitled by law, regarding what information is in their Trans Union files and how they go about disputing inaccurate information. That deprivation is harmful in and of itself, but because it is unlikely to lead to catastrophic damages in and of itself, statutory damages are appropriate here.[10]

Moreover, courts that have examined similar class claims under the FCRA – where the statute required a CRA to provide certain information to consumers – have found not only that common questions exist, but also that they predominate. *See Williams v. LexisNexis Risk Management, Inc.*, 2007 WL 2439463, at *4-6 (E.D. Va. Aug. 23, 2007) (common questions exist and predominate in FCRA case where plaintiff claimed that defendant failed to provide statutorily-required notice under FCRA section 1681k(a)(1)); *Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. 492, 498, 500-01 (E.D. Pa. 2009) (common questions exist and predominate in FCRA case where plaintiff claimed that defendant failed to provide statutorily-required notice under section 1681i(a)(6)); *Summerfield v. Equifax Information Services LLC*, 264 F.R.D. 133, 139, 142 (D.N.J. 2009) (same).[11]

As the Seventh Circuit explained in a similar context where consumers were not provided with a clear and accurate disclosure required under another section of the FCRA:

> Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multi-state classes under state law, and society may gain from the deterrent effect

---

[10]    In this sense, this case is unlike *Cortez*, which was driven by a prolonged period of disputes by the consumer to Trans Union (four in total) and by Trans Union's repeated misrepresentations to Ms. Cortez that there was no OFAC alert on her report or file. *Cortez*, 617 F.3d at 699-700. The section 1681i reinvestigation claim related to those repeated disputes in *Cortez* is not a claim in this lawsuit.

[11]    *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006) (class certification for FCRA statutory damages appropriate in case of form letter that allegedly did not disclose a "firm" offer of credit); *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 838-39 (N.D. Ill. 2008) (FCRA class certified for statutory damages claims arising from uniform practice of disclosing prohibited information).

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

14

of financial awards. The practical alternative to class litigation is punitive damages, not a fusillade of small-stakes claims.

Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment. Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification. When a few class members' injuries prove to be substantial, they may opt out and litigate independently. Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006) (internal citations omitted) (Easterbrook, J.) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury").

Trans Union cites no authority to the contrary, and does not even explain why its "effect" argument will be an issue in this litigation, much less a predominating issue. Plaintiff's improper disclosure claims involve the same two form documents and same straightforward legal issues for all class members. Plaintiff has thus satisfied the predominance requirement of Rule 23(b)(3).

**B.     Unreasonable Procedure Claims**

With respect to Plaintiff's claim that Trans Union prepares reports about class members with inaccurate OFAC alerts on them due to is failure to follow reasonable procedures (in violation of FCRA section 1681e(b) and CCRAA section 1785.14(b)), Trans Union again claims that individual issues will allegedly predominate with respect to "causation and fact of damage" and "real world impact." Dkt. No. 120 at p. 28. For the same reasons discussed above with reference to Plaintiff's improper disclosure claims, Plaintiff seeks statutory damages and thus causation and actual damages will simply not be issues at trial, much less predominating issues.

It is also disingenuous for Trans Union to suggest that there is no "real-world" impact in being misidentified by a CRA such as Trans Union as being someone possibly on the OFAC list. Although most consumers may not be affected in the same way as Sandra Cortez, the plaintiff in *Cortez v. Trans Union, LLC*, *see* n. 10, *supra*, an OFAC alert would be damaging to any innocent consumer's credit reputation and could make any consumer legally ineligible to obtain credit. *See Cortez*, 617 F.3d at 707; 31 C.F.R. § 535.201.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

15

Trans Union makes a related argument that even statutory damages will require individualized inquiries, citing primarily to *Gomez v. Kroll Factual Data, Inc.*, 2014 WL 1456530 (D. Colo. Apr. 14, 2014). Dkt. No. 120 at p. 27. The *Gomez* decision is mistaken in this regard and it, and other cases cited by Trans Union, are not binding upon this Court in any event. Multiple federal courts, including the Ninth Circuit, have held that statutory damages are suitable for FCRA class actions and require no individualized or proportionate showing of harm. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718-19 (9th Cir. 2010) (reversing denial of certification in a FCRA case and finding statutory damages case may be certified); *Acosta v. Trans Union, LLC*, 240 F.R.D. 564, 571 (C.D. Cal. 2007) (noting that any distinction among claims of class members relating to the damages they suffered "is immaterial here where the FCRA awards statutory damages").[12]

---

[12]    *See also Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 273 (4th Cir. 2010) ("Where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3)."); *Gillespie v. Equifax Info. Servs., LLC*,2008 WL 4614327, at *7 (N.D. Ill. Oct. 15, 2008) ("Equifax also argues that individualized proof of willfulness will be required and will predominate over common questions. But willfulness will not turn, as Equifax asserts, on whether class members can show that Equifax deliberately tried to harm them in particular. Rather, it turns on whether Equifax knowingly or recklessly disregarded its statutory obligations under FCRA. *See Safeco*, --- U.S. ---, 127 S.Ct. at 2208-09. That is plainly a common issue in this case, not an individual one, as it concerns a standardized practice that Equifax used. In short, willfulness is perfectly suitable for class-wide proof in this case."); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 142-43 (D.N.J. 2009) ("As such, although willfulness is necessarily a fact-bound inquiry, individual issues will not predominate because the Defendant's conduct was consistent with its own policy and practice from one consumer to the next. … Nothing about Plaintiffs' behavior or conduct impacts the case; it is Defendant's actions that are judged."); *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ("[T]he relevant inquiry in this case is what Equifax's state of mind: what information Equifax disclosed or failed to disclose to customers with respect to its reinvestigation procedures, and whether it knew, or consciously disregarded the fact that those disclosures were misleading. To prove willfulness here, a consumer-by-consumer inquiry is not necessary."); *Harris v. Experian Info. Solutions, Inc., et al.*, CA 606-CV-01808-GRA, Dk No. 88 (D.S.C. May 29, 2008); *Bonner v. Home123 Corp.*, 2006 U.S. Dist. LEXIS 54418, at *18-19 (N.D. Ind. Aug. 4, 2006) ("Each class member . . . need not prove individual actual damages or provide proof of causation to obtain statutory damages [under the FCRA]."); *White v. Imperial Adjustment Corp.*, 2002 WL 1809084, at *15 (E.D. La. Aug. 6, 2002) (finding predominance

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

16

In the only FCRA class case to reach a jury verdict, the United States District Court for the District of Oregon considered the question of what factors a jury would consider in determining the amount of statutory damages. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008). The most important factor in determining the amount of a statutory damages award to class members is the importance and value of the rights and protections conferred on the public by FCRA's notice requirements. *Id*. at 1318. Any individualized harm to each class member is not the focus. The court instructed the jury:

> The law does not provide any fixed standard by which you are to determine the amount of statutory damages within this range. The law does require that the amount of statutory damages you award be reasonable. Thus, you must apply your own considered judgment in determining the amount of statutory damages per Class member to award and, in doing so, you should consider the nature of the consumer interest Congress sought to protect in imposing the FCRA notice requirement as I have already instructed you.

*Ashby*, 01-CV-1446 (D. Or. June 22, 2009) (Dkt. No. 589 at 17-18.) This class instruction comports with nearly all cases to have considered this question. With the additional factor for a class in which consumers may have incurred multiple violations, the addition of that factor would certainly not predominate over the otherwise classwide questions involved.

Finally, Trans Union argues that individual issues of accuracy will predominate in this case, thus making class treatment inappropriate, again citing to the District of Colorado's decision in *Gomez.* Dkt. No. 120 at p. 29. But no such issue will predominate in this case. The evidence of record is that Defendant admits that it cannot identify a single person with an OFAC alert on their Trans Union report who is actually on the OFAC list. Dkt. No. 122-1 at 62:25-63:12 (Revised Redacted Version of O'Connell Dep.).

Moreover, accuracy is a merits issue in FCRA cases, and one that Trans Union has failed to raise as a defense in this action, despite identifying 19 affirmative defenses in it Answer. *See*

---

requirement met where "focal point of these proceedings will undoubtedly be the defendants' course of conduct in" allegedly failing to maintain reasonable procedures to prevent improper dissemination of credit reports in violation of FCRA); *In re Farmers Ins. Co., FCRA Litig*., 2006 WL 1042450, at *8 (W.D. Okla. Apr. 13, 2006) (finding predominance requirement met in action seeking statutory damages for defendants' alleged violation of FCRA).

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

17

Dkt. No. 11;  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 285 (E.D. Pa. 2010) (accuracy may be a defense to FCRA section 1681e(b) claims); *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D. NY 1994) (holding that a showing that challenged credit information is accurate defeats FCRA section 1681e(b) claim); *Boothe v. TRS Credit Data*, 768 F. Supp. 434, 437 (S.D. N.Y. 1991) (same).

It is also important to note that in this case discovery has been bifurcated.  Thus after certification, a single expert or summary witness could review identifying information about the 8,192 class members and provide further evidence that not a single one of them is actually on the OFAC list.  In a similar context, Chief Judge Wilken of this District refused to grant summary judgment to a CRA or to de-certify an FCRA class against that CRA involving more than 35,000 consumers simply because trial would require evidence of whether individual class members had a debt reduced to a judgment or initiated the towing transaction for their cars which led to the creation of a debt before their credit report was sold by a CRA to a debt collector in connection with the attempted collection of that debt.  *Holman v. Experian Info. Solutions, Inc.*, 2013 WL 4873496, at *8 (N.D. Cal. Sept. 12, 2013).  Judge Wilken found that any such individualized inquiry would be "limited and discrete" and would not predominate.  *Id.*  The same can be said here in the event this Court were to determine after the merits discovery phase of this case that an individualized inquiry as to whether class members are on the OFAC list is the type of evidence that is required at trial.

In sum, the common issues here will predominate over any individualized inquiries.  Accordingly, this Court should find that Plaintiff has satisfied the predominance requirement of Fed. R. Civ. P. 23(b)(3).

## VIII.   THE SUPERIORITY REQUIREMENT IS SATISFIED HERE

Finally, Trans Union argues that Plaintiff allegedly does not satisfy the superiority requirement of Fed. R. Civ. P. 23(b)(3.)  Defendant's arguments in this regard also fail.

Trans Union argues that statutory damages are not a superior method of adjudication here allegedly because they cause case "manageability" problems. In support of this argument, Defendant cites only to two non-binding trial court decisions involving claims under the Americans with Disabilities Act brought against fast food restaurants.  Dkt. No. 120 at p. 31

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

18

(citing *Antoninetti v Chipotle Mex. Grill, Inc.* and *Moeller v Taco Bell Corp*.).  These cases are not helpful.  As discussed by Plaintiff under the predominance section, *supra*, many federal courts have found in *FCRA class actions* that statutory damages can be a suitable form of relief and have certified such FCRA cases.  *See* n. 11-12 and accompanying text, *supra*.  Moreover, the only court to have tried an FCRA class case to verdict had no difficulty managing that litigation even though the plaintiffs there sought statutory damages.  *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *see also id.* at 01-CV-1446 (D. Or. June 22, 2009) (Dkt. No. 589 at 17-18) (jury charge on statutory damages).

Importantly, the Ninth Circuit saw no difficulty in permitting an FCRA statutory damages class action to proceed and reversed a trial court decision which refused to certify an FCRA class due to a statutory damages challenges raised by the defendant in that case.  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718-19 (9th Cir. 2010) (reversing denial of certification in an FCRA case and finding statutory damages case may be certified).  Trans Union's arguments are therefore unavailing with respect to FCRA class actions in this Circuit.

Trans Union then says that it is supposedly concerned that statutory damages may not be enough compensation for some class members.  Defendant would like to have its cake and eat it too.  On the one hand, Defendant argues that Plaintiff suffered no harm at all and that consumers are not harmed by its OFAC reporting and disclosure practices.  Dkt. No. 120 at pp. 1, 33.  On the other, it says that it is concerned that many class members may get too small a recovery to compensate for significant harm in a class action lawsuit, but nonetheless proffers no evidence of such widespread harm.  *Id.* at 31.  Trans Union's position is extreme in both regards.

Statutory damages are a congressionally created and often used form of relief, and many courts have deemed such relief to be appropriate in FCRA class actions.  *See* n. 11-12, *supra*.  Even if some class members have more significant damages, a class action is still superior where, as here, the core liability issues are common.[13]  And, of course, class members with significant

---

[13]  Numerous courts have recognized that the presence of individualized damages issues do not prevent a finding that the common issues in the case predominate and do not by themselves defeat certification of a class.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011); *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

19

damages can always opt out of an FCRA statutory damages class action.  *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Refusing to certify a [an FCRA] class because the plaintiff decides not to make the sort of person-specific [damages] arguments that render class treatment infeasible would throw away the benefits of consolidated treatment.  Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification").  Given the claims and record here, Plaintiff has shown that consolidated treatment is the superior method of adjudicating this case, and Defendant's purported concerns about class members getting too little compensation rings hollow.

Trans Union also argues that since the FCRA allows for a recovery of attorney's fees a class action cannot be a superior method of adjudication.  Dkt. No. 120 at p. 32.  This argument is also extreme, as many courts have found class actions to be appropriate under the FCRA and many other fee-shifting statutes despite the fact that individuals could bring their own claims and recover their attorney's fees after they succeed.[14]  It simply cannot be that class actions are not proper where fee-shifting statutes are involved, as Trans Union suggests.  Neither Rule 23 nor Ninth Circuit precedent even suggests such a thing.

To the contrary, in certifying FCRA class actions, several federal courts have rejected the exact argument that Trans Union makes here.  *See Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009) ("The presence of a fee shifting provision in the FCRA does not per se defeat class certification.  Although the availability of attorney's fees to litigants is

---

124, 139 (2d Cir. 2001), *cert. denied sub nom.  Visa U.S.A. Inc. v. Wal–Mart Stores, Inc.*, 536 U.S. 917 (2002); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001); *see also See Morgan v. Gay,* 471 F.3d 469, 476 n.7 (3d Cir. 2006) (availability of opting out by unnamed class members assuages any concerns that damage limitation harms other class members).

[14]     In support of this argument, Trans Union again cites to an American with Disabilities Act decision and to two decisions involving hyper-technical claims against merchants which were accused of printing too many credit card numbers on receipts allegedly in violation of the Fair and Accurate Credit Transactions Act, lawsuits that were so out of favor in California and elsewhere that Congress changed the law with retrospective effect.    Dkt. No. 120 at pp. 31-32.

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

20

indicative that a class action is by no means the only feasible route for litigants, it remains the superior mechanism here . . . .").[15]

Finally, without any citation to authority whatsoever, Trans Union argues that Plaintiff cannot satisfy the superiority requirement of Rule 23(b)(3) allegedly because other consumers have not joined this lawsuit. Dkt. No. 120 at pp. 32-33. There is absolutely no reason to deny certification on that basis. As a practical matter, many class actions have a single representative, and Rule 23 requires only a single representative. This is such a case, and one that meets all of the requirements for certification under Rule 23.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion for an order certifying this action as a class action on behalf of the proposed national class and California subclass defined herein, certifying Plaintiff Sergio L. Ramirez as a proper representative of the classes, and appointing the law firms of Francis & Mailman, P.C. and Anderson, Ogilvie & Brewer LLP as Class Counsel.

Respectfully Submitted,

Dated:  May 9, 2014          **FRANCIS & MAILMAN, P.C.**

By  /s/      *John Soumilas*
James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Land Title Bldg, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000

---

[15]    *See also Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113, at *6 (C.D. Cal. Oct. 15, 2007) ("The Court is not convinced that the fact that an individual plaintiff can recover attorneys fees … will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action."); *White v. E-Loan, Inc.*, 2006 WL 2411420, at *9 (N.D. Cal. Aug. 18, 2006) (certifying FCRA class action and rejecting claim that availability of attorney's fees defeats superiority); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 143 (D.N.J. 2009)  (FCRA "class actions have not been foreclosed merely by the presence of a fee shifting provision").

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

21

jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com

Andrew J. Ogilvie
Carol M. Brewer
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street, Suite 914
San Francisco, California 94104
Telephone: (415) 651-1950
andy@aoblawyers.com
carol@aoblawyers.com

*Attorneys for Plaintiff Sergio Ramirez*

*Ramirez v. Trans Union, LLC*, N.D.Cal., Case no. 12-cv-00632-JSC
Plaintiff's Reply in Further Support of Motion to Certify Class

22