UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANS UNION, LLC,<br><br>    Defendant. | Case No. 12-cv-00632-JSC<br><br>**ORDER ON DEFENDANT'S MOTION TO SEAL OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY**<br><br>Re: Dkt. No. 119 |

In this putative class action, Plaintiff Sergio Ramirez alleges that he was denied an auto loan after Defendant Trans Union, LLC mistakenly informed a car dealership that Plaintiff was on the federal government's Office of Foreign Assets Control ("OFAC") list. Plaintiff contends that Defendant violated the Federal Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agencies Act ("CCRAA") by failing to ensure "maximum possible accuracy" of its credit reports, and failing to provide consumers with proper disclosures. (Dkt. No. 1 ¶ 1.) Now pending before the Court is Defendant's Motion to File under seal portions of its Opposition to Plaintiff's Motion to Certify Class, and portions of declarations and deposition testimony it submits in support of its Opposition. For the reasons explained below, Defendant's Motion is GRANTED in part and DENIED in part.

**LEGAL STANDARD**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597 n.7 (1978)*; see also Foltz v. State Farm Mutual Auto Ins. Co.*, 331 F.3d 1124, 1134 (9th Cir. 2003) ("In this circuit, we start with a strong presumption in favor of access to court records."). The right is justified by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies." *Nixon*, 435 U.S. at 598. The right, however, "is not absolute and

can be overridden given sufficiently compelling reasons for doing so." *Foltz*, 331 F.3d at 1135; *see, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). "A narrow range of documents is not subject to the right of public access at all because the records have traditionally been kept secret for important policy reasons." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citations omitted); *see, e.g., Times Mirror Co.*, 873 F.2d at 1219 (grand jury transcripts and warrant materials in the midst of a pre-indictment investigation not subject to right of public access).

The right of public access to judicial records "applies fully to dispositive pleadings, including motions for summary judgment and related attachments." *Kamakana*, 447 F.3d at 1179. The Ninth Circuit "adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Id.* (internal citations and quotation marks omitted). Thus, "[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Id.* at 1178-79. The reasons must "outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1179 (internal quotation marks and citations omitted). Such compelling reasons include "the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (internal quotation marks and citation omitted). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* A parties' request for sealing must be "narrowly tailored" and establish that the "document, or portions thereof, are privileged, protectable as trade secret or otherwise entitled to protection under the law." L.R. 79-5(b).

The Court must "conscientiously balance[ ] the competing interests" of the public and those of the party seeking to keep certain judicial records secret. *Foltz*, 331 F.3d at 1135. In considering these interests, the court must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (internal citations omitted).

1  In contrast to the "compelling reasons" required to overcome the presumption of public access to dispositive pleadings, the Ninth Circuit imposes a lower "good cause" standard for keeping judicial records attached to non-dispositive motions. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (internal quotation marks omitted). Because non-dispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," there is a "weaker public interest" in accessing these materials. *Id.*

"The Ninth Circuit has not ruled as to whether a motion for class certification is a dispositive motion for the purposes of determining whether the 'compelling reasons' standard applies." *Labrador v. Seattle Mortgage Co.*, 08-2270 SC, 2010 WL 3448523, at *2 (N.D. Cal. Sept. 1, 2010). Although courts in the Northern District "have generally considered motions for class certification nondispositive," *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 09-CV-01967 CW NC, 2013 WL 3014138, at *3 (N.D. Cal. June 17, 2013), some have recognized that "there may be circumstances in which a motion for class certification is case dispositive," *In re High-Tech Emp. Antitrust Litig.*, 11-CV-02509-LHK, 2013 WL 163779, at *2 n.1 (N.D. Cal. Jan. 15, 2013). For example, "a motion for class certification might be dispositive if 'a denial of class status means that the stakes are too low for the named plaintiffs to continue the matter.'" *Id.* (quoting *Prado v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000)); *see also Dugan v. Lloyds TSB Bank*, PLC, 12-CV-02549-WHA NJV, 2013 WL 1435223 (N.D. Cal. Apr. 9, 2013) (recognizing that courts in the Ninth Circuit generally treat class certification motions as non-dispositive unless the motion's denial "would constitute the death knell of a case.").

**DISCUSSION**

Defendant seeks to seal portions of ten deposition transcripts and five declarations, and the exhibits thereto, submitted in support of its opposition to Plaintiff's motion to certify. In its earlier ruling on Plaintiff's motion to seal (Dkt. No. 121), the Court sealed "discussions about consumer disputes and related policies and procedures and the search logic and functioning of the OFAC product." (*id.* at 5), but declined to seal discussions that merely stated that TransUnion continued to use Accuity's OFAC product post-*Cortez* or that its OFAC matching is based on name only. (*Id.* at 5-6.) Upon consideration of the present motion, the Court will seal two additional

categories of information: discussion of internal decision-making or strategy at TransUnion or Accuity, and Plaintiff's private financial and personal information. The Court applies these general principles to each deposition and exhibit in Defendant's motion in turn.

**I.    Deposition Testimony**

**(1)    Robert Lytle (Dkt. No. 119-19)**

Defendant seeks to seal approximately 20 pages of the deposition of TransUnion employee Robert Lytle (Dkt. No. 119-19), as well as Exhibits 3 and 9 to the deposition. Of this excerpt of Lytle's deposition now proffered, the Court has already considered and declined to seal pages 70 and 299 (Dkt. 121 at 8) and sealed pages 221, 223-224 (*id.* at 10.) The Court addresses the remaining pages.

On page 97, Lytle testified that TransUnion sells a product with the term "OFAC" in its name, a TransUnion product called OFAC Name Screen is an add-on to a credit report that presents that data that is a possible match in the OFAC database, and creditors can purchase a credit report from TransUnion with or without OFAC add-on. Besides having been made public in *Cortez v. TransUnion*, 617 F.3d 688 (3rd Cir. 2010), none of this testimony concerns confidential information.

In the portion including pages 131 through 134, the Court seals only page 132:10-18 and 134:4-22, in which Lytle discusses TransUnion's rationale for obtaining OFAC information from Accuity and how it processes that data. For the same reasons, pages 169 and 171 will be sealed.

Lytle's testimony on page 137:15 through 138:2 describes the interaction between TransUnion and Accuity and will therefore be sealed. The remainder of these pages describes the process in very general "layman's terms" and provides no confidential information.

Pages 256 through 258 need not be sealed. Most of the testimony concerns Exhibit 9 to the deposition, a "Release Announcement" from November 2010, Bates numbered TU 0000494-95. Although the document is marked "TransUnion Confidential — For Internal Use Only," the Court finds no reason to seal it. The document announces that the term "potential" would be added when reporting an OFAC match, but provides no explanation for the change. Unlike Exhibit A to Colleen Gill's Declaration, titled Technical General Announcement #92 (Dkt. No.

4

119-16), which the Court addresses below, Lytle Exhibit 9 contains no proprietary technical information.

On page 287, Lytle states that his only knowledge about *Cortez* is that it led to TransUnion's OFAC project, which was its response to the *Cortez* ruling. No specifics about the project are offered, and the fact that TransUnion responded to *Cortez* is not confidential.

Lytle is asked about Exhibit 3, which appears to be a credit report for Plaintiff from TransUnion. (Dkt. No. 119-19 at 29-30.) The Exhibit itself will be sealed because it contains sensitive financial and personal information about Plaintiff, but Lytle's testimony on pages 294 through 297 about the format of the report reveals nothing confidential.

In sum, the Court seals Lytle deposition pages 132:10-18, 134:4-22, 137:15-138:2, 169, 171, 221, and 223-224, and Exhibit 3.

**(2)  Dublin Nissan (Annette Coito) (Dkt. 119-21)**

Defendant seeks to seal approximately 18 pages of the deposition of Dublin Nissan representative Annette Coito, as well as Exhibits 4, 5, and 7 to the deposition. (Dkt. No. 119-21 at 24-57.) The Court seals Exhibit 4 (Dublin Nissan's contract with DealerTrack) and Exhibit 5 (Dublin Nissan's contract with ADP to obtain credit reports) because they contain confidential and proprietary information, as well as pages 73:17 through 74:1 of the deposition transcript because counsel reads from Exhibit 5. Exhibit 7, which is Plaintiff's credit report, will also be sealed. The Court finds no reason to seal the remaining portions of Coito's testimony.

**(3)  Michael O'Connell (Dkt. No. 119-23)**

The Court already addressed portions of O'Connell's deposition testimony in connection with Plaintiff's motion to seal portions of its motion to certify. Of the testimony Defendant now proffers, the Court has already sealed pages 43:7-46, 122:10-13, 134, and 135. (Dkt. No. 121 at 8.) The Court already considered and declined to seal 66, 67, 122:1-9, 14-25, and 160-61. The Court addresses the remaining pages in this excerpt.

O'Connell states that TransUnion decided to obtain OFAC data from a third-party like Accuity rather than directly from the Treasury because Accuity could provide consistency in the data formatting. (O'Connell Dep. at 37-38, 40-41.) O'Connell does not describe the particular

5

way in which the data is formatted, nor reveal any other information that the Court would consider confidential. O'Connell did not recall the language of *Cortez* nor its significance to TransUnion's matching procedures, (*id.* at 47, 49:1-7), nor did he know the technical details of how TransUnion's computers and Accuity's software interact to with the computers of TransUnion's customers to deliver reports (*id.* at 76-77). O'Connell was generally aware that TransUnion keeps track of which consumers were marked as OFAC hits, but did not know of any changes to such tracking. (*Id.* at 156.) O'Connell acknowledges having seen one page of a slide presentation shown to him, but did not know who prepared it or recall being at the presentation. (*Id.* at 157.) These facts need not be kept confidential.

On the other hand, the Court will seal pages 49:8-50, 82:8-9, 121:14-122:3, 189-93, 195-96, and 213 because in these portions O'Connell testifies about TransUnion's internal strategy and decision-making, as well as the search logic and functioning of TransUnion's and Accuity's products. Exhibit 5 (an email exchange Bates numbered TU0009229) and Exhibit 10 (an email chain Bates numbered TU0009283) will be sealed for the same reasons. (Dkt. No. 119-23 at 40-44.)

In sum, the Court seals O'Connell deposition pages 43:7-46, 49:8-50, 82:8-9, 121:14-122:3,122:10-13, 134, 135, 189-93, 195-96, and 213 and Exhibits 5 and 10.

**(4)  Sergio Ramirez (Dkt. No. 119-25)**

The Court finds no reason to seal any portion of Plaintiff's testimony, but several of the exhibits to his deposition contain sensitive information. The Court will seal Exhibit 3, Plaintiff's credit application, in its entirety. Exhibit 6 consists of Plaintiff's credit report with a cover letter from TransUnion, Bates numbered TU0000004-12. Plaintiff's address should be redacted from page TY0000004, and pages TY0000005-08 will be sealed because they provide confidential personal financial information. Pages TY0000009-12 are generic and need not be sealed.

Neither Exhibit 5, which appears to be the same call log as Briddell Exhibit 3, nor Exhibit 9, a letter from Plaintiff to TransUnion requesting removal from OFAC list, requires sealing. Plaintiff's address should be redacted from Exhibits 7 and 8, but they contain no other sensitive information.

6

**(5)    Accuity (Brent Newman) (Dkt. No. 119-27)**

Of the pages submitted, the Court already sealed 60, and declined to seal 100 and 101. (Dkt. No. 121 at 11.) Page 75 will not be sealed because Newman describes only the OFAC search results Dublin Nissan received for Plaintiff, and how, in general, a user could narrow search results by looking at birthdates in the hits. This information is not confidential. The Court will, however, seal pages 99:13-100:2 because in this testimony Newman discusses Accuity internal strategy and search logic.

**(6)    Bharat Acharya (Dkt. No. 119-29)**

In the single page of Acharya's deposition submitted, he testified that he implemented the programming change to add "potential" to report. The process took about a day and was finished in October 2010. None of this information is confidential.

**(7)    Colleen Gill (Dkt. No. 119-31):**

Gill, a former TransUnion employee, does not provide any confidential information in the two pages of testimony submitted. Gill stated only that she reviewed a document in which there was a request to change the wording of the OFAC message on all OFAC products.

**(8)    Sean Walker (Dkt. No. 119-33)**

Walker, a TransUnion employee, testified that TransUnion had sent letters to consumers who were potential OFAC matches, then in July 2011, began disclosing OFAC information in individual consumers' files. (Walker Dep. at 52-53.) This testimony does not warrant sealing. On pages 135 through 140, Walker discusses how the report he is shown differs from a typical TransUnion report, and does not disclose any confidential information from the report. The Court will, however, seal pages 67:16 through 68:12 because this testimony reflects internal decision-making at TransUnion about changing OFAC disclosures via letters to reports.

**(9)    Liseth Villegas (Dkt. No. 119-35)**

The testimony of Villegas, Plaintiff's wife, does not cover any confidential information and will not be sealed.

**(10)   Steven Katz (Dkt. No. 119-37)**

In the one page of Katz's deposition submitted, he states only that he helped draft the letter

7

1   to disclose OFAC information to consumers.  The letter was used until approximately July 2011,

2   when TransUnion began providing the OFAC information directly on the consumer's report.  As

3   discussed in the context of the Lytle and Walker depositions, this information does not warrant

4   sealing.  (Dkt. No. 121 at 8.)

## II.     Declarations

### (1)     Denise Briddell (Dkt. No. 119-6)

Briddell attests to the frequency of consumer disputes about the OFAC product.  Aside from the actual number of disputes in ¶ 3, which can be redacted, nothing else in the declaration is sensitive and need not be sealed.  Exhibit A provides specific data about dispute activity and should therefore be sealed.  Exhibit B does not reveal any confidential information: it simply notes that Plaintiff called, asked to speak to a supervisor due to an OFAC alert, was told that he would get a report, and the details of one of the hits listed, unsealed, on page 6 of Plaintiff's motion to certify.  In sum, the Court will seal only the numbers that appear in parentheses in paragraph 3 and Exhibit A (Dkt. No. 119-7) in its entirety.

### (2)     Michael O'Connell (Dkt. No. 119-10)

O'Connell attests to his familiarity with TransUnion's OFAC product, NameScreen (Dkt. No. 119-10 ¶¶ 1-3); the Treasury Department's instructions to businesses who discover a potential OFAC match (*id*. ¶ 4); and Accuity as the source of TransUnion's OFAC data (*id.* at ¶ 6).  None of this information warrants sealing, but the Court will seal O'Connell's discussion of the search logic and functioning in paragraph 6.  Accordingly, except for the first sentence, the text of paragraph 6 will be sealed.

### (3)     Colleen Gill (Dkt. No. 119-15)

Gill attests that she was responsible for implementing the addition of the word "potential" to the results displayed for OFAC Name Screen matches.  The Court finds nothing in Gill's Declaration that must be sealed.  According to Gill, Exhibit A, titled Technical General Announcement #92, Bates numbered TU0000491-93, is the announcement TransUnion provided to all of its customers to inform them that the output would state "potential match" or match. Because this document appears to contain proprietary technical information, it will be sealed.

1  (Dkt. No. 119-16.)

2  **(4)   Lynn Romanowski (Dkt. No. 119-38)**

3  TransUnion employee Romanowski reviewed the credit report Dublin Nissan obtained
about Plaintiff and discusses differences between the report and the TransUnion's standard credit
report form, Form 2000.  The non-bolded information in paragraph 6, sections (d), (k), and (l) of
Romanowski's Declaration shall be sealed.  The first contains credit scores and the second two list
residential addresses.  In addition, Exhibits A and B, which are two different credit reports for
Plaintiff, will be sealed.  (Dkt. Nos. 119-39, 119-40). The Court finds no other information in this
declaration that must be kept confidential.

**(5)   Peter Turek (Dkt. No. 119-41)**

The Court will seal Exhibit A, titled "OFAC Advisor Amendment to Reseller Service
Agreement" (Dkt. No. 119-42 at 2), which is an agreement between TransUnion and Open Dealer
Exchange ("ODE"), but nothing in the Declaration itself.  Exhibit B is the affidavit of Piyush
Bhatia, the Director of Information Security and Risk Management for Dealertrack, Inc.  Although
the Bhatia affidavit does not require sealing, the Court will seal the two credit reports attached as
exhibits to the affidavit.   (Dkt. No. 119-43 at 5-11.)

**(6)   Francine Cronshaw (Dkt. No. 119-12)**

In this declaration, Cronshaw, an expert retained by TransUnion, provides her opinions on
TransUnion's screening of Spanish-derived names.  The Court will seal the following excerpts in
which Cronshaw discusses TransUnion's search logic: 5:22-25, 6:5-11, 8:8-10, 13:22-24, 17:12-
20, 19:10-14.  No other parts of the declaration warrant sealing.

**III.   Opposition to Motion to Certify**

In accordance with the Court's rulings with respect to these deposition transcripts,
declarations, and exhibits, the following portions of Defendant's Opposition (Dkt. No. 120) shall
be redacted:  7:14-20, 26-28; 8:15-20; 9:25-10:2 (starting with "Moreover"); 18:21-22; and
footnote 15.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to seal is GRANTED in part and DENIED

in part.

**IT IS SO ORDERED.**

Dated: May 15, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge