1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SERGIO L. RAMIREZ,

           Plaintiff,

    v.

TRANS UNION, LLC,

           Defendant.

Case No.  12-cv-00632-JSC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO CERTIFY CLASS**

Re: Dkt. No. 122

      This lawsuit arises out of Defendant Trans Union, LLC's identification of Plaintiff Sergio L. Ramirez as potentially matching the name of a person on the United States government's list of terrorists, drug traffickers, and others with whom persons in the United States are prohibited from doing business.  Plaintiff contends that Defendant, a credit reporting agency, violated federal and California fair credit reporting laws by failing to provide proper disclosures and to ensure "maximum possible accuracy" of its credit reports.  Plaintiff seeks to recover statutory and punitive damages on behalf of himself and a putative nationwide class under federal law, and statutory punitive damages and injunctive relief under California law for a California sub-class.  Now pending before the Court is Plaintiff's motion for class certification.  (Dkt. No. 122.)  Upon consideration of the parties' submissions and the arguments of counsel at the hearing held on May 29, 2014, as well as the parties' post-hearing written submissions, Plaintiff's class certification motion is GRANTED as to the federal claims and denied as to the state claims seeking punitive

damages.

## FACTUAL BACKGROUND

**I.     The OFAC List**

The United States Treasury Department's Office of Foreign Assets Control ("OFAC") "administers and enforces economic trade sanctions based on U.S. foreign policy and national security goals against threats to national security, foreign policy or economy of the United States." *Cortez v. Trans Union LLC,* 617 F.3d 688, 696 (3d Cir. 2010).  OFAC directs those sanctions at, among others, "individuals thought to be terrorists, international narcotics traffickers, as well as persons involved in activities related to the proliferation of 'weapons of mass destruction.'" *Id.* (citation omitted).   To this end, OFAC publishes a list of individuals, such as terrorists and narcotics traffickers, who persons in the United States are generally prohibited from doing business with, including the extension of credit ("the OFAC List").  *Id.* at 696, 702 (citations omitted).  A failure to comply with the OFAC restrictions, that is, doing business with a person on the OFAC List, "may result in civil as well as criminal penalties."  *Id.* at 702; *see also* 31 C.F.R. § 501 App. A, II (Types of Responses to Apparent Violations).  To determine the appropriate response to an apparent violation, OFAC considers a number of factors.  *See* 31 C.F.R. § 501 App. A, III (General Factors Affecting Administrative Action).  Among these is "the existence, nature and adequacy of a [company's] risk-based OFAC compliance program at the time of the apparent violation."  *Id.*, III (F).

**II.     Trans Union's OFAC Product**

Trans Union is a consumer credit reporting agency that sells consumer credit reports to financial institutions, debt collectors, insurers, and others.  To accommodate its customers' need to avoid doing business with persons on the OFAC List, Trans Union offers a product variously known as an "OFAC Advisor," "OFAC Alert," or "OFAC Name Screen" as an add-on to traditional credit reports.  Trans Union does not maintain the OFAC List data itself; instead, it contracts with a third party to provide the data.  It then uses only the consumer's first and last name to search the OFAC List data, even if Trans Union possesses additional identifying

1    information, such as birth date or address.

2         When the computerized search logic returns a name match, Trans Union automatically

3    places an OFAC Alert on the consumer report provided to the customer without any further

4    investigation or confirmation.  Trans Union advises its customers, however, that it "shall not deny

5    or otherwise take any adverse action against any consumer based solely on Trans Union's OFAC

6    Advisor service."  (Dkt. No. 119-42 (internal quotation marks omitted).)  Indeed, Trans Union's

7    OFAC terms of service provides:

8                  Client further certifies that in the event that a consumer's name
                  matches a name contained in the information, it will contact the
9                  appropriate government agency for confirmation and instructions.
                  Client understands that a "match" may or may not apply to the
10                 consumer whose eligibility is being considered by Client, and that in
                  the event of a match, Client should not take any immediate adverse
11                 action in whole or in part until Client has made such further
                  investigations as may be necessary (i.e., required by law) or
12                 appropriate (including consulting with its legal or other advisors
                  regarding Client's legal obligations).
13
      (Dkt. No. 119-21 at 42.)
14
      **III.    Plaintiff's Trans Union OFAC Alert**
15
           Plaintiff Ramirez and his wife visited a Nissan dealership on February 27, 2011 to
16
      purchase on car on credit.  They completed a credit application with each's name, address, social
17
      security number, and date of birth, among other identifying information.  The dealer used the
18
      information to obtain a Trans Union consumer credit report for Plaintiff and his wife through a
19
      third-party vendor, Dealertrack.  The report provided to the dealer included on the first page right
20
      underneath Plaintiff's identifying information the following:
21
      SPECIAL MESSAGES
22
      ***OFAC ADVISOR ALERT – INPUT NAME MATCHES NAME ON THE OFAC
23
      DATABASE:
24
           UST 03 RAMIREZ AGUIRRE, SERGIO HUMBERTO C/O ADMINISTRADORA DE
25
           INMUEBLES VIDA, S.A. DE C.V.  TIJUANA, MEXICO AFF: SDNTK DOB: 11/22/1951
26
           Original Source:***
27
      ***OFAC ADVISOR ALERT – INPUT NAME MATCHES NAME ON THE OFAC
28

                                              3

DATABASE:

OFAC Original ID: 7176***

***OFAC ADVISOR ALERT – INPUT NAME MATCHES NAME ON THE OFAC

DATABASE:

UST 03 RAMIREZ AGUIRRE, SERGIO HUMBERTO C/O DISTRIBUIDORA IMPERIAL

DE BAJA CALIFORNIA, S. A. DE C.V. TIJUANA, MEXICO AFF: SDNTK DOB:

11/22/1951  Origina:***

***OFAC ADVISOR ALERT - INPUT NAME MATCHES NAME ON THE OFAC

DATABASE:

lSource: OFAC OriginaliD: 7176 P ID: 13561***

***OFAC ADVISOR ALERT - INPUT NAME MATCHES NAME ON THE OFAC

DATABASE:

UST 03 RAMIREZ AGUIRRE, SERGIO HUMBERTO C/0 FARMACIA VIDA SUPREMA,

S.A. DE C.V. TIJUANA, MEXICO AFF: SDNTK DOE: 11/22/1951  OriginalSource: OFAC

Origin***

***OFAC ADVISOR ALERT - INPUT NAME MATCHES NAME ON THE OFAC

DATABASE:

aliD: 7176 P ID: 13561***

***OFAC ADVISOR ALERT - INPUT NAME MATCHES NAME ON THE OFAC

DATABASE:

UST 03 RAMIREZ RIVERA, SERGIO ALBERTO CEDULA NO: 16694220 (COLOMBIA)

FOB: CALI, COLOMBIA CALI, COLOMBIA Passport no- AF771317 AFF: SDNT DOB:

01/14/196***

***OFAC ADVISOR ALERT - INPUT NAME MATCHES NAME ON THE OFAC DA~~ASE:

4 OriginalSource: OFAC OriginaliD: 10438 POB: CALI, COLOMBIA Passportissuedcountry:

COLOMBIA CEDULA NO: 16694220 (COLOMBIA)***

(Dkt. No. 110-10.)  Plaintiff, who has a different birth date than the two individuals identified as a

4

"match," is not on the OFAC List.  Nonetheless, because of the Alert, the dealership recommended that Plaintiff and his wife purchase the car in her name alone since she qualified for the loan without her husband. They did so.

Plaintiff telephoned Trans Union the next day about the OFAC Alert.  The Trans Union  employee who spoke to Plaintiff told him that he did not have an OFAC Alert on his credit report.[1]  At Plaintiff's request, Defendant mailed Plaintiff a copy of his consumer file (credit report), dated  February 28, 2011.  The file did not include any OFAC information.  A few days later, however, Plaintiff received a letter from Defendant, dated March 1, 2011.  The letter stated:

> Our records show that you recently requested a disclosure of your TransUnion credit report.  That report has been mailed to you separately.  As a courtesy to you, we also want to make you aware that the name that appears on your TransUnion credit file "SERGIO L. RAMERIZ" is considered a potential match to information listed on the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") Database.

(Dkt. No. 110-24.)  The letter went on to explain the OFAC List and to provide the same OFAC Alert information that was included in the report provided to the Nissan dealer.  (*Id.*)  The letter ended: "If you have any additional questions or concerns, you can contact TransUnion at 1-855-525-5176 or via regular mail at: [an address]."  (*Id.*)

IV.    **Procedural History**

Plaintiff subsequently filed this putative class action, bringing three causes of action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and three under its state counterpart, the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1 *et seq*.  Plaintiff alleges Defendant: (1) failed to disclose all of the information in each class member's file upon request, in violation of FCRA Section 1681g(a) and CCRAA Section 1785.10 (Dkt. No. 1 ¶¶ 90-96); (2) failed to provide class members with the required summary of their consumer rights, including their right to dispute inaccurate OFAC information in their files, in violation of FCRA Section 1681g(c) and CCRAA Section 1785.15(f) (*id.* ¶¶ 97-103); and (3)

---

[1] The deposition transcript portion cited by Plaintiff in support of this fact is not included in the record.  *See* Dkt. No. 122 at 13:20 (citing Plaintiff's Dep. at 36:22-37:6.)  This fact is not disputed, however, and, in any event, is not material to the Court's class certification ruling.

United States District Court
Northern District of California

failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning each class member when preparing his or her consumer report under FCRA section 1681e(b) and 1785.14(b) (*id.* ¶¶ 104-110).  Plaintiff also alleges that Defendant's violations were willful within the meaning of 15 U.S.C. §1681n and Cal Civ. Code §1785.31.  Plaintiff seeks statutory and punitive damages for the FCRA claims on behalf of himself and the FRCA class, and punitive damages and injunctive relief on behalf of himself and a California subclass.

This lawsuit is one of several filed against Trans Union arising from its OFAC Alert product.  In *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3rd Cir. 2010), the court affirmed a jury verdict finding that Trans Union violated the FCRA when it erroneously identified a consumer as a "match" to the OFAC List.  Following that decision, Trans Union modified its OFAC procedures; Plaintiff nonetheless contends that Trans Union's response during at least the proposed class period was inadequate. Plaintiff now moves for class certification.

## LEGAL STANDARD

To succeed on his motion for class certification, Plaintiff must satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b).  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).  Rule 23(a) provides that a case is appropriate for certification as a class action if

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).  "[A] party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (internal quotation marks, citations, and emphasis omitted).  In

1   this case, Plaintiff contends that the putative class satisfies Rule 23(b)(3), which requires the Court

2   to find "that the questions of law or fact common to class members predominate over any

3   questions affecting only individual members, and that a class action is superior to other available

4   methods for fairly and efficiently adjudicating the controversy."  "Before certifying a class, the

5   trial court must conduct a rigorous analysis to determine whether the party seeking certification

6   has met the prerequisites of Rule 23."  *Mazza*, 666 F.3d at 588 (internal quotation marks omitted).

**DISCUSSION**

**I.      Plaintiff's Claims and the Proposed Classes**

9          Plaintiff brings two types of claims under federal and California law.  The first type, which

10  this Order will refer to as "disclosure claims," is brought pursuant to the FCRA, 15 U.S.C. §

11  1681g(a) & (c) and the CCRAA, § 1785.10.  Section 1681g(a) requires a credit reporting agency

12  to "clearly and accurately" disclose to a consumer "[a]ll information in the consumer's file" upon

13  a consumer's request, and 1681g(c) requires a summary of consumer rights to be provided with

14  each consumer file disclosure.  CCRAA § 1785.10 and §1785.15(f) are analogous state statutes.

15  Plaintiff also brings "reasonable procedures" claims under FCRA, 15 U.S.C. § 1681e(b) and

16  CCRAA § 1785.14(b).  Section 1681e(b) requires a consumer reporting agency to "follow

17  reasonable procedures to assure maximum possible accuracy of the information concerning the

18  individual about whom the report relates," while its California counterpart, section 1785.14(b),

19  includes similar language.  Plaintiff seeks statutory damages of from $100 to $1000 and punitive

20  damages for his FCRA claims, *see* 15 U.S.C. § 1681n(a)(1)(A), and statutory punitive damages

21  and injunctive relief on the state claims.  *See* Cal. Civil Code § 1785.31(a) & (b).[2]

22         Pursuant to his FCRA claims, Plaintiff asks to represent a nationwide class of individuals

23  to whom Trans Union sent a letter similar to the March 1, 2011 letter Plaintiff received regarding

24  the OFAC Alert.  He also seeks to represent a California subclass under the California claims.

---

[2] Plaintiff does not actually specify which provision of section 1785.31 he seeks damages under;
however, Plaintiff has described the CCRAA damages claims as "statutory 'punitive' damages of
between $100 and $5,000 for each violation."  (Dkt. No. 111 at 18:13-21.)  Thus, the Court
presumes that Plaintiff is seeking damages under section 1785.31(a)(2)(B).

United States District Court
Northern District of California

Trans Union mailed such letters from January 2011 through July 26, 2011 to 8,192 persons, of whom approximately 1,500 reside in California.  Plaintiff explains that this class definition is more narrow than that pled in his Complaint because discovery has disclosed "(i) that Trans Union did not include any OFAC information in its disclosures to consumers from August 2010 to January 2011, (ii) that Trans Union used a separate letter like the one Ramirez received between January 2011 and July 26, 2011, and (iii) Trans Union included OFAC data as part of the same document for disclosures that it sent out after July 26, 2011."  (Dkt. No. 122 at 27-28).  Because, according to Plaintiff, he is typical of the consumers who requested their files between January and June 2011, and Trans Union cannot readily identify the consumers who requested their files between August 2010 and January 2011, Plaintiff has narrowed the proposed classes to "focus[] on the consumers who requested and were sent file disclosures and separate letters regarding OFAC information during the January 2011-July 26, 2011 period."  (*Id.* at 22.)

## II.     The FCRA Claims

### A.     The FCRA Claims Satisfy Rule 23(a)

#### 1.     Numerosity

A putative class satisfies the numerosity requirement if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While it is undisputed that Trans Union sent letters similar to the March 1, 2011 letter Plaintiff received to over 8,000 consumers during the class period, Defendant attempts to redefine the class by narrowing it in various ways, such as considering only consumers who had Name Screen data delivered to a potential credit grantor, those who had reports sold by a Trans Union reseller, those who disputed their OFAC results, and the like.  As explained below, the claims of Plaintiff's putative classes present common questions and need not be as limited as Defendant insists.  As such, the Court finds that numerosity is met.

#### 2.     Commonality

The Court must also find that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "[C]ommonality requires that the class members' claims 'depend upon a

United States District Court
Northern District of California

common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza*, 666 F.3d at 588-89 (quoting *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

### a.   The FCRA disclosure claims

Plaintiff identifies the following as the common questions raised by his FCRA disclosure claims: "whether Trans Union violated the FCRA and CCRAA [1] by sending incomplete file disclosures and [2] by failing to include a summary of consumer rights and instructions on how to dispute inaccurate information when it disclosed the OFAC information to consumers during the class period."  (Dkt. No. 122 at 21:16-20.)  In other words, the common questions are whether Trans Union violated the FCRA during the class period by not identifying the OFAC Alert in a consumer's disclosed consumer file, but instead notifying the consumer of the OFAC Alert in a separate letter, and then again violated the FCRA by not explicitly stating in that separate letter how a consumer could dispute any inaccurate information.

Defendant contends that no common classwide conclusions are possible as to the disclosure claims because "[i]t cannot be determined on a common basis who in the proposed class read the main disclosure and the separate OFAC letter together as a single disclosure, and who did not."  (Dkt. No. 128 at 31:6-8.)  The Court is not persuaded that whether each class member read the letters at the same time, or two hours apart, or two days apart is legally significant.  It is Plaintiff's contention that even if the consumer read the file disclosure and separate letter at the same time, the failure to include the OFAC information in the disclosure of the file itself violated FCRA section 1681g(a).  Plaintiff similarly contends that even if a class member read the file disclosure and letter together, the failure of the letter to include a summary of consumer rights still violates FCRA section 1681g(c).  In any event, only "a single significant question of law or fact" is required to satisfy Rule 23(a)(2).  *Stockwell v. City & Cnty. of San*

*Francisco*, No. 12-15070, 2014 WL 1623736, at *3 (9th Cir. Apr. 24, 2014) (internal quotation marks omitted).  "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Parra v. Bashas', Inc.,* 536 F.3d 975, 978-79 (9th Cir. 2008); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (finding commonality because class members all suffered the same injury as a result of receiving a debt collection letter at their place of employment without consent) (citing *Wal-Mart*, 131 S. Ct. at 2551).  A significant common question on the 1681g(a) disclosure claim is whether Trans Union violated the law by not including the OFAC information in the file disclosure and instead disclosing the information in a separate letter.  The section 1681g(c) claim poses a similar significant question: whether Trans Union was required to include a summary of rights in the separate OFAC letter.  Commonality is satisfied for the disclosure claims.

### b.   The FCRA reasonable procedure claim

FCRA section 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  Plaintiff identifies the common issues as "[1] whether Trans Union used or expected to use an OFAC alert with respect to each class member and [2] whether Trans Union used reasonable procedures to assure maximum possible accuracy of the OFAC information that it associated to class members through its name-only matching logic."  (Dkt. No. 122 at 21:20-24.)  Plaintiff challenges the uniform procedures by which OFAC alerts are created, alleging that the name-only matching procedure regularly results in inaccurate consumer reports.

A report is inaccurate for purposes of the FCRA if it is "patently incorrect or materially misleading."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010); *see also Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 579-80 (1995) ("Both CCRAA and FCRA require 'maximum possible' accuracy.  This means that a report violates the statutes when it is misleading or incomplete, even if it is technically accurate.") (citations omitted).  Information

United States District Court
Northern District of California

10

on a credit report is "materially misleading" if it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)).

Trans Union maintains that whether the OFAC Alert was accurate as to each putative class member cannot be determined through common proof. Plaintiff counters that accuracy is a common question because "there is no evidence whatsoever that its OFAC alerts have ever been accurate." (Dkt. No. 125 at 13.) The question under 23(a)(2), however, is not the predominance of common questions, but rather whether there is at least one common question that will generate a common answer "apt to drive the resolution of the litigation." *Wal-Mart,* 131 S.Ct. at 1225 (internal quotation marks and citation omitted); *see also Wang*, 737 F.3d at 544 ("[s]o long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."). Here, the question of whether using the name-only matching logic assures maximum accuracy is such a question. *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 384 (C.D. Cal. May 31, 2007) (common question of whether defendants maintained reasonable procedures to assure maximum accuracy satisfied commonality prerequisite); *Clark v. Experian Information Solutions, Inc.*, 2001 WL 1946329, at *2 (D. S.C. March 19, 2001) (holding that question of "[w]hat reasonable procedures, if any, have been set up by the Defendants to assure maximum accuracy of the information contained in the consumer report, including information regarding or related to bankruptcy" among other questions satisfied the commonality requirement of Rule 23(a)(2)). Rule 23(a)(2) is satisfied for the FCRA claims.

### 3. Typicality

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d

970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiff's disclosure claims pursuant to sections 1681g(a) and 1681g(c) are typical of the class. Plaintiff and the putative class all received a claim file disclosure that failed to include any OFAC information; instead, Plaintiff and each class member received a nearly identical separate form letter with the same OFAC notification ("As a courtesy to you, we also want to make you aware that" you are a "potential match" to information on the OFAC List) and the same language which Plaintiff contends fails to adequately notify the class member regarding a consumer's rights to dispute the information.

Defendant insists that Plaintiff's claims are not sufficiently typical because of a litany of unique facts involved with his claims:

(1) a reseller, and not Trans Union, provided the credit report to the Nissan Dealer,

(2) Plaintiff requested a copy of his file from Trans Union,

(3) Plaintiff disputed the OFAC information connected to his file,

(4) the Nissan Dealer breached its contractual obligation to determine whether a credit applicant is in fact on the OFAC List before refusing credit.

(5) Plaintiff's wife was able to obtain the loan to purchase the car the same day in just her own name.

While these facts are potentially unique, they are not material to Plaintiff's claims. Plaintiff is not seeking any actual damages for what happened at the Nissan Dealer; indeed, Plaintiff would have the same claims even if he had never visited the Nissan Dealer or been denied credit. His disclosure claims are based on what was in—or more precisely, what was not in—the consumer file Trans Union disclosed to Plaintiff along with the separate letter. None of the above "unique facts" makes Plaintiff atypical for the reasonable procedures claim either. Again, Plaintiff, just as every other class member, received a file disclosure without any OFAC information and then a separate letter identifying himself as a "potential match" to a person on the OFAC List. And as Plaintiff is seeking statutory damages and not actual damages, whether he was actually denied credit or received inferior credit terms because of Trans Union's name-only

United States District Court
Northern District of California

12

matching logic is not at issue.  The Court is also not persuaded that Plaintiff's Spanish surname, and in particular, the convention with maternal and paternal surnames, makes him atypical such that certification is inappropriate.

Trans Union also insists that it has unique defenses to Plaintiff's claims that make Plaintiff inappropriate to represent the class.  First, it contends that Plaintiff made a misrepresentation on his Nissan Dealer credit application about never having had a vehicle repossessed.  But Trans Union never explains how such fact, if proved, matters.  The Court is not aware of any caselaw, and Trans Union has not cited any, that holds that a credit reporting agency is excused from compliance with the FCRA, and therefore immune from statutory damages, because a consumer would not have qualified for credit from a particular lender in any event.

Next, Trans Union contends that because the reseller that provided Plaintiff's Trans Union credit report to the Nissan Dealer failed to include the word "potential" to modify the notification of the name match Trans Union has a unique defense to Plaintiff's claim.  Trans Union represents, and the Court accepts, that no credit report of any other class member during the class period identified the class member as a "match" rather than a "potential match."  But, again, this unique fact does not matter.  Plaintiff's contention is that identifying a consumer as a "potential match" runs afoul of the FCRA.

Trans Union's reliance on *Souter v. Equifax Info. Servs.*, LLC, 498 F. App'x 260, 264 (4th Cir. 2012), is misplaced.  There the court found that the plaintiff's claim was not typical because there were "'meaningful differences'" between her claim and the class claims.  Specifically, the process the defendant used to verify the allegedly inaccurate judgment reported on the plaintiff's credit report was different from the processes employed to verify the judgments of many of the other class members.  *Id.* at 265.  Thus, resolution of whether the process used for the plaintiff's judgment was reasonable would not "advance the case" as to the absent class members.  *Id.*  Here, in contrast, the record shows that Trans Union utilized the exact same name-only matching logic to identify plaintiff and the class members as a "potential match" to a person on the OFAC List.  If that process is reasonable, it is likely reasonable for all and vice versa.  Further, in *Souter*, the

plaintiff's willfulness showing for damages depended on Plaintiff having sent two letters to the defendant, conduct not engaged in by all class members and thus made the plaintiff atypical. *Id.* Here, while Plaintiff did have a somewhat unique interaction with Trans Union, that experience is not the basis for his claim; rather, the willfulness comes from Defendant's conduct even after losing the *Cortez* case.

### 4. Adequacy

To determine whether Plaintiff "will fairly and adequately protect the interests of the class" under Rule 23(a)(4), the Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)).

The Court finds no reason Plaintiff will be unable to "fairly and adequately protect the interests of the class" under Rule 23(a)(4) for purposes of the statutory damages claims. There is no conflict, nor any unique aspect of Plaintiff's connection to the claims, that would be an impediment to his fairly representing the other class members. As explained with respect to typicality, Defendant's argument that Plaintiff's allegedly false statement on his credit application is irrelevant to the claims, as is the fact that Dublin Nissan viewed his credit report on an outdated form that failed to indicate he was a "potential" match, rather than a "match." Moreover, the Court already rejected Defendant's argument that its Rule 68 offer of judgment mooted Plaintiff's claim. (Dkt. Nos. 76 & 100.) Thus, the Court concludes that Plaintiff and his counsel are adequate for purposes of Rule 23(a)(4).

Based on the foregoing, the Court finds that Plaintiff's proposed FCRA class satisfies the prerequisites of Rule 23(a).

### B. The FCRA Claims Satisfy Rule 23(b)(3)

Plaintiff must also meet one of the provisions of Rule 23(b) to succeed on his motion for class certification of the federal claims. *See* Fed. R. Civ. P. 23(b); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014). Plaintiff maintains that he has satisfied Rule 23(b)(3):

"the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

To meet the predominance requirement of Rule 23(b)(3), "the common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication."  *Berger*, 741 F.3d at 1068 (internal quotation marks and alterations omitted).  Each of Plaintiff's claims must be analyzed separately.  *Id.*

### a.    The FCRA disclosure claims

The same common questions the Court identified in its analysis of the Rule 23(a) commonality requirement predominate for purposes of Rule 23(b)(3): whether Trans Union violated the FCRA by not identifying a consumer's OFAC Alert in the consumer's disclosed consumer file, but instead in a separate letter, and then again violated the FCRA by not explicitly stating in that separate letter how a consumer could dispute any inaccurate information.  This question and its answer are the same for each class member.

Defendant's emphasis on the *timing* of when a class member read the disclosure does not, at least on the present record, destroy commonality.  As explained above, Plaintiff's contention is the same regardless of whether a class member read the claim file and the separate letter one right after the other, or vice versa, or several days apart.  Plaintiff contends, rightly or wrongly, that under the FCRA Trans Union was required to include the OFAC information in the disclosed claims file.

Trans Union then turns to damages, or perhaps more precisely, injury, and contends that even though Plaintiff is seeking statutory damages for the disclosure claims individualized issues still predominate.  In particular, it argues that whether Plaintiff or any class member was actually harmed by the failure to include the OFAC information in the claim file as opposed to the separate letter, or by the separate letter's alleged failure to adequately inform the consumer of its right to dispute the OFAC information, is an individualized question that predominates.  To support its

United States District Court
Northern District of California

1    argument, it cites evidence that the volume of OFAC reinvestigation requests was generally higher

2    when the OFAC information was sent in a separate letter.

3            The Court agrees that whether a class member was actually injured by the purported non-

4    disclosure is an individualized question.  It is not, however, a question that predominates because

5    it is not an element of the disclosure claims or statutory damages.  Under the law of the Ninth

6    Circuit, an FCRA claim for statutory damages "does not require a showing of actual harm when a

7    plaintiff sues for willful violations."  *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014).

8    The court reasoned that when, as with the FCRA, "the statutory cause of action does not require

9    proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering

10   actual damages."  *Id.* at 413; *see also* 15 U.S.C. § 1681n(a)(1)(A) ("Any person who willfully fails

11   to comply with any requirement imposed [under the FCRA] with respect to any consumer is liable

12   to that consumer in an amount equal to the sum of—any actual damages sustained by the

13   consumer as a result of the failure *or damages of not less than $100 and not more than $1000*."

14   (emphasis added);  *Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 719 (9th Cir. 2010)

15   (holding that "irrespective of whether Bateman and all the potential class members can

16   demonstrate actual harm resulting from a willful violation [of the Fair and Accurate Credit

17   Transactions Act], they are entitled to statutory damages."); *Montgomery v. Wells Fargo Bank*,

18   C12-3895 TEH, 2012 WL 5497950, at *6 (N.D. Cal. Nov. 13, 2012) (citing *Guimond v. Trans

19   Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("it is not necessary that a plaintiff

20   allege actual damages in order to state a claim for relief under the FCRA," statutory damages

21   under 15 U.S.C. § 1681n "are available regardless of whether a plaintiff can show actual

22   damages.").  With respect to Plaintiff's punitive damages claims under FCRA, the result is less

23   clear. Whether the punitive damages can actually be tried as a class may depend on whether

24   Plaintiff seeks to offer some evidence of actual injury to support punitive damages; at this point,

25   however, Plaintiff appears not to intend to do so and under Ninth Circuit law he is not required to

26   do so.  *See Bateman*, 623 F.3d at 718 ("We further note that Congress provided for punitive

27   damages in addition to any actual or statutory damages, see 15 U.S.C. § 1681n(a)(2)").  It is thus

28

United States District Court
Northern District of California

1    irrelevant to the FCRA disclosure claims whether Plaintiff or a class member was harmed by

2    Trans Union's alleged failures.

###    b.    The Section 1681e(b) reasonable procedure claim

4    Although a closer question than with the disclosure claims, the Court finds that common

5    questions also predominate on Plaintiff's failure to use reasonable procedures claim. The

6    overriding common question on this claim is whether Trans Union's name-only matching logic is

7    a reasonable procedure to assure maximum possible accuracy.

8    Trans Union contends that the individual questions of whether the credit report of each

9    class member was "accurate," and, if not, and Trans Union failed to utilize reasonable procedures

10   to ensure accuracy, whether Trans Union's conduct was "willful" predominate making class

11   certification inappropriate. The Court disagrees.

###    1.    Accuracy

13   To succeed on his 1681e(b) claim, Plaintiff must show that Trans Union prepared a report

14   that contained inaccurate information. *Guimond v. Trans Union Credit Information Co.,* 45 F.3d

15   1329, 1333 (9th Cir. 1995). His burden is to prove that the report contained "patently incorrect or

16   materially misleading information." *Prianto v. Experian Information Solutions, Inc.*, 2014 WL

17   3381578, at *3 (N.D. Cal. July 10, 2014).

18   Trans Union argues that the question of whether the OFAC Alert for each class member

19   was accurate is an individual question that renders certification inappropriate. The record before

20   the Court does not support Trans Union's argument. Trans Union is unable to identify any

21   instance in which a person it identified as a "potential match" was in fact a match. Indeed, it has

22   not identified a single instance in which the birth date of the person on the OFAC List and the

23   "potential match" matched, or even the address matched; in other words, in which there is

24   something other than the person's name to suggest the person is on the OFAC List. This record

25   supports a finding that not one of the members of the class is in fact on the OFAC List. *Meyer v.*

26   *Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012), is instructive. There, in an

27   action under the Telephone Consumer Protection Act, the defendant argued that individual issues

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   of class members having consented to be contacted on their cellular phone—a defense to the

2   claim—precluded a commonality finding.  The Ninth Circuit disagreed: "[the defendant] did not

3   show a single instance where express consent was given before the call was placed."  *Id.* at 1042.

4   Similarly, here, Trans Union has not identified a single class member whose personal information

5   matches the OFAC List "potential match" in any way other than name.  That means that the other

6   information, birthdate, address, social security—to the extent available—does not match, thus

7   supporting the inference that the consumer is not, in fact, the "potential match" on the OFAC List.

8       The cases cited by Trans Union do not persuade the Court otherwise.  Although the

9   circumstances in *Gomez v. Kroll Factual Data, Inc.*, No. 13-CV-0445, 2014 WL 1456530, at *3

10  (D. Colo. Apr. 14, 2014), are similar to those here, and the court reached a different conclusion,

11  the decision does not explain the court's reasoning; instead, the court simply cited cases that are

12  not from the Ninth Circuit in which the accuracy question involved individualized questions that

13  predominated.  *Id.* at 3.  But even those cases do not hold that the issue of accuracy in a FCRA

14  claim always defeats certification.  *See, e.g., Owner-Operator Independent Drivers Ass'n, Inc. v.*

15  *USIS Commercial Services, Inc.*, 537 F.3d 1184, 1194 (10th Cir. 2008) ("whether a report is

16  accurate *may* involve an individualized inquiry") (emphasis added).  *Farmer v. Phillips Agency,*

17  *Inc.,* 285 F.R.D. 688 (N.D. Ga. 2012), involved a challenge to inaccurate and incomplete criminal

18  background reports prepared by the defendant.  *Id.* at 690.  The predominating individual inquiries

19  for each consumer putative class member included the source of the adverse records and an

20  evaluation of the quality of that source.  *Id.*  at 702-03.  Such inquiries are not required here.  In

21  *Harper v. Trans Union, LLC*, 2006 WL 3762035 (E.D. Pa. Dec. 20, 2006), the court held that the

22  plaintiff would have to prove actual injury to succeed on his 1681e(b) claim.  *Id.* at *9 ("I refuse to

23  hold that a willful and/or negligent violation of the FCRA exposes CRAs to liability with no

24  factual inquiry into whether the absent class members were injured by the violation.").  As

25  explained above, the Ninth Circuit has held otherwise.  *See Robins,* 742 F.3d at 412-13.

26      The Court agrees with Trans Union that the question of accuracy in a section 1681e(b)

27  claim may often present individualized questions that predominate over the common questions.  In

28

the circumstances of this case, and on this record, it does not.

### 2.    Willfulness and statutory damages

Nor does the requirement that Plaintiff and the class prove Trans Union's violations were willful mean individualized questions predominate.  Again, Trans Union relies on *Gomez,* which held that the willfulness inquiry requires an individualized inquiry without giving any reasoning other than to cite to two Fourth Circuit cases.  *Gomez v. Kroll Factual Data, Inc*., 2014 WL 1456530, at \*4.  In the first case, *Soutter*, the plaintiff's theory of willfulness rested on her having sent letters to the credit reporting agency—a unique factual circumstances not common to the class.  *Soutter v. Equifax Info. Servs., LLC*, 498 Fed.Appx. 260, 265 (4th Cir. 2012).  Here, in contrast, Plaintiff's theory of willfulness is based on Trans Union's alleged failure to adequately modify their OFAC Alert procedures in response to the *Cortez* ruling.

In the second Fourth Circuit opinion, *Stillmock v. Weis Markets, Inc.*, 385 Fed Appx 267 (4th Cir. July 1, 2010), the court *reversed* the denial of class certification in a case seeking statutory damages under the Fair and Accurate Credit Transactions Act of 2003, which amended the FCRA to prohibit businesses from printing more than the last 5 digits of a consumer's credit card.  *Id.* at 275.  The district court had denied class certification on the ground that the question of what statutory damage (between $100 and $1000) to award each class member required an individualized inquiry that predominated.  The Fourth Circuit rejected this reasoning and held that "where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3)."  *Id.* at 273.  The same analysis— and result—apply here.

### 2.    Superiority

Factors relevant to the superiority requirement include:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "A consideration of these factors require the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal citation omitted).  A class action here would certainly achieve economies of time, effort and expense and promote uniformity.  And there is not similar litigation already underway elsewhere that weighs against proceeding as a class here, nor any reason not to try a class action in this District.

With respect to the first factor, however, Defendant contends that class members with actual damages will be forced to abandon their high-value actual damages claims to pursue statutory damages as part of the class, while at same time noting that no evidence exists that any potential class member has suffered any actual damages.  Given that Trans Union contends that no class member has suffered any large actual damages, and that any potential class member with significant damages could simply opt out of the class, Defendant's argument is unfounded.  At the same time, Defendant asserts that because no other Plaintiffs have come forward with similar claims indicates that a class action is unnecessary.  Surely, thousands of people need not attempt to bring suit or join existing suits to demonstrate interest in their claims or the feasibility of a class action.  Indeed, as Plaintiff notes, many class members might be unaware of their rights under the FCRA and CCRAA and/or unaware of the alleged violations.  Even if the potential class members are aware of the alleged violations, many would probably have little interest or motivation to bring an individual suit if they had not experienced any actual damages.

Defendant also attempts to refute superiority on the ground that attorneys' fees for Plaintiff's claims are recoverable, and the economies of class action are therefore unnecessary. This objection is misplaced for two reasons.  First, even if each class member were to bring a separate suit, the costs and fees of each separate action would exceed those of a class action. It is

1   more efficient to adjudicate the claims as a class action rather than thousands of individual actions.

2   Moreover, Rule 23(b) does not ask the Court to determine whether a class action is *necessary*,

3   rather whether it is superior.  The Court concludes that it is.

4       Finally, at oral argument Trans Union complained that granting class certification of

5   statutory damages claims places unfair economic pressure on the defendant and forces the

6   defendant to settle even if it believes it has a meritorious defense and the class was never actually

7   harmed.  Judge Wilkinson raised this concern in his concurrence in *Stillmock*, 385 Fed. Appx. at

8   281 ("[O]nce a class is certified, a statutory damages defendant faces a bet-the-company

9   proposition and likely will settle rather than risk shareholder reaction to theoretical billions in

10  exposure even if the company believes that the claim lacks merit.") (internal quotation marks and

11  citation omitted).  The problem with Trans Union's argument, however is that it has effectively

12  been rejected by the Ninth Circuit.  In *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708

13  (9th Cir. 2010), the court held it was improper for a district court to find that a class action was not

14  superior because the potential statutory damages class action award was so disproportionate to

15  actual harm.  *Id.* at 719.  *Bateman* involved a related statute, the Fair and Accurate Credit

16  Transactions Act ("FACTA"), which incorporates the FCRA statutory damages provision, *id.* at

17  711, so its reasoning applies equally to statutory damages under the FCRA; namely, that Congress

18  is aware of the concern about potentially enormous liability of defendants in statutory damage

19  class actions and has amended statutes to address such problems when it has the votes to do so.

20  *Id.* at 720-21 (noting that Congress added a provision to the Truth In Lending Act ("TILA") to

21  limited aggregate statutory damages).  The Ninth Circuit held: "[i]n the absence of . . . affirmative

22  steps to limit liability, we must assume that Congress intended FACTA's remedial scheme to

23  operate as it was written."  *Id.* at 722-23. The same is true for FCRA.

24  **III.    The California CCRAA Claims**

25      Next, the Court must decide whether to certify the California subclass.  For the same

26  reasons Plaintiff has demonstrated that Rule 23(a) has been satisfied for the FCRA claims, it is

27  satisfied for the CCRAA claims.  The result is different, however, as to Rule 23(b)(3)'s

28

United States District Court
Northern District of California

predominance of common questions requirement.  The California Court of Appeals has held that the CCRAA, unlike the FCRA, requires a showing of actual harm even where, as here, the plaintiff is only seeking injunctive relief under section 1785.31(b) and statutory punitive damages under section 1785.31(a)(2)(b).[3]  *See Trujillo v. First American Registry, Inc.*, 157 Cal. App. 4th 628, 637-38 (2008).  The federal courts are bound by decisions of the California Court of Appeals on questions of California law "unless there is convincing evidence that the California Supreme Court would decide the matter differently."  *Abdelfattah v. Carrington Mortgage Services LLC,* 2013 WL 5718463, at *3 (N.D. Cal. Oct. 21, 2013)(internal quotation marks and citation omitted) (following *Trujillo* and striking class allegations in CCRAA case, including claims under sections 1781(b) & (c), because the complaint failed to allege that the class was harmed).

Thus, to the extent Plaintiff is seeking certification of his state law claims pursuant to Rule 23(b)(3), as he must for the statutory punitive damages claim, individual issues will predominate. Each class member will have to demonstrate actual injury before being entitled to punitive damages.  This inquiry will involve investigating whether the class member's credit report was disclosed to a lender and how the lender responded to the report; even if credit was denied, an inquiry will have to be made as to whether it was denied because of the OFAC Alert or for some other reason.  Because Plaintiff does not even acknowledge the actual damages requirement of *Trujillo*, he does not offer any suggestion for how the actual damages issue can be addressed with common proof.  The Court can think of none.  Indeed, one reason Plaintiff seeks statutory FCRA damages is to avoid the requirement that each class member prove actual damages.  Thus, the California claims will not be certified under 23(b)(3).

Plaintiff, however, also seeks certification of his CCRAA reasonable procedures claim for injunctive relief pursuant to Rule 23(b)(2).[4]  Certification under that provision is appropriate if

---

[3] *Trujillo's* holding applies equally to traditional punitive damages claims under section 17835.31(c): "reading subdivision (c) as superseding the actual damage requirement would take all teeth out of subdivision (a), absurdly breathing life into any CCRAA complaint seeking punitive damages, even those filed by uninjured plaintiffs—i.e., by anyone."  157 Cal. App. 4th at 638.  Thus, the outcome would be the same even were Plaintiff to seek punitive damages under section (c) rather than subsection (a)(2)(B).

[4] Plaintiff concedes that he is not entitled to injunctive relief under his CCRAA disclosure claims

United States District Court
Northern District of California

1  Rule 23(a) is satisfied (as it is here) and "the party opposing the class has acted or refused to act on

2  grounds that apply generally to the class, so that final injunctive relief or corresponding

3  declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  There

4  is no requirement that common questions predominate was with Rule 23(b)(3).  Further, that the

5  state monetary claims will not be certified pursuant to Rule 23(b)(3) does not mean that the claim

6  for injunctive relief cannot be certified under Rule 23(b)(2).  *See Ries v. Arizona Beverages USA*

7  *LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012) (denying certification of monetary claims under Rule

8  23(b)(3) and granting certification of declaratory and injunctive relief claims under Rule 23(b)(2)).

9       There is, however, an issue as to Plaintiff's adequacy to represent the California subclass

10  on and injunctive relief claim given the evidence in the record suggesting that the OFAC Alert was

11  removed from his file.  Plaintiff counters that he does have standing to pursue injunctive relief

12  because Trans Union continues to use the name-only matching logic and thus the risk remains that

13  the OFAC Alert will reappear.  Plaintiff emphasizes that in the *Cortez* matter, the plaintiff likewise

14  engaged Trans Union's dispute resolution process to have the OFAC alert removed from her file,

15  but discovered that it was still there when she subsequently obtained another credit report.  *Cortez*,

16  617 F.3d at 700.

17       To establish standing, a plaintiff must show that:

18           (1) the plaintiff  has suffered an injury in fact that is (a) concrete and
             particularized and (b) actual or imminent, not conjectural or
19           hypothetical; (2) the injury is fairly traceable to the challenged
             action of the defendant; and (3) it is likely, as opposed to merely
20           speculative, that the injury will be redressed by a favorable decision.

21  *Robins*, 742 F.3d at 412 (internal citations and quotation marks omitted).  When seeking

22  prospective injunctive relief, a plaintiff must show that he has suffered or is threatened with a

23  "concrete and particularized" legal harm, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

24  (1992), coupled with "a sufficient likelihood that he will again be wronged in a similar way."  *City*

25  *of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  The second prong requires a "real and

26

27  because Trans Union has discontinued the practice upon which the claims are based; namely, it
    has discontinued disclosing the OFAC information in a separate letter rather than the consumer's
28  file.  (Dkt. No. 125 at 12.)

immediate threat of repeated injury," which can be demonstrated through past wrongs. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Finally, "[p]laintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision" but "only that a favorable decision is likely to redress" their injuries. *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1003 (9th Cir. 1998).

Here, Defendant contends that there is sufficient evidence in the record that the Plaintiff's Alert has been removed based on generalized evidence regarding what its process is when a dispute is received and the absence of evidence that the process was not followed for Plaintiff. Plaintiff, however, makes a compelling argument that because the name-only matching procedure is still utilized, he could again be subject to an OFAC Alert. While it is difficult to quantify this risk, the record presents a sufficient likelihood that Plaintiff will be harmed again in a similar way in light of the absence of any evidence in the record that shows that Trans Union took some sort of concrete step, beyond merely removing the flag from Plaintiff's file, which would preclude his file from again being flagged based on a name-only match. Accordingly, the Court will certify the reasonable procedure CCRAA claim for injunctive relief.

## CONCLUSION

For the reasons explained above, the Court GRANTS Plaintiff's Motion to Certify (Dkt. No. 122) in part. The Court certifies a class, defined as "all natural persons in the United States and its Territories to whom Trans Union sent a letter similar in form to the March 1, 2011 letter Trans Union sent to Plaintiff regarding "OFAC (Office of Foreign Assets Control) Database" from January 1, 2011-July 26, 2011" for Plaintiff's FCRA claims. The Court also certifies a California sub-class on Plaintiff's CCRAA reasonable procedure claim for injunctive relief. The Court appoints Plaintiff Sergio L. Ramirez as class representative, and appoints Plaintiff's counsel to serve as class counsel.

The parties shall appear for a further Case Management Conference on August 21, 2014 at 1:30p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California. Counsel may contact Court Call at 1-888-882-6878 to make arrangements to appear by telephone.

United States District Court
Northern District of California

1

2          **IT IS SO ORDERED.**

3    Dated: July 24, 2014

4                                              _Jacqueline S. Corley_
                                               _____
5                                              JACQUELINE SCOTT CORLEY
                                               United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

25