1

2

3

4

5

6

7

8                                      UNITED STATES DISTRICT COURT

9                                    NORTHERN DISTRICT OF CALIFORNIA

10

11    SERGIO L. RAMIREZ,                                    Case No. 12-cv-00632-JSC

12                      Plaintiff,

13            v.                                            **ORDER DENYING DEFENDANT'S
                                                           MOTION TO DECERTIFY CLASS**
14    TRANS UNION, LLC,
                                                           Re: Dkt. No. 198
15                      Defendant.

16

17            This lawsuit arises out of Defendant Trans Union, LLC's identification of Plaintiff Sergio

18    Ramirez as potentially being a person on the United States government's list of terrorists, drug

19    traffickers, and others with whom Americans are prohibited from doing business.  The Court

20    previously certified a class action alleging three causes of action under the Fair Credit Reporting

21    Act, and three under its state counterpart, the California Consumer Credit Reporting Agencies Act.

22    *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014).  Following the United States

23    Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Defendant filed the

24    now pending motion to decertify the class.  (Dkt. No. 198.)  Upon consideration of the parties'

25    submissions and oral argument on October 6, 2016, the motion is DENIED.  Plaintiff suffered a

26    concrete injury and therefore has standing to pursue all of his claims.  Under binding Ninth Circuit

27    precedent his standing is adequate for purposes of the class, and, in any event, in light of the

28    specific circumstances alleged here the absent class members also suffered a concrete injury.

*United States District Court*
*Northern District of California*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# BACKGROUND

The Court discussed the factual background of this action at length in its class certification order and only briefly summarizes the relevant facts here.  (Dkt. No. 140.)

The United States Treasury Department's Office of Foreign Assets Control ("OFAC") publishes a list of individuals, such as terrorists and narcotics traffickers, who people in the United States are generally prohibited from doing business with, including the extension of credit ("the OFAC List").  (Dkt. No. 140 at 2.)  Trans Union, a consumer credit reporting agency, offers a product known as "OFAC Advisor," "OFAC Alert," or "OFAC Name Screen" as an add-on to traditional credit reports.  (*Id.*)

In February 2011, Plaintiff Sergio Ramirez and his wife visited a Nissan dealership to purchase a car on credit.  They completed a credit application with each's name, address, social security number, and date of birth, among other identifying information.  (Dkt. No. 140 at 3.)  The dealer used the information to obtain a Trans Union consumer credit report for Plaintiff and his wife.  Plaintiff's report advised the dealer: "OFAC ADVISOR ALERT – INPUT NAME MATCHES NAME ON THE OFAC DATABASE."  (Dkt. No. 110-10.)  As a result of this OFAC alert, Plaintiff was unable to obtain credit to purchase the car jointly with his wife; instead, his wife obtained the loan and purchased the car solely in her name.  (Dkt. No. 128-14 at 22:13-24.)  When Plaintiff telephoned Trans Union the next day about the OFAC Alert, an employee told Plaintiff that he did not have an OFAC Alert on his credit report.[1]  At Plaintiff's request, Trans Union mailed Plaintiff a copy of his consumer file.  The file, however, did not include any OFAC information.  (Dkt. No. 110-23.)  Trans Union mailed Plaintiff a separate letter "as a courtesy" regarding how his name served as a "potential match" to the OFAC database.  (Dkt. No. 110-24.)

At that time, Trans Union's OFAC Alert service used only the consumer's first and last name to search the OFAC List data, even if Trans Union possessed additional identifying information, such as birth date or address.  (Dkt. No. 140 at 2.)  When the computerized search logic returns a name match, Trans Union automatically places an OFAC Alert on the consumer report provided to the customer without any further investigation or confirmation.  (*Id.* at 3.)

---

[1] The deposition transcript portion cited by Plaintiff in support of this fact is not included in the record.  *See* Dkt. No. 122 at 13:20 (citing Plaintiff's Dep. at 36:22-37:6.)  This fact is not disputed, however, and, in any event, is not material to the Court's class certification ruling.

United States District Court
Northern District of California

Nearly a year after he learned of the OFAC Alert, Plaintiff filed this class action against Trans Union, bringing claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and its state counterpart, the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq. (Dkt. No. 1.)  These claims are divisible into two categories.  The first are Plaintiff's "disclosure claims," which are brought pursuant to the FCRA, 15 U.S.C. § 1681g(a) & (c) and the CCRAA, § 1785.10.  Section 1681g(a) requires a credit reporting agency to "clearly and accurately" disclose to a consumer "[a]ll information in the consumer's file" upon a consumer's request, and 1681g(c) requires a summary of consumer rights to be provided with each consumer file disclosure.  CCRAA § 1785.10 and § 1785.15(f) are analogous state statutes.  The second category involves Plaintiff's "reasonable procedures" claims under the FCRA, 15 U.S.C. § 1681e(b) and CCRAA § 1785.14(b).  Section 1681e(b) requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," while its California counterpart, section 1785.14(b), includes similar language.

In July 2014, the Court certified Plaintiff's FCRA claims for a class of "all natural persons in the United States and its Territories to whom Trans Union sent a letter similar in form to the March 1, 2011 letter Trans Union sent to Plaintiff regarding 'OFAC (Office of Foreign Assets Control) Database' from January 1, 2011 - July 26, 2011."  (Dkt. No. 140.)  The Court also certified a California sub-class on Plaintiff's CCRAA reasonable procedure claim for injunctive relief, but declined to certify a CCRAA subclass for damages.

A year later, the Court granted Defendant's motion to stay the case, pending the outcome of the Supreme Court's review of the Ninth Circuit's decision in *Robins v. Spokeo, Inc*., 742 F.3d 409 (9th Cir. 2014) upon which this Court relied in granting class certification of the FCRA class. (Dkt. No. 184.)  The Supreme Court decided *Spokeo* on May 16, 2016.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  In light of that decision, this Court lifted the stay and issued an amended scheduling order.  (Dkt. Nos. 195, 196.)  Defendant then filed the now pending motion to decertify the class contending primarily that Plaintiff lacks Article III standing.  (Dkt. No. 198.)

United States District Court
Northern District of California

## LEGAL STANDARD

An order certifying a class "may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1).  "In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met."  *Ridgeway v. Wal-Mart Stores, Inc.*, 2016 WL 4529430, at *12 (N.D. Cal. Aug. 30, 2016).  Parties should be able to rely on a certification order and "in the normal course of events it will not be altered except for good cause," such as "discovery of new facts or changes in the parties or in the substantive or procedural law."  *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 409-10 (C.D. Cal. 2000).  "The party seeking decertification bears the burden of demonstrating that the elements of Rule 23 have not been established."  *In re: Autozone, Inc.*, No. 3:10-MD-02159-CRB, 2016 WL 4208200, at *9 (N.D. Cal. Aug. 10, 2016) (internal citation omitted).

## DISCUSSION

Defendant argues for decertification on two related grounds.  First, in light of the Supreme Court's *Spokeo* decision, Plaintiff did not suffer a concrete injury and thus does not have standing; therefore the action must be dismissed for lack of subject matter jurisdiction.  Second, and again in light of *Spokeo*, Defendant insists that each class member must have suffered a "concrete injury" and that such inquiry is an individual question that renders certification is improper for a variety of reasons.

### I.       Plaintiff's Standing

Article III standing consists of three "irreducible constitutional minimum" requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id*. at 1548 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

In *Spokeo*, the plaintiff filed a class action complaint against a consumer reporting agency for alleged violations of Section 1681 of the FCRA.  *Spokeo*, 136 S. Ct. at 1545-46.  Specifically,

United States District Court
Northern District of California

1   the plaintiff alleged that Spokeo violated the FCRA by providing inaccurate information about

2   him in a generated credit report, including that he is married, has children, has a job, is in his 50s,

3   and is relatively affluent with a graduate degree.  *Id*. at 1546.  The district court dismissed the

4   complaint for lack of standing, but the Ninth Circuit reversed, finding that the plaintiff had

5   adequately alleged an injury in fact for the statutory violation.  *Id*.  On review, the Supreme Court

6   vacated the decision because the Ninth Circuit's "standing analysis was incomplete"; although the

7   Ninth Circuit found that the plaintiff had adequately alleged a "particularized" injury—i.e.,

8   violation of his statutory rights under the FCRA—the Ninth Circuit failed to consider whether that

9   injury satisfied the "concreteness" requirement for an injury in fact.  *Id*. at 1548 ("We have made

10  it clear time and time again that an injury in fact must be both concrete and particularized.").  To

11  be "particularized," an injury "must affect the plaintiff in a personal and individual way," while

12  "concreteness" requires an injury to be "'de facto'; that is, it must actually exist."  *Id*. at 1548

13  (citation omitted).  The Supreme Court noted, however, that "concrete" is "not . . . necessarily

14  synonymous with 'tangible,' " and "intangible injuries can . . . be concrete."  *Id*. at 1549.  The

15  Court remanded the case to the Ninth Circuit to consider "whether the particular procedural

16  violations alleged in [the] case entail a degree of risk sufficient to meet the concreteness

17  requirement."  *Id.* at 1550.

18      **A.      Plaintiff's Standing Under the Disclosure Claims**

19          Under FCRA Section 1681g(a) a credit reporting agency must "clearly and accurately"

20  disclose to a consumer "[a]ll information in the consumer's file" upon a consumer's request, and

21  provide a summary of consumer rights to be provided with each consumer file disclosure.  *See* §

22  1681g(c).  Plaintiff contends that Trans Union violated Section 1681g of the FCRA by not

23  identifying the OFAC Alert in his disclosed consumer file, but instead notifying him of the OFAC

24  Alert in a separate letter, and again by not explicitly stating in that separate letter how a consumer

25  could dispute any inaccurate information.  Defendant urges that Plaintiff does not have standing to

26  make these claims.  Given that Plaintiff was alerted to the OFAC information in the separate letter,

27  that he in fact contacted Defendant to dispute the information, and that the OFAC Alert was

28  removed from his file, he did not suffer a concrete injury.  Defendant thus labels the disclosure

1    claims as purely procedural violations akin to the incorrect zip code violation discussed in *Spokeo*.

2    *See Spokeo*, 136 S. Ct. at 1550 (noting that "not all inaccuracies cause harm or present any

3    material risk of harm" as with "an incorrect zip code.").  The Court disagrees.

4          Plaintiff did not receive any OFAC information when he requested a complete copy of his

5    file; he thus was inaccurately notified that Defendant had not identified him as matching a name

6    on the OFAC list.  The omission was material: the OFAC Alert—being identified as a potential

7    terrorist or drug trafficker—is not even close to the innocuous zip code mentioned in *Spokeo*.  And

8    when Plaintiff did receive the OFAC information in a separate letter, it stated it was being

9    provided "as a courtesy" and not that it was an amendment to the incomplete disclosure of his

10    consumer file.  Finally, the "courtesy" letter also did not include a disclosure as to how to dispute

11    inaccurate information.  These alleged violations created a risk that Plaintiff would be harmed in

12    precisely the way Congress was attempting to prevent when it mandated what disclosures

13    consumer credit reporting agencies must make to consumers: a risk that the consumer is not made

14    aware of material inaccurate information in the consumer's file, nor aware of how to dispute the

15    inclusion of the harmful information.  Thus, these omissions entailed a degree of risk sufficient to

16    satisfy Article III's concrete injury requirement.  *See Spokeo*, 136 S. Ct. at 1550.

17          Defendant insists that because Plaintiff contacted Trans Union about the OFAC Alert

18    notwithstanding the alleged disclosure violations he could not have suffered a concrete injury.

19    What Defendant means, then, is that an FCRA case can never even get through the front door—

20    that is, get past standing—unless and until a plaintiff suffers some tangible injury from

21    nondisclosure of required information.  Of course, at some point the plaintiff  has to become aware

22    of the omitted information, otherwise the plaintiff will never know that he has a claim.  But,

23    according to Defendant, if the consumer is able to avert the risk created by the nondisclosure once

24    made aware of the consumer reporting agency's error such that the consumer does not suffer a

25    tangible injury, the consumer reporting agency is insulated from suit.  *Spokeo* suggests no such

26    thing.  *See Spokeo*, 136 S. Ct. at 1549 (holding that "concrete" is not synonymous with tangible).

27          The recent post-*Spokeo* decision in *Larson v. Trans Union LLC*, No. 12-cv-05726-WHO,

28    2016 WL 4367253 (N.D. Cal. Aug. 11, 2016), is instructive.  There the court considered whether a

United States District Court
Northern District of California

1   plaintiff had standing to bring a Section 1681g disclosure claim very similar to the claims brought

2   here.  The plaintiff argued that an OFAC disclosure indicating that the plaintiff was a "possible

3   OFAC match" made in a separate letter from the credit report left the plaintiff uncertain and

4   confused as to whether he had a right to dispute the OFAC match.  *Id.* at *2.  The court concluded

5   that the plaintiff had standing to pursue an "informational injury" such as this under section

6   1681g(a).  *Id.* at *3.  In so concluding, the court noted that *Spokeo* implicitly recognized

7   "informational injury" as sufficient to establish concrete injury.  *Id.* (holding that the plaintiff's

8   "claim is based on the sort of 'informational' injury that the *Spokeo* Court implicitly recognized

9   . . . and that a number of other cases, from both before *Spokeo* and after, have found sufficient to

10  support Article III standing.") (internal citations omitted).  The court thus reasoned that the

11  plaintiff's Section 1681g claim was based on "something more than a 'bare procedural

12  violation'—such as the 'dissemination of an incorrect zip code'—that cannot 'cause harm or

13  present any material risk of harm.'"  *Id.* (citing *Spokeo*, 136 S. Ct. at 1549-50).  The same

14  reasoning applies here.

15      "[T]he violation of a procedural right granted by statute can be sufficient in some

16  circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege

17  any *additional* harm beyond the one Congress has identified."  *Spokeo*, 136 S. Ct. at 1549.  The

18  circumstances of the nondisclosure violations alleged here created a material risk of real harm and

19  thus constitute an injury sufficient for constitutional standing purposes.  Plaintiff therefore has

20  standing to pursue his disclosure claims.

21      **B.  Plaintiff's Standing Under the Accuracy Claims**

22      Defendant's standing argument with respect to the accuracy claims is meritless.  The

23  evidence supports a finding that Defendant's OFAC Alert on Plaintiff's credit file prevented him

24  from receiving credit to purchase a car.  Further, he testified that upon discovering that he had an

25  OFAC alert on his file he was "concerned" and "scared" because he "was on the terrorist list."

26  (Dkt. No. 128-14 at 21:24-22:2; 25:1-3.)  If these facts do not constitute concrete injury the Court

27  does not know what does.  Further, an inaccurate OFAC Alert creates a material risk of real harm,

28  such as the emotional distress a consumer may suffer upon learning that he or she has been

7

1   identified as a potential match, or harm to employment or credit prospects.  *See Larson*, 2016 WL

2   4367253 at \*3.  The concrete injury requirement is easily satisfied for the accuracy claims.

3   **II.      Class Member Standing**

4          Defendant next argues that each class member must have suffered a concrete injury and

5   that such an inquiry presents individual questions which render certification inappropriate.  The

6   premise of Defendant's argument—that each class member must have suffered a concrete injury--

7   is wrong.  "In a class action, standing is satisfied if at least one named plaintiff meets the

8   requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc); *see*

9   *also Lewis v.* Casey, 518 U.S. 343, 395 (1996) ("[Unnamed plaintiffs] need not make any

10  individual showing of standing [in order to obtain relief], because the standing issue focuses on

11  whether the plaintiff is properly before the court, not whether represented parties or absent class

12  members are properly before the court.") (internal quotation marks and citation omitted); *Larson*,

13  2016 WL 4367253, at \*4 ("Larson's showing of standing for himself is sufficient to establish

14  standing for the class as a whole.").  Remarkably, Defendant's briefs do not cite the Ninth

15  Circuit's en banc *Bates* decision; instead, it argues that Plaintiff's standing is inadequate because

16  under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), "[n]o class may be

17  certified that contains members lacking Article III standing."  (Dkt. Nos. 198 at 24; 202 at 14.)  At

18  oral argument Defendant suggested that because *Mazza* post-dates *Bates*, it overruled *Bates*.  Not

19  so.

20         "Only the en banc court can overturn a prior panel precedent."  *United States v. Parker*,

21  651 F.3d 1180, 1184 (9th Cir. 2011), *abrogated on other grounds by United States v. Apel*, 134 S.

22  Ct. 1144 (2014).  While a three judge panel "may reexamine normally controlling circuit

23  precedent" where "the reasoning or theory of prior circuit authority is clearly irreconcilable with

24  the reasoning or theory of intervening higher authority," *Miller v. Gammie*, 335 F.3d 889, 892-93

25  (9th Cir. 2003), *Mazza* does not identify any "clearly irreconcilable" intervening higher authority;

26  indeed, *Mazza* does not even cite *Bates*, let alone provide analysis as to why *Bates* had been

27  overruled.  Moreover, even after *Mazza* the Ninth Circuit has continued to cite *Bates*' holding as

28  good law.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014); *see*

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1  also *Torres v. Mercer Canyons Inc*., No. 15-35615, 2016 WL 4537378, at *8 n.6 (9th Cir. Aug.

2  31, 2016) (commenting that *Mazza* only signifies "that it must be possible that class members

3  have suffered injury, not that they did suffer injury, or that they must prove such injury at the

4  certification phase" and citing to *Bates*).

5      *Spokeo* did not alter the well-settled legal principle set forth in *Bates;* it nowhere addresses

6  the question.  Nor did the Supreme Court's decision in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.

7  Ct. 1036 (2016).  *Tyson* did not involve Article III standing requirements in class actions.  Indeed,

8  the *Tyson* Court expressly stated that it was not considering "whether a class may be certified if it

9  contains members who were not injured and have no legal right to any damages."  *Tyson*, 136 S.

10  Ct. at 1049 (internal quotation marks omitted).  The Court did not consider it because the

11  petitioner conceded that the class could be certified even if class members were not injured.  *Id.*

12      Finally, even if each class member was required to show concrete injury, it is satisfied

13  here.  Each class member was incorrectly identified as a potential OFAC match and each received

14  the same allegedly inaccurate disclosures as did Plaintiff.  Thus, regardless of whether the

15  inaccurate credit report was disseminated to a third party, the procedural violations alleged as to

16  each class member "entail a degree of risk sufficient to meet the concreteness requirement."

17  *Spokeo*, 136 S. Ct. at 1550.

18  **CONCLUSION**

19      Plaintiff has suffered a concrete and particularized injury with respect to his disclosure and

20  accuracy claims and therefore has constitutional standing.  Because under long-standing and

21  binding Ninth Circuit precedent class action standing is satisfied if at least one named plaintiff

22  meets standing requirements, the motion to decertify the class on the grounds that the standing

23  inquiry creates individual questions as to each class member fails.  Further, under the particular

24  circumstances of the alleged violations here, each class member has suffered a concrete injury and

25  thus has standing.  The Court therefore DENIES Defendant's Motion to Decertify the Class.

26

27

28

1     This Order disposes of Docket Number 198.

2     **IT IS SO ORDERED.**

3  Dated: October 17, 2016

4

5                                                    JACQUELINE SCOTT CORLEY

6                                                    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California