UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ,<br><br>            Plaintiff,<br><br>   v.<br><br>TRANS UNION, LLC,<br><br>            Defendant. | Case No.12-cv-00632-JSC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 218, 221, 227 & 230 |

Plaintiff contends that between January and July 2011 Trans Union violated three Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681 et seq., requirements: (1) that credit reporting agencies establish "reasonable procedures" to ensure the "maximum possible accuracy" of information provided about consumers under 15 U.S.C. §1681e(b); (2) that credit reporting agencies "clearly and accurately" disclose "all information in the consumers file at the time of [a] request" under § 1681g(a), and (3) that credit reporting agencies provide a statement of consumer rights with each such disclosure under § 1681g(c). Trans Union argues that summary judgment is appropriate on all of Plaintiff's claims because Plaintiff cannot establish that Trans Union willfully violated the FCRA. Because a reasonable jury could find otherwise, summary judgment is inappropriate. The Court declines to reconsider Trans Union's Article III standing arguments as the Court has considered—and rejected—these arguments in multiple previous orders.

**A. Willful Violations under the FCRA**

Plaintiff's FCRA claims are all premised on a "willful" violation. A willful violation entitles a consumer to statutory damages ranging from $100 to $1,000, as well as punitive damages, and attorney's fees and costs. *See* 15 U.S.C. § 1681n. A violation of the FCRA is willful if it is either knowing or reckless. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69. "That is, the defendant must have taken action involving 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Bateman v. American Multi–Cinema*, 623 F.3d 708, 711 n.1 (9th Cir. 2010) (quoting *Safeco*, 551 U.S. at 68). Trans Union contends that its conduct was not willful as a matter of law and therefore it is entitled to summary judgment.

   *1.  Clearly Established Law is not Required*

Trans Union first insists that the FCRA willfulness analysis mirrors qualified immunity; that is, to get to a jury a plaintiff must show that the defendant's conduct violated "clearly established" law—provided by "controlling authority within the Circuit, or an overwhelming body of authority outside the Circuit." (Dkt. No. 218-5 at 28:10-13.) Not so.

First, in *Syed v. M-I, LLC*, 846 F.3d 1034 (9th Cir. 2017), opinion amended and superseded on denial of reh'g, No. 14-17186, ___ F.3d ___, 2017 WL 1050586 (9th Cir. Mar. 20, 2017), the Ninth Circuit considered a question of first impression under the FCRA. In ruling that the defendant's FCRA violation was willful as a matter of law, the court squarely rejected defendant's argument that its "interpretation of the statute [wa]s objectively reasonable in light of the dearth of guidance from federal appellate courts and administrative agencies. *Id.* at *8. Instead, the court held that "[a] lack of guidance [] does not itself render [defendant's] interpretation reasonable." *Id*. "Notwithstanding that we are the first federal appellate court to construe Section 1681b(b)(2)(A), this is not a 'borderline case. An employer 'whose conduct is first examined under [a] section of the act should not receive a pass because the issue has never been decided."

2

1  *Id.* at *9 (quoting *Cortez v. Trans Union*, LLC, 617 F.3d 688 (3d Cir. 2010)).  It follows, then, that a plaintiff need not show that a defendant's conduct violated clearly established law to prove a willful violation of the FCRA.

Second, even apart from *Syed's* controlling holding, no court has held that a defendant can be found to have willfully violated the FCRA only when its conduct violates clearly established law.  *Safeco* did not so hold; instead, after reviewing the FCRA statutory language at issue, the Supreme Court held that given the lack of prior authority interpreting the statute contrary to defendant Safeco's interpretation, and given the statute's ambiguity, Safeco's interpretation of the statute was not reckless as a matter of law.  551 U.S. at 70-71.  In other words, an FCRA defendant's conduct cannot be willful if it involves an objectively reasonable interpretation of the statute *and* there is no prior authority to the contrary.  Such a conclusion is a far cry from holding that the law must first be clearly established that the defendant's conduct violates the FCRA before it can be found willful.  *See Heaton v. Soc. Fin., Inc.*, No. 14-CV-05191-TEH, 2015 WL 6744525, at *6 (N.D. Cal. Nov. 4, 2015) (rejecting defendants' contention "that if a statute is unclear and there is no precedential guidance as to what a valid interpretation may be, a violation may not be considered willful" as an overstatement of *Safeco's* holding). The cases Trans Union relies on are similar to *Safeco*.  For example, in *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), the court described the violation there as not "willful because it consisted of a permissible interpretation of an ambiguous statute" and there were no previous cases to alert the company of its erroneous interpretation.  *Id*. at 639 (*citing Safeco*, 551 U.S. at 68).

### 2. *The Section 1681g Disclosure Claims*

Plaintiff makes two 1681g claims.  First, that when Plaintiff requested his consumer file, that is, his credit report, Trans Union unlawfully failed to disclose that Plaintiff was identified as a potential OFAC match, even though that information was communicated to customers who asked for Plaintiff's credit report. (Dkt. No.  221-25.)  Second, that when Trans Union did disclose to Plaintiff that he is identified as a potential match, Trans Union did not provide Plaintiff with a summary of rights as required by section 1681g(c).  (Dkt. No 221-24.)  Trans Union contends that no reasonable trier of fact could find that it willfully violated either FCRA provision.

### a) 1681g(a) Claim

The FCRA, 15 U.S.C. § 1681g(a), provides in part that "[e]very consumer reporting agency shall, upon request, ... clearly and accurately disclose to the consumer: (1) *All* information in the consumer's file at the time of the request." (emphasis added). Trans Union argues that its conduct was not willful as a matter of law because the FCRA did not require Trans Union to disclose the OFAC Alert to a consumer and, even if it did apply, Trans Union did disclose the information in compliance, or arguable compliance, with the FCRA.

#### i. The FCRA Applies to the OFAC Alert

Trans Union advances two arguments in support of its theory that the FCRA does not apply to OFAC information or its OFAC Alert product. Neither is availing.

First, Trans Union's interpretation of "consumer file" as not including information about a consumer having an OFAC Alert is not objectively reasonable for the reasons explained by the Third Circuit in *Cortez*. The FCRA defines "consumer file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). Trans Union argues that because the OFAC Alert information was not part of its own database, and was instead maintained by Accuity, it was not part of Plaintiff's "consumer file," or at least its interpretation of consumer file as not including information so maintained was not unreasonable. As the *Cortez* court explained, however, Trans Union's interpretation ignores that the FCRA expressly provides that a credit reporting agency has a duty of disclosure to a consumer of all "information on [a] consumer . . . regardless of how the information is stored." 617 F.3d at 711 (quoting 15 U.S.C. § 1681a(g)). Congress did not "intend[] to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a consumer report." *Id.* "Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report." *Id.* Thus, not only is Trans Union's interpretation of "consumer file" as not including OFAC information unreasonable, it was emphatically rejected by the Third Circuit in *Cortez* before the violation at issue in this lawsuit. *Id.* at 712 ("We hold that

4

information relating to the OFAC alert is part of the consumer's 'file' as defined in the FCRA.").

Likewise, Trans Union's second argument that the OFAC information was not required to be disclosed because the OFAC Alert provided to its customers in a consumer report was somehow not part a consumer report is equally unreasonable. Congress unambiguously defined "consumer report" to include a "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used in whole or in part for the purpose in establishing the consumer's eligibility for—(A) credit . . . to be used primarily for personal, family or household purposes." 15 U.S.C. § 1681a(d)(1). Trans Union insists that its OFAC Alert service is just part of "a routine PATRIOT Act identification verification" and should not be used for credit eligibility determinations. (Dkt. No. 218-5 at 30:24.) This interpretation of "consumer report" is objectively unreasonable and was squarely rejected by the *Cortez* court. "It is difficult to imagine an inquiry more central to a consumer's 'eligibility' for credit than whether federal law prohibits extending credit to that consumer in the first instance. The applicability of the FCRA is not negated merely because the creditor/dealership could have used the OFAC Screen to comply with the USA PATRIOT Act, as well as deciding whether it was legal to extend credit to the consumer." *Cortez*, 617 F.3d at 707–08. Further, long before the alleged violation at issue here, OFAC regulations and the Treasury Department's website provided that OFAC information in a credit report is governed by the FCRA. *Cortez*, 617 F.3d at 722; "What Is This OFAC Information On My Credit Report," https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#basic," Questions 70, 71, (last visited March 27, 2017).

Trans Union's interpretation of "consumer file" and "consumer report" contradicts the plain language of the FCRA and at the time of the violation at issue here a federal court had told Trans Union that its interpretation was wrong.

**ii. A Jury Could Find Trans Union Failed to Comply with the FCRA**

Next, Trans Union contends that even if it was required to disclose the OFAC information to consumers upon their request for their consumer report, its disclosure of the OFAC information

in a separate letter to the class members was an objectively reasonable interpretation of the FCRA disclosure requirements and thus not willful. Indeed, beginning in January 2011, if an individual contacted Trans Union to request a credit report and the individual's name had an OFAC Alert, Trans Union would mail the individual a copy of his credit report, and separately mail him a letter stating that his name was a potential match to the OFAC database. Trans Union argues that this was all that was legally required was all that was technologically feasible during the class period as well.

Trans Union's interpretation of the disclosure requirement is not objectively reasonable. The FCRA is unambiguous: if a consumer requests, the credit reporting agency must "clearly and accurately" disclose to the consumer *all* information in the consumer file. *See* 15 U.S.C. § 1681g(a). Trans Union's second letter, however, did not "clearly" disclose that it was providing the consumer with information from the consumer's file; to the contrary, it disclaimed that it was doing so by prefacing its letter by stating that the information was being provided "as a courtesy to you" and not, rather, as required by law. (Dkt. No. 221-24.) It thus created, at best, an ambiguity as to whether the information was in the consumer's file, and thus included on the consumer's credit report, even though Trans Union presented the information to its customers as part of a consumer's credit report. While *Cortez* did not address this issue, the lack of caselaw does not mean that Trans Union's violation cannot be willful. *See Syed*, 2017 WL 1050586, at *9 (finding that the plaintiff stated a claim for a willful violation of the FCRA even though the relevant legal issue presented an issue of first impression). A reasonable jury could find the violation willful.

### b)   1681g(c) Claim

The record also supports a finding that Trans Union violated the FCRA's directive that a consumer reporting agency provide "with each written disclosure by the agency to the consumer" a summary of consumer rights. 15 U.S.C. § 1681g(c)(2). Assuming, as Trans Union contends, that the second letter is such a disclosure, it did not contain the summary of consumer rights. Trans Union's argument that it was reasonable to interpret the statute as being satisfied with the summary being provided with the first disclosure (which did not include any OFAC information) is unreasonable, especially since the second letter did not in any way reference the first letter.

6

1  Trans Union's insistence that it was not technological feasible to do anything more than it did is a

2  question for the jury.  The Court cannot conclude that no reasonable trier of fact could find that

3  Trans Union willfully violated section 1681g(c).

### 3. *Section 1681e(b) Reasonable Procedures Claim*

The FCRA, Section 1681e(b), provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1682e(b).  "Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  Plaintiff argues that Trans Union violated this section by using name-only matching to place on OFAC Alert in a consumer's file.

#### a) Maximum Possible Accuracy of Trans Union's OFAC Alert

Trans Union contends that no jury could find its use of name-only matching violates section 1681e(b) because it advised its customers that they must engage in human review to verify that the OFAC Alert was actually for someone on the OFAC list.  The *Cortez* court, however, rejected a related version of this argument: "We are not persuaded that Trans Union's private contractual arrangements with its clients can alter the application of federal law, absent a statutory provision allowing that rather unique result." *Cortez*, 617 F.3d at 708 (rejecting Trans Union's reliance on language in its contractual agreements wherein "the creditor or subscriber agrees to be 'solely responsible for taking any action that may be required by federal law as a result of a match to the OFAC File, and shall not deny or otherwise take any adverse action against any consumer based solely on TransUnion's OFAC Advisor services.'").

Trans Union also contends that it cannot be found to have acted willfully because following *Cortez* it modified its OFAC Alert to state that an individual's name was a "potential match" rather than just a "match."  Plaintiff counters that the addition of the word "potential" was not a procedure designed to "assure maximum possible accuracy" because three different Trans Union witnesses testified that there was no evidence that *any* Trans Union customer whose file

7

contained an OFAC Alert was in fact an individual on the OFAC list. (Dkt. No. 221-8 at 62:25-63:6; Dkt. No. 221-15 at 67:6-15; Dkt. No. 221-19 at 37:9-13.) Under the FCRA, a credit report is inaccurate or misleading if it is patently incorrect or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (internal citation omitted). A reasonable trier of fact could find that Trans Union's OFAC Alert was misleading given that the evidence supports a finding that none of the consumers flagged as a potential match were in fact a match; in other words, a jury could find that if Trans Union had used more information than just a matching name to flag a consumer—such as a matching birth date—none of the class members would be even a potential match. In addition, that Plaintiff's consumer report did not included the "potential" language supports an inference that Trans Union's procedure did not ensure maximum possible accuracy. (Dkt. No. 221-11.)

Trans Union's insistence that *Cortez* suggested that inclusion of the word "potential" could have defeated liability is not persuasive. *See Cortez*, 617 F.3d at 708-09. That is not how this Court reads *Cortez*. In response to Trans Union's argument that it merely identified Ms. Cortez as a "possible" match, the Third Circuit observed that, in fact, Trans Union identified her as a "match," not someone with a name similar to one on the OFAC list or as a possible match. *Id*. The Third Circuit did not suggest that identifying Ms. Cortez as a possible match would have been sufficient under the FCRA; to the contrary, in the following paragraph the court states that 1681e(b)'s "maximum possible accuracy" standard "requires more than merely allowing for the possibility of accuracy." *Id*. at 709.

Trans Union also insists that there was nothing more that it could have done to ensure the maximum possible accuracy of its OFAC Alert due to technological limitations. There is a material dispute of fact on this issue. Among other evidence, an Experian credit report for Mr. Ramirez during the class period states "NAME DOES NOT MATCH OFAC/PLC LIST." (Dkt. No. 221-22 at ¶ 5 and Ex. B.[1]) Further, that Trans Union removed the OFAC Alert of each class

---

[1] Although Trans Union objects to the Bhatia Affidavit, its objections relate to other portions of his declaration and not those cited here. (Dkt. No. 227-4 at 21.)

member who contacted Trans Union following receipt of the OFAC letter creates a dispute as to Trans Union's infeasibility argument. It is for the jury, not the Court, to weigh the reasonableness of Trans Union's procedures. *See Guimond*, 45 F.3d at 1333.

### B.   Trans Union's Other Arguments

The Court declines to consider Trans Union's other arguments in favor of summary judgment as these are a rehash of the same Article III standing arguments which the Court previously rejected.

## CONCLUSION

For the reasons stated above, and at oral argument on March 22, 2017, Trans Union's motion for summary judgment is DENIED.

Trans Union's objections to Plaintiff's evidence are denied as moot. The Court did not rely on any of the objected to evidence in reaching its decision here. Likewise, Plaintiff's motion for leave to file a sur-reply is DENIED as moot as the Court did not rely on any expert testimony in reaching its decision here. (Dkt. No. 230.)

This Order disposes of Docket Nos. 218, 221, and 227. The parties' related administrative motions to seal are DENIED WITHOUT PREJUDICE to Trans Union's submission of a narrowly tailored request for sealing that comports with Local Rule 79-5 and the requirements for sealing in the dispositive motion context. Trans Union shall file its renewed motion to seal by April 5, 2017.

**IT IS SO ORDERED.**

Dated: March 27, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge