UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ, <br> Plaintiff, <br> v. <br> TRANS UNION, LLC, <br> Defendant. | Case No.12-cv-00632-JSC <br><br> **ORDER RE: ADMINISTRATIVE MOTION TO SEAL** <br><br> Re: Dkt. No. 236 |

This class action revolves around a service Defendant Trans Union, LLC provides to its customers which identifies persons whose names match individuals (known as Specially Designated Nationals or SDNs) on the United States government's list of terrorists, drug traffickers, and others with whom Americans are prohibited from doing business. The service is known as an OFAC Name Screen Alert or OFAC Alert. At particular issue in this case are Trans Union's business practices during a six month period from January to July 2011. The Court recently denied Trans Union's Motion for Summary Judgment and the accompanying administrative motions to file portions of the briefs, declarations, and exhibits thereto under seal. (Dkt. No. 233.) The Court concluded that Trans Union had failed to demonstrate that sealing was appropriate, but granted Trans Union leave to submit a new sealing request which is narrowly tailored and comported with Local Rule 79-5 and the requirements for sealing in the dispositive motion context. Trans Union's renewed administrative motion to seal and Plaintiff's opposition thereto are now pending before the Court. (Dkt. Nos. 236 & 237.) The Court grants the motion in part and denies the motion in part as set forth below

## LEGAL STANDARD

There is a presumption of public access to judicial records and documents. *Nixon v.*

*Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). A party must demonstrate "compelling reasons" to seal judicial records attached to a dispositive motion. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Examples of compelling reasons include "the use of court records for improper purposes," such as "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id*. "[S]ources of business information that might harm a litigant's competitive strategy" may also give rise to a compelling reason to seal, *Nixon v. Warner Comm'cns, Inc*., 435 U.S. 589, 597 (1978), as may pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage, *see Apple Inc. v. Samsung Elecs. Co*., 727 F.3d 1214 (Fed. Cir. 2013). The "compelling reasons" standard is a strict one. *Kamakana*, 447 F.3d at 1184. "An unsupported assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use th[e] information to obtain an unfair advantage' is insufficient." *Ochoa v. McDonald's Corp*., No. 14-CV-02098-JD, 2015 WL 3545921, at *1 (N.D. Cal. Jun. 5, 2015) (quoting *Hodges v. Apple, Inc*., No. 13–cv–01128–WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013)). The court must "balance the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179 (internal citation and quotation marks omitted); *see also Apple Inc. v. Psystar Corp*., 658 F.3d 1150, 1162 (9th Cir. 2011), cert. denied, 132 S.Ct. 2374 (2012).

In addition, parties moving to seal documents must comply with the procedures set forth in Civil Local Rule 79–5. The rule permits sealing only where the parties have "establishe[d] that the document or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79–5(b). It requires the parties to "narrowly tailor" their requests only to the sealable material. *Id*. at 79–5(d). Thus, although sometimes it may be appropriate to seal a document in its entirety, whenever possible a party must redact. *See Kamakana*, 447 F.3d at 1183 (noting a preference for redactions so long as they "have the virtue of being limited and clear"); *Murphy v. Kavo Am. Corp*., 11–cv–00410–YGR, 2012 WL 1497489,

at *2–3 (N.D.Cal. Apr. 27, 2012) (denying motion to seal exhibits but directing parties to redact confidential information). Whatever the basis, the court "must articulate [the] reasoning or findings underlying its decision to seal." *Apple Inc.*, 658 F.3d at 1162.

## DISCUSSION

The Court previously granted in part and denied in part two motions to seal filed in support of the parties' class certification briefing. (Dkt. Nos. 121 & 126.) Trans Union then filed motions to seal in connection with the parties' summary judgment briefing which relied in large part on these prior orders as the basis for sealing. (Dkt. Nos. 218, 221, and 227.) At the hearing on the motion for summary judgment, the Court denied Trans Union's motions to seal without prejudice to renewal. In doing so, the Court noted that Trans Union had not come close to meeting the compelling need standard and denied the motion without prejudice to Trans Union submitting a narrowly tailored revised motion with supporting declarations. (Dkt. No. 239 at 29:5-31:21.)

Trans Union's renewed motion to seal fails to comport with the Court's explicit instruction to **narrowly tailor** its request for sealing. As with Trans Union's prior motions to seal, it proposes sealing of large swaths of the parties' summary judgment briefing, Trans Union's expert reports, and deposition testimony regarding Trans Union's matching procedures during the class period. Indeed, of the 20 exhibits submitted with the summary judgment briefing that Trans Union seeks to seal in whole or part, 15 have the exact same proposed redactions, which in the case of the expert reports, include large sections of the opinions. Further, while Trans Union has omitted a line here and there, it has also inexplicably added material to its sealing motion— material which it did not previously seek to seal, and which as a result, it already filed on the public docket. *Compare* Dkt. No. 236 at 6:22 (seeking sealing of 81:15-89) *with* 222 at 4:6 (seeking sealing of 81:15, 82, 86-89); *Compare* Dkt. No. 236 at 8:2 (seeking sealing of page 14 of the opposition at lines 19-20) *with* Dkt. No. 221-3 at page 14 (redacted version of opposition brief with lines 19-20 unredacted, redacting instead lines 6-10 and 23-25); *Compare* Dkt. No. 236 at 8:8 (seeking sealing of page 31, lines 3-7) *with* Dkt. No. 221-3 at page 31 (no redactions).

Trans Union has also failed to tie *any* of its arguments or declarations to *any* particular documents. Instead, Trans Union apparently makes its trade secret and intellectual property

3

arguments as to all 20 documents which it seeks to seal and the briefs themselves. This fails to satisfy the rigorous compelling reasons standard. "Simply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden." *Kamakana*, 447 F.3d at 1179.

Further, Trans Union's motion fails to provide specific and compelling reasons in support of its request for sealing. Indeed, while Trans Union has marginally flushed out its trade secret and intellectual property arguments, it has failed to make a particularized showing regarding *what* the trade secret or intellectual property actually is. Instead, Trans Union argues that release of the information "would allow competitors to gain an unearned insight into TransUnion's product development strategies and Accuity's software development over time." (Dkt. No. 236 at 10:15-16.) But neither the motion nor the attached declaration of Trans Union Vice President Michael O'Connell show what information or what trade secret it is particularly trying to protect. Instead, Mr. O'Connell generically attests that "[t]he materials are extremely valuable to Trans Union because they contain discussions about consumer disputes and related policies and procedures, descriptions of the structure and functioning of Trans Union's OFAC product, details regarding TransUnion's internal systems processes and descriptions of TransUnion's work with third party service provider, Accuity, to modify its OFAC product." (Dkt. No. 236-3 at ¶ 3.) Likewise, while Mr. O'Connell attests that the documents contain "important technical details regarding the operation and programming of the relevant technology," he does not identify which of the 20 exhibits actually contain technical details and no technical or programming information is apparent upon the court's review of the exhibits. Nor does Mr. O'Connell's declaration state how a competitor could use this information, most of which is old as it pertains to Trans Union's practices before and during the class period in 2010-2011. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW NC, 2013 WL 3014138, at *2 (N.D. Cal. June 17, 2013) ("This document is eight years old, and NCAA fails to articulate what specific harm an outdated document will have on its current or future operations.")

At oral argument, Trans Union suggested that it was concerned about "maintaining the details of how the algorithm works today." (Dkt. No. 239 at 30:2-4.) But an algorithm is "a step-

4

by-step procedure for solving a problem or accomplishing some end especially by a computer." MERRIAM–WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/algorithm (lasted visited April 26, 2017); *Dudum v. Arntz*, 640 F.3d 1098, 1107 n.16 (9th Cir. 2011) ("An algorithm is any well-defined computational procedure that takes some value, or set of values, as input and produces some value, or set of values, as output. An algorithm is thus a sequence of computational steps that transform the input into the output.") (internal citation and quotation marks omitted). That Trans Union uses an individual's name and date of birth to generate its OFAC Alert is neither a "step-by-step procedure" nor a "defined computational procedure."

Trans Union has thus failed to demonstrate that this information is trade secret. *See, e.g.*, *Hodges v. Apple, Inc.*, No. 13-cv-01128-WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013)( "[a]n unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient."); *Welle v. Provident Life & Accident Ins. Co.*, No. 3:12–cv–3016 EMC (KAW), 2013 WL 6055369, at *2 (N.D. Cal. Nov. 14, 2013)( "although [defendant] identifies the information at issue as proprietary and confidential, it does not provide reasons beyond the boilerplate references to competitive disadvantage if the information were publicly available."); *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. 12–cv–1971–CW, 2013 WL 4049686, at *1 (N.D. Cal. Aug. 8, 2013) (denying sealing where party "failed to state what harm [it] would experience if this material were publicly disclosed or to provide any specific reasons, supported by facts, that could outweigh the public policy favoring public access to court filings.").

Likewise, the Declaration of Brent Newman, the Executive Vice President of third-party Accuity, fails to show how the information contained in the exhibits constitutes Accuity's trade secrets. (Dkt. No. 236-1.) Mr. Newman attests that the portions of his deposition testimony cited by the parties and their experts, and attached to the summary judgment briefing, "concern Accuity's internal systems processes, policies and procedures, and matching logic which are strictly confidential and proprietary" because a "competitor could use these processes and procedures to duplicate for their customers, the data products and solutions Accuity provides to its

5

United States District Court
Northern District of California

subscriber." (*Id*. at ¶ 12.) A review of Mr. Newman's deposition testimony, however, fails to reveal information that would provide a competitor specific insight into how to replicate Accuity's software—that Accuity uses rules and filtering technology is not a trade secret. What exactly each of the rules and filters are and how they operate might be, but Mr. Newman's deposition testimony did not contain that level of specificity. Information regarding the name of Accuity's product and its features (i.e., the type of matching it provides) is a far cry from the sort of technical information which a competitor would need to replicate Accuity's products. The same is true with respect to information regarding Accuity's customer relations policies and practices. The deposition testimony does not contain specific information regarding Accuity's customer relations and polices; that Accuity attempts to respond to customer needs on an individualized basis is not a competitive secret. Finally, as with Trans Union's claim of trade secret, the information regarding Accuity's products is likewise stale as it relates to Accuity's systems six to seven years ago.

Finally, Trans Union's renewed motion to seal advances an entirely new argument suggesting that "keeping the details of Trans Union's structure and functioning confidential is of paramount importance" because if the information was "made publicly available, there is a risk that an SDNs could avoid delivery of a valid result." (Dkt. No. 236 at 10:25-26, 11:4-5.) Trans Union, however, offers no evidence which suggests that there is any actual risk that a SDN could figure out how to game the system based on the type of non-particularized information contained in the parties' summary judgment briefing.

Thus, as discussed in more detail below, the Court largely denies Trans Union's motion to seal except where the request has been narrowly tailored to only seek sealing of material that satisfies the "compelling reasons" standard.

***

Trans Union seeks to seal portions of its motion for summary judgment (Dkt. No. 218-5), exhibits to the Declaration of Stephen J. Newman (Dkt. No. 218-6), Plaintiff's Opposition brief (Dkt. No. 221-4), exhibits to the Declaration of John Soumilas (Dkt. No. 221-5), Trans Union's Reply brief (Dkt. No 227-4), and exhibits to the Second Declaration of Stephen J Newman (Dkt. No. 227-5). Trans Union has resubmitted all these documents with its renewed motion to seal and

filed the exhibits submitted with the moving papers, opposition, and reply collectively under one exhibit, the labeling of which corresponds to the exhibit labels used for the documents attached to the original Newman and Soumilas Declarations. Because the Court's order denying Trans Union's motion for summary judgment referred to the originally filed motion and exhibits, the Court has included citation to both versions of the documents below although it notes that they are largely identical.

**1. Jaco Sadie Expert Report, Exhibit A, Dkt. Nos. 218-8/221-37/236-7**

Trans Union seeks sealing of portions of the Sadie Report which address Accuity's Synonyms product and changes Trans Union made to its OFAC Alert product prior to and following the class period. Trans Union has failed to demonstrate compelling reasons for sealing these portions of the Sadie Report. In particular, Trans Union has offered no specific showing as to how it would be competitively disadvantaged through disclosure of this information, much of which is no longer relevant because Trans Union by its own admission no longer uses Accuity's Synonym's product. The "compelling reasons" standard is a strict one. "An unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient." *Hodges v. Apple, Inc.*, No. 13–cv–01128–WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) (internal quotation marks and alterations omitted). In addition, as discussed above, Accuity has likewise failed to demonstrate that information regarding Accuity referenced in the Sadie Report reveals Accuity's trade secrets or other confidential information.

**2. Francine Cronshaw Expert Report, Exhibit A, Dkt. Nos. 218-8/236-7**

Trans Union seeks sealing of portions of Ms. Cronshaw's expert report which address how Trans Union's OFAC Name Screen Alert product worked during the class period. As with the portions of the Sadie Report that Trans Union seeks to seal, Trans Union has failed to offer any specifics as to how Trans Union would be competitively disadvantaged through disclosure of *this* information. Such a showing is particularly important here as Ms. Cronshaw's testimony relates to how Trans Union's product worked in 2011, not how it works now. "[A] party's allegations that material is "confidential" or "business information" are insufficient to justify sealing court

7

records containing such material unless the party proves the existence of compelling reasons for sealing." *PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2014 WL 4722326, at *2 (D. Ariz. Sept. 23, 2014). Trans Union's generic claim that this information is confidential, proprietary business information and trade secret fails to do so.

**3. Sadie Rebuttal Expert Report, Exhibit B, Dkt. Nos. 218-10/221-37/236-9**

This exhibit contains the Rebuttal Expert Report of Jaco Sadie. For the reasons previously stated with respect to the original Sadie Report, this information is not subject to sealing.

**4. Declaration of Denise Briddell, Exhibit E, Dkt. Nos. 218-14/236-11**

Ms. Briddell is the Director of Policy Management and Quality Services for Trans Union. In her declaration she sets out dispute activity by month for 2011 and 2012. Trans Union seeks sealing of the per month numbers and the attached table reflecting the same. The number of customer disputes is not confidential or trade secret, and thus, is not properly sealable.

**5. Declaration of Michael O'Connell, Exhibit H, Dkt. Nos. 218-19/236-13**

The portion of the O'Connell Declaration which Trans Union seeks to seal addresses Accuity's Synonyms data. For the reasons stated above, this is not subject to sealing.

**6. Declaration of Michael O'Connell II, Exhibit I, Dkt. Nos. 218-21/236-15**

Trans Union previously filed this declaration—in its entirety—on the public docket, *see* Dkt. No. 181. The portion now sought to be sealed involves Trans Union's incorporation of date-of-birth matching into its OFAC matching protocol in September 2014. That Trans Union now includes date-of-birth in its matching protocol and the date that it began doing so is not confidential business information. Moreover, Trans Union previously disclosed such information.

**7. Declaration of Michael O'Connell III, Exhibit J, Dkt. Nos. 218-23/236-17**

The portions of the O'Connell III Declaration which Trans Union seeks to seal likewise involve Accuity's Synonyms product and whether Accuity was going to develop a date-of-birth matching program post-*Cortez*. This information is not sealable for the same reasons discussed above.

**8. Declaration of Lynn Romanowski, Exhibit K, Dkt. Nos. 218-25/236-19**

It is unclear what Trans Union seeks to seal from this declaration as it refers to the "non-

8

bolded information." The highlighted portions of the Romanowski declaration contain personal information regarding Plaintiff including his credit score and address, and are thus properly sealable. The remainder of the declaration is not. As for the exhibits, Trans Union requests sealing of Exhibits A and B. Exhibit A, however, is illegible. The Court cannot make a determination about sealing a document it cannot read. The request for sealing of Exhibit A is therefore denied. Exhibit B contains Mr. Ramirez's credit report which Plaintiff has also filed as an exhibit, *see* Dkt. No. 221-11. The credit report at Exhibit B may be redacted to match Docket No. 221-1; that is, redacting only Mr. Ramirez's social security number, current address, and date of birth.

**9. Declaration of Peter Turek, Exhibit L, Dkt. Nos. 218-27/236-21**

Trans Union has narrowed its request for sealing of Exhibit A, titled "OFAC Advisor Amendment to Reseller Service Agreement" which is an agreement between Trans Union and Open Dealer Exchange. The redacted line is properly sealable because it contains pricing information, disclosure of which could competitively disadvantage Trans Union. Trans Union's motion is granted as to Exhibit L.

**10. Deposition of Brent Newman, Exhibit M, Dkt. Nos. 218-29/226-23**

Trans Union seeks sealing of portions of several pages of testimony regarding Accuity's Synonyms product and Accuity's reasoning behind not including date of birth matching in its product. This deposition testimony is not entitled to sealing for the reasons discussed above; namely, that Accuity has failed to show that the information is sufficiently specific so as to reveal any trade secret or otherwise confidential information, and even if it did, the information is stale as it is seven years old.

**11. Deposition of Annette Coito, Exhibit O, Dkt. Nos. 218-32/226-25**

Trans Union has narrowed its request for sealing to only include portions of Exhibits 4 & 5 to Ms. Coito's deposition which are Dealertrack pricing and service agreements. The redacted information is narrowly tailored to only seek sealing of pricing information, disclosure of which could competitively disadvantage Trans Union. Trans Union's motion is granted as to Exhibit O.

**12. Deposition of Robert Lytle, Exhibit S**, **Dkt. Nos. 218-38/236-27**

Trans Union seeks sealing of several pages of Mr. Lytle's deposition. These pages are not sealable. They do not disclose confidential business practices, but rather, information at the heart of this case regarding how Trans Union obtains, processes, and corrects OFAC data. The testimony is general rather than technical in nature and thus does not reveal confidential information regarding Trans Union's systems.

**13. Deposition of Michael O'Connell, Exhibit T, Dkt. Nos. 218-40/221-8/236-29**

The testimony Trans Union seeks to seal largely involves Accuity's Synonyms product and Trans Union's decision-making regarding the use of date-of-birth matching post-*Cortez*. This information is not confidential for the reasons previously stated.

**14. Deposition of Sergio Ramirez, Exhibit U, Dkt. Nos. 218-42/236-31**

Trans Union states that it seeks sealing of only the address information in Exhibits 6, 7, and 8 to Mr. Ramirez's deposition, but nearly all of these exhibits have been redacted. Only the address information is sealable. Trans Union may file a corrected version under seal.

**15. Soumilas Declaration, Exhibit 7, Dkt. Nos. 221-17 /236-33**

This document is a Trans Union PowerPoint entitled "Additional OFAC Hit Analysis." As Trans Union has not explained how this six-year old information contains confidential, proprietary information which would competitively harm Trans Union if disclosed, the request for sealing is denied.

**16. Deposition of Colleen Gill, Exhibit 8, Dkt. Nos. 221-19/ 236-35**

Trans Union seeks sealing of portions of Ms. Gill's testimony regarding the process by which Trans Union verifies whether a consumer is on the Department of Treasury's OFAC SDN list and removes those who are not from Trans Union's OFAC Alert. This information does not reveal confidential business practices, nor is it proprietary and the mechanics of this process are a key issue in this action. Sealing is thus inappropriate.

**17. Soumilas Declaration, Exhibit 15, Dkt. Nos. 221-27/236-37**

This exhibit contains two emails regarding the feasibility of improving matching for Trans Union's OFAC Alert. This information does not reveal confidential business practices, nor is it

proprietary and the mechanics of this process are a key issue in this action. Sealing is thus inappropriate.

**18. Soumilas Declaration, Exhibit 16, Dkt. Nos. 221-29/236-39**

This exhibit contains an email string regarding development of the OFAC Alert product in September 2010. To the extent that Trans Union's numerical designator for the product is confidential, Trans Union may redact that numerical designation. The remainder of the emails do not reveal confidential business practices or proprietary information and the development of Trans Union's OFAC Alert is a key issue in this action. Sealing is thus inappropriate. The motion is granted only as to the numerical designation for the OFAC Alert product in Exhibit 16.

**19. Soumilas Declaration, Exhibit 17, Dkt. Nos. 221-31/236-41**

This exhibit consists of two emails regarding how customer relations will handle disputes with OFAC Alerts in October 2010. These emails do not reveal confidential business practices, nor proprietary information. Sealing is thus inappropriate.

**20. Soumilas Declaration, Exhibit 18, Dkt. Nos. 221-33/236-43**

This exhibit consists of two emails regarding how Trans Union planned to handle consumer OFAC disputes in September 2010. The information contained in these emails is not confidential or proprietary. Sealing is not appropriate.

**21. The Parties' Briefs**

Because the Court has denied Trans Union's request for sealing with respect to almost all of the 20 exhibits which it seeks to file under seal, there is no basis for sealing the parties' briefs discussing the same matters.

**CONCLUSION**

For the reasons stated above, Trans Union's renewed motion to seal is DENIED IN PART AND GRANTED IN PART. The motion is granted as to the following:

- Dkt. No. 236-19, Portions of the Declaration of Lynn Romanowski and Exhibit B as stated above.
- Dkt. No. 236-21, Portions of Exhibit A to the Turek Declaration.
- Dkt. No. 226-25, Portions of Exhibits 4 & 5 to the Coito Deposition.

11

- Dkt. No. 236-31, Exhibits 6, 7, and 8 to the Deposition of Sergio Ramirez may be redacted to file the current address information under seal.
- Dkt. No. 236-39, Soumilas Declaration, Exhibit 16, only as to the numerical designator.

In all other respects, the motion to seal is DENIED.

This matter is set for trial June 12, 2017 with the Pretrial Conference on May 18, 2017. Trans Union should be mindful of the Court's rulings with respect to its pretrial filings—**any further motions to seal must strictly comply with the requirement that such motions be narrowly tailored and satisfy the rigorous compelling reasons standard.**

This Order disposes of Docket No. 226.

**IT IS SO ORDERED.**

Dated: May 1, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge