STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (State Bar No. 083013)
STEPHEN J. NEWMAN (State Bar No. 181570)
JASON S. YOO (State Bar No. 261114)
CHRISTINE E. ELLICE (State Bar No. 276181)
2029 Century Park East
Los Angeles, CA 90067-3086
Telephone:  310-556-5800
Facsimile:   310-556-5959
Email: lacalendar@stroock.com

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY
BRUCE S. LUCKMAN (Admitted Pro Hac Vice)
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone:    856-662-0700
Email: bluckman@shermansilverstein.com

Attorneys for Defendant
    TRANS UNION LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>Defendant. | Case No. 3:12-cv-00632-JSC<br><br>Assigned to the Honorable Jacqueline Scott Corley<br><br>**DEFENDANT TRANS UNION LLC'S MOTION *IN LIMINE* NO. 4:**<br><br>**TO STRIKE PUNITIVE DAMAGES CLAIMS AND PRECLUDE ALL REFERENCE TO PUNITIVE DAMAGES AT TRIAL**<br><br><u>Hearing</u><br>Date:  May 18, 2017<br>Time:  2:00 p.m.<br>Place:  Courtroom F |

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

## NOTICE OF MOTION AND MOTION

**TO THE COURT, PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on May 18, 2017, at 2:00 p.m., or as soon thereafter as counsel may be heard before the Honorable Jacqueline Scott Corley in Courtroom F of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Trans Union LLC ("TransUnion") will and hereby does move the Court for an order granting TransUnion's Motion *in Limine* No. 4 to strike Plaintiff's punitive damages claims and to preclude all references to punitive damages at trial.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file herein, on such further papers as may be filed in connection with this Motion, and on such other evidence and arguments as may be presented to the Court prior to or at the hearing of this Motion.

Dated:  May 11, 2017

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
STEPHEN J. NEWMAN
JASON S. YOO
CHRISTINE E. ELLICE

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY
BRUCE S. LUCKMAN (Admitted <u>Pro</u> <u>Hac</u> <u>Vice</u>)

By:  */s/ Stephen J. Newman*
Stephen J. Newman

Attorneys for Defendant
TRANS UNION LLC

LA 52079621

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND BACKGROUND

Plaintiff filed a class claim alleging that between January and July 2011, TransUnion's Name Screen product was sold in a manner that violated two aspects of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"):  provisions governing how credit file information must be disclosed to consumers (15 U.S.C. §§ 1681g(a), (c)) and the provision requiring that a "consumer reporting agency" ("CRA") employ reasonable procedures designed to assure that consumer reports are prepared with maximum possible accuracy (15 U.S.C. § 1681e(b)).  The Court certified a class of 8,192 consumers (the "Class") who received a disclosure from TransUnion in a format that allegedly violated the FCRA.  Plaintiff and the Class seek to recover between $100 and $1,000 per consumer on the grounds that TransUnion willfully violated the FCRA's requirements.  Additionally, Plaintiff and the Class seek punitive damages and costs and attorneys' fees as relief for the FCRA claims.  See 15 U.S.C. § 1681n.

TransUnion now seeks to strike Plaintiff's punitive damages claim and to preclude all references to punitive damages at trial.  It is the province of the Court to determine whether punitive damages are proper.  Rejection of Plaintiff's punitive damages is warranted because Plaintiff lacks evidence sufficient to result in a finding of conduct so extreme as to merit punitive damages above and beyond any statutory damages award.

### II.    ARGUMENT

Plaintiff may request punitive damages as the Court may allow.  See Thornton v. Equifax, Inc., 619 F.2d 700, 705 (8th Cir. 1980); see also Barcey v. La Beau, Inc., No. CIV. 14-10249, 2015 WL 669394, at *4 (E.D. Mich. Feb. 17, 2015) (finding that punitive damages were not warranted in a Fair and Accurate Credit Transactions Act ("FACTA") case because defendant did not continue to issue receipts after it was required to pay damages); Clymer v. Discover Bank, No. EDCV 10-01526 VAP, 2011 WL 3319542, at *4 (C.D. Cal. July 29, 2011) (granting defendant's motion to dismiss as to punitive damages claims under the FCRA); Yasin v. Equifax Info. Servs., LLC, No. C-08-1234 MMC, 2008 WL 2782704, at *4 (N.D. Cal. July 16, 2008).  As several courts have recognized, punitive damages awarded under Section 1681n are within the discretion of the court,

but the violation must have been willful.  See Torossian v. Vitamin Shoppe Indus., No. CV 07-0523 ODW SSX, 2007 WL 7648594, at *1 (C.D. Cal. Aug. 8, 2007); Natale v. TRW, Inc., No. C 97-3661 CRB, 1999 WL 179678, at *8 (N.D. Cal. Mar. 30, 1999) (granting defendants' motions for summary judgment on plaintiff's claims for willful violations of the FCRA).

The threshold to permit punitive damages is high.  A jury is not required to award punitive damages, nor is a court required to permit such an award.  A jury may award punitive damages only if it unanimously finds that TransUnion willfully violated a provision of the FCRA and that such conduct was "malicious, or in reckless disregard of plaintiff's rights."  O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 2:1; see also O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr., 6th ed. § 153:71.  Thus, the standard for awarding punitive sanctions is higher than the statutory damages available under the "knowing" standard established in Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007).  Such sanctions should be reserved for truly egregious misconduct—this is not the present case, especially when viewed in light of Plaintiff's sparse evidence.  See Exxon Shipping Co. v. Baker, 554 U.S. 471, 515 (2008) (reducing punitive damages from $2.5 billion to $507.5 million because the reduced award represented a "fair upper limit"); see also BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996) (finding that BMW's conduct was not "sufficiently egregious" to justify severe punitive damages); Parker v. Time Warner Entm't Co., L.P., 331 F.3d 13, 22 (2d Cir. 2003).

Plaintiff has not proffered sufficient evidence to justify punitive damages in this case because he has not demonstrated that TransUnion acted with "complete indifference" to Plaintiff or the Class' rights; nor has he provided evidence that TransUnion acted "in the face of a perceived risk" that Plaintiff's rights would be violated under the FCRA.  O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 2:1.  Plaintiff is not entitled to punitive damages because he has provided no evidence to suggest that TransUnion acted with "ill will, or spite, or [] for the purpose of injuring another"; such evidence is required to demonstrate "malicious" conduct.  Id. TransUnion's alleged conduct, and evidence in support thereof, does not meet the degree of reprehensibility required for this Court to permit the jury to award punitive damages.  Without any actual harm, potentially crushing punitive damages should not be available to the jury.  See, e.g.,

- 2 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Trans Union LLC v. Fed. Trade Comm'n, 536 U.S. 915, 917 (2002) (Kennedy, J., dissenting from denial of writ of certiorari) (observing that, where a petitioner faced "a series of class actions brought under the FCRA, allegedly on behalf of the 190 million individuals . . . [it] face[d] potential liability approaching $190 billion").  Unbounded punitive damages, available in addition to statutory damages in the absence of actual economic harm, results in "grossly excessive or arbitrary punishments."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003); see also London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (observing that, under such circumstances where the plaintiff suffered no economic harm, "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff.").

To date, Plaintiff  has not provided any evidence that TransUnion either knew that it was violating clearly-established law, or that  TransUnion acted with complete indifference as to Plaintiff and the Class' rights.  Plaintiff has provided no evidence that TransUnion disregarded or attempted to evade its statutory obligations under the FCRA.  Moreover, as Plaintiff admits, TransUnion's conduct that allegedly violated the FCRA in 2011 has ceased.  (See Dkt. No. 221-3.) Therefore, punitive damages should not be permitted because the very purpose of awarding such damages no longer exists—that is to punish a defendant in order to deter it from committing similar acts in the future.  Accordingly, Plaintiff's claim for punitive damages should be dismissed.

With respect to Plaintiff's claims under Sections 1681g(a) and (c), TransUnion attempted to disclose all information that it was legally required to disclose, and it employed a format designed to inform consumers effectively.  Thus, such conduct does not warrant permitting punitive damages claims to persist through trial.  And with respect to Plaintiff's claims under Section 1681e(b), TransUnion made several documented efforts to achieve what was technologically feasible at the time to achieve the maximum possible accuracy standard; these efforts were part of an effort to comply with the FCRA and achieve its goals, not to evade them.  If there was any violation of the FCRA by TransUnion (which there was not), such conduct certainly did not rise to the level of willfulness required to assert punitive damages under the FCRA.  Therefore, punitive damages should be dismissed prior to trial.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

- 3 -

LA 52079621

In addition to a lack of evidence proffered by Plaintiff, evidence of punitive damages is irrelevant until a finding of willfulness is made by the jury. Indeed, a proper jury instruction on punitive damages would be necessary should the jury find that TransUnion willfully violated a provision of the FCRA, but not until such a finding is made. However, the jury's sole duty at trial is to determine whether TransUnion violated Sections 1681g(a), 1681g(c) and/or 1681e(b) of the FCRA with respect to every single member of the Class. A determination as to willfulness is markedly different than a determination of whether to award punitive damages in excess of statutory damages. See White v. Ford Motor Co., 500 F.3d 963, 974 (9th Cir. 2007) (finding that "[u]nlike the initial damage calculation," which is reserved for the jury, determining the proper amount of a punitive damage award is a "question of law, properly reserved for the court"); see also Bains LLC v. Arco Prods. Co., 405 F.3d 764, 777 (9th Cir. 2005) (holding that "[t]he [constitutional] level of punitive damages is not a finding of 'fact' that must be determined by the jury; it may be determined de novo by the court"). Given that Plaintiff lacks evidence that TransUnion willfully violated provisions of the FCRA and that evidence of punitive damages is unnecessary as to a determination of willfulness, Plaintiff's claims for punitive damages should be excluded.

### III.     CONCLUSION

For the foregoing reasons, TransUnion respectfully requests that the Court grant its Motion *in Limine* No. 4 to strike Plaintiff's punitive damages claims and to preclude all references to punitive damages at trial.

Dated:  May 11, 2017

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
STEPHEN J. NEWMAN
JASON S. YOO
CHRISTINE E. ELLICE

SHERMAN, SILVERSTEIN, KOHL, ROSE &
PODOLSKY
BRUCE S. LUCKMAN (Admitted Pro Hac Vice)


By: _____ /s/ Stephen J. Newman _____
                    Stephen J. Newman

Attorneys for Defendant
        TRANS UNION LLC

DEFENDANT TRANS UNION LLC'S MOTION IN LIMINE NO. 4
CASE NO. 3:12-CV-00632-JSC

LA 52079621

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

## CERTIFICATE OF SERVICE

I hereby certify that, on May 11, 2017, a copy of the foregoing **DEFENDANT TRANS UNION LLC'S MOTION IN LIMINE NO. 4:  TO STRIKE PUNITIVE DAMAGES CLAIMS AND PRECLUDE ALL REFERENCE TO PUNITIVE DAMAGES AT TRIAL** was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by facsimile to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's EM/ECF System.

*/s/ Stephen J. Newman*
Stephen J. Newman

DEFENDANT TRANS UNION LLC'S MOTION IN LIMINE NO. 4
CASE NO. 3:12-CV-00632-JSC

LA 52079621

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>Defendant. | Case No. 12 cv-00632-JSC<br><br>Class Action<br><br>**[PROPOSED] ORDER DENYING DEFEDANT TRANS UNION, LLC'S MOTION *IN LIMINE* NO. 4** |

**THIS MATTER** having been brought before this Court on Defendant's Motion *in Limine* No. 4 To Strike Punitive Damages Claims And Preclude All Reference To Punitive Damages At Trial, and the Court having read all papers, and for good cause shown,

**IT IS** on this _____ day of _____, 2017, **ORDERED** that Defendant's Motion *in Limine* No. 4 is **DENIED.**  The jury will be instructed on willfulness, statutory damages and punitive damages and will be allowed to decide these issues.


**IT IS SO ORDERED.**


Dated: _____

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

Andrew J. Ogilvie (SBN 57932)
Carol M. Brewer (SBN 214035)
Anderson, Ogilvie & Brewer LLP
1736 Stockton Street, Ground Floor
San Francisco, CA  94133
T: (415) 651-1952
andy@aoblawyers.com
carol@aoblawyers.com

James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Francis & Mailman, P.C.
Land Title Bldg, Suite 1902
100 South Broad Street
Philadelphia, PA  19110
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com

*Attorneys for Plaintiff, Sergio L. Ramirez*
*And the Certified Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>Defendant. | Case No. 12 cv-00632-JSC<br><br>**PLAINTIFFS' RESPONSE TO TRANS UNION'S MOTION *IN LIMINE* NO. 4**<br><br>Hearing Date:  May 18, 2017<br>Courtroom:  F<br>Time:  2:00 p.m. |

Plaintiff and the Certified Class, through undersigned counsel, hereby oppose Trans Union's Motion *In Limine* No. 4 To Strike Punitive Damages Claims And Preclude All Reference To Punitive Damages At Trial.  The motion is contrary to the statute and established law.  None of the cases cited by Trans Union support this motion.  Trans Union is unable to cite a single decision

in which a court has allowed a jury to decide an FCRA willfulness claim but denied the jury the right to decide punitive damages. The jury should decide whether Trans Union willfully violated the Fair Credit Reporting Act ("FCRA") and, if so, whether punitive damages are warranted and the amount thereof -- as has been done in numerous FCRA cases including *Cortez*.

The FCRA provides that any person who willfully fails to comply with any requirement of FCRA is liable to each affected consumer for

> (1)(A) any actual damages…or [statutory] damages of not less than $100 and not more than $1,000;
> ***
> (2) such amount of punitive damages as the court may allow.

15 U.S.C. 1681n(a). When this Court denied Trans Union's motion for summary judgment it determined that there is sufficient evidence for a jury to find that Trans Union willfully violated the FCRA. (Dkt. 233). This should mean that the jury will get to decide willfulness and both statutory and punitive damages.

It is beyond dispute that punitive damages are an integral part of the FCRA. The original draft of the statute contained a cap on punitive damages. That was changed when President Nixon sent his advisor on consumer affairs, Ms. Virginia Knauer, to testify before the Senate Subcommittee that drafted the bill. When Senator Proxmire asked about the administration's view, Ms. Knauer confirmed that she had conferred with President Nixon and that the administration favored uncapped punitive damages. *Hearings before the Subcommittee on Financial Institutions of the Committee on Banking and Currency*, US Senate, 91st Congress, 1st Session on S. 823, May 19-23, 1969, pages 11a and 14. Copies of the relevant pages are attached as Exhibit A for the Court's convenience.

## I.   ARGUMENT

Trans Union argues that a jury may award punitive damages only if Trans Union's conduct was "malicious, or in reckless disregard of plaintiff's rights." Trans Union's Motion *in Limine* No. 4, page 2, line 7. For support, it cites O'Malley, Grenig & Lee, Fed. Jury Prac. & Instr. Civil Comp HB § 2:1 and § 153:71. It does not quote or explain those sections from O'Malley. It just

asserts that "[t]hus, the standard for awarding punitive sanctions is higher than the statutory damages available under the 'knowing' standard established in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)." Trans Union's Motion *in Limine* No. 4, page 2, lines 10-12. It argues that punitive damages should be reserved for "truly egregious misconduct," which it claims is not present in this case.

*First*, no court has ever held that the standard for awarding punitive damages is "higher" than the willfulness standard set out in *Safeco*. Trans Union's contrary assertion is entirely unsupported. To the extent it claims the class must prove *malice*, the cases are against it:

> *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993): "[M]alice or evil motive is not necessary to satisfy § 1681n…."
>
> *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001): "Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful."
>
> *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001): "A showing of malice or evil motive is not required to prove willfulness under the Act. The plaintiff must only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer."

*Second*, no court has held that punitive damages are not available in an FCRA case unless it involved "truly egregious misconduct." That is not what the U.S. Supreme Court said in *Safeco*. No Court of Appeals has ever applied that standard. Nor has any District Court.

*Third*, Trans Union's conduct here is as bad, if not worse, than its conduct in *Cortez*. The *Cortez* jury found that Trans Union "willfully failed to provide Cortez all of the information in her file despite her requests" and negligently failed to use reasonable procedures to assure maximum possible accuracy. *Cortez v. Trans Union, LLC,* 617 F.3d 688, 705 (3d Cir. 2010). The Third Circuit affirmed the jury's findings. With the benefit of the jury's willfulness finding, Trans Union continued to send out file disclosures that omitted the OFAC alert information and, to make matters worse, it sent the OFAC information separately in a letter that suggested it was not part of the consumer's file and that it could not be disputed. The jury in this case can easily infer that Trans Union deliberately sought to mislead and deceive these class members whom it was matching to the OFAC list.

*Finally*, the sections of O'Malley, Grenig & Lee's treatise that Trans Union has cited do not support its argument.  Upon receiving Trans Union's motion, counsel for Ramirez asked Trans Union's counsel for copies of the cited sections from the O'Malley treatise, which is not available through WestLaw.  We attach as Exhibits B and C copies of the pages from O'Malley that Trans Union provided.

Exhibit B is an excerpt from O'Malley, Chapter 2.  It consists of a description of *Kirkpatrick v. Equifax*, an FCRA case and the jury instructions. On punitive damages, the district court instructed the jury that it could "award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of plaintiff's rights."  It explained that "[c]onduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law." The case was tried in 2005, two years before *Safeco*.  *Safeco* clearly clarified that standard, which was followed by certain circuits, but never the Ninth Circuit, prior to *Safeco*.  No malice is required.  Only a showing of reckless non-compliance.

Exhibit B is § 153:71 from the O'Malley treatise.  It appears to be an undated proposed jury instruction on punitive damages under the FCRA.  Nowhere does that proposed jury instruction put the burden on plaintiff to prove malice, or to show egregious conduct.  It does not say that the plaintiff must prove more than just willfulness in order to have the jury decide whether punitive damages are warranted.  And it clearly leaves it to the jury to decide punitive damages.  In short, it contradicts Trans Union's argument.

## II.   CONCLUSION

Trans Union's Motion *in Limine* No. 4 should be denied.  The jury should be instructed on willfulness, statutory damages and punitive damages and should be allowed to decide all the issues.

Respectfully Submitted,

4

Dated: May 9, 2017

**FRANCIS & MAILMAN, P.C.**

By  /s/      *John Soumilas*
James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Land Title Bldg, Suite 1902
100 South Broad Street
Philadelphia, PA  19110
Telephone: (215) 735-8600
Facsimile: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com

Andrew J. Ogilvie      (SBN 57932)
Carol M. Brewer        (SBN 214035)
**ANDERSON, OGILVIE & BREWER LLP**
1736 Stockton Street, Ground Floor
San Francisco, CA  94133
Telephone:  (415) 651-1950
Facsimile:  (415) 956-3233
andy@aoblawyers.com
carol@aoblawyers.com

*Attorneys for Plaintiff Sergio L. Ramirez*
*And the Certified Class*

5

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this day, a copy of the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT TRANS UNION, LLC'S MOTION *IN LIMINE* NO. 4** was filed electronically through the court's EM/ECF System.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's EM/ECF System.

Dated:  May 9, 2017                            */s/ John Soumilas*
                                                       John Soumilas

# EXHIBIT A

# FAIR CREDIT REPORTING

# HEARINGS

### BEFORE THE

## SUBCOMMITTEE ON FINANCIAL INSTITUTIONS

#### OF THE

## COMMITTEE ON BANKING AND CURRENCY

## UNITED STATES SENATE

### NINETY-FIRST CONGRESS

#### FIRST SESSION

#### ON

# S. 823

### A BILL TO ENABLE CONSUMERS TO PROTECT THEMSELVES AGAINST ARBITRARY, ERRONEOUS, AND MALICIOUS CREDIT INFORMATION

MAY 19, 20, 21, 22, AND 23, 1969

Printed for the use of the
Committee on Banking and Currency



U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1969

30-459 O

part, of the Hearings last year of the Special Subcommittee on Invasion of Privacy, chaired by Congressman Gallagher, of the House Committee on Government Operations. Senator Proxmire, as well as Congressman Gallagher, have indicated that this represents encouraging cooperation from the industry. The Board has noted also Senator Proxmire's statement on January 31 of his belief that his bill reflects what many of the best credit reporting agencies are already doing.

Presumably there is room for further improvement in the situation, although the subject is an unfamiliar one of the Board. We assume, that in considering whether legislation is necessary, your Committee will not underestimate the importance of the collection and disclosure of credit information to the work of credit grantors. Such information strongly influences the quality of service creditors are able to render to their customers and, of course, has obvious bearing on credit risk. In weighing the desirability of legislation in this field, care should be taken to avoid creating inequities among various classes of creditors, impeding the flow and availability of necessary credit information, reducing ready access by consumers to credit sources, or increasing credit costs.

With respect to the provisions for administering the bill, the Board is not prepared to assume responsibility for prescribing regulations to implement such legislation. Such an assignment would require of us a function for which we have no special qualifications. Furthermore, assignment of additional duties to the Board in regard to the protection of consumers is inconsistent with effective performance of our primary responsibilities in the field of monetary policy. The Board has accepted responsibility for prescribing the Truth in Lending regulations. However, the legislative history of the Truth in Lending Act clearly established that the Board's role should be a limited one, and that its acceptance of responsibility for developing regulations under that Act should not be taken as a precedent for assigning to the Board wide-ranging duties in the general area of consumer protection.

In view of the recent increase in legislative measures designed principally for the protection of consumers and the likely continuance of this trend, the Board suggests that the administrative responsibility for such legislation be vested in an agency whose responsibilities traditionally have required that it be more intimately concerned with consumer matters, or that a new Federal department or agency be established to which administrative responsibility for consumer protection measures would be transferred and in which responsibility for future consumer measures would be vested. In this connection, the Board welcomes the action of the Committee on Government Operations in opening hearings next week on S. 860 to establish a Department of Consumer Affairs. Under this bill, functions relative to consumer matters that have been vested in other agencies, including the administrative responsibilities under the Truth in Lending Act, would be transferred to the new department.

The Board would recommend against enactment of S. 823.

Sincerely yours,

(Signed)   WM. McC. MARTIN, Jr.

THE WHITE HOUSE,
*Washington, June 19, 1969.*

Hon. JOHN SPARKMAN,
*Chairman, Committee on Banking and Currency,*
*U.S. Senate, Washington, D.C.*

DEAR MR. CHAIRMAN: This is in response to your request for the comments of this office on S. 823, the Fair Credit Reporting Act.

The general purposes of the bill are to enable consumers to protect themselves against arbitrary, erroneous, and malicious credit information.

Consumer problems include incomplete, irrelevant or obsolete information; inaccurate, biased, or malicious reporting; confidentiality; and machine error which can be expected to occur as reporting systems are computerized. Reports regarding individuals whose credit worthiness, character and general reputation have been damaged by inaccurate credit reports offer increasing cause for concern.

Twenty-five years ago consumer credit outstanding was 5.7 billion dollars. Today it is 110 billion. Through the use of credit the average American consumer has been able to enjoy some of the comforts of life as well as the necessities. Credit is crucial for the poor.

The credit reporting agency is a vital link in the operation of this rapidly growing consumer credit industry. The creditor needs the potential customer's credit history in order that he can properly assess any risk which might be involved in extending credit. The consumer also benefits when he can secure credit promptly without undue red tape.

In response to the credit explosion, a vast private information network has evolved. For example, it is reported that members of the Associated Credit Bureaus, Inc. issued more than 97 million credit reports in 1967 and that over 110 million individuals are listed in their files. When dealing with such vast numbers, the dangers of unwarranted invasion of individual privacy or erroneous reports are obvious. The potential power which the credit reporting agency has over an individual's life is formidable.

We do not view the principles contained in S. 823 as an attempt to unreasonably curtail growth of the credit reporting industry or to burden it with arbitrary rules. What we are weighing here is a procedure which will be fair to both the industry and the individual consumer. In light of the present importance of credit to the individual and the projected trend for the future, we believe a reasoned review of present practices to assure adequate safeguards for the individual is healthy. In the long run, it should build consumer confidence in the whole credit industry.

With the millions of credit reports issued annually, even a small margin of error can involve hundreds of thousands of individuals. Despite increased industry efforts to ensure confidentiality, there is evidence that such is not always the case. The problem has been compounded by the difficulty which individuals have confronted in correcting credit reports.

The recent self-policing efforts of the Associated Credit Bureaus are commendable. We are concerned, however, that the industry guidelines do not go far enough, and we feel that enforcement under a voluntary code is extremely difficult. We are further concerned about the fact that credit reporting agencies which do not belong to the industry association are not subject to its standards.

We support S. 823 in principle, but would recommend consideration of several additional points.

We assume that the use of the word "individual" throughout the bill means the individual consumer. If this is the intent, it should be clarified by adding Section 163(e) defining the term to mean an individual and not a business establishment.

Section 164(b) provides an important protection for the individual by ensuring that upon request, he must be given a reasonable opportunity to correct information obtained by the agency which may bear adversely upon his credit rating. We are of the view that the consumer's protection will be materially strengthened, if upon request, the contents of his report are made known to him. This helps to alleviate an atmosphere of secrecy and enables the individual to state his position on any adverse material.

**116**

It seems reasonable that Section 164(b) should also provide that the consumer may submit an explanatory statement for inclusion in his credit record if he believes the agency's record contains inaccurate or incomplete information. Such a provision should apply to the entire contents of his file, not just information of public record as in Section 104(e).

When corrections are made in a credit report, it would seem, in fairness to the consumer, that consideration should be given to sending a corrected copy to each person who previously received the erroneous report.

We are concerned that the language in Section 164(d) providing for the destruction of information after it has become obsolete or after the expiration of a reasonable period of time will be subject to varying interpretation of the word "reasonable," which could weaken its intended protection for the consumer. We suggest the consideration of specific limitations providing that a credit reporting agency shall not report information concerning transactions which occurred more than seven years prior to the date on which a credit report is given except for bankruptcies of all types which should be dropped from the individual's file 14 years after the date of adjudication of his most recent bankruptcy.

Section 166(2) specifies that punitive damages shall be no less than $100 nor greater than $1,000. We do not feel that the award of punitive damages should be qualified in such a manner. Where a person's reputation can be ruined or his character permanently maligned, punitive damages serve an extremely valuable purpose. We propose that the qualifying phrase "which shall be not less than $100 nor greater than $1,000" be omitted. The amount of punitive damages should be left entirely to the discretion of the court which heard the facts and circumstances of this particular case.

The Bureau of the Budget advises that there is no objection to the submission of this report and enactment of the bill revised along the lines recommended above would be consistent with Administration objectives.

Sincerely,

VIRGINIA H. KNAUER,
*Special Assistant to the President for Consumer Affairs.*

————

Senator GOODELL. Mr. Chairman, may I make a short statement at this point?

Senator PROXMIRE. Of course.

Senator GOODELL. The preliminary evidence available to me indicates the need for carefully drawn legislation relating to the operation of credit bureaus. This legislation, together with improved industry practices, should provide fair and reasonable procedures for correcting inaccurate and irrelevant information relating to the credit standing of individuals, without impairing the ability of credit bureaus to perform their necessary functions.

Such legislation should enable consumers, upon request, to obtain the name and address of a credit bureau where credit has been denied, and in such cases, to obtain a statement of the contents of the report, without compromising the sources of the credit bureau.

The proliferation and dissemination of large amounts of personal data concerning millions of Americans makes it imperative that access to such information be limited to those individuals who have a specific, immediate, and relevant need for such data, and that the rights of an individual to his privacy not be violated.

Senator PROXMIRE. Thank you. Senator Goodell.

I think that Governor Robertson has been delayed. I see Mrs. Knauer present. I am delighted to have you. You are Special Assistant to the President for Consumer Affairs. We are most honored to have you appear before our committee this morning.

I understand this is your first appearance on the Hill?

## STATEMENT OF MRS. VIRGINIA H. KNAUER, SPECIAL ASSISTANT TO THE PRESIDENT FOR CONSUMER AFFAIRS; ACCOMPANIED BY BETTY BAY, ACTING DIRECTOR FOR LEGISLATIVE AFFAIRS

Mrs. KNAUER. Yes.

Senator PROXMIRE. Will you identify the young lady who is with you?

Mrs. KNAUER. To my right is Betty Bay, who is associate director in our legislative section within my office, Senator.

Senator PROXMIRE. All right, go ahead.

Mrs. KNAUER. Mr. Chairman and members of the committee, I am pleased that my first official appearance on the Hill is before the Subcommittee on Financial Institutions, a committee which has a long record of interest and action in consumer affairs.

I am happy to have the opportunity to comment on S. 823, the Fair Credit Reporting Act. The general purposes of this bill are to assure the consumer protection against invasion of his privacy and to meet the needs of commerce for credit and other information in a manner which is fair and equitable to the individual.

Reports regarding individuals whose credit worthiness, character, and general reputation have been damaged by inaccurate credit reports offer increasing cause for concern. Problems include confidentiality; inaccurate, biased, or malicious reporting; incomplete, irrelevant, or obsolete information; and machine errors which can be expected to occur as reporting systems are computerized.

The conditions which have prompted consideration of this bill result from the changing pattern of American life. Since World War II, consumer credit has become virtually the lifeblood of the national economy. Twenty-five years ago, consumer credit outstanding was $5.7 billion. Today it is $110 billion. The use of credit has enabled the average American consumer to enjoy some of the comforts of life as well as the necessities—a home of his own, an education for his children, a vacation, an extra car, and provision for an emergency. For the poor, credit is crucial.

The credit-reporting agency is a vital link in the operation of our rapidly growing consumer credit industry. Obviously, the creditor must have the potential customer's credit history so that he can properly assess any risk which might be involved in extending credit. The consumer also benefits when he can obtain credit promptly without undue redtape.

13

In response to the credit explosion, a vast private information network has evolved. For example, it is reported that members of the Associated Credit Bureaus, Inc., issued more than 97 million credit reports in 1967 and that over 110 million individuals are listed in their files. When dealing with such vast numbers, the dangers of unwarranted invasion of individual privacy or erroneous reports are obvious. The potential power which the credit reporting agency has over an individual's life is formidable.

The person seeking credit often feels that his whole life history is either at the mercy of merciless computers or in the hands of people who hear only one side. Unfortunately, the credit reporting agency has become associated in the consumer's mind with ultrasecrecy, electronic eavesdropping, almost a privately run spy network.

Too many consumers feel that information fed to credit reporting agencies is not always full information, and sometimes not even correct information. And the consumer thinks he has no way of correcting errors.

What I would like to see is the reporting of credit without unfair discredit.

I do not view the principles contained in S. 823 as an attempt to unreasonably curtail growth of the credit reporting industry or to burden it with arbitrary rules. What we are weighing here is a procedure which will be fair to both the industry and the individual consumer. In light of the present importance of credit to the individual and the projected trend for the future, I believe a reasoned review of present practices to assure adequate safeguards for the individual is healthy. In the long run, it should build consumer confidence in the whole credit industry.

With the millions of credit reports issued annually, even a small margin of error can involve hundreds of thousands of individuals. Despite increased industry efforts to insure confidentiality, there is evidence that such is not always the case. The problem has been compounded by the difficulty which individuals have confronted in correcting credit reports.

The recent self-policing efforts of the Associated Credit Bureaus are commendable. I am concerned, however, that the industry guidelines do not go far enough, and I feel that enforcement under a voluntary code is extremely difficult. I am further concerned about the fact that credit reporting agencies which do not belong to the industry association are not subject to its standards.

I support S. 823 in principle, but would recommend consideration of several additional points.

I assume that the use of the word "individual" throughout the bill means the individual consumer. If this is the intent, it should be clarified by adding section 163(e) defining the term to mean an individual and not a business establishment.

Section 164(b) provides an important protection for the individual by insuring that upon request, he must be given a reasonable opportunity to correct information obtained by the agency which may bear adversely upon his credit rating. I believe the consumer's protection will be materially strengthened if, upon request, the contents of his report are made known to him. This helps to alleviate an at-

mosphere of secrecy and enables the individual to state his position on any adverse material.

It seems reasonable that section 164(b) should also provide that the consumer may submit an explanatory statement for inclusion in his credit record if he believes the agency's record contains inaccurate or incomplete information. Such a provision should apply to the entire contents of his file, not just information of public record as in section 164(e).

When corrections are made in a credit report, I feel, in fairness to the consumer, that consideration should be given to sending a corrected copy to each person who previously received the erroneous report.

I am concerned that the language in section 164(d) providing for the destruction of information after it has become obsolete or after the expiration of a reasonable period of time will be subject to varying interpretation of the word "reasonable," which could weaken its intended protection for the consumer. I suggest the consideration of specific limitations providing that a credit reporting agency shall not report information concerning transactions which occurred more than 7 years prior to the date on which a credit report is given except for bankruptcies of all types which should be dropped from the individual's file 14 years after the date of adjudication of his most recent bankruptcy.

Section 166(2) specifies that punitive damages shall be no less than $100 nor greater than $1,000. I do not feel that the award of punitive damages should be qualified in such a manner. Where a person's reputation can be ruined or his character permanently maligned, punitive damages serve an extremely valuable purpose. I propose that the qualifying phrase "which shall be not less than $100 nor greater than $1,000" be omitted. The amount of punitive damages should be left entirely to the discretion of the court which hears the facts and circumstances of the particular case.

In closing, I would reiterate that what we seek is a procedure which would be fair and equitable to both the individual consumer and the credit reporting industry.

Thank you.

Senator PROXMIRE. Thank you very much for an excellent statement.

I note that you support S. 823 in principle, with several recommendations that would strengthen the bill.

In supporting the bill, are you speaking for the Nixon administration?

Mrs. KNAUER. As you know, Senator, I was appointed by President Nixon to be the spokesman for the consumer. I have checked with the White House, and ascertained that enactment of legislation along the lines of S. 823 would be consistent with administration objectives.

Senator PROXMIRE. Thank you very much. I think that is a most significant expression. This is the first time, to my knowledge, the administration has been called to commit itself on consumer legislation, and it is good to get this kind of forthright and forceful statement which, as a matter of fact, improves the bill in very important respects.

I think it is most useful to permit the consumer to make an explanation of the entire file, rather than confine himself to public records

# EXHIBIT B

# Chapter 2

# Fair Credit Reporting Act

§ 2:1   FCRA—Failure to remove bad credit information
§ 2:2   —Failure to investigate bad credit report

---

**KeyCite®:** Cases and other legal materials listed in KeyCite Scope can be researched through the KeyCite service on Westlaw®. Use KeyCite to check citations for form, parallel references, prior and later history, and comprehensive citator information, including citations to other decisions and secondary materials.

---

This chapter contains actual jury instructions for cases tried under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.

---

**Authors' Overview.** The Fair Credit Reporting Act, 15 U.S.C.A. § 1681, requires consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information. A consumer reporting agency may be liable for negligent noncompliance with the Act where inaccurate information is included in a consumer's credit report, the inaccuracy was due to the reporting agency's failure to follow reasonable procedures and the inclusion of the inaccurate information caused injury. Additionally, a consumer reporting agency may be liable for punitive damages for a willful violation of the Act.

---

## § 2:1   FCRA—Failure to remove bad credit information

### A. Background

**Type of Case:** Complaint for failure to remove adverse information from credit report
**Case Name:** *Kirkpatrick v. Equifax Information Services, LLC*
**Court:** District of Oregon
**Judge:** Michael W. Mossman, United States District Judge
**Docket No.:** CV 02-1197-MO
**Westlaw Citation:** 2005 WL 4075571
**Verdict Date:** January 25, 2005
**Outcome:** Jury awarded Kirkpatrick $210,000.00.

**Summary of Fact:** Kirkpatrick was the victim of identity theft who claimed he had a perfect credit history prior to the theft. In 2000, Kirkpatrick learned his identity had been stolen and that numerous fraudulent lines of credit were opened in his name. He attempted on numerous occasions to contact Equifax and have his record cleared. This included sending a police report and a narrative describing the fraudulent activity. He later sent other material about the activity. At one point Equifax claimed that it had lost some of the material Kirkpatrick had sent. It also claimed it did not receive some of the items sent by Kirkpatrick.

As a result of the fraudulent activity, Kirkpatrick claimed he was denied credit. He sued for emotional damages.

## B. Jury Instructions Given:

### JURY INSTRUCTION NO. ____

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

---

**Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 103:01—general introduction to jury charge & 9th Cir. Civ. Jury Instr. 3.1—jury to find facts.

---

### JURY INSTRUCTION NO. ____

The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of any witness including deposition testimony;

(2) the exhibits which have been received into evidence; and

(3) any facts to which the lawyers have agreed or stipulated.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 103:30—evidence in the case.

## JURY INSTRUCTION NO. ___

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 103:30—evidence in the case; § 103:33—court's comments; § 103:34—questions by lawyers & 9th Cir. Civ. Jury Instr. 3.2 & 3.3—what is and is not evidence.

## JURY INSTRUCTION NO. ___

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law

makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 104:05 & 9th Cir. Civ. Jury Instr. 3.5—direct and circumstantial evidence.

### JURY INSTRUCTION NO. ___

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness' memory;

(3) the witness' manner while testifying;

(4) the witness' interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness' testimony;

(6) the reasonableness of the witness' testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 105:01—discrepancies in testimony; 9th Cir. Civ. Jury Instr. 3.6 & O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 101:43—credibility of witnesses.

### JURY INSTRUCTION NO. ___

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If

they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 104:50 & 9th Cir. Civ. Jury Instr. 3.10—charts and summaries.

## JURY INSTRUCTION NO. ____

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 103:11; § 103:12 & 9th Cir. Civ. Jury Instr. 6.1—all parties equal under the law.

## JURY INSTRUCTION NO. ____

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 108:01 & 9th Cir. Civ. Jury Instr. 6.2—corporate liability.

## JURY INSTRUCTION NO. ____

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 104:40—expert testimony; 9th Cir. Civ. Jury Instr. 3.7—opinion evidence.

### JURY INSTRUCTION NO. ___

Plaintiff must prove his claims by a preponderance of the evidence. "Preponderance of the Evidence" means the greater weight of evidence. It is such evidence that, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If the evidence on that claim appears to be equally balanced, or if you cannot say upon which side it weighs more heavily, you must resolve that question against plaintiff upon whom the burden of proof rests.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 104:01 & 9th Cir. Civ. Jury Instr. 1.13—preponderance of the evidence.

### JURY INSTRUCTION NO. ___

This case arises under the Fair Credit Reporting Act. One purpose of this act is to require that credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of the law.

Plaintiff is a "consumer" entitled to the protection and benefits of the Fair Credit Reporting Act, and defendant is a "consumer reporting agency."

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 153:30—definition of "consumer"; § 153:33—definition of "consumer reporting agency."

### JURY INSTRUCTION NO. ___

Any claim under the Fair Credit Reporting Act must be brought within two years of the date of the violation. Plaintiff filed his lawsuit on June 25, 2002. Therefore, defendant is only liable for violations, if any, that occurred from June 25, 2000 to present and you may not award damages which arose prior to June 25, 2000. This includes, but is not limited to, any claims arising from the February 2000 request for a copy of his credit file.

### JURY INSTRUCTION NO. ___

Plaintiff contends that defendant violated one or more of the following eleven requirements of the Fair Credit Reporting Act:

1. The Fair Credit Reporting Act requires that whenever a

consumer reporting agencies like defendant prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

2. The Fair Credit Reporting Act requires that if a consumer disputes the completeness or accuracy of any item of information contained in their file and notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file within 30 days from the date the agency receives notice of the dispute from the consumer.

3. The Fair Credit Reporting Act requires a consumer reporting agency to review and consider all relevant information submitted by the consumer in conducting any reinvestigation of disputed information.

4. The Fair Credit Reporting Act requires that within five business days of receiving a consumer's notice of dispute from a consumer, the agency shall provide notification of the dispute to any business which provided the disputed information. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.

5. The Fair Credit Reporting Act requires that if after any reinvestigation information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete the information from the consumer's file or modify the information, as appropriate, based on the results of the reinvestigation.

6. The Fair Credit Reporting Act requires that a consumer reporting agency provide written notice to the consumer of the results of a reinvestigation not later than five business days after the completion of a reinvestigation. As part of or in addition to that notice the consumer reporting agency shall provide to the consumer in writing a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation.

7. The Fair Credit Reporting Act requires a consumer reporting agency to maintain reasonable procedures designed to prevent the reappearance in a consumer's file and in consumer reports on that consumer, of information that has been deleted pursuant to a reinvestigation.

8. The Fair Credit Reporting Act requires that a consumer reporting agency provide notice to the consumer if any information that has been deleted pursuant to a reinvestigation is reinserted in the file. Notice must be in writing no later than

five business days after the reinsertion. A notice must include the business name and address of any furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of any furnisher of information that contacted the consumer reporting agency, in connection with the insertion of such information.

9. The Fair Credit Reporting Act requires that if any information is deleted from a consumer's file, the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate.

10. The Fair Credit Reporting Act requires, upon request by a consumer and upon receipt of proper identification, that a consumer reporting agency shall disclose to the consumer all the information in the consumer's file at the time of the request.

11. Under the Fair Credit Reporting Act, a consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In accordance with the written instructions of the consumer to whom it relates.

(2) To a business that it has reason to believe:

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider the applicant's financial responsibility or status; or

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information:

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

**Authors' Commentary:** See, 15 U.S.C.A. §§ 1681 et seq.—requirements of the FCRA.

## JURY INSTRUCTION NO. ____

The Fair Credit Reporting Act does not contain a requirement that consumer reporting agencies retain documents for any specific period of time, including, but not limited to, CDVs and UDFs.

## JURY INSTRUCTION NO. ____

I instruct you that the law does not require defendant to be error-free in performing its obligations under the Fair Credit Reporting Act. The law recognizes that perfect accuracy in consumer credit reports is not a realistic objective. Instead, in order to prevail on his claim for money damages, plaintiff must prove by a preponderance of the evidence:

    1. That defendant violated one or more of the eleven requirements of the Fair Credit Reporting Act listed above;

    2. That the violation or violations of the Act resulted from the negligence or willfulness of defendant; and

    3. That he suffered damages as a result of the negligence or willfulness of defendant.

**Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 153:10—FCRA generally; § 153:20—elements of negligent compliance; § 153:21—elements of intentional noncompliance.

## JURY INSTRUCTION NO. ____

Plaintiff contends that defendant negligently or willfully failed to comply with the Fair Credit Reporting Act. I will define these terms for you.

Negligence is failing to do something that a reasonably prudent person would do, or doing something that a reasonably prudent person would not do, under the circumstances that existed.

An act is done willfully if it is done knowingly and intentionally or committed with a reckless disregard for the rights of others.

Defendant denies that it negligently or willfully failed to comply with any requirements of the Fair Credit Reporting Act.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal
> Jury Practice and Instructions, 6th Ed. Thomson Reuters
> § 153:30—negligence under FCRA; § 153:39—willfulness under
> FCRA.

## JURY INSTRUCTION NO. ____

If you find that plaintiff has proven that defendant negligently or willfully violated the Fair Credit Reporting Act, you must then determine the damages, if any, to which he is entitled. However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. My instructions on damages do not reflect in any way whether I believe the plaintiff should or should not win this case. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance in the event you decide that plaintiff is entitled to recover.

If you find that defendant negligently or willfully violated the Fair Credit Reporting Act, and that as a result plaintiff suffered damages, then your duty is to determine the amount of money which reasonably and fairly compensates him for the actual damage that you decide was caused by defendant's failure to comply with the Act.

In order to recover damages, plaintiff must establish that defendant's negligent or willful violation of the Fair Credit Reporting Act was the "legal cause" of his injuries. The term "legal cause" requires that the conduct of defendant which plaintiff claims violated the Fair Credit Reporting Act must have been a substantial factor in causing the injury complained of by plaintiff, and that the injury must have been either a direct result or a natural and probable consequence of the conduct of defendant. A substantial factor is an important or material factor and not one that is insignificant. The elements of damages which you may consider are: denial of credit, loss of opportunity to obtain credit, damage to reputation, invasion of privacy, mental anguish, distress and anxiety.

Which, if any, of those elements of damages has been proven by plaintiff is for you to decide, based upon evidence and not upon speculation, guess or conjecture. The amount of money to be awarded for certain of these elements of damages cannot be proved in a precise dollar amount. The law leaves the determination of such amount to your sound judgment.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal
> Jury Practice and Instructions, 6th Ed. Thomson Reuters
> § 153:50—causation under FCRA; § 153:70—damages for
> negligent noncompliance.

JURY INSTRUCTION NO. ____

I further charge that you may not award damages against Equifax for any harm to Plaintiff that was caused by others.

JURY INSTRUCTION NO. ____

Plaintiff is not seeking and you may not award any damages in this case for lost wages, medical treatment or expenses and/or out of pocket losses.

JURY INSTRUCTION NO. ____

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

    1. that the plaintiff failed to use reasonable efforts to mitigate damages; and

    2. the amount by which damages would have been mitigated.

> **Authors' Commentary:** See, 9th Cir. Civ. Jury Instr. 7.3—mitigation.

JURY INSTRUCTION NO. ____

If you find that defendant willfully failed to comply with a requirement of the Fair Credit Reporting Act, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter a defendant from committing similar acts in the future. The plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering punitive damages, you may consider the purpose of the Fair Credit Reporting Act, the degree of reprehensibility of

the defendant's conduct and the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 153:71—punitive damages for willful noncompliance.

### JURY INSTRUCTION NO. ____

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 106:04—election of foreperson & 9th Cir. Civ. Jury Instr. 4.1; O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 106:01—duty to deliberate.

### JURY INSTRUCTION NO. ____

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 103:02 & 9th Cir. Civ. Jury Instr. 4.2—use of notes.

### JURY INSTRUCTION NO. ____.

If it becomes necessary during your deliberations to com-

municate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 106:08 & 9th Cir. Civ. Jury Instr. 4.3—communications with court.

### JURY INSTRUCTION NO. ____

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 106:04—verdict form prepared for jury's convenience.

## C. Case Documents

Order on Plaintiff's Motion for Attorney Fees and Cost Bill, 2005 WL 1231485

## § 2:2   FCRA—Failure to investigate bad credit report

## A. Background

**Type of Case:** Failure to investigate and correct improper credit information

**Case Name:** *Thomas v. Trans Union, LLC*

**Court:** District of Oregon

**Judge:** John Jelderks, United States Magistrate Judge

**Docket No.:** 00-1150-JE

**Westlaw Citation:** 2002 WL 33767683

**Date of Verdict:** July 29, 2002.

**Outcome:** The jury awarded $300,000 for harm to plaintiff's health and reputation and $5 million in punitive damages. The presiding Magistrate Judge later reduced the award to $300,000 in compensatory and $1 million in punitive damages.

**Summary of Facts:** Plaintiff filed suit seeking recovery for denial of credit, mental anguish and emotional distress, together with punitive damages as a result of Trans Union's failure to accurately reflect her credit information and failure to investigate plaintiff's claim.

Plaintiff alleged that her credit information was merged with the information of another individual such that numerous unpaid accounts appeared on her report and that defendant wrongfully claimed that plaintiff was "also known as" the other individual even though that other individual had a different last name, date of birth, and address. Plaintiff allegedly complained for years and even had the other individual submit a letter affirming that the bad debts were hers (the other individual's). At one point, some of the information regarding the other individual was deleted from plaintiff's credit report, only to reappear.

## B. Jury Instructions Given:

Members of the jury, you have now heard all the evidence in this case and it is now your duty to decide the facts and reach your decision. I will tell you the law which you must follow in reaching your decision. Although you may think the law is, or should be different, you are bound by your oath to apply the law that I give to you.

Your decision must be based solely on the evidence. Do not allow bias, prejudice or sympathy to influence you. The evidence consists of the testimony of the witnesses, the exhibits you will have in the jury room and the facts to which the parties have agreed.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 103:01—general introduction to jury charge; § 103:50—evidence in the case & 9th Cir. Civ. Jury Instr. 3.1—jury to find faces; 3.2 & 3.3—what is and is not evidence.

As I have earlier advised you, the comments of the attorneys are not evidence. If your recollection of the evidence differs from that of the attorneys, rely upon your own memory.

> **Authors' Commentary:** See, O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 6th Ed. Thomson Reuters § 103:34—questions and comments by lawyers.

# EXHIBIT C

## § 153:71  Punitive damages for willful noncompliance with the act

Liability is created under the Fair Credit Reporting Act in favor of a consumer against "a consumer reporting agency for willful noncompliance with any requirement imposed under the Act with respect to such consumer."

"Willfully" means an omission or failure to do an act voluntarily and intentionally, and with specific intent to fail to do something that the law requires to be done, that is to say, with a purpose either to disobey or disregard the law.

Damages recoverable for willful noncompliance with the Fair Credit Reporting Act are of two kinds. First are the damages actually suffered by reason of the wrong complained of, and second, punitive damages, which means damages over and above the actual damages, if any, suffered by plaintiff ____. Punitive damages that may be awarded by you in your discretion for the purpose of making an example of and punishing defendant ____ for the wrong done and to serve as an example to others not to engage in such conduct.

If you find from a preponderance of the evidence that plaintiff ____ is entitled to actual damages, and you further find that the acts or omissions of defendant ____ that proximately caused the actual injury or damage to plaintiff ____, were willfully done then you may add to the award of actual damages such amount as you shall unanimously agree to be proper as punitive damages.

Whether or not to make any award of punitive damages in addition to actual damages is a matter exclusively within your authority. You should bear in mind that punitive damages may be awarded only if you should first unanimously award plaintiff ____ a verdict for actual damages.

You should also bear in mind, not only the conditions under which, and the purpose for which, the law permits an award of punitive damages to be made, but also the requirement of the law that the amount of such punitive damages must be fixed with calm discretion and sound reason and must never be either awarded, or fixed in amount, because of any sympathy or bias, or prejudice with respect to any party to the case.

### NOTES

*In General*

See 15 U.S.C.A. § 1681n.

While evidence of actual harm to nonparties can help show conduct that harmed the plaintiff also posed a substantial risk of harm to the general public and so was particularly reprehensible, a jury may not go further and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties. Philip Morris USA v. Williams, 127 S. Ct.