UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>Defendant. | Case No. 12-cv-00632-JSC<br><br>**ORDER REGARDING MOTIONS IN LIMINE**<br><br>Dkt Nos. 243, 244, 245, 246, 247, 254, 255, 256, 257, 258 |

The Court held a pretrial conference on May 18, 2017, during which the parties argued their respective motions in limine. As stated on the record at the hearing, the Court rules as set forth below.

**PLAINTIFF'S MOTIONS IN LIMINE**

**1.    Plaintiff's Motion in Limine No. 1, Dkt. No. 243**

GRANTED IN PART and DENIED IN PART. The district court holds a "gatekeeping" role with respect to the admission of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). In determining admissibility, Federal Rule of Evidence 702 allows a witness that is "qualified as an expert by knowledge, skill, experience, training, or education" to offer opinion or other testimony only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Expert testimony must be both relevant and reliable. *See Daubert*, 509 U.S. at 589. "Relevancy simply requires that [t]he evidence ... logically advance a material aspect of the party's case"

whereas reliability requires that the expert have "a reliable basis in the knowledge and experience of the relevant discipline." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (internal citation and quotation marks omitted).

The inquiry into the admissibility of expert testimony is "a flexible one" where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id*. at 565; *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.").

Defendant's expert Jaco Sadie is a Senior Managing Director at FTI Consulting, Inc., a financial consulting firm, who was retained to opine regarding whether, during the class period, it was reasonable and within industry practices for Trans Union to deliver OFAC alert information based on a name-only matching protocol where the match results were listed as a "potential match." (Sadie Report pp.1-2, 4-6.) Plaintiff moves in limine to prevent Mr. Sadie from testifying regarding (1) the reasonableness of Trans Union's procedures and (2) Trans Union's compliance with OFAC requirements.

The motion is granted as to the first subject area: Mr. Sadie cannot testify as to the reasonableness of Trans Union's procedures—this is a question for the jury. Mr. Sadie may give an opinion based on hypothetical facts, but he cannot be asked to specifically opine on Trans Union's conduct or whether it is reasonable for financial institutions to rely on end users to perform "human comparison" of OFAC information. Likewise, Mr. Sadie cannot opine as to whether Dublin Nissan's conduct here was in error or unreasonable—counsel can make this argument to the jury, but it is not within the appropriate scope of expert testimony. As for the second subject area, Mr. Sadie can testify generally regarding financial industry practices and OFAC requirements. Further, to the extent Defendant lays a proper foundation, he may also

2

testify regarding the technological capabilities of consumer reporting agencies with respect to interdiction software.

**2.    Plaintiff's Motion in Limine No. 2, Dkt. No. 244**

DENIED.  The jury is entitled to weigh this evidence to determine whether Trans Union willfully failed to use reasonable procedures to ensure the maximum possible accuracy of the information conveyed.

**3.    Plaintiff's Motions in Limine Nos. 3 and 4**, **Dkt. Nos. 245 & 246**

GRANTED IN PART and DENIED IN PART.  The Court disagrees that the proffered evidence is relevant to class standing; that issue has been decided.  However, evidence as to Trans Union's knowledge or lack thereof of harm caused by its OFAC Alert product is relevant to the willfulness inquiry as well as the amount of punitive and statutory damages.

**4.    Plaintiff's Motion in Limine No. 5, Dkt. No. 247**

GRANTED.  Defendant is precluded from offering evidence or argument about Plaintiff's counsel's solicitation efforts in this case.  Plaintiff, likewise, is precluded from offering evidence or arguing that they brought the *Cortez* case or any other cases.

### DEFENDANT'S MOTIONS IN LIMINE

**1.    Defendant's Motion in Limine No. 1, Dkt. No. 254**

GRANTED IN PART and DENIED IN PART.   Plaintiff offers Erich Ferrari, an attorney who works in the field of U.S. economic sanctions under OFAC, regarding (1) the OFAC list, including the role of consumer reporting agencies in identifying Specially Designated Nationals ("SDNs"); (2) the tools and methods generally available in the marketplace over the past ten years for identifying SDNs actually on the OFAC list and his "research and experience in using name only matching"; and (3) the impact of a "false hit" or "false positive" and the significance to business and individuals of being associated with a SDN on the OFAC list.  Defendant moves to exclude Mr. Ferrari's testimony in its entirely.

As with Defendant's expert Jaco Sadie, Mr. Ferrari's testimony is limited to matters within his knowledge, skill, experience, training, or education.  *See* Fed. R. Evid. 702.   Mr. Ferrari can testify regarding OFAC and SDNs generally. (Ferrari Decl. ¶¶ 11-23, 30-34)   To the extent

3

counsel lays a foundation, Mr. Ferrari may provide his opinion regarding the impact of false positives or false hits. (*Id*. at ¶ 26.) However, Mr. Ferrari may not provide anecdotal testimony, opine regarding Mr. Ramirez's experience, or the experiences of plaintiffs in other cases. (*Id*. at ¶¶ 35-37.) If counsel can lay a proper foundation—beyond that in Mr. Ferrari's declaration—he may testify regarding interdiction software and the types of screening software available. (*Id*. at ¶¶ 24-26.) Just as with Mr. Sadie, however, Mr. Ferrari cannot opine as to ultimate issues such as the reasonableness of Trans Union's name only matching protocol, nor speculate as to what third-party end users of OFAC alerts might do with this information. (*Id*. at ¶¶ 27-29, 38-39.)

### 2. Defendant's Motion in Limine No. 2, Dkt. No. 255

DENIED. The Dublin-Nissan report is relevant and not unduly prejudicial. *See* Fed. R. Evid. 401, 403. Trans Union can argue that the Dublin Nissan report is an isolated incident, but this argument is not a basis for excluding the report.

### 3. Defendant's Motion in Limine No. 3, Dkt. No. 256

DENIED. Plaintiff has made a prima facie showing that Mr. Bhatia can authenticate the Dublin Nissan report. Further, both the report and the process for generating the report are relevant, and the evidence is more probative than prejudicial. *See* Fed. R. Evid. 401, 403.

### 4. Defendant's Motion in Limine No. 4, Dkt. No. 257

DENIED. Under 15 U.S.C. § 1681n "[a] person who willfully fails to comply with any requirement of the FCRA may be liable for punitive damages." Trans Union's insistence that Plaintiff must prove that Trans Union acted with "ill will, or spite, or [] for the purpose of injuring another" and that Trans Union's conduct was "malicious" is unpersuasive. (Dkt. No. 257 at 4:24-26). The language of the statute authorizes punitive damages where the conduct is willful. *See also Cortez v. Trans Union, LLC*, 617 F.3d 688, 722-23 (3d Cir. 2010) (upholding punitive damages award based on willful violation).

### 5. Defendant's Motion in Limine No. 5, Dkt. No. 258

GRANTED. Plaintiff may not introduce evidence regarding the 1992 consent decree from *Alabama v. Trans Union Corp.*, No. 92-7101 (N.D. Ill. 1992). There is no conflict between the consent decree's language and Federal Rule of Evidence 408. Rule 408 does not require

admission of a consent decree, but states that evidence of a prior compromise "may" be admissible. Fed. R. Evid. 408(b).

## MISCELLANEOUS MATTERS

### 1. Exhibits

The parties shall meet and confer to attempt to resolve any remaining disputes regarding the trial exhibits. To the extent that disputes remain, the parties should be prepared to discuss these disputes at the June 8, 2017 further pretrial conference.

### 2. Witnesses

The parties should meet and confer to attempt to streamline the evidence as much as possible without impeding their ability to present their respective cases to the jury. For example, the Court would prefer that each witness be called only once to the extent possible. Each side is limited to 20 hours each.[1] Each side shall provide a list of their witnesses for the following day to opposing counsel by 3:00 p.m. the day before the witness is to testify.

### 3. Bifurcation

The Court bifurcates the liability and statutory damages phase from the punitive damages phase. If the jury finds in Plaintiff's favor on liability and statutory damages, the Court will reopen evidence for the limited purpose of offering any new evidence relevant to punitive damages following which the Court will instruct the jury as to punitive damages, counsel may present argument, and the jury will deliberate regarding the same.

**IT IS SO ORDERED.**

Dated: May 25, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[1] Although the Court indicated at the pretrial conference that this did not include the parties' opening and closing statements, the Court has reconsidered this position and imposes a 20 hour limit on each party inclusive of witnesses, and opening and closing statements. This does not include the punitive damages phase if applicable.