1   STROOCK & STROOCK & LAVAN LLP
    JULIA B. STRICKLAND (State Bar No. 083013)
2   STEPHEN J. NEWMAN (State Bar No. 181570)
    DAVID W. MOON (State Bar No. 197711)
3   CHRISTINE E. ELLICE (State Bar No. 276181)
    JASON S. YOO (State Bar No. 261114)
4   2029 Century Park East
    Los Angeles, CA 90067-3086
5   Telephone:  310-556-5800
    Facsimile:   310-556-5959
6   Email: lacalendar@stroock.com

7   SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY
    BRUCE S. LUCKMAN (Admitted *Pro Hac Vice*)
8   308 Harper Drive, Suite 200
    Moorestown, NJ 08057
9   Telephone:    856-662-0700
    Email: bluckman@shermansilverstein.com

10
    Attorneys for Defendant
11      TRANS UNION LLC

12                  **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14  SERGIO L. RAMIREZ, on behalf of himself    )   Case No. 3:12-cv-00632-JSC
    and all others similarly situated,          )
15                                              )   [Assigned to the Honorable Jacqueline Scott
                    Plaintiff,                  )   Corley]
16                                              )
         v.                                     )   **DEFENDANT TRANS UNION LLC'S**
17                                              )   **REPLY IN FURTHER SUPPORT OF**
                                                )   **RENEWED MOTION FOR JUDGMENT**
18  TRANS UNION, LLC,                           )   **AS A MATTER OF LAW OR, IN THE**
                                                )   **ALTERNATIVE, MOTION FOR A NEW**
19                  Defendant.                  )   **TRIAL OR, IN THE ALTERNATIVE,**
                                                )   **MOTION FOR REMITTITUR OR, IN THE**
20                                              )   **ALTERNATIVE, MOTION TO ALTER OR**
                                                )   **AMEND THE JUDGMENT;**
21                                              )   **MEMORANDUM OF POINTS AND**
                                                )   **AUTHORITIES IN SUPPORT THEREOF**
22                                              )
                                                )   **[Request for Judicial Notice filed**
23                                              )   **concurrently herewith]**
                                                )
24                                              )   <u>Hearing</u>
                                                )   Date:  October 5, 2017
25                                              )   Time:  2:00 p.m.
                                                )   Place:  Courtroom F
26  _____   )

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .......................................................................................1

II.    ARGUMENT ............................................................................................2

     A.     Judgment as A Matter of Law or A New Trial Is Warranted Because The Jury's Verdict Was Not Supported By The Evidence ...................................2

         1.     The Evidence Established that TransUnion Was Making Affirmative Efforts to Comply With, not Willfully Violate, the FCRA ...........................2

         2.     The Evidence Did Not Support a Finding That TransUnion Willfully Violated § 1681g(a) and (c)(2) ...................................................................6

     B.     A New Trial Should Be Ordered Because of Counsel's Improper Arguments...........7

         1.     Plaintiff's Counsel's Inflammatory Remarks Warrant a New Trial...............7

         2.     Plaintiff's Counsel's Treatment of the Cortez Opinion Warrants a New Trial................................................................................................7

     C.     The Jury's Awards of Statutory and Punitive Damages Are Unlawful and Excessive ................................................................................................9

         1.     The Jury's Statutory Damages Award Cannot Stand ...................................9

             a.     The Statutory Damages Award Is Not Supported By Substantial Evidence ...........................................................................10

             b.     The Statutory Damages Award Is Grossly Excessive .....................10

         2.     The Punitive Damages Award Cannot Stand ...........................................13

             a.     The Punitive Damages Award Was Based On An Incorrect Standard ......................................................................................13

             b.     The Jury's Punitive Damages Award Is the Product of Numerous Constitutional Violations ...............................................14

             c.     The Jury's Massive Punitive Damages Award Runs Afoul of All Three State Farm Factors ..........................................................15

     D.     The Judgment Should Be Altered or Amended to Conform to Rule 23 .................18

             a.     The Ninth Circuit's Decision in Spokeo Effectively Repudiates the Basis of Part of this Court's Certification Decision ....................................................................................18

             b.     The Evidence At Trial Did Not Establish Typicality ......................18

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

- i -

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR REMITTITUR OR, TO ALTER OR AMEND THE JDGMT. / CASE NO. 3:12-CV-00632-JSC

LA 52100911v12

c.    A Class Judgment Also is Improper Because No Evidence of Actual Harm to Any Class Members, Or To the Class As a Whole, Was Proffered .................................................................. 19

d.    The Class Size Should Be Adjusted ................................................. 20

III.     CONCLUSION ................................................................................................. 20

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LA 52100911v12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bateman v. Am. MultiCinema, Inc.,
   623 F.3d 708 (9th Cir. 2010) ........................................................................................12

BMW of N. Am., Inc. v. Gore,
   517 U.S. 559 (1996) ................................................................................................15, 16

Cortez v. Trans Union LLC,
   617 F.3d (3d Cir. 2010) .............................................................................................2, 8

Cortez v. Trans Union, LLC,
   No. 05-cv-0564, 2007 WL 2702945 (E.D. Pa. Sept. 13, 2007) ...........................*passim*

Dickens v. Trans Union Corp.,
   18 F. App'x 315 (6th Cir. 2001) .....................................................................................3

DirecTV, Inc. v. Kaas,
   294 F. Supp. 2d 1044 (N.D. Iowa 2003) ......................................................................12

DirecTV, Inc. v. Perrier,
   No. 03-CV-400S, 2004 WL 941641 (W.D.N.Y., Mar. 15, 2004)...................................12

Dreher v. Experian Info. Sols., Inc.,
   856 F.3d 337 (4th Cir. 2017) ..................................................................................19, 20

Exxon Shipping Co. v. Baker,
   554 U.S. 471 (2008) ................................................................................................15, 17

Golan v. Veritas Entm't, LLC,
   No. 4:14CV00069 ERW (E.D. Mo. Sept. 7, 2017) ......................................................11

Groshek v. Time Warner Cable, Inc.,
   865 F.3d 884 (7th Cir. 2017) .........................................................................................20

Guimond v. Trans Union Credit Information Co.,
   45 F.3d 1329 (9th Cir. 1995) ...................................................................................18, 19

Henderson v. Corelogic Nat'l Background Data, LLC,
   178 F. Supp. 3d 320, 336 (E.D. Va. 2016) .....................................................................3

Kern v. Levolor Lorentzen, Inc.,
   899 F.2d 772 (9th Cir. 1990) .........................................................................................10

Leathers v. Gen. Motors Corp.,
   546 F.2d 1083 (4th Cir. 1976) .........................................................................................7

- iii -

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR
REMITTITUR OR, TO ALTER OR AMEND THE JDGMT.  /  CASE NO. 3:12-CV-00632-JSC

LA 52100911v12

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Marcus v. BMW of N. Am., LLC,
    687 F.3d 583 (3d Cir. 2012) ................................................................................19

Maryland v. Baldwin,
    112 U.S. 490 (1884) ............................................................................................10

Maynard v. City of San Jose
    37 F.3d 1396, 1406 (9th Cir. 1994) ....................................................................10

Merrick v. Paul Revere Life Ins. Co.,
    500 F.3d 1007 (9th Cir. 2007) .......................................................................14, 15

Murray v. GMAC Mortg. Corp.,
    434 F.3d 948 (7th Cir. 2006) ..............................................................................11

Parker v. Time Warner Entm't Co., L.P.,
    331 F.3d 13 (2d Cir. 2003) ..................................................................................14

Philip Morris USA v. Williams,
    549 U.S. 346 (2007) .................................................................................1, 14, 15

Pirian v. In-N-Out Burgers,
    No. SACV06–1251 DOC, 2007 WL 1040864 (C.D. Cal. Apr. 5, 2007) ...................11

Robins v. Spokeo, Inc.,
    --- F.3d ---, No. 11-56843 2017 WL 3480695 (9th Cir. Aug. 15, 2017) ..............18, 20

Safeco Insurance Company. of America v. Burr,
    551 U.S. 47 (2007) ...............................................................................................2

Six (6) Mexican Workers v. Az. Citrus Growers,
    904 F.2d 1301 (9th Cir. 1990) ........................................................................11, 12

Smith v. E-Backgroundchecks.com, Inc.,
    81 F. Supp. 3d 1342, 1349 (N.D. Ga. 2015).........................................................3

Soutter v. Equifax Info. Servs.,
    LLC, 498 F. App'x 260 (4th Cir. 2012) ................................................................19

Spokeo, Inc. v. Robins,
    136 S. Ct. 1540 (2016) ........................................................................................19

State Farm Mutual Auto. Ins. Co. v. Campbell,
    538 U.S. 408 (2003) ....................................................................................passim

Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.,
    370 U.S. 19 (1962) ..............................................................................................10

Texas v. Am. Blastfax, Inc.,
    164 F. Supp. 2d 892 (W.D. Tex. 2001) ................................................................11

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR
REMITTITUR OR, TO ALTER OR AMEND THE JDGMT.  /  CASE NO. 3:12-CV-00632-JSC

LA 52100911v12

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

<u>Town of Chester v. Laroe Estates, Inc.</u>,
  137 S. Ct. 1645 (2017) ...................................................................................................19

<u>Trapp v. SunTrust Bank</u>,
  No. 16-2293, 2017 WL 2875212 (4th Cir. July 6, 2017) ...........................................20

<u>United N.Y. and N.J. Sandy Hook Pilots Ass'n v. Halecki</u>,
  358 U.S. 613 (1959) ....................................................................................................10

<u>White v. Ford Motor Co.</u>,
  500 F.3d 963 (9th Cir. 2007) ......................................................................................15

<u>Wilmington Star Mining Co. v. Fulton</u>,
  205 U.S. 60 (1907) ......................................................................................................10

**Statutes**

15 U.S.C. § 1681c(g)(1) ...................................................................................................11

15 U.S.C. § 1681e(b) ................................................................................................*passim*

15 U.S.C. § 1681g ..........................................................................................2, 6, 7, 10, 19

15 U.S.C. § 1681i(a) ...........................................................................................................7

15 U.S.C. § 1681k ..............................................................................................................3

15 U.S.C. § 1681s(a)(2)(A) ..............................................................................................17

FCRA .........................................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................12, 18, 19, 20

Fed. R. Evid. 403 ...............................................................................................................8

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR
REMITTITUR OR, TO ALTER OR AMEND THE JDGMT.  /  CASE NO. 3:12-CV-00632-JSC

LA 52100911v12

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff's Opposition only reinforces that this case never should have gone to trial, let alone produced a staggering $60 million award.  Plaintiff begins with a lengthy discussion of TransUnion's alleged misdeeds, see Opp. at 1-7, but this account not only fails to identify any evidence of willfulness, but is silent as to how TransUnion's conduct actually affected any of the 8,184 absent class members.  Indeed, in trying to justify the $60 million damages award (a figure so obviously excessive that Plaintiff refuses to acknowledge it), the Opposition repeatedly highlights how unique Plaintiff's particular experience truly was.  Plaintiff's effort to defend the verdict thus succeeds only in confirming that this case should not have been certified as a class action, and certainly should not have resulted in a massive class-wide judgment.

Plaintiff fails entirely to justify the size of the total award.  As to the nearly $10 million in statutory damages, Plaintiff principally suggests that statutory damages awards can never be excessive so long as each class member's individual award is within range.  But the Ninth Circuit has specifically said otherwise, emphasizing concerns with a class action generating an aggregate award utterly divorced from any reasonable measure of compensation, deterrence, or punishment. As to the punitive damages award, Plaintiff does not dispute that punitive damages present a uniquely acute risk of constitutionally impermissible duplicative punishment where, as here, statutory damages have already been awarded, in part, to punish for the same conduct.  Instead, he just argues that the punitive damages award was not duplicative because it was intended to punish for harms to third parties outside of the class.  But that avoids one constitutional problem only by conceding another, as the Supreme Court has held that punitive damages may not be imposed to punish for harms to third parties.  See Philip Morris USA v. Williams, 549 U.S. 346, 353 (2007). In all events, even apart from the duplicative or extraneous punishment problem, the punitive damages award is manifestly excessive under the factors set forth in State Farm Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408 (2003).

At bottom, Plaintiff failed to prove the propriety of class certification, failed to prove any violation of the FCRA, failed to prove that any conceivable violation was willful, and failed to

- 1 -

1   prove that the conduct alleged caused any tangible injury to any member of the class beyond, at

2   most, Plaintiff himself.  TransUnion accordingly respectfully requests that the Court enter

3   judgment as a matter of law in favor of TransUnion, order a new trial, reduce the awards of

4   statutory and punitive damages, and/or otherwise set aside or amend the judgment.

## II.   ARGUMENT

**A.   Judgment as A Matter of Law or A New Trial Is Warranted Because The Jury's Verdict Was Not Supported By The Evidence.**

TransUnion is entitled to judgment as a matter of law, or to a new trial, because the

evidence did not support a finding that TransUnion willfully violated 15 U.S.C. §§ 1681e(b),

1681g(a), or 1681g(c)(2).

### 1.   The Evidence Established that TransUnion Was Making Affirmative Efforts to Comply With, not Willfully Violate, the FCRA.

The jury's verdict as to Plaintiff's section 1681e(b) claim was not supported by substantial

evidence that TransUnion's procedures were unreasonable or that TransUnion acted willfully

within the meaning of <u>Safeco Insurance Company. of America v. Burr</u>, 551 U.S. 47, 68-69 (2007).

Plaintiff's contrary argument ignores key evidence that compels the conclusion that TransUnion's

conduct during the class period was reasonable and that TransUnion endeavored to achieve

maximum possible accuracy, not to willfully violate the FCRA.

<u>First</u>, the trial evidence showed that TransUnion's actions were plainly reasonable in light

of the guidance provided by the <u>Cortez</u> case.  The <u>Cortez</u> trial court noted, "It may well be that the

defendant could have escaped liability if it merely reported that the plaintiff's name was (arguably)

similar to a name on the OFAC list" rather than reporting plaintiff's name as a "match."  <u>Cortez v.</u>

<u>Trans Union, LLC</u>, No. 05-cv-0564, 2007 WL 2702945, at *1 (E.D. Pa. Sept. 13, 2007).  The Third

Circuit similarly said that "[t]he alert on Cortez's credit report does not state that the names are

'similar' to someone on the SDN List or that a match is 'possible.'  It reported a 'match' with

someone on the SDN List." <u>Cortez v. Trans Union LLC</u>, 617 F.3d, 688, 708-09 (3d Cir. 2010).

TransUnion thus responded by changing its reports to reflect that the name was only a "potential"

match.  It was certainly reasonable—and in all events manifestly not willful misconduct—for

TransUnion to rely on the guidance provided by the courts in <u>Cortez</u> as to what satisfies the

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

- 2 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1   FCRA.[1]  Changing the OFAC header language from "input name matches" to "input name is

2   potential match" is proof of lack of willfulness, not the contrary.  (Trial Tr. (Gill) 350:25-352:23;

3   ECF No. 303-1 at 3-6 (Acharya); Ex. 62.)

4       Second, the evidence showed that TransUnion's post-Cortez communications with end-

5   users were reasonably calculated to ensure maximum possible accuracy.  TransUnion repeatedly

6   took steps to put end-users on notice that any Name Screen data returned was not determinative but

7   had to be verified.  The change to the OFAC header language was announced widely to Name

8   Screen resellers and users.  (Trial Tr. (Gill) 352:20-353:10; Ex. 70.)  This is not "shift[ing] the

9   burden of assuring accuracy to its customers," as Plaintiff suggests.  (ECF No. 329 at 17.)  It is

10   achieving maximum accuracy in the message communicated:  namely, that the name provided by

11   the consumer on a credit application is a potential, not definitive, match to a name on the list.

12       TransUnion never claimed that the presence of a disclaimer "transform[s] inaccurate

13   information into accurate information."  (Opp. at 17.)  Rather, the undisputed trial evidence with

14   respect to end-users' (such as Dublin Nissan's) awareness, understanding, and acknowledgment of

15   the contract language unequivocally proved that the meaning of a Name Screen result was not

16   "inaccurate information."  See Dickens v. Trans Union Corp., 18 F. App'x 315, 318 (6th Cir. 2001)

17   (No violation of § 1681eb where evidence showed that end-user understood the meaning of

18   notations on credit report that might not have been understood by lay person).[2]

19       Third, the evidence compels a finding as a matter of law that TransUnion did not willfully

20   violate the FCRA by using name-only matching logic during the class period, as there was no

---

21   [1] Moreover, contrary to Plaintiff's contention that TransUnion should have used a vendor other

22   than Acuity, the evidence overwhelmingly showed that reliance on Acuity was reasonable
    because it was the best in the market, with "endorsement by the American Bankers Association"

23   and work with "all types of financial services compliance for a very long time."  (Trial Tr. (Gill)
    341:24-342:10; see also id. (O'Connell) 500:1-20 ["the most widely-used software"]).

24   [2] Plaintiff's out-of-circuit cases on this point shed no light on the trial evidence here.  Smith v. E-

25   Backgroundchecks.com, Inc., 81 F. Supp. 3d 1342, 1349 (N.D. Ga. 2015), turned in part on the
    court's finding that a disclaimer did not directly address the potential harm at issue because it did

26   "not warn against the use of the report absent further verification."  Here, the contract language
    expressly forbade end-users from making adverse credit decisions based solely on a potential

27   match, a warning Dublin Nissan failed to heed.  Henderson v. Corelogic Nat'l Background Data,
    LLC, 178 F. Supp. 3d 320, 336 (E.D. Va. 2016), is similarly inapposite:  it addressed whether, in a

28   case brought by plaintiffs who were denied employment based on inaccurate criminal record
    information, a CRA followed "strict procedures" within the meaning of § 1681k.

- 3 -

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR
REMITTITUR OR, TO ALTER OR AMEND THE JDGMT.  /  CASE NO. 3:12-CV-00632-JSC

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

evidence that superior techniques were known by TransUnion to be available then.  TransUnion's expert witness, Jaco Sadie, testified that in 2011 it was not standard financial industry practice to use date-of-birth filtering before human review.  (Trial Tr. (Sadie) 621:8-13.)  He also testified that, during the class period, financial institutions regularly used interdiction software only in the limited manner expressly directed by TransUnion.  (Trial Tr. (Sadie) 623:7-624:12.)  It was not disputed that TransUnion's Name Screen product was <u>interdiction</u> software, meaning that the product was intended only to whittle the several-hundred-page OFAC list down to a smaller subset of items for human review.  Plaintiff's expert Mr. Ferrari confirmed this. (Trial Tr. (Ferrari) 430:9-25 [interdiction results "just a first line of defense"]; <u>id.</u> 430:13-25 ["four eyes" method depends on human review after receipt of initial interdiction results].)[3]

The evidence also established that use of name-only matching logic was reasonable because end-users acknowledged in writing that the software provided just a preliminary screening function and that they would manually confirm any potential matches.  (Trial Tr. (Coito) 279:20-282:8 & Ex. 42 § G.1 at 042-007.)  The evidence showed that TransUnion acted to ensure that users read and applied Name Screen data properly.  (Trial Tr. (Gill) 344:9:19, 345:11-348:15, (Turek) 747:13-747:22.)  Even with respect to Plaintiff himself, the manager of Dublin Nissan testified that she knew the proper use of Name Screen and that her employees – including the employee who dealt directly with Plaintiff – were specifically trained as to its proper use.

Both expert witnesses agreed that in 2011, Name Screen was intended by TransUnion (and understood by users) to deliver only a potential name match.  (Trial Tr. (Sadie) 622:5-623:6; (Ferrari) 430:9-25.)  Plaintiff's repeated reliance on anecdotes that unidentified small companies might "freak out" when they see a potential hit does not outweigh the substantial countervailing

---

[3] Another theme repeatedly emphasized by Plaintiff is the supposed evidence that "two other CRAs" did not identify Mr. Ramirez as an OFAC match.  Plaintiff failed to provide the foundation or authentication of the "two other CRAs'" OFAC results (Exs. 20 and 21) necessary to draw any conclusion as to what the two other CRAs did.  DealerTrack's representative did not properly authenticate either document, and yet, Plaintiff relies on the exhibits as undisputed proof that Experian and DealerTrack "got it right."  Plaintiff further extrapolates that the exhibits are evidence that superior name-matching technology did exist in 2011.  But the jury had no facts as to how the Experian and DealerTrack OFAC searches were run.  One cannot draw a reasonable inference from the lack of a hit for Mr. Ramirez that the other two CRAs' products were superior.  It is equally possible that their matching logic was under-inclusive and risked missing true SDNs.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1   evidence demonstrating the industry-wide understanding that manual review by the end-user was

2   essential to the OFAC compliance regime.  (Trial Tr. (Ferrari) 426:4-5; Dkt. No. 329 at 9 & 17.)

3   Plaintiff presented no evidence at trial that for other class members, any end-user had any "freak

4   out" reaction, resulting in any difficulty in getting credit.  And for the vast majority of class

5   members – for whom no report was sold – no such lender "freak-out" was even possible.

6          Fourth, the evidence established that TransUnion took immediate action to bring its Name

7   Screen product into compliance with its interpretation of the Cortez ruling as quickly as it could.

8   After the Cortez jury verdict, and while the appeal was pending, TransUnion implemented a "rules

9   feature" within Accuity's product to reduce the hit rate from the approximately 5% delivered in its

10  "off-the-rack" state to a rate of 1%.  (Trial Tr. (O'Connell) 493:15-494:1; 494:18-21.)  TransUnion

11  also acted quickly to eliminate the "Synonyms" feature, which further increased the possible

12  accuracy of the Name Screen product and reduced the hit rate to one-half of one percent by

13  eliminating the "Cortes"/"Cortez" matching issue.  (Trial Tr. (O'Connell) 474:7-9, 494:18-21; ECF

14  No. 303-1 at 15-17 (Newman).).  The evidence further showed that TransUnion availed itself of the

15  best technology it could find in 2011.  The Name Screen product achieved the "maximum possible

16  accuracy" for the information it actually conveyed.  There was no date-of-birth filtering technology

17  known to TransUnion during the class period, and Plaintiff presented no contrary evidence in this

18  regard.  (Trial Tr. (O'Connell) 487:18-489:3.)  Far from a willful violation of the FCRA, the

19  evidence showed an entirely reasonable response to Cortez.

20         Fifth, Plaintiff mischaracterizes the October 2010 and February 2011 communications

21  between TransUnion and OFAC.  The October 2010 letter from Treasury focused on "mitigat[ing]

22  the impact of false positives on credit applicants."  (Ex. 34.)  However, there was no evidence that

23  TransUnion's efforts to reduce the rate of false positives, even before implementing the date-of-

24  birth screen, were unsatisfactory to Treasury.  Cortez did not explain what hit rate was too high,

25  and what caused Ms. Cortez's name to hit was remediated by elimination of the "Synonyms"

26  feature.  Treasury never informed TransUnion after receiving its February 2011 letter that

27  TransUnion's procedures were inadequate.  Moreover, OFAC itself still offers an interdiction tool

28  that, by permitting "fuzzy logic" matching, delivers higher hit rates than Name Screen.  (Trial Tr.

1

2

3

(O'Connell) 494:18-21, (Sadie) 649:4-20.)  The jury held TransUnion to a higher standard than the government itself follows, and therefore, as a matter of law, TransUnion did not willfully violate § 1681e(b).

4

5

### 2. The Evidence Did Not Support a Finding That TransUnion Willfully Violated § 1681g(a) and (c)(2).

6

7

8

9

10

11

12

Similarly, the evidence did not support a finding that TransUnion willfully violated the disclosure requirements of 15 U.S.C. §§ 1681g(a) or 1681g(c)(2).  Plaintiff makes much of the fact that there were two separate mailings.  TransUnion never disputed this.  What Plaintiff ignores, however, is the evidence that TransUnion's decision to mail the disclosure in two separate mailings was a reasonable response to a technological and practical problem that prevented it from immediately, post-<u>Cortez</u>, disseminating the information together in a single envelope.  Contrary to establishing a willful violation, this evidence showed TransUnion was attempting to communicate effectively with consumers as best it could – <u>i.e.</u>, to comply with the FCRA, not thwart it.

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiff also incorrectly characterizes TransUnion's position with respect to the disclosures as applied to the summary of rights.  TransUnion did not take the position that each of the two mailings was an individual disclosure with which a summary of rights had to be sent.  Rather, TransUnion showed that its interpretation – that the two mailings together comprise the disclosure – was objectively reasonable under the circumstances, particularly in light of the lack of guidance from <u>Cortez</u> or any other authority.  The evidence showed that TransUnion made a good-faith attempt to comply with the appellate ruling in <u>Cortez</u> by sending the consumers' personal credit reports with a letter identifying the OFAC records that were considered a potential match to the name on the consumers' files.  (ECF No. 303-1 at 45 (Lytle).)  TransUnion reasonably believed that the information in the credit report, together with the information in the letter, constituted "[a]ll information in the consumer's file at the time of the request," <u>see</u> 15 U.S.C. § 1681g(a), and that delivery in this fashion satisfied FCRA requirements.

25

26

27

28

Plaintiff's assertion that TransUnion "falsely represented to Treasury that the letter contained instructions on how to block future return of potential match messages" (Opp. at 22), is without merit.  The evidence showed that the letter was effective.  In response to the letter, more

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

- 6 -

consumers contacted TransUnion and were able to successfully block OFAC results from appearing on their TransUnion reports.  (Trial Tr. (Briddell) 785:5-10, 810:4-8.)  No evidence showed that <u>any</u> class members were misled or failed to understand the information provided.  That Plaintiff himself sought legal counsel is not proof that the letter was misleading.  In fact, Plaintiff previously hired a third party to challenge truthful information on his credit report (Trial Tr. (Ramirez) 164:21-165:9), so the fact that he again sought the assistance of a third party here does not prove that the letter was misleading.[4]  To the contrary, Plaintiff understood the letter well enough to contact TransUnion to make a successful dispute under § 1681i(a).  (Trial Tr. (Ramirez) 156:11-157:9, 157:23-158:10, 166:3-5.)  The letter was therefore compliant as a matter of law, as the purpose of the § 1681g disclosure is to assist consumers with the dispute process.

**B.      A New Trial Should Be Ordered Because of Counsel's Improper Arguments.**

**1.      Plaintiff's Counsel's Inflammatory Remarks Warrant a New Trial.**

Contrary to Plaintiff's argument otherwise, TransUnion's failure to object and move for a mistrial <u>during Plaintiff's closing argument</u> does not result in waiver.  Had TransUnion objected and moved for a mistrial at the time, such theatrics surely would have drawn more attention to the words impermissibly uttered by Plaintiff's counsel. <u>See</u> <u>Leathers v. Gen. Motors Corp.</u>, 546 F.2d 1083, 1086 (4th Cir. 1976) ("Counsel for defendant was placed in an unnecessarily difficult and embarrassing position.  To interrupt argument by plaintiffs' counsel might antagonize the jury, and would certainly emphasize the point.").

**2.      Plaintiff's Counsel's Treatment of the <u>Cortez</u> Opinion Warrants a New Trial.**

Plaintiff strayed far from the stipulation the parties reached with respect to what the jury could hear about the <u>Cortez</u> opinion in two respects.  Counsel for Plaintiff:  (1) read a nearly verbatim quote from the opinion to Mr. O'Connell; and (2) presented facts about the <u>Cortez</u> ruling in his closing that were not in evidence.[5]

---

[4] Plaintiff's counsel, even though he recently prevailed in <u>Cortez</u>, also did not write TransUnion in March 2011, near the beginning of the class period, to explain why Plaintiff believed its manner of disclosure failed to comply, and instead waited close to a year before filing suit.

[5] Plaintiff's assertion that none of the specific statements TransUnion objected to were excluded after motions <u>in limine</u> is a hair-splitting distinction without a difference.  (Opp. at 27.)  At the final pretrial conference, the parties disputed Plaintiff's designation of the <u>Cortez</u> opinion as a trial

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

First, Plaintiff's arguments that counsel was entitled to read a quote to Mr. O'Connell from the Cortez opinion because TransUnion's counsel somehow opened the door distorts the record. Counsel for TransUnion simply asked Mr. O'Connell, in his role as President of Product Development, what he learned about the Cortez ruling in 2010 at the time of its issuance. ("Q. Now, at some time in 2010 did you learn of the appellate decision in Cortez, the decision by the Appeals Court, you know, out in Philadelphia? A. Yes. Q. What did you learn of that decision?") (Trial Tr. (O'Connell) 500:21-501:11.) In no way did this testimony open the door to the words of the decision. The question was akin to an "effect on listener" type of inquiry.

By contrast, Plaintiff's counsel's questioning went directly to the heart of the excluded material. Plaintiff's counsel questioned O'Connell about his knowledge of the Cortez opinion, culminating with a question that contained a nearly verbatim quote of the language of the opinion. (Trial Tr. (O'Connell) 531: 8-533:19.):

| Cortez Opinion (Cortez, 617 F.3d at 709.) | Mr. Francis' Question to Mr. O'Connell (Trial Tr. (O'Connell) 533:12-16.) |
|---|---|
| "The jury could reasonably conclude that Trans Union could have taken steps to minimize the possibility that it would erroneously place an OFAC alert on a credit report, such as checking the birth date of the consumer against the birth date of the person on the SDN List." | "Are you aware that actually one of the things that the Cortez decision said was that the jury could have reasonably concluded that TransUnion could have taken steps to prevent and minimize the possibility of an erroneous OFAC alert by using or checking the date of birth of the consumer against the birthdate of the person on the SDN list?" |

Plaintiff's arguments, that although the opinion itself was excluded, the stipulation allowed for questioning on the words of the Cortez decision, are irrational. Plaintiff states that he "properly sought to explore witnesses' knowledge regarding the Cortez litigation . . . ." (Opp. at 27.) This is far from accurate. Plaintiff's counsel did not question witnesses about the Cortez litigation, as the stipulation allowed (e.g., "When was it filed?", "What did TransUnion do in response?", "Who at TransUnion was responsible for monitoring the case?"). Rather, Plaintiff's counsel presented the actual contents of the excluded Cortez opinion, necessarily through its words, to the jury.

---

exhibit. The Court ruled that the opinion was inadmissible under Rule 403. See Transcript of proceedings, June 8, 2017 at 5:16-21. The procedural posture and result is identical to a motion in limine. Plaintiff's implication that the Court's ruling on this point is any less binding than it would be had it resulted from a motion in limine should be rejected.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

<u>Second</u>, Plaintiff's counsel again violated the terms of the stipulation when he stated during closing argument that the <u>Cortez</u> jury found willfulness on the disclosure claims when that fact was not in evidence.  (Trial. Tr. (Plaintiff's Closing Argument) 855:14-16.)  The Court itself commented on this error.  (Trial Tr. 919:3-7.)  Plaintiff's improper arguments in violation of prior stipulations and the Court's <u>Cortez</u> order should be corrected by ordering a new trial.

**C.    The Jury's Awards of Statutory and Punitive Damages Are Unlawful and Excessive.**

The jury's statutory and punitive damages awards cannot stand, as they are grossly excessive and lack any meaningful relationship either to the record or to principles of compensation, deterrence, or punishment.  Tellingly, Plaintiff cannot even bring himself to acknowledge the jaw-dropping $60 million award, and instead insists on describing the award solely on a per-class-member basis.  But Plaintiff's efforts at misdirection cannot change the reality that the jury awarded nearly $10 million in statutory damages in the absence of <u>any</u> evidence as to how anyone beyond Plaintiff himself suffered any injury from the purported violations of the FCRA, and then proceeded to layer more than $50 million in punitive damages on top of a statutory damages award that already provided a more than full measure of compensation, deterrence, and punishment with respect to every affected individual.  Plaintiff does not and cannot square those awards with the evidence or with due process.

**1.    The Jury's Statutory Damages Award Cannot Stand.**

As set forth in the Motion, the evidence presented at trial was insufficient to support a finding not only that each purported violation was willful, but that each purported violation caused the class concrete harm. The evidence thus was insufficient to support any statutory damages award.  Moreover, even if the evidence was minimally sufficient, the jury's award is excessive and must be reduced, whether through remittitur or through constitutional review.[6]

---

[6] Plaintiff accuses TransUnion of conflating remittitur and constitutional reduction, but it is Plaintiff who misunderstands the two doctrines.  Far from being "unrelated to constitutional concerns," Opp. 29, remittitur is frequently employed as a means of addressing the same excessiveness concerns animating constitutional due process analysis.  Of course, remittitur is discretionary, whereas constitutional constraints are not.  But courts often employ remittitur when faced with excessiveness concerns because that allows a court to propose a reduction to damages without definitely ruling on an award's constitutionality.  Moreover, remittitur is particularly appropriate when, as here, a damages award is not only facially excessive, but also utterly

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

a.      **The Statutory Damages Award Is Not Supported By Substantial Evidence.**

At the outset, the statutory damages award should be vacated because it was not supported by the evidence, either on liability or on harm to every class member.  As for the section 1681e(b) claims, Plaintiff could not establish that the majority of the class had any harm at all because their reports were not sold to third parties.  Likewise, with respect to the section 1681g disclosure claims, at most, all Plaintiff proved was a technical violation, and he did not make a showing of harm to each class member or even to the class as a whole.  While both problems necessitate rejection of the jury's award, either one is sufficient to warrant vacatur.

Plaintiff tries to resist this conclusion by noting that statutory damages are available for each claim, Opp. at 30, but that misses the point.  The problem here is that the jury's statutory damages award was not disaggregated among the three FCRA claims.  As a result, the award can be upheld only if the evidence was sufficient as to <u>each</u> claim.  <u>See, e.g.</u>, <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1406 (9th Cir. 1994) ("The special verdict form did not apportion the damages between the verdicts we have reversed and the ones we have affirmed.  We vacate the damages award and remand."); <u>Maryland v. Baldwin</u>, 112 U.S. 490, 493 (1884); <u>Wilmington Star Mining Co. v. Fulton</u>, 205 U.S. 60, 79 (1907); <u>United N.Y. and N.J. Sandy Hook Pilots Ass'n v. Halecki</u>, 358 U.S. 613, 619 (1959); <u>Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.</u>, 370 U.S. 19, 29-30 (1962).[7]  A finding that the evidence was insufficient on any one of the class's claims therefore suffices to warrant vacatur of the award.

b.      **The Statutory Damages Award Is Grossly Excessive.**

Even if some statutory damages award were permissible on all three claims, the jury's nearly $10 million award is grossly excessive.  To the extent Plaintiff suggests that statutory damages awards are immune from excessiveness review, he is mistaken.  Many courts have

---

disconnected from the evidence.  Accordingly, by arguing both that the awards here are unconstitutionally excessive <u>and</u> that they should be remitted, TransUnion has simply presented the court with all options for dealing with a damages award that maps onto neither the evidence nor the objectives that statutory and punitive damages are intended to achieve.

[7] <u>See also</u> <u>Kern v. Levolor Lorentzen, Inc.</u>, 899 F.2d 772, 790 (9th Cir. 1990) (Kozinski, J., dissenting) ("More than a century ago, the Supreme Court explained that, because we cannot read the minds of jurors, a general verdict that may have been based on an improper theory of liability must be reversed.").

- 10 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

recognized that statutory damages awards may be unconstitutionally excessive, including in the particular context of an FCRA class action.  See, e.g., Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006) (recognizing, in an FCRA class action, that a statutory damages award "that would be unconstitutionally excessive may be reduced"); see also Pirian v. In-N-Out Burgers, No. SACV06–1251 DOC (MLGx), 2007 WL 1040864, *5 (C.D. Cal. Apr. 5, 2007) ("If Plaintiff is able to prove that INO willfully violated Section 1681c(g)(1) on a large scale, entitling Plaintiff and the class to statutory damages, the Court will reduce any unconstitutionally excessive damages award at that time."); Texas v. Am. Blastfax, Inc., 164 F. Supp. 2d 892, 900 (W.D. Tex. 2001) (reducing statutory damages award as impermissibly excessive); Golan v. Veritas Entm't LLC, et al., Mem. and Order Granting in Part and Denying in Part Post-Trial Motion, Case no. 4:14CV0069 ERW (E.D. Mo. Sept. 7, 2017) (Request for Judicial Notice ("RJN"), Ex. 1) (holding that a specific class-wide statutory damages award may be unconstitutional if it is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable; reducing TCPA statutory damages from $500 per violation to $10 per violation) .  No logic supports a different result.  The Framers were acutely concerned about the possibility that legislatively prescribed remedies could be constitutionally excessive in their application to particular cases, hence the Due Process, Excessive Fines, Excessive Bail, and Cruel and Unusual Punishment Clauses of the Constitution.

Plaintiff is also mistaken in his contention that the excessiveness analysis begins and ends with whether the award to each class member was within the statutory range.  The Ninth Circuit has expressly recognized the distinct problems with massive aggregated class-wide statutory damages awards, holding that "[w]hen the class size is large, the individual award will be reduced so that the total award is not disproportionate," and applying that reasoning to reduce, as disproportionately punitive, a class action statutory damages award.  See Six (6) Mexican Workers v. Az. Citrus Growers, 904 F.2d 1301, 1310 (9th Cir. 1990) (emphasis added).  Plaintiff tries to dismiss Six Mexican Workers as unique to the statute at issue there, but the court's opinion rejected that "unprecedented" award as "excessive" and "disproportionately punitive" for the same reasons that the jury's award should be rejected here:  because it "exceeded what was necessary to

- 11 -

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR REMITTITUR OR, TO ALTER OR AMEND THE JDGMT.  /  CASE NO. 3:12-CV-00632-JSC

LA 52100911v12

compensate any potential injury from the violations" and "exceed[ed] that necessary to enforce the Act or deter future violations." Id.

Bateman v. Am. MultiCinema, Inc., 623 F.3d 708 (9th Cir. 2010), does not support Plaintiff's arguments. Bateman did not concern an excessiveness question; it concerned only whether a "proposed class failed to meet Rule 23(b)(3)'s superiority requirement." Id. at 712. The court thus held only that the potential for excessive statutory damages was not a reason to deny class certification, not that a class-wide damages award can never be excessive so long as each class member's award falls within the statutorily prescribed range. Indeed, the court expressly "reserve[d] judgment as to whether, if Bateman prevails at trial, the district court may be entitled to reduce the award if it is unconstitutionally excessive," noting that trying to answer that question before the jury even issued an award would be "unduly speculative." Id. at 723.

If anything, the very existence of a statutory range suggests relativity among different types of injuries or wrongs, and underscores the need to be sensitive to those distinctions. Here, where Plaintiff concededly did not even try to demonstrate injury—or even knowledge of the OFAC disclosure—on the part of any other class member, an award at the very top of the range is manifestly excessive. That the statutory award is nearly four times TransUnion's revenue from Name Screen sales for the entire class period reinforces that conclusion. While Plaintiff urges this Court to ignore that gross disparity, he tellingly fails to identify a single case that supports his contention that revenue or profit during the class period[8] is irrelevant to determining whether statutory damages should be reduced. That is because a slew of authorities contradict Plaintiff's position. See, e.g., DirecTV, Inc. v. Perrier, No. 03-CV-400S, 2004 WL 941641, at *4 (W.D.N.Y., Mar. 15, 2004) (refusing to award statutory damages under § 2520 in light of absence of evidence that defendant significantly profited from his violations); DirecTV, Inc. v. Kaas, 294 F. Supp. 2d 1044, 1049 (N.D. Iowa 2003) (finding $10,000 statutory damages award excessive given "no evidence" that defendant "profited from the pirate access device").

---

[8] Notably, TransUnion presented financial data for the full calendar year 2011, but the class period was only seven months. Thus, even this data overstates the permissible measure for punishment.

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR REMITTITUR OR, TO ALTER OR AMEND THE JDGMT. / CASE NO. 3:12-CV-00632-JSC

LA 52100911v12

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

In sum, the evidence presented by Plaintiff does not support a finding of liability – or harm – to each member of the class on each (or any) of Plaintiff's three FCRA claims.  Even if it did, there was simply no evidence to support the conclusion that all 8,184 class members suffered the same purported harms as Plaintiff, or that TransUnion should be punished to the exact same considerable extent more than 8,000 times over.

**2.  The Punitive Damages Award Cannot Stand.**

The jury's $52 million punitive damages award also cannot stand, as it is the product of numerous legal and constitutional errors.  First, the jury was not properly instructed on the findings necessary to impose punitive damages.  Second, by Plaintiff's own telling, the jury's award can be explained only as an impermissible attempt to punish TransUnion for harm to third parties. Finally, the award fails all three of the <u>State Farm</u> factors for measuring excessiveness.

**a.  The Punitive Damages Award Was Based On An Incorrect Standard.**

Contrary to Plaintiff's representation otherwise, the jury instruction was <u>not</u> proper and was <u>not</u> in accordance with the Ninth Circuit's Model Civil Jury Instruction 5.5.  TransUnion's proposed jury instruction, which was not adopted by the Court, hewed closely to the model instruction.  (ECF No. 259 at p. 39-40.)  By comparison, the jury instruction read at trial omitted the "malicious" and "oppressive" language of the model rule and instead referenced only the "reckless disregard" standard.  (Trial Tr. (The Court) 939:5-20.)  These are not harmless omissions. Counsel is not aware of a single case from this Circuit that has upheld an award of punitive damages under the FCRA where the jury was instructed that reckless disregard alone may suffice. Nor has Plaintiff been able to identify any, as every case cited in the Opposition in support of the assertion that "reckless disregard" suffices for a punitive damages instruction on FCRA claims is from outside this Circuit.  And for good reason:  The FCRA is a highly technical statute, and to the extent potential FCRA violations cause any harm at all, the overwhelming majority cause purely economic harm.  Given that background, and the statute's allowance for sizable statutory damages awards, following the model instruction here is particularly important, as it should be the rare case in which punitive damages for an FCRA violation are awarded.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52100911v12

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

**b.**     **The Jury's Punitive Damages Award Is the Product of Numerous Constitutional Violations.**

As TransUnion explained in its Motion, the jury's $52 million punitive damages award cannot plausibly be understood as anything other than an impermissibly duplicative punishment. Unlike a compensatory damages award, a statutory damages award does not seek to provide only (or even necessarily any) compensation; it also seeks to achieve punishment and deterrence. <u>See</u> <u>Parker v. Time Warner Entm't Co., L.P.</u>, 331 F.3d 13, 26 (2d Cir. 2003) (noting the "pseudo-punitive intention" of statutory damages) (Newman, J., concurring). Plaintiff well understood as much; his own counsel implored the jury during the liability phase of the trial to award statutory damages at the highest end of the statutory range to impose the "maximum <u>penalty</u>" on TransUnion. (Trial Tr. (Closing Argument) 865:17.) Having already punished TransUnion once through a nearly $10 million statutory damages award based on conduct that was not proven to have caused <u>any</u> injury to the class, the jury could not then punish TransUnion a second time for the same conduct through a punitive damages award.

Plaintiff does not deny that double punishment for the same conduct would violate due process. Instead, he insists that there was no double punishment here because the jury's punitive damages award was intended to punish TransUnion for purportedly injuring individuals who are <u>not</u> part of this case. Indeed, he openly emphasizes "that a substantial number of individuals outside of the class were affected by Trans Union's practices," Opp. at 11, and urges the Court to consider "the reach of Trans Union's conduct beyond the class members here," Opp. at 42. The basic and insurmountable problem with that argument is that the Due Process Clause squarely forbids the use of a "punitive damages award to punish a defendant for injury that it inflicts upon nonparties." <u>Philip Morris USA</u>, 549 U.S. at 353. Plaintiff's defense of this massive punitive damages award thus confirms that it is unconstitutionally excessive. <u>See, e.g.</u>, <u>Merrick v. Paul Revere Life Ins. Co.</u>, 500 F.3d 1007, 1017-18 (9th Cir. 2007) (applying <u>Philip Morris</u> to vacate punitive damages verdict and remand for new trial on punitive damages where district court failed to instruct jury that it could not punish the defendants for conduct that harmed only nonparties);[9]

---

[9] Notably, the court in <u>Merrick</u> further found a new trial to be the only appropriate remedy because "[w]hile remittitur may remedy a jury award deemed unconstitutionally excessive, it seems less

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

White v. Ford Motor Co., 500 F.3d 963, 972 (9th Cir. 2007) (finding that Philip Morris compelled a new trial on punitive damages in a truck rollover case where "the jury could have mistakenly understood the [plaintiffs'] argument that [defendant's] conduct injured 54 other people to justify not just a finding of reprehensibility, but also to consider those other injuries in calculating the amount of damages warranted to punish [defendant's] reprehensible conduct").[10]

The Due Process Clause also forbids the use of a punitive damages award to "express biases against big businesses." State Farm, 538 U.S. at 417. This restriction is particularly apt here because Plaintiff repeatedly exploited the theme of the malfeasance of "one of the Big Three" credit agencies "with a net worth of nearly $1.5 billion." Opp. at 1-2. Here, the "case ... was used as a platform to expose, and punish, the perceived deficiencies of [a big company's] operations throughout the country." State Farm, 538 U.S. at 420. Exposing and punishing "the perceived deficiencies" of TransUnion's nationwide operations was in fact the theme of Plaintiff's closing. This renders the punitive award even more constitutionally impermissible.

### c. The Jury's Massive Punitive Damages Award Runs Afoul of All Three State Farm Factors.

Finally, the punitive damages award is unconstitutionally excessive under State Farm.[11]

---

appropriate where the constitutional error stems from misguidance regarding the way the jury may use evidence in setting an amount." 500 F.3d at 1018 (internal citations omitted).

[10] Plaintiff's argument that the size of the punitive damages award serves to protect non-class members because it deters future harm to others (Opp. at 42) also is illogical. TransUnion stopped using the separate OFAC letter at the end of July 2011, and introduced a date-of-birth filter for Name Screen results in 2013. There is no ongoing threat of "future harm to others by the same reckless conduct."

[11] Plaintiff erroneously states that the "High Court" has only twice overturned punitive awards because of their size. Opp. at 35 n.21. In fact, State Farm itself resulted in nearly a dozen orders in which the Court vacated the decisions of lower courts, a number of which ultimately led to dramatic reductions in punitive damages awards. Moreover, even after State Farm, the Supreme Court has continued to express alarm about "outlier cases" that "subject defendants to punitive damages that dwarf the corresponding compensatories." Exxon Shipping Co. v. Baker, 554 U.S. 471, 500 (2008) (plurality). And while Plaintiff suggests that State Farm and Gore are "very different" from this case, and that they are the outliers, according to the Supreme Court, the "median ratio of punitive to compensatory awards" is "just 0.62:1." Id. at 499. Nothing about Gore or State Farm suggests that the Supreme Court intended those decisions to be tickets good for one day only. To the contrary, the Supreme Court was unmistakable in its call for "exacting appellate review" of grossly excessive punitive awards. State Farm, 538 U.S. at 418.

DEF.'S REPLY I/S/O RENEWED MOT. FOR JDGMT. AS A MATTER OF LAW, FOR A NEW TRIAL, FOR REMITTITUR OR, TO ALTER OR AMEND THE JDGMT.  /  CASE NO. 3:12-CV-00632-JSC

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1

**(1)    The Evidence Did Not Establish That TransUnion's Conduct Was Reprehensible.**

2

"Perhaps the most important indicium of the reasonableness of a punitive damages award is

3

the degree of reprehensibility of the defendant's conduct." BMW of N. Am., Inc. v. Gore, 517 U.S.

4

559, 575 (1996). Rather than argue that TransUnion's conduct qualifies as reprehensible under

5

State Farm, Plaintiff argues that State Farm should be ignored because this is an economic harm

6

case. That argument is both illogical and indefensible. The very first two considerations State

7

Farm identifies for assessing reprehensibility are whether "the harm caused was physical as

8

opposed to economic" and whether "the tortious conduct evinced an indifference to or a reckless

9

disregard of the health or safety of others." State Farm, 538 U.S. at 419. Thus, the fact that

10

conduct caused only economic harm and did not threaten health or safety does not render State

11

Farm inapplicable; rather, State Farm teaches that such conduct was less reprehensible. Plaintiff's

12

contrary argument is an invitation to disregard binding Supreme Court precedent.

13

Plaintiff also argues that the harm was more than economic because "a major part of the

14

harm was reputational and emotional in nature." (Opp. at p. 37). But by this logic, punitive

15

damages should apply at most only to the 1,853 members of the class who had their report sold to a

16

third party, because, unlike the vast majority of class members who only received the OFAC letter,

17

they would be the only ones who could have possibly suffered any reputational harm.[12]

18

**(2)    The Ratio of Punitive Damages to Statutory Damages Demonstrates Excessiveness.**

19

The second State Farm factor, the ratio of punitive damages to harm to the plaintiff, also

20

weighs heavily in favor of a finding of constitutional excessiveness. Plaintiff insists that the ratio

21

here was 6:1 because that is the difference between the statutory and the punitive damages awards.

22

But the correct comparator is "harm, or potential harm, to the plaintiff." State Farm, 538 U.S. at

23

424. That distinction is critical in the statutory damages context because, as noted, statutory

24

25

_____

26

[12] Plaintiff's argument is also is in strong tension with his basic theory in support of class treatment. If the only harm that justifies the massive punitive damages award is non-economic, then class treatment is appropriate only if all class members suffered the same non-economic harm. Yet the evidence is undisputed that nearly eighty percent of the class could not have suffered such harm—or at least were not remotely similarly situated to Plaintiff and his highly idiosyncratic experience.

27

28

- 16 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

damages (unlike compensatory damages) are not just a measure of harm.  See supra p. 14.  As Plaintiff himself emphasized to the jury, they are also intended to punish and deter.  Thus, in a statutory damages case, the ratio must be derived from the evidence of injury, not from the first award.  Here, that evidence is nil, as Plaintiff did not prove any compensable injury to anyone other than (at best) himself.  Indeed, Plaintiff repeatedly took the position was that he was not required to prove injury at all.  Thus, under State Farm, the correct ratio is $60 million to zero – or, at most, to Plaintiff's individual award.  Either way, the award is plainly excessive.

At any rate, Plaintiff is mistaken in his contention that a 6:1 ratio is constitutionally acceptable under the facts here.  State Farm itself suggested that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." State Farm, 538 U.S. at 425; see also Exxon Shipping Co., 554 U.S. at 500 (median ratio of compensatory damages to punitive damages is 0.62:1).  Moreover, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." State Farm, 538 U.S. at 425.  Thus, even accepting the notion that the statutory damages award here was purely compensatory, the punitive damages award still should be limited to no more than a 1:1 ratio.

### (3)    The Disparities Between The Punitive Damages Award And Civil Penalties Demonstrate Excessiveness.

The third State Farm factor, the disparities between the punitive damages award and the civil penalties authorized or imposed in comparable cases, also weighs heavily in favor of a finding that the award is constitutionally excessive.  Plaintiff does not dispute that the jury's award is grossly excessive when compared to the maximum civil penalty of $2500 the FTC could obtain for "a knowing violation" of the FRCA.  15 U.S.C. § 1681s(a)(2)(A).  Instead, Plaintiff asks this Court to ignore the civil penalties provision because this is not a civil penalties case.  Again, that is nothing short of an invitation to ignore State Farm.  State Farm did not look to civil penalties because the limits on civil penalties in that case actually applied to punitive damages.  It looked to them because they "have bearing on the seriousness with which a State views the wrongful action." State Farm, 538 U.S. at 428.  Plaintiff does not and cannot explain why the same reasoning should

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

not apply here.  In light of the myriad problems with the jury's massive, $52 million punitive damages award, this Court should reject the award as unlawful or unconstitutionally excessive.  At a minimum, the Court should exercise its discretion to reduce the award under remittitur.

**D.     The Judgment Should Be Altered or Amended to Conform to Rule 23.**

> **a.     The Ninth Circuit's Decision in <u>Spokeo</u> Effectively Repudiates the Basis of Part of this Court's Certification Decision.**

The Ninth Circuit's recent decision in <u>Robins v. Spokeo, Inc.</u>, --- F.3d ---, No. 11-56843 2017 WL 3480695 (9th Cir. Aug. 15, 2017) ("<u>Spokeo III</u>"), undermines many of the foundations upon which the class certification order and Plaintiff's trial theory rest.  <u>Spokeo III</u> effectively repudiates <u>Guimond v. Trans Union Credit Information Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995), upon which this Court expressly relied in permitting the class to be certified on the § 1681e(b) claim.  <u>See</u> ECF No. 140 at 17.  As TransUnion previously argued, the decision to include, in a § 1681e(b) class, persons about whom no reports were sold, was contrary to just about every other court that has considered this issue.  With the exception of the outlier <u>Guimond</u> decision, it is well established that third-party communication is an element of a Section 1681e(b) claim.  <u>Spokeo III</u>'s expression of serious doubt that there is standing to pursue a § 1681e(b) claim without dissemination or publication completely undermines this Court's prior conclusion on that point.  <u>Spokeo III</u>, 2017 WL 3480695, at *15.  Nor did the jury make any findings on that issue, as the Court refused TransUnion's requested instruction on the meaning of "consumer report."  Thus, class treatment of the § 1681e(b) claim here is improper.

> **b.     The Evidence At Trial Did Not Establish Typicality.**

Plaintiff's argument that his experience was typical of other class members "in all material ways" is without merit.  (Opp. at 42.)  There was no evidence that the post-<u>Cortez</u> "potential match" language was dropped from any Name Screen sold as to any other class member; there was no evidence that any other class member was denied credit because a lender failed to follow TransUnion's and OFAC's instructions with respect to the handling of interdiction results; there was no evidence any class member was confused or misled by any communications with TransUnion, either in writing or over the telephone; and most importantly, with respect to nearly

- 18 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    eighty percent of the class, no Name Screen data was sold at all.  Plaintiff thus failed to satisfy his

2    Rule 23 burden to prove that his case was typical of the class.[13]

3             **c.    A Class Judgment Also is Improper Because No Evidence of Actual
                     Harm to Any Class Members, Or To the Class As a Whole, Was
4                    Proffered.**

5             As set forth in the Motion, because Plaintiff asks the Court to award each class member his

6    or her own money damages, the standing requirements of Article III must be considered for each

7    class member.  See Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645 (2017) ("an intervenor

8    of right must demonstrate Article III standing when it seeks additional relief beyond that which the

9    plaintiff requests.")   But here, as discussed supra, Plaintiff did not present any evidence showing

10   that absent class members suffered cognizable harm.[14]

11            Specifically, with respect to the disclosure claims under Section 1681g, "informational

12   injury" alone does not satisfy Article III's standing requirements.  Here, there is no evidence that

13   the manner of disclosure caused concrete injury.  In Dreher v. Experian Info. Sols., Inc., 856 F.3d

14   337 (4th Cir. 2017), decided after the Supreme Court's ruling in Spokeo, Inc. v. Robins, 136 S. Ct.

15   1540 (2016) ("Spokeo II"), the court found that plaintiff lacked Article III standing to pursue a

16   claim under 15 U.S.C. § 1681g because he did not suffer actual "real world harm" that resulted

17   from an alleged information failure, and that it is not enough for the plaintiff to allege risk of harm,

---

18

19   [13] That TransUnion may have sent the same letter to all members of the class is insufficient to
     satisfy the typicality element of Rule 23, for the evidence shows that Plaintiff's experience was
20   unique and that he has "meaningful differences" from the class he seeks to represent.  See Soutter
     v. Equifax Info. Servs., LLC, 498 F. App'x 260, 264 (4th Cir. 2012); see also Marcus v. BMW of
21   N. Am., LLC, 687 F.3d 583, 598 (3d Cir. 2012) (purpose of the typicality requirement is "to screen
     out class actions in which the legal or factual position of the representatives is markedly different
22   from that of other members of the class") (internal quotation marks and citation omitted).

23   [14] Plaintiff's assertion that class members were "emotionally" harmed by "being identified as a
     terrorist or enemy of the state" does not hold water.  (Opp. at 43.)  Unlike in Guimond, which
24   permitted recovery for emotional distress and humiliation, here there was no evidence at trial that
     anyone other than Plaintiff suffered "sleeplessness, nervousness, frustration, and mental anguish
25   resulting from the incorrect information in her credit report."  See 45 F.3d at 1332.  The evidence
     that Plaintiff himself suffered such symptoms was also thin.  Plaintiff admitted at his deposition
26   that he suffered no embarrassment or emotional distress as a result of the incident.  (ECF No. 218-4
     at 14, 34; ECF No. 218-41 at 6, 10-13.)  And of course, there was no evidence whatsoever that any
27   class member other than Mr. Ramirez actually suffered any emotional distress of any kind.  Nor
     was there sufficient evidence to justify an inference of such non-economic harm, particularly in
28   light of the evidence that consumers who potentially match the SDN list are rapidly cleared without
     any denial of credit or inconvenience.  (Trial Tr. (Sadie) 637:12-638:6.)

- 19 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

or even "nebulous frustration" at the manner by which information was conveyed.

Plaintiff's attempt to distinguish <u>Dreher</u> is without merit.  The Ninth Circuit discussed <u>Dreher</u> in <u>Spokeo III</u>, but did not criticize <u>Dreher</u> or suggest that its analysis of standing to pursue a § 1681 g claim was incorrect.  <u>See also</u> <u>Trapp v. SunTrust Bank</u>, No. 16-2293, 2017 WL 2875212, at *2 (4th Cir. July 6, 2017) (affirming plaintiff lacked standing "in light of <u>Spokeo</u> and <u>Dreher</u>"); <u>Groshek v. Time Warner Cable, Inc.</u>, 865 F.3d 884 (7th Cir. 2017) (rejecting FCRA claim where plaintiff "alleged a statutory violation completely removed from any concrete harm or appreciable risk of harm").

### d.      The Class Size Should Be Adjusted.

Finally, class members who were never given an opportunity to request exclusion cannot be included in the final judgment, and Plaintiff's assertion, without evidence, that it provided "the best notice practicable under the circumstances," Opp. at 44, does not compel a different outcome. TransUnion faces risk of severe prejudice if the wholly unnoticed class members are included in the judgment, as TransUnion cannot be certain that it will preclude subsequent litigation by a wholly unnoticed class member who seeks to avoid being bound by the judgment.[15]

### III.      CONCLUSION

Accordingly, and for the reasons stated in its Motion, TransUnion respectfully requests entry of an order granting judgment to TransUnion as a matter of law or, in the alternative, granting a new trial or, in the alternative, ordering a remittitur or, in the alternative, altering or amending the judgment, as requested herein, and for such other and further relief as may be just and proper.

---

[15] Plaintiff apparently does not object to amending the judgment to comply with Rule 23(c)(3)(B). (<u>See</u> Mot. at 35; Opp. at 44, n.28.)

- 20 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1    Dated:  September 8, 2017

STROOCK & STROOCK & LAVAN LLP
2    JULIA B. STRICKLAND
STEPHEN J. NEWMAN
DAVID W. MOON
3    CHRISTINE E. ELLICE
JASON S. YOO
4
SHERMAN, SILVERSTEIN, KOHL, ROSE &
5    PODOLSKY
BRUCE S. LUCKMAN (Admitted Pro Hac Vice)
6
7    By:   _____
                    /s/ Stephen J. Newman
8                    Stephen J. Newman

Attorneys for Defendant
9        TRANS UNION LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2017, a copy of the foregoing **DEFENDANT TRANS UNION LLC'S REPLY IN FURTHER SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE, MOTION TO ALTER OR AMEND THE JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's EM/ECF System.

_/s/ Stephen J. Newman_
Stephen J. Newman

LA 52100911v12