UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TRANS UNION, LLC,<br><br>　　　　Defendant. | Case No.12-cv-00632-JSC<br><br>**ORDER RE: TRANS UNION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE FOR A NEW TRIAL, OR IN THE ALTERNATIVE FOR REMITTITUR, OR IN THE ALTERNATIVE TO AMEND THE JUDGMENT**<br><br>Re: Dkt. No. 321 |

Plaintiff Sergio Ramirez filed this class action alleging that Defendant Trans Union violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., through its OFAC Name Screen Alert. The OFAC Name Screen Alert or OFAC Alert is a service Trans Union provides to its customers which identifies persons whose names match individuals (known as Specially Designated Nationals or SDNs) on the United States government's list of terrorists, drug traffickers, and others with whom Americans are prohibited from doing business. After a jury returned a verdict in Plaintiff's favor and awarded statutory and punitive damages of more than $60 million, Trans Union moved for judgment as matter of law, or in the alternative, for new trial. (Dkt. No. 321.) Having considered the briefs and having had the benefit of oral argument on October 5, 2017, the Court DENIES Trans Union's motion. The jury's verdict was supported by substantial evidence and there is no basis to set aside the award of statutory and punitive damages.

**DISCUSSION**

Following a weeklong trial, the jury reached a verdict in favor of Plaintiff and the class and awarded over $60 million in statutory and punitive damages. The jury found in Plaintiff's favor on all three claims under the FCRA: that over a six-month period in 2011 Trans Union violated three FCRA requirements: (1) that credit reporting agencies establish "reasonable procedures" to ensure the "maximum possible accuracy" of information provided about consumers under 15 U.S.C. § 1681e(b); (2) that credit reporting agencies "clearly and accurately" disclose "all information in the consumers file at the time of [a] request" under § 1681g(a), and (3) that credit reporting agencies provide a statement of consumer rights with each such disclosure under § 1681g(c). Plaintiff argued, and the jury apparently agreed, that Trans Union's name-only matching protocol was not a reasonable procedure designed to ensure the maximum possible accuracy of consumer information, and that Trans Union's disclosure of OFAC information to consumers violated Section 1681g by failing to disclose OFAC information to consumers simultaneously with their consumer reports and by failing to provide a statement of consumer rights with the separately furnished OFAC disclosure. The jury also concluded that Trans Union's conduct was willful.

Trans Union challenges the jury's verdict on multiple grounds. First, Trans Union contends that it is entitled to judgment as a matter of law because the evidence does not support a finding of a willful violation of any of the three FCRA prongs at issue in this case. Next, Trans Union argues that it is entitled to a new trial because Plaintiff's counsel made improper and prejudicial arguments and statements during trial. Finally, Trans Union insists that the statutory and punitive damages verdicts must be set aside because they are excessive and unconstitutional. None of these arguments is persuasive.

**A. Trans Union's Motion for Judgment as a Matter of Law**

A Rule 50(b) motion for judgment as a matter of law is appropriate when the evidence permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in

that party's favor, *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009), and the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

First, as to the Section 1681(e)(b) reasonable procedures claim, Trans Union maintains that there was no willful violation because it did its best and the OFAC Name Screen Alert was exactly that—a name-only match, which is what their customers asked them to provide. The trial record includes substantial evidence from which a jury could have reached a contrary conclusion, including but not limited to the following:

- Trans Union used name-only matching logic, disregarding middle names, dates of birth, social security numbers, places of birth, and all other available identifying information, to associate Ramirez and all other class members with the OFAC list throughout the class period.

- Trans Union's name-only matching procedure for OFAC information contrasted with its procedures for non-OFAC credit reports; to associate information with a consumer on a non-OFAC credit report Trans Union required additional identifying information, such as address, date of birth, or social security number.

- The two other credit reporting agencies (Experian and DealerTrack) that screened Mr. Ramirez against the OFAC list in February 2011 were able to accurately report that he was not a match to the OFAC SDN List.

- Trans Union had repeated notice of problems with its OFAC procedures between 2005 and 2011, including the *Cortez* action, consumer inquiries, and communications from the United States Department of Treasury.

- Despite all the problems and notwithstanding the *Cortez* decision, Trans Union did not consider using a vendor other than Accuity, or stopping the sale of OFAC information.

- Trans Union cannot identify a single instance in which its OFAC Alert product identified someone actually on the OFAC list.

- For each person who contacted Trans Union to dispute the OFAC information, Trans Union performed a manual review and removed the OFAC Alert.

3

- Trans Union removed Mr. Ramirez's OFAC Alert when it received a handwritten note from him saying "please get me off the ofac list."

Second, Trans Union argues that Plaintiff failed to prove a willful violation of either Section 1681g(a) and (c)(2). It maintains that its disclosure attempted to comply with the Third Circuit Court of Appeal's decision in *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010), and argues that nothing in the statute requires all the required information to be delivered simultaneously; to the contrary, the statute suggests that only one disclosure of rights is required per request. In any event, Trans Union argues they had no intent to violate the FCRA. The trial evidence, however, fully supports a contrary conclusion. For example, the evidence supports the following findings:

- Ramirez requested a copy of his Trans Union file, and received his file or "personal credit report" which identified itself as the response to his request, and contained no reference whatsoever to OFAC.

- The form of the "personal credit report" was the same for all class members in 2011, and like the form sent to Ms. Cortez in 2005, omitted OFAC information.

- Trans Union sent Mr. Ramirez and all other class members a separate letter regarding the OFAC record that "is considered a potential match" to the consumer's name. The letter is not identified as a file disclosure, and says that the requested personal credit report "has been mailed to you separately." The letter also states that it is being provided as a "courtesy," and does not inform the consumer that the OFAC information can be disputed if inaccurate.

- Trans Union continued to disclose this information separately because it concluded that it was technologically infeasible to do it all at once, but it never sought outside expert assistance with the issue and it was ultimately able to solve the infeasibility issue six months later.

- Since it introduced the product in 2002, Trans Union has had the capability to incorporate OFAC information into the credit reports sold to customers.

- Trans Union did not begin to disclose OFAC information to consumers in any manner until 2011, and never considered stopping sales of OFAC alerts to third parties.

- Trans Union misrepresented the content of its separate OFAC letter in a communication to the United States Department of Treasury, falsely claiming that it instructed consumers about their right to dispute OFAC information.

\*\*\*

4

Trans Union's motion for judgment as a matter of law is therefore DENIED. Substantial evidence supports the jury's conclusion that Trans Union willfully violated 15 U.S.C. §§ 1681e(b), 1681g(a), and 1681g(c).

**B. Trans Union's Motion for New Trial**

Under Rule 59, a court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The grounds for a new trial include: (1) a verdict that is contrary to the weight of the evidence; (2) a verdict that is based on false or perjurious evidence; or (3) to prevent a miscarriage of justice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation marks and citation omitted). Erroneous evidentiary rulings and errors in jury instructions are also grounds for a new trial. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). A new trial should be granted where, after "giv[ing] full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1365 (9th Cir. 1987).

Trans Union insists that it is entitled to a new trial because of counsel's improper statements during closing argument and improper questioning of witnesses regarding the *Cortez* case.

First, Trans Union maintains that Plaintiff's counsel's references to unnamed executives sitting in tall buildings was inflammatory as was other language regarding Trans Union's failure to call a trial witness and a statement suggesting that although only 25 percent of the class applied for credit during the class period, the effect of Trans Union's OFAC Alert on these individuals beyond the six-month class period is unknown. Trans Union's objections to these statements are unpersuasive. As an initial matter, to the extent that Trans Union took exception to Plaintiff's counsel's remarks, defense counsel should have objected and sought appropriate relief from the Court. *See Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1148 (9th Cir. 2001). In the absence of "a contemporaneous objection or motion for a new trial before a jury has rendered its verdict," a new trial is warranted [only] where the integrity or fundamental fairness of the proceedings in

the trial court is called into serious question."[1] *Id.* Further, in evaluating the likelihood of prejudice from the comments, the court considers "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." *Hemmings*, 285 F.3d at 1193. A new trial "is available only in 'extraordinary cases.'" *Id.* at 1193 (quoting *Bird*, 255 F.3d at 1148). In *Bird*, a new trial was warranted based on counsel's inflammatory closing argument which included several racially charge remarks such as likening a contract dispute to a "massacre" of members of a Native American tribe. *Bird*, 255 F.3d at 1149-51.

Trans Union has made no such comparable showing here. It has thus failed to meet the "'high threshold' [erected by the federal courts] to claims of improper closing arguments in civil cases raised for the first time after trial.'" *Drayton v. Scallon*, 685 F. App'x 557, 560–61 (9th Cir. 2017) (quoting *Hemmings*, 285 F.3d at 1193)). In addition, as in *Drayton*, the Court here "also instructed the jury that the statements or argument of counsel is not evidence, an admonition that [the Court] presume[s] the jury followed." *Drayton*, 685 F. App'x at 561 (citing *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270-71 (9th Cir. 2000)).

Second, Trans Union objects to Plaintiff's counsel's handling of information relating to the *Cortez* decision. At the final pretrial conference, the parties stated their intent to offer a stipulation regarding the *Cortez* decision. Plaintiff's counsel explained that the stipulation "would not limit us on examining witnesses" to which defense counsel responded "we weren't saying you can't mention *Cortez*" and the Court confirmed, "so you can question, of course." (Dtk. No. 318 at 13:2-3; 14:5-8.) At trial, the parties submitted the stipulation which the Court read to the jury. The stipulation summarized *Cortez* and stated that "[n]othing in this stipulation shall preclude

---

[1] Trans Union's reliance on the Fourth Circuit Court of Appeal's decision in *Leathers v. Gen. Motors Corp.*, 546 F.2d 1083, 1086 (4th Cir. 1976), for the proposition that counsel was not required to object at the time because it would have drawn more attention to the improper conduct is unpersuasive as Ninth Circuit caselaw is squarely to the contrary. *See, e.g.*, *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1195 (9th Cir. 2002) ("The fact that counsel did not object before the jury was instructed strongly suggests that counsel made a strategic decision to gamble on the verdict and suspected that the comments would not sway the jury.").

either party from examining any witness about the *Cortez* litigation or about Ms. Cortez." (Dkt. No. 287 at ¶ 2.) Plaintiff's counsel then proceeded to question Trans Union witnesses regarding their knowledge of the *Cortez* decision, including Michael O'Connell, Trans Union's Vice President of Product Development, who testified to his understanding of the opinion. Trans Union now objects to Plaintiff's counsel's question on redirect wherein he asked Mr. O'Connell whether he was "aware that actually one of the things that the *Cortez* decision said was that the jury could have reasonably concluded that Trans Union could have taken steps to prevent and minimize the possibility of an erroneous OFAC alert by using or checking the date of birth of the consumer against the birthdate of the person on the SDN list?" (Dkt. No. 294 at 158(533):11-16.[2]) This question was fully within the bounds of the parties' stipulation and sought information relevant to the willfulness inquiry.

Next, Trans Union emphasizes that in closing argument, Plaintiff's counsel stated that "[t]he *Cortez* jury found Trans Union in willful violation of this provision on behalf of the FCRA for not showing the OFAC alert in her disclosure." (Dkt. No. 310 at 137(855):14-16.) Defense counsel did not object at the time, but did raise it outside the jury's presence before the punitive damages phase of the case. Counsel sought an instruction or admonition that Plaintiff's counsel should not reiterate this statement in his closing argument regarding punitive damages because this was outside the scope of the parties' *Cortez* stipulation. (*Id.* at 200(918):22-25.) The Court noted that while counsel's statement regarding *Cortez* was accurate, the stipulation did not discuss the *Cortez* jury's willfulness finding and as far as the Court was aware the willfulness finding was not otherwise in evidence. (*Id.* at 202(920):2-5.) Plaintiff's opposition does not argue that this evidence is elsewhere in the record—the Court thus accepts that Plaintiff made a statement of fact in his closing argument which was not in the record. Trans Union, however, has not shown how it was prejudiced by Plaintiff's counsel's accurate statement regarding the *Cortez* jury's willfulness

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents. For the Trial Transcript, the main citation is to the ECF-generated page number, the transcript page number (which is sequential from the first day of trial) appears in a parenthetical next to the ECF-generated page number followed by the line number citation.

7

finding. Moreover, at the beginning of the case, and again at the end, the Court instructed the jury that their memory of the evidence controls, not attorney argument. Under these circumstances, Trans Union has failed to meet the high threshold necessary to justify a new trial based on counsel's statements made during closing argument.

Trans Union's motion for a new trial based on Plaintiff's counsels' conduct at trial is therefore DENIED.

**C. The Damages Award**

A willful violation of the FCRA entitles a consumer to statutory damages ranging from $100 to $1,000, as well as punitive damages, and attorney's fees and costs. *See* 15 U.S.C. § 1681n. Trans Union insists that the statutory and punitive damages awards must be set aside, or at a minimum, reduced.

**1) Statutory Damages**

A court "must uphold a jury's damages award unless the amount is clearly not supported by the evidence, or only based on speculation or guesswork." *Guy v. City of San Diego*, 608 F.3d 582, 585 (9th Cir. 2010) (internal citation and quotation marks omitted). That is, "the jury's finding of the amount of damages [must be upheld] unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986) (internal citation and quotation marks omitted). Here, the jury awarded statutory damages of $984.22 per class member which is within the statutory range of $100-$1,000. *See* 15 U.S.C. § 1681n. Trans Union nonetheless argues that the jury's statutory damages award was not supported by the evidence and is grossly excessive.

Trans Union first argues that the statutory damages award is not supported by substantial evidence either on liability or as to harm to every class member. Not so. As discussed above, the trial evidence supported the jury's conclusion that Trans Union's OFAC Alert practices violated three different FCRA subsections. Trans Union's insistence that the aggregation of the statutory damages claim among the three FCRA claims undermines the award is likewise unavailing. Trans Union's proposed verdict form did not disaggregate the FCRA damages claims:

8

//

//

//

      5. Do you find that the class is entitled to an award of statutory damages?
      ___ Yes
      ___ No
      ___ There is no single answer that applies to the entire class.

      6. Do you find that the class is entitled to an award of punitive damages?
      ___ Yes
      ___ No
      ___ There is no single answer that applies to the entire class.

(Dkt. No. 261 at 4.)

At the final pretrial conference, the Court left the door open for Trans Union to argue that the statutory damages should be categorized in some way: "I'll allow the parties to argue when we have our charging conference –is perhaps a verdict form that allows the jury to give different amount of statutory damages based on different groupings so the Defendants may argue . . . well, if you're going to rule against us, you shouldn't at least for those who no credit report was sent, it should be a hundred." (Dkt. No. 318 at 19:14-22.) But Trans Union did not object at the charging conference and therefore waived an objection to the aggregation of statutory damages. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1109 (9th Cir. 2001) ("[Defendant] waived these contentions [with the verdict form] by failing to raise them until after the jury had rendered its verdict and was discharged [because it had] ample opportunity to object to errors in the form of the verdict" and was in fact invited to raise any objections); *see also Teutscher v. Woodson*, 835 F.3d 936, 950 (9th Cir. 2016) ("because [plaintiff] agreed to the lump-sum verdict form, [he] waived any argument that the jury's verdict should or could be parsed between its compensatory components"). Further, the FCRA is clear: a willful violation of *any one* of its prongs entitles a plaintiff to a statutory damages award of $100 to $1,000. Thus, even if the evidence is not sufficient as to each claim—which it is—as long as it is sufficient as to one, the jury's award of less than $1,000 to each class member is supported by substantial evidence. Here, however, the

evidence is sufficient as to each claim.

Alternatively, Trans Union insists that the award is grossly excessive and should be reduced through remittitur or constitutional review.

> A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages. The court orders a remittitur when it believes the jury's award is unreasonable on the facts. A constitutional reduction, on the other hand, is a determination that the law does not permit the award. Unlike a remittitur, which is discretionary with the court ... a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.

*Oyarzo v. Tuolumne Fire Dist.*, No. 1:11-CV-01271-SAB, 2014 WL 1757215, at *6 (E.D. Cal. Apr. 30, 2014) (quoting *Corpus v. Bennett*, 430 F.3d 912, 917 (8th Cir. 2005)).

There is no basis for remittitur because, as noted, the jury's award is not unreasonable; to the contrary, it is well-supported by the trial evidence. Trans Union nonetheless urges that the statutory damages award should be reduced to an amount no greater than its OFAC-related revenue for 2011. To this end, Trans Union offers the declaration of David Gilbert, Trans Union's Senior Vice President of Finance, which sets forth Trans Union's 2011 gross revenue for the OFAC Alert product. (Dkt. No. 321-1.) Plaintiff's motion to strike Mr. Gilbert's Declaration is GRANTED. (Dkt. No. 327.) Trans Union cannot now supplement the record with new evidence having made a strategic decision not to introduce *any evidence* regarding its financial status other than the stipulation regarding its total net worth which was read to the jury during the punitive damages phase. (Dkt. No. 285.)

In any event, even if the Court considered this evidence, the Court would still exercise its discretion to deny remittitur because the jury's award of statutory damages is supported by the evidence and within the statutory range. Unlike other statutes which contain statutory damages caps (such as the Fair Debt Collection Practices Act (FDCPA) and the Truth in Lending Act (TILA)), FCRA statutory damages are not capped. *See Saunders v. Equifax Info. Servs., L.L.C.*, 469 F. Supp. 2d 343, 349 (E.D. Va. 2007). Trans Union's argument that FCRA statutory damages should be subject to a cap is for Congress not this Court. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) ("the [FCRA] does not place a cap on these damages in the case

of class actions, does not indicate any threshold at which courts are free to award less than the minimum statutory damages, and does not limit the number of individuals that can be certified in a class or the number of individual actions that can be brought against a single merchant.").

Nor is the damages award unconstitutionally excessive. "A statutorily prescribed penalty violates due process rights only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (internal citation and quotation marks omitted). Trans Union cites only one case where a statutory damages award was reduced on constitutional grounds. *See Golan v. Veritas Entertainment*, No. 14-69 ERW, (E.D. Mo. Sept. 7, 2017). (Dkt. No. 334-1.) *Golan*, however, is inapposite. The court there reduced a statutory damages award under the Telephone Consumer Protection Act from $1,621,246,500 to $32,424,930 on the grounds that an award of over a billion and a half in damages was "obviously unreasonable and wholly disproportionate to the offense." Not so here. The jury's award of just over $8 million in damages is a fraction of *Golan's* reduced damages award and is neither unreasonable nor wholly disproportionate given the evidence regarding Trans Union's practices.[3]

Trans Union's reliance on *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), is misplaced. *Six (6) Mexican Workers* involved a liquidated damages provision under the now-repealed Farm Labor Contractor Registration Act, 7 U.S.C. § 2041 et seq., which stated that "the court may award up to and including ... actual damages, or $500 for each violation, or other equitable relief." *Id*. at 1303 n.1 (quoting 7 U.S.C. § 2050a(b)). The Ninth Circuit held that the district court abused its discretion in awarding statutory damages of

---

[3] *Golan* noted that there was only one other case which had commented on the constitutionality of a statutory damages award: *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 2017 WL 2427297, *139-40 (C.D. Ill. 2017). In *Dish*, following a bench trial, the court awarded $280 million in civil penalties and statutory damages, $84 million of which was allocated towards statutory damages under the TCPA. The court found that this amount—which totaled 20 percent of Dish's 2016 after-tax profits of $1.4 billion, was appropriate and constitutionally proportionate, reasonable, and consistent with due process" because "Dish caused millions and millions of violations of the Do–Not–Call Laws, [] Dish has minimized the significance of its own errors in direct telemarketing and steadfastly denied any responsibility … The injury to consumers, the disregard for the law, and the steadfast refusal to accept responsibility require a significant and substantial monetary award." *Id*. at *139, 140. The same reasoning applies to the statutory damages award here which represents just over half a percent of Trans Union's total net worth.

11

$100-$500 for each violation because "[t]he award also exceeds that necessary to enforce the Act or deter future violations. When the class size is large, the individual award will be reduced so that the total award is not disproportionate." *Six (6) Mexican Workers*, 904 F.2d at 1309. This holding, however, does not apply to FCRA cases. In *Bateman*, the Ninth Circuit held that "[t]here is no language in the [the FCRA], nor any indication in the legislative history, that Congress provided for judicial discretion to depart from the $100 to $1000 range where a district judge finds that damages are disproportionate to harm"; rather, "the plain text of the statute makes absolutely clear that, in Congress's judgment, the $100 to $1000 range is proportionate and appropriately compensates the consumer" and "[t]hat proportionality does not change as more plaintiffs seek relief." *Bateman*, 623 F.3d at 719.

The award here is within the statutory range; indeed, it is not even the maximum award possible under the FCRA. *See Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 947 (C.D. Cal. 2015), aff'd sub nom. *Kim v. BMW Fin. Servs. NA LLC*, No. 15-56801, 2017 WL 3225710 (9th Cir. July 31, 2017) (concluding that statutory damages award was not excessive because the award was within the statutory limits). The award is also proportionate to the harm shown by the trial evidence. There is thus no basis to set aside the statutory damages award.

### 2) Punitive Damages

The FCRA allows punitive damages for willful noncompliance with its provisions in such amount "as the court may allow." 15 U.S.C. § 1681n(a)(2). Here, the jury awarded punitive damages of $6,353.08 per class member which amounts to a total award of more than $50 million. Trans Union objects to the punitive damages verdict on multiple grounds.

#### a) Statutory Damages and Punitive Damages are Proper

First, Trans Union insists that no punitive damages are warranted because the jury awarded statutory damages. Not so. Trans Union offers no support for the proposition that because the class received statutory damages they should not also receive punitive damages despite the express statutory statement that statutory and punitive damages are available for willful violations. If Congress had not envisioned cases in which both would have been appropriate they would not have included this language. The FCRA "allows for [a punitive damages] award predicated on

12

either sufficient proof of actual damages or, in the alternative, an award of statutory damages." *Saunders*, 469 F. Supp. 2d at 348 (collecting cases re: the same).

### b) The Jury Instruction was not in Error

Second, Trans Union argues that the punitive damages jury instruction was improper. The court "has broad discretion" in formulating appropriate jury instructions. *United States v. Hayes*, 794 F.2d 1348, 1351 (9th Cir.1986). Moreover, "a defendant is not entitled to any particular form of an instruction so long as the instructions given fairly and adequately cover the defendant's theories of defense." *United States v. Solomon*, 825 F.2d 1292, 1295 (9th Cir.1987).

The jury instruction stated in relevant part:

> You may award punitive damages only if you find that Trans Union's conduct was in reckless disregard of the rights of Plaintiff and the Class. Conduct is in reckless disregard of a plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.

(Dkt. No. 311 at 12(939):16-20.) Further, over Plaintiff's objection, the Court included the following language: "In considering the amount of any punitive damages, you may consider the purpose of the Fair Credit Reporting Act, the degree of reprehensibility of the defendant's conduct, and the relationship of any award of punitive damages to any actual harm inflicted on Mr. Ramirez and the Class." (*Id.* at 311(940):1-5.)

This instruction was based on the Ninth Circuit's Model Civil Jury Instruction 5.5 and the Supreme Court's guidance in *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47 (2007). Trans Union's insistence that the FCRA demands proof of a higher level of culpability than recklessness is inaccurate. As the Ninth Circuit recently confirmed, "[t]he Supreme Court has clarified that, under Section 1681n, willfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'" *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting *Safeco*, 551 U.S. at 56–57.) Under this standard, "[a] party does not act in reckless disregard of the FCRA 'unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater

13

than the risk associated with a reading that was merely careless.'" *Syed*, 853 F.3d at 503 (quoting *Safeco*, 551 U.S. at 69). Given this guidance, the jury instruction was not inaccurate or misleading.[4] *See Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1397 (9th Cir. 1996) ("We review challenges to the district court's formulation of the jury instructions for an abuse of discretion by determining whether the instructions, considered as a whole, were inadequate or misleading.").

### c) Trans Union Cannot Supplement the Evidentiary Record Post-Trial

Third, Trans Union complains that even if some amount of punitive damages is appropriate, the amount should be reduced concomitant with Trans Union's 2011 net revenue for the OFAC Alert product. The Court rejects this argument for the same reason it rejected the argument when raised as to the statutory damages award. Trans Union made a strategic decision regarding what evidence it would introduce during the punitive damages phase; that in hindsight it wishes it could supplement the record with additional evidence regarding the profitability of the underlying product is not a basis for remittitur. *See Corpus*, 430 F.3d at 917 ("The court orders a remittitur when it believes the jury's award is unreasonable on the facts").

### d) The Punitive Damages are not Constitutionally Excessive

Finally, Trans Union maintains that the punitive damages award is unconstitutional. To determine the constitutionality of an award of punitive damages, the Court must refer to the following three guideposts articulated by the Supreme Court:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*BMW v. Gore*, 517 U.S. 559, 574 (1996).

---

[4] Notably, at the punitive damages charging conference, Trans Union's only objection was to inclusion of the language "if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law." (Dkt. No. 310 at 204(922):2-8.) Likewise, to the extent that Trans Union now objects that the jury awarded punitive damages on a per class member basis rather than as a lump sum, Trans Union previously agreed that the verdict form should award punitive damages, if any, on a per class member basis. (*Id.* at 202(900):18-25.)

14

## 1) The Reprehensibility of Trans Union's Conduct

In accessing reprehensibility, courts generally consider a number of factors, including (1) whether the harm caused was physical as opposed to economic; (2) whether the conduct demonstrated an indifference to or a reckless disregard for the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

These factors, however, "have only marginal relevance in the context of a consumer action" under the FCRA. *Saunders*, 469 F. Supp. 2d at 351. Indeed, "in FCRA cases, the first two factors in the *State Farm* reprehensibility evaluation, namely whether the harm was physical as opposed to economic and whether the conduct evinced an indifference or reckless disregard for the health and safety of others, are not typically present because violations of the Act usually result in 'only' adverse economic, as opposed to physical, harm to consumers in the form of adverse credit ratings, the inability to obtain financial backing from various economic institutions, actual out-of-pocket losses, mental distress..." *Id*. So too here. Despite Trans Union's continued protestations to the contrary, Mr. Ramirez was harmed by Trans Union—he was unable to co-purchase a vehicle with his wife, he endured stress and anxiety trying to figure out why his credit report showed that his name matched someone on the OFAC list, and he and his wife cancelled a family trip to Mexico because they were worried about traveling outside the country under the circumstances. As to whether Plaintiff was a financially vulnerable victim, the Court finds that this factor weighs in Plaintiff's favor because the OFAC Alert product was designed to provide information to lenders making consumer credit decisions—individuals who are falsely flagged as persons on the OFAC list are necessarily financially vulnerable. The fourth factor—whether the conduct involved repeated actions—is likewise satisfied. Trans Union sent over 8000 individuals a letter during the class period stating that they were a "potential match" for someone on the OFAC list and the trial evidence showed that not one of these individuals was actually on the list. (Dkt. No. 294 at 116(491):6-13.) The final factor, that the harm was the result of intentional

15

1  malice, trickery, or deceit rather than accident, is of questionable relevance in an FCRA action
2  given that the FCRA allows punitive damages upon a willfulness finding but without a finding of
3  malice or evil motive. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001);
4  *Saunders*, 469 F.Supp. 2d at 351 (citing *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409,
5  418 (4th Cir. 2001)).

6  In FCRA cases, the reprehensibility analysis should focus on factors beyond those set forth in *State Farm*. *See Saunders*, 469 F.Supp. 2d at 351-52 (considering factors unique to a consumer credit scenario as part of reprehensibility analysis). Here, the reprehensibility analysis should consider Trans Union's actions following the Third Circuit's *Cortez* decision. In the summer of 2010, the Third Circuit explicitly advised Trans Union that the same practices at issue here—the name-only matching protocol and the failure to provide clear and accurate disclosure of OFAC data and consumer's rights—ran afoul of the FRCA. *See Cortez v. Trans Union*, LLC, 617 F.3d 688 (3rd Cir. 2010). Trans Union nonetheless continued to sell its OFAC alert product using name-only matching criteria through the class period and beyond, choosing to merely insert the word "potential" in front of "OFAC NAME SCREEN ALERT." Further, Trans Union's disclosures throughout the class period continued to fail to include the OFAC information, and instead, this information was provided separately in a confusing format which failed to advise consumers how to dispute the accuracy of the OFAC Alert. Equally troublingly, Trans Union's General Counsel misadvised the United States Department of Treasury regarding the contents of the disclosure by erroneously ensuring Treasury that the disclosures were "accompanied by instructions on how the consumer can obtain further information from Trans Union about our OFAC Name Screen service, and how to request Trans Union block the return of a potential match message on future transactions." (*Compare* Trial Ex. 35 (letter to Treasury) *with* Dkt. No. 294 at 160(535):16-121(536):12 (trial testimony of Trans Union witness Michael O'Connell conceding that the OFAC letter Trans Union sent to consumers does not contain the information contained in the Treasury letter ).) And perhaps most tellingly, Trans Union to this day insists that its OFAC Alert practice "benefitted" the consumers it had falsely labeled as individuals on the OFAC list. (Dkt. No. 294 at 170(545):17-20 (testimony of Trans Union witness Michael O'Connell, "Q: It's

your testimony that the members of this class who were identified as being a hit on the OFAC list were benefited by Trans Union's practices. A: Yes."). This cumulative conduct is sufficiently egregious to satisfy the constitutional reprehensibility requirement. As the Third Circuit held in *Cortez* when it upheld the punitive damages award against Trans Union there:

> the gravity of harm that could result from Trans Union's "match" of Cortez with an individual on a "terrorist" list cannot be over stated. This is especially true because Trans Union's subscribers rely on the accuracy of the detailed personal information Trans Union provides. Given the severe potential consequences of such an association, Trans Union's failure to take the utmost care in ensuring the information's accuracy—at the very least, comparing birth dates when they are available—is reprehensible.

*Cortez*, 617 F.3d at 723. That Trans Union continued to use the same name-only match—merely inserting the word "potential" before match—after the Third Circuit labeled such conduct reprehensible and upheld a $100,000 individual punitive damages award is more than sufficient to justify a punitive damages award of $6,353.08 per class member.

### 2) The Relationship Between Statutory and Punitive Damages

Next, the Court at looks the disparity between the harm suffered by the plaintiff and the punitive damages award. *See BMW*, 517 U.S. at 574. Although "there are no rigid benchmarks that a punitive damages award may not surpass," courts have generally found excessive ratios of punitive damages to compensatory damages of 145:1. *State Farm*, 538 U.S. at 425. The Supreme Court has stated that "single-digit multipliers are more likely to comport with due process." *Id*. Here, the ratio between statutory and punitive damages is 6:1. Trans Union's argument that the ratio is actually $60 million to zero because Mr. Ramirez was not actually injured ignores the psychic harm associated with being falsely labeled as an individual on the OFAC list, as well as the harm inherent in a consumer having to take steps to have his or her name removed from Trans Union's OFAC Alert product. Trans Union's argument also ignores that Congress has charged credit reporting agencies such as Trans Union with standards of care with respect to consumer data that the trial evidence showed Trans Union consistently ignored. The 6:1 ratio here is fully within constitutional limits. *See Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 154 (4th Cir. 2008) (approving an 80:1 punitive to compensatory damages ratio in an FCRA action); *see*

*also Arizona v. ASARCO LLC*, 773 F.3d 1050, 1055 (9th Cir. 2014) (upholding jury verdict of $300,000 in punitive damages and $1 in nominal damages noting that there is no "bright-line ratio which a punitive damages award cannot exceed" and a higher ratio may be appropriate even where there are minimal economic damages if the conduct is "especially egregious").

### 3) Difference between Punitive Damages and Civil Penalties or Comparable Cases

Finally, *State Farm* requires the Court to consider the disparity between the punitive damages award and the "civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 428. Under the FCRA, the maximum civil penalty the Federal Trade Commission can seek for knowing violations of the FCRA is $2,500 per violation. 15 U.S.C. § 1681s(a)(2)(A). "This limit [however] is not applicable to actions brought under the FCRA by private citizens" and is thus "not particularly helpful in assessing the constitutionality of the punitive damage award." *Saunders*, 469 F. Supp. 2d at 353 (internal citation and quotation marks omitted). This third guidepost thus has little relevance here. *See Cortez*, 617 F.3d at 724 ("the third guidepost is not useful in the analysis of punitive damages here as there is no 'truly comparable' civil penalty to a FCRA punitive damages award.").

\*\*\*

Trans Union's objection to the punitive damages award is essentially an argument that punitive damages should not be allowed on a class-wide basis in FCRA cases. But that is not the law. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) ("To limit class availability merely on the basis of 'enormous' potential liability that Congress explicitly provided for would subvert congressional intent."). Trans Union would likely have no objection, or at least a more muted objection, to a $6,000 individual punitive damages award—it is just the aggregate number that it finds so outrageous. "If the size of a defendant's potential liability alone was a sufficient reason to deny class certification, however, the very purpose of Rule 23(b)(3)—to allow integration of numerous small individual claims into a single powerful unit—would be substantially undermined." *Id*. at 722 (internal citation and quotation marks omitted).

The Court thus DENIES Trans Union's request for a remittitur or new trial with respect to punitive damages.

18

**D. Trans Union's Renewed Objections Regarding Class Certification**

Finally, Trans Union yet again challenges class treatment of Plaintiff's claims. The Court has repeatedly rejected these objections and does so again. If anything, the trial evidence demonstrated that class treatment of these claims is even more appropriate than appeared at the class certification stage. Trans Union falsely identified every class member as a potential match and every class member received an incomplete disclosure which failed to properly advise them of their rights to challenge the OFAC information in their file.

Trans Union's argument that the class size should be "corrected" to reflect only those class members who actually received notice is unavailing. Rule 23 requires "the best notice that is practicable under the circumstances" and it does not limit the class to only those who received notice. *See In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1260 (10th Cir. 2004). To the extent that notice to some of the class members was returned, Plaintiff represents that he is committed to undertaking additional efforts to provide notice of the damages award to affected class members. Further, as Plaintiff notes, Trans Union, which maintains a consumer credit file on each of these class members, is likely in the best position to provide up-to-date address information for class members. Trans Union's argument that the judgment should be amended to only cover those who received notice is likewise misplaced. Rule 23 requires judgment be entered as to those class members to whom notice was sent. *See* Fed. R. Civ. Pro. 23(c)(3)(B) ("the judgment in a class action must... include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members."); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (holding that "a fully descriptive notice [] sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process"). All such class members are deemed bound by the judgment. *See Phillips*, 472 U.S. at 811-12 (holding that absent class members are bound to the judgment as long as they are afforded the minimal procedural due process protections of "notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel.") However, the Court will grant Trans Union's unopposed request to amend the form of the judgment to conform to the language of Rule 23(c)(3)(B).

## CONCLUSION

Trans Union's Motion for Judgment as a Matter of Law or a New Trial is DENIED. The jury's verdict is supported by substantial evidence and there is no basis to set aside the damages award.

Plaintiff shall file an amended proposed form of judgment which complies with Rule 23(c)(3)(B) by November 13, 2017.

The Court *sua sponte* extends the dates for the parties' briefing regarding Plaintiff's motion for attorneys' fees by 10 days. (Dkt. No. 340.)

This Order disposes of Docket Nos. 321 and 327.

**IT IS SO ORDERED.**

Dated: November 7, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge