Andrew J. Ogilvie (SBN 57932)
Carol M. Brewer (SBN 214035)
Ogilvie & Brewer LLP
4200 California Street, Suite 100
San Francisco, CA 94118

James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Francis & Mailman, P.C.
Land Title Bldg, Suite 1902
100 South Broad Street
Philadelphia, PA 19110

*Attorneys for Plaintiff, Sergio L. Ramirez
And the Certified Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similarly situated, | Case No. 12 cv-00632-JSC |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF MOTIONS BY PLAINTIFF AND CLASS COUNSEL FOR AWARDS OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES** |
| v. | |
| TRANS UNION, LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .................................................................................................. 2

    A.  Nature Of Action ..................................................................................... 2

    B.  Summary of Claims .................................................................................. 2

    C.  Investigation And Complaint .................................................................... 3

    D.  Early Motion Practice ............................................................................... 4

    E.  Written Discovery and Depositions .......................................................... 5

    F.  Briefing on Class Certification and Stay of Proceedings........................... 6

    G.  Class Notice and Administration .............................................................. 7

    H.  Mediations and Settlement Discussions.................................................... 8

    I.  Summary Judgment Briefing .................................................................... 8

    J.  Pretrial Submissions ................................................................................. 8

    K.  Trial and Trial Preparation ....................................................................... 9

    L.  Post-Trial Briefing ................................................................................... 10

    M.  Fee Petition ............................................................................................. 10

    N.  Costs of the Litigation ............................................................................. 11

III.  ARGUMENT ...................................................................................................... 11

    A.  Plaintiff And The Certified Class Are Entitled To $3,254,719.16 In
        Attorneys' Fees And Costs As The Prevailing Parties In An FCRA Action ......... 12

        1.  Hours Expended And Sufficiency Of Lodestar Documentation................ 13

        2.  Hourly Rates ................................................................................... 14

        3.  Preparation of Fee Petition............................................................... 17

        4.  Costs.............................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.    Class Counsel Are Entitled To Attorneys' Fees In the Amount of 28.5% Of The Common Fund Created By The Judgment, Post-Judgment Interest, and The Fee-Shifted Attorneys' Fees And Costs Of the Action, As Well As Reimbursement Of Their Nontaxable Costs ........................................................... 18

1.    The Requested Percentage of the Common Fund Is Warranted Here ....... 18

2.    A Multiplier Cross-Check Confirms That The Requested Fee Is Reasonable ................................................................................................. 20

3.    Class Counsel Is Entitled To Recover Expenses Associated With The Litigation ............................................................................................... 22

IV.    CONCLUSION ............................................................................................................... 23

2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Adoma v. Univ. of Phoenix, Inc.*,
  2012 WL 6651141 (E.D. Cal. Dec. 20, 2012) .........................................................19

*Alvarado v. Hovg, LLC*,
  2016 WL 5462429 (N.D. Cal. Sept. 29, 2016) .........................................................14

*Ashby v. Farmers Ins. Co. of Oregon*,
  No. 01-cv-1446-BR, Dkt. No. 605 (D. Or. Jun. 22, 2009) .......................................20

*Beasley v. Wells Fargo Bank*,
  235 Cal. App. 3d 1407 (1991)............................................................................17, 22

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015)....................................................................................16

*In re Bluetooth Headset Prod. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011)..............................................................................20, 21

*Camacho v. Bridgeport Fin. Inc.*,
  523 F.3d 973 (9th Cir. 2008).....................................................................................15

*Carter v. Shalhoub Management Company Inc.*,
  No. 15-cv-1531, ECF 69 (C.D. Cal. Mar. 15, 2017).................................................16

*City of Burlington v. Dague*,
  505 U.S. 557 (1992)..................................................................................................12

*Clark v. City of L.A.*,
  803 F.2d 987 (9th Cir. 1986)...............................................................................10, 17

*Flores v. Express Services Inc.*,
  2017 WL 1177098 (E.D. Pa. March 29, 2017) .........................................................16

*Franco v. Ruiz Foods Prods., Inc.*,
  2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ..........................................................19

*Grove v. Wells Fargo Fin. California, Inc.*,
  606 F.3d 577 (9th Cir. 2010)...............................................................11, 12, 17, 22

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2015 WL 2438274 (N.D. Cal. May 21, 2015) .......................................11, 17, 21, 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)............................................................................18, 20

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994)................................................................................17

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................3, 12, 13, 14, 21

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. 2005)..............................................................19

*In re High-Tech Employee Antitrust Litig.*,
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .....................................21, 22

*Hofstetter v. Chase Home Finance, LLC*,
    2011 WL 5545912 (N.D. Cal. Nov. 14, 2011)...............................................19

*Holman v. Experian Info. Solutions, Inc.*,
    2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) ................................................1

*Johnson v. General Mills, Inc.*,
    2013 WL 3213832 (C.D. Ca. June 17, 2003) .................................................19

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................................19

*Long v. Nationwide Legal File & Serve, Inc.*,
    2014 WL 3809401 (N.D. Cal. July 23, 2014)............................................. 13-14

*Lopez v. CIT Bank, N.A.*,
    2016 WL 3163175 (N.D. Cal. June 7, 2016) ..................................................13

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008)........................................................................14

*Nagy v. Grp. Long Term Disability Plan for Employees of Oracle Am., Inc.*,
    2017 WL 725740 (N.D. Cal. Jan. 17, 2017) ..................................................14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................18

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989)....................................................................... 11-12

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000)........................................................................18

*Ramirez v. Trans Union, LLC*,
    301 F.R.D. 408 (N.D. Cal. 2014)......................................................................6

*Ridgeway v. Wal-Mart Stores, Inc.*,
    ___ F. Supp. 3d ___, 2017 WL 4071293 (N.D. Cal. Sept. 14, 2017)................14, 15

2

*Rodgers v. Claim Jumper Restaurant, LLC*,
   2015 WL 1886708 (N.D. Cal. Apr. 24, 2015) ...........................................................................17

*Rodriguez v. D.M. Camp & Sons*,
   2013 WL 2146927 (E.D. Cal. May 15, 2013) .........................................................................18

*Schiller v. David's Bridal, Inc.*,
   2012 WL 2117001 (E.D. Cal. June 11, 2012) ........................................................................19

*Six (6) Mex. Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990)...............................................................................................18

*Smith v. Citifinancial Retail Servs.*,
   2007 WL 2221072 (N.D. Cal. Aug. 2, 2007)........................................................................13

*Sobel v. Hertz, Corp.*,
   53 F. Supp. 3d 1319 (D. Nev. 2014) .....................................................................................11

*Spokeo v. Robins.*
   ___ U.S. ___, 136 S. Ct. 1540 (2016) .....................................................................................7

*Staton v. Boeing Corp.*,
   327 F.3d 938 (9th Cir. 2003)...........................................................................................11, 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002).........................................................................................19, 21

*In re Washington Public Power Supply System Secs. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)..................................................................................................21

## S<small>TATUTES</small>

California Consumer Credit Reporting Agencies Act, C<small>AL</small>. C<small>IV</small>. C<small>ODE</small> § 1785 *et seq*............3, 4, 6

Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*............................................................. *passim*

   15 U.S.C. § 1681e(b) ...............................................................................................................3

   15 U.S.C. § 1681g(a)(1)...........................................................................................................3

   15 U.S.C. § 1681g(a)(3)...........................................................................................................3

   15 U.S.C. § 1681n..................................................................................................................11

   15 U.S.C. § 1681n(a)(3).......................................................................................................1, 12

   15 U.S.C. § 1681o(a)(2).........................................................................................................12

Fair Debt Collections Practices Act .............................................................................................15

Fair Labor Standards Act .............................................................................................................14

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FEDERAL RULES

Fed. R. Civ. P. 23 ............................................................................................................2

Fed. R. Civ. P. 23(b)(2)....................................................................................................7

Fed. R. Civ. P. 23(f)........................................................................................................21

Fed. R. Civ. P. 23(h) ................................................................................................1, 2, 18

Fed. R. Civ. P. 23(h)(2)....................................................................................................2

Fed. R. Civ. P. 54(d)(2)....................................................................................................1

### OTHER AUTHORITIES

Manual for Complex Litigation § 24.13 (3d ed. 1995)..................................................13

Newberg on Class Actions, § 14:10 (4th ed.) ..............................................................11

Posner, *Economic Analysis of Law* (4th ed. 1992)........................................................16

4

Plaintiff Sergio L. Ramirez and the Certified Class, and undersigned Class Counsel, respectfully submit this Memorandum of Law in support of their Motions for Awards of Attorneys' Fees and Reimbursement of Costs and Expenses ("Fee Petition").

## I.      **INTRODUCTION**

This Fee Petition consists of two separate motions.

First, Plaintiff and the Certified Class seek attorneys' fees and costs as the prevailing parties in this consumer protection lawsuit brought under the Fair Credit Reporting Act ("FCRA").   As the prevailing parties, Plaintiff and the Certified Class are entitled to attorneys' fees and costs from the Defendant, Trans Union LLC ("Trans Union"), under FCRA section 1681n(a)(3).

Plaintiff and the Class faced a hard-fought defense by Trans Union.  Trans Union made a strategic decision to oppose Plaintiff and the Class at every turn, including filing numerous motions and seeking reconsideration of several of the Court's orders.  The attorneys' fees and costs incurred by Plaintiff and the Class over six years of litigation were reasonable and necessary in battling Trans Union's defense of the case, and must now be paid by Trans Union.[1]

Plaintiff and the Certified Class now seek an award of $3,254,719.16 based upon their counsel's time and cost records for this case, which are attached to the declarations of counsel filed herewith.  This award should be paid by Defendant and added to the Amended Judgment of $60,055,800.50 which was entered in favor of Plaintiff and the Certified Class, on November 16, 2017. Dkt. No. 347.  Plaintiff submits a proposed Order to that effect with this motion.

Second, and separately, Class Counsel move for an award of attorneys' fees and nontaxable costs under Fed. R. Civ. P. 23(h) and 54(d)(2).  Because this is a certified class action, this Court

---

[1]      Both Congress and the courts have acknowledged this reality, deputizing private attorneys as "private attorneys general" and making it economically possible for them, through the fee-shifting provisions of several federal statutes, to vindicate consumer rights even in cases where the actual damages may be very low.  *Holman v. Experian Info. Solutions, Inc.*, 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014).

may award attorneys' fees and costs to Class Counsel under Fed. R. Civ. P. 23(h).  Consistent with Ninth Circuit law, Class Counsel seek <u>28.5%</u> of the class's total recovery, and also reimbursement of $152,073.16 in costs expended by Class Counsel in prosecuting this case.  Since this fee and cost award is being sought by Class Counsel from the Certified Class, Plaintiff is submitting a separate proposed Order directing notice of this motion to the Certified Class, and providing an opportunity for class members to object, as provided by Fed. R. Civ. P. 23(h)(2).

As discussed below, this percentage is well within the range of what courts in this Circuit have awarded to class counsel in certified class action that have either settled or which reached a judgment in favor of the class.  Although slightly above the 25% benchmark used in the Ninth Circuit, the 28.5% award sought by Class Counsel is reasonable in light of the unprecedent success achieved in this case and in line with fee recoveries in class action cases.

## II.   BACKGROUND

### A.   Nature Of Action

This was a class action case seeking statutory and punitive damages brought by an individual consumer on behalf of others similarly situated against Trans Union for violations of the FCRA, 15 U.S.C. §§ 1681 *et seq.*, *as amended*.  One of the largest credit reporting agencies in the United States, Trans Union fought this case vigorously, and it continues to do so through post-trial motion practice. *See* Dkt. Nos. 321, 329, 333, 334.  Plaintiff and the Class were successful at trial, and they should be awarded appropriate attorneys' fees and costs as supported by the FCRA and Rule 23. Plaintiff and the Class further submit that in light of the substantial success of this litigation, an enhancement of lodestar for Class Counsel is warranted.

### B.   Summary of Claims

Plaintiff and the Class advanced several claims in this matter.  First, they asserted that Trans Union  inaccurately  associated  each  class  member  with  terrorists,  drug  traffickers,  and  other

2

criminals on the United States Treasury Department's Office of Foreign Assets Control (OFAC) watch list by using only first and last name, and no additional available personal identifying information. Plaintiff and the Class thus failed to maintain reasonable procedures to assure the maximum possible accuracy of its reports, in violation of FCRA section 1681e(b).

Plaintiff and the Class next asserted that Trans Union failed to include any OFAC information in the written disclosures it sent to consumers who requested a copy of their Trans Union files, and thus failed to clearly and accurately disclose all information in class members' files, in violation of FCRA section 1681g(a)(1).

Finally, Plaintiff and the Class asserted that when Trans Union did communicate with consumers about OFAC, through a letter sent separately from the file disclosure, Trans Union failed to include a statement of FCRA consumer rights, including the right to dispute and have corrected any inaccurate information, in violation of FCRA section 1681g(a)(3).

Plaintiff also brought and certified an injunctive relief claim under the California state law corollary to the FCRA, the California Consumer Credit Reporting Agencies Act (CCRAA), CAL. CIV. CODE § 1785 *et seq*. Because of the passage of time, that injunctive relief claim was moot by the time of trial. The fact that the trial in this matter dealt only with the FCRA claims of Plaintiff and the nationwide class did not alter Plaintiff and the Class's prosecution of the case and does not preclude full recovery of attorneys' fees in light of the substantial relief achieved on the interrelated and nearly identical CCRRA claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (upholding district court's refusal to apportion fee award mechanically when plaintiff prevailed upon some of several interrelated claims).

## C.   <u>Investigation And Complaint</u>

Plaintiff's counsel Francis & Mailman, P.C. began its investigation in this matter in March 2011, after Mr. Ramirez contacted their office.  Plaintiff's counsel conducted a normal amount of

factual and legal research as part of their background investigation into this matter.  *See* Declaration of James A. Francis filed herewith ("Francis Decl.") at ¶ 12, 17(b); Declaration of John Soumilas filed herewith ("Soumilas Decl.") at ¶5(a).  Counsel spoke to Plaintiff at length about his discovery of Trans Union's inaccurate reporting, his credit history, and the impact of Trans Union's OFAC alert on Plaintiff's life.  Counsel also reviewed documents provided by Plaintiff and analyzed his claims.  Francis & Mailman associated with Ogilvie & Brewer LLP (formerly Anderson, Ogilvie & Brewer, LLP) in order to prosecute the case.  Declaration of Andrew J. Ogilvie ("Ogilvie Decl.") at ¶ 17. The Complaint was filed on February 9, 2012.  Dkt. No. 1.

**D.**     **Early Motion Practice**

The first of Trans Union's numerous motions in this matter was its Motion for Judgment on the Pleadings filed on August 1, 2012, seeking judgment in its favor on the CCRAA claims in this matter.  Dkt. No. 30.  After thorough briefing (Dkt. Nos. 39, 40), this Court denied Trans Union's motion in full on October 17, 2012.  Dkt. No. 45.

Next, Trans Union sought to consolidate this action with other pending cases before the Judicial Panel on Multidistrict Litigation through a motion filed on December 18, 2012.  Dkt. No. 49.  Because different classes of consumers and different legal theories were involved in the other cases, Plaintiff opposed the motion, and traveled to Orlando, Florida to present argument oral argument.  *In re Trans Union LLC FCRA Litig.*, MDL No. 2427, Doc. No. 11 (Response in Opposition to Motion for Transfer); Doc. No. 13 (Notice of Presentation of Oral Argument), Doc. No. 17 (Transcript of hearing held January 31, 2013 before the Panel).  The MDL Panel denied Trans Union's transfer Motion on February 7, 2013. *Id.* at Doc. No. 16; Dkt. No. 64

On January 9, 2013, Trans Union filed a Motion to Dismiss (Dkt. No. 52), and a Motion to Disqualify Plaintiff's Counsel and for Sanctions (Dkt. No. 51).  Plaintiff opposed to both motions on February 6, 2013.  Dkt. Nos. 58, 59.  The Court denied the Motion to Dismiss on March 15,

2013 (Dkt. No. 76), and denied the Motion to Disqualify Counsel on March 20, 2013 (Dkt. No. 77).

Trans Union then moved for reconsideration of the order denying its Motion to Dismiss. Dkt. No. 82.  Plaintiff responded to that motion, and to Trans Union's related notice of supplemental authority.  Dkt. Nos. 92, 93.  After the hearing on the motion for reconsideration, Plaintiff also provided a supplemental submission related to that motion.  Dkt. No. 99.  This Court denied the motion for reconsideration on July 17, 2013.  Dkt. No. 100.

**E.**     **Written Discovery and Depositions**

During the course of early motion practice in this matter, the parties concurrently conducted written discovery, including preparing, serving and responding to interrogatories and document requests, and exchanged voluminous and complex documents, including coded internal Trans Union documents and records related to its policies regarding the reporting of terrorist record information, including changes thereto following the trial in the *Cortez v. Trans Union, LLC* matter and 2010 appellate decision in that case.  *See* Soumilas Decl. at ¶ 5(e); Ogilvie Decl. at ¶¶ 18-19.  The parties also conducted substantial third party discovery, including depositions of two third parties.  Soumilas Decl. at ¶ 5(e).

The parties submitted a single discovery dispute to the Court on February 20, 2013.  Dkt. No. 66.  The Court resolved the dispute on March 13, 2013, ordering Trans Union to produce additional documents and information.  Dkt. No. 75.

Plaintiff's counsel carefully reviewed and analyzed nearly 10,000 pages of material produced by Trans Union, and diligently responded to Trans Union's requests.  Francis Decl. at ¶ 5(e); Soumilas Decl. at ¶ 5(e).

The parties then went on to take and defend a total of fourteen depositions.  Plaintiff was deposed on October 1, 2012, and his wife Liseth Villegas was deposed on the next day.  Trans

Union proffered several corporate representatives in this matter: Plaintiff deposed Sean Walker on September 12, 2012, Steven Katz on December 12, 2012, Robert Lytle on December 13, 2012, Michael O'Connell on December 13, 2013, and Colleen Gill on December 12, 2013.  Plaintiff deposed an additional Trans Union employee, Bharat Acharya, on December 11, 2013.  Plaintiff deposed Dublin Nissan's representative on January 16, 2013.  Plaintiff also deposed Dublin Nissan's salesman on May 7, 2015. Plaintiff deposed Accuity, Inc. on December 14, 2012.

During the expert discovery phase of the case, Plaintiff deposed Defendant's experts Jaco Sadie and Francine Cronshaw on February 7, 2017 and February 3, 2017, respectively.  Trans Union took the deposition of Plaintiff's expert Erich Ferrari on February 10, 2017.  These depositions were properly pursued and counsel spent a reasonable amount of time preparing for and taking them.  *See* Francis Decl. at ¶ 12(e); Soumilas Decl. at ¶ 5(e), 5(g).

**F.     Briefing on Class Certification and Stay of Proceedings**

On March 14, 2013, Plaintiff moved to certify the accuracy and disclosure claims under the FCRA of a nationwide class of consumers who were the sent the same form letter regarding OFAC that Trans Union sent to Plaintiff, and a subclass of California consumers with respect to the corollary CCRAA accuracy and disclosure claims.  Dkt. Nos. 110, 122.  Plaintiff sought statutory and punitive damages on behalf of himself and the FCRA class, and punitive damages and injunctive relief on behalf of himself and the California subclass.  *Id.*  Trans Union opposed the certification motion, and Plaintiff filed a comprehensive reply.  Dkt. Nos. 120, 125.  The Parties also each submitted additional material regarding supplemental legal authority related to class certification briefing.  Dkt. Nos.  136, 139.

The Court granted the motion on July 24, 2014.  Dkt. No. 140; *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014).  The Court certified the disclosure and accuracy claims of the nationwide FCRA class, and certified the accuracy claims of the California subclass pursuant

to Fed. R. Civ. P. 23(b)(2) for injunctive relief.  301 F.R.D. at 425-26.

Trans Union sought permission from the Ninth Circuit Court of Appeals to appeal the class certification decision on August 7, 2014, and Plaintiff opposed the petition.  No. 14-80109 (9th Cir.) at Dkt. Nos. 1-1, 7-1.  The Ninth Circuit denied the petition on December 2, 2014.  *Id.* at Dkt. No. 8.

On December 18, 2014, Trans Union filed a motion styled as a "Motion for Clarification" of the class certification order, seeking to limit the class to those about whom Trans Union had sold OFAC information to a third party.  Dkt. No. 149.  Plaintiff opposed the motion on January 22, 2015 pursuant to the parties' stipulated briefing schedule.  Dkt. Nos. 153, 157.  The Court denied the motion after full briefing.  Dkt. Nos. 160, 163.

Trans Union moved to stay this litigation on May 4, 2015 after the United States Supreme Court agreed to hear an appeal of the Ninth Circuit's decision in *Spokeo v. Robins*.  Dkt. No. 177. Plaintiff opposed a stay.  Dkt. No. 179.  The Court granted the motion to stay on June 22, 2015. Dkt. No. 184.  The case remained stayed until July 15, 2016, after the High Court remanded *Spokeo* for further proceedings (*Spokeo v. Robins*, ___ U.S. ___, 136 S. Ct. 1540 (2016)).  Dkt. No. 196 (Amended Pretrial Order setting case deadlines).

After the Court lifted the stay, Trans Union once more sought to reverse the class certification order, by filing a Motion to Decertify the class.  Dkt. No. 198.  The Court denied the motion after full briefing.  Dkt. Nos. 201, 202, 209.

**G.    Class Notice and Administration**

After the Ninth Circuit Court of Appeals declined to hear Trans Union's appeal of the order certifying the class in this matter, the parties jointly proposed a form of class notice, and later a revised form.  Dkt. No. 167, 170.  Plaintiff's counsel worked diligently to select the settlement administrator, McGladrey, LLP, to coordinate the sending of notice to the class, and to respond to

7

inquiries from class members.

**H.     Mediations and Settlement Discussions**

The parties participated in formal settlement discussions on at least five separate occasions. On November 9, 2012, the parties participated in a mediation session with the Honorable William J. Cahill (Ret.) of JAMS San Francisco.  On November 21, 2013, the parties attended a mediation with the Honorable Diane M. Welsh (Ret.) of JAMS Philadelphia.  The parties again mediated this case with Judge Welsh on August 11, 2014.  The parties twice attempted to resolve the case at a settlement conferences with the Honorable Maria-Elena James on January 18, 2017, and again on April 24, 2017.  They also had several other informal settlement discussions between counsel. None of these efforts resulted in a settlement.

**I.     Summary Judgment Briefing**

Trans Union filed a motion for summary judgment on January 20, 2017.  Dkt. No. 218 Plaintiff filed an opposition on February 10, 2017, and Trans Union replied on March 3, 2017.  Dkt. Nos. 221, 227.  Because Trans Union argued for the first time in its reply that the testimony of Plaintiff's expert should be excluded, Plaintiff sought leave to file a sur-reply to respond to that argument, and submitted a proposed sur-reply.  Dkt. Nos. 230, 230-1.  After oral argument, the Court denied the motion for summary judgment.  Dkt. No. 233.

**J.     Pretrial Submissions**

On May 11, 2017, the parties submitted their Joint Simplified Statement of the Case, Proposed Pretrial Order, Proposed Voir Dire, and Proposed Jury Instructions.  Dkt. Nos. 248, 250, 259, 260.  Plaintiff also prepared and filed a trial brief, objections to Trans Union's exhibits, a memorandum regarding the proposed jury instructions, and a proposed verdict form.  Dkt. Nos. 249, 251, 252, 253.  Finally, each party submitted and responded to five motions in limine.  Dkt. Nos. 243, 244, 245, 246, 247, 254, 255, 256, 257, 258.

On May 17, 2017, Trans Union sought leave to file another motion for summary judgment and for reconsideration of the court's order refusing to decertify the class.  Dkt. No. 265, 266.  Plaintiff's reviewed each of Trans Union's submissions in detail, and participated in a lengthy pretrial conference, and reviewed the Court's orders setting proposed jury instructions and verdict forms, and ruling on the motions in limine.  Dkt. Nos. 271, 272, 273.

Prior to the trial, Plaintiff also submitted a request for judicial notice (Dkt. No. 283), and several stipulations narrowing the evidentiary issues to be tried.  Dkt. Nos. 285, 286, 287, 289.

## K.  Trial and Trial Preparation

Plaintiff conducted substantial preparation for trial, including drafting opening statements and closing arguments, reviewing and analyzing nearly one hundred exhibits, preparing for the examination of twenty potential witnesses, and preparing evidentiary arguments.  *See* Soumilas Decl. at ¶ 5(l).  Counsel also prepared for and attended pretrial conferences on May 18, 2017, May 30, 2017, and June 8, 2017.  Dkt. Nos. 268, 274, 284.

The trial in this matter began on June 12, 2017.  On June 20, 2017, the jury returned a compensatory damages verdict of $984.22 for each of the 8,185 Class members.  Dkt. No. 305.  After additional evidence, argument, and deliberation, the jury returned a punitive damages verdict, awarding $6,353.08 per Class member, for a total of $60,055,800.50.  Dkt. No. 306.

John Soumilas and James A. Francis of Francis & Mailman, P.C., Carol Brewer of Ogilvie & Brewer LLP appeared at trial on behalf of Plaintiff and the Class, along with their legal assistants.  Counsel received support from other attorneys and staff in the form of legal research and submissions, strategy discussions, and other matters, as reflected in the declarations of counsel submitted herewith.  That time was reasonably expended.

Trial preparation was appropriate for a trial of this nature.  The declarations of counsel show that they spent a reasonable amount of time preparing and selecting exhibits and witnesses,

9

conducting research, refining litigation strategy, drafting legal memoranda, and other reasonable trial preparation that went into this matter.  *See* Declarations of counsel.

**L.    Post-Trial Briefing**

During trial, Defendant orally moved for judgment as a matter of law, and filed a written brief in support of its motion.  Dkt. No. 295. The Court denied the motion on the record following argument, and following the verdict, Trans Union filed its Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial or, in the Alternative, Motion for Remittitur or, in the Alternative, Motion to Alter or Amend the Judgment.  Dkt. No. 321.

Plaintiff filed a comprehensive response to Trans Union's post-trial motion, and moved to strike the additional evidence Trans Union submitted along with the motion.  Dkt. Nos. 327, 329. Additionally, Plaintiff filed a motion seeking a service award as the representative of the Class. Dkt. No. 322.

Plaintiff reviewed Trans Union's responsive briefing with respect to each of the motions, and prepared for and attended oral argument on the motions on October 5, 2017.

The Court granted Plaintiff's motion to strike and denied Defendant's post-trial motion in all respects.  Dkt. No. 344.  The Court also granted Plaintiff's motion for a service award for Mr. Ramirez.  Dkt. No. 345.

**M.    Fee Petition**

Plaintiff has included in this submission counsel's time spent in preparing the instant Fee Petition.  The parties anticipate that Trans Union will oppose the Fee Petition, and as a result Plaintiff will also need to file a reply brief.  Plaintiff is entitled to recover for the time spent by counsel in preparing the fee application.  *Clark v. City of L.A.,* 803 F.2d 987, 992 (9th Cir. 1986) (time spent preparing fee application is compensable).   Counsel have already expended approximately 125 hours of attorney and paralegal time preparing this brief, including legal

research, drafting, revisions, and preparation of exhibits, and anticipate spending more time preparing a reply.  Francis Decl. at ¶ 12(k); Soumilas Decl. at ¶ 5(o); Declaration of Lauren KW Brennan filed herewith ("Brennan Decl.") at ¶ 4(i).

**N.**      **Costs of the Litigation**

Class Counsel advanced all of the costs of litigation in this matter.  Francis Decl. at ¶ 24; Ogilvie Decl. at ¶ 40.  Pursuant to section 1681n of the FCRA, Plaintiff and the Class as the prevailing party are entitled the "the costs of the action" in addition to their attorneys' fees. Litigation costs under the FCRA include not just taxable costs, but any out-of-pocket expenses that would normally be charged to a paying client.  *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 579-82 (9th Cir. 2010); *Gutierrez v. Wells Fargo Bank, N.A.,* No. C 07-05923 WHA, 2015 WL 2438274, at *9 (N.D. Cal. May 21, 2015) (awarding reasonable non-taxable litigation expenses).  Class Counsel incurred $ 152,073.16 in litigation expenses. The costs expended by counsel are detailed in the Francis Decl. and Exhibit H thereto, and the Ogilvie Decl. and Exhibit 2 thereto.

## III.      ARGUMENT

This matter is a "hybrid" class action, brought under a fee-shifting statute, and brought to judgment as a common fund. *See* Newberg on Class Actions, § 14:10 (4th ed.).  In such cases, it is appropriate to use both a fee-shifting analysis and the common fund doctrine to calculate a reasonable award of attorneys' fees.  *Staton v. Boeing Corp.*, 327 F.3d 938, 967-68 (9th Cir. 2003); *Sobel v. Hertz, Corp.*, 53 F. Supp. 3d 1319, 1325-30 (D. Nev. 2014) (citing *Staton* and applying both lodestar and common fund analysis).

Fee-shifting and common fund analyses serve different, and complementary purposes: "the former governs what the non-prevailing party must, by law, pay the prevailing party in attorney's fees, while the latter serves to ensure that absent class members share in the cost of litigation."

*Sobel*, 53 F. Supp. 3d at 1330.  The common fund doctrine also serves to calculate reasonable compensation for effort expended and success achieved in creating a common fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Therefore, in order to determine a reasonable fee in a hybrid class action, courts should first award attorneys' fees and costs to Plaintiff and the Class as the prevailing party under the FCRA, and then apply the common fund doctrine to the resulting judgment.  *See Staton*, 327 F.3d at 969 (noting that fees paid after a successful litigation "could be treated at that point as part of a common fund").

**A.**      **Plaintiff And The Certified Class Are Entitled To $3,254,719.16 In Attorneys' Fees And Costs As The Prevailing Parties In An FCRA Action**

FCRA cases are fee-shifting cases where *the plaintiff* shall recover "the costs of the action together with reasonable attorney's fees" in "the case of any successful action to enforce liability." 15 U.S.C. §§ 1681n(a)(3) & o(a)(2).  After prevailing at trial, there can be no doubt that Plaintiff and the Certified Class were highly successful in enforcing liability under the FCRA through this litigation.  They are therefore entitled to their reasonable attorneys' fees and costs as part of their recovery.

In fee-shifting cases, the most common method of calculating a reasonable fee is through the "lodestar," the number of hours expended on the litigation multiplied by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Grove*, 606 F.3d at 582.

As detailed below and in the attached records, the lodestar and expenses for Plaintiff's counsel here is as follows: for Francis & Mailman, P.C., $2,424,975.00 for attorneys' fees, reflecting over 4,000 hours of attorney and paralegal time, and costs of $139,607.74 (Francis Decl. at ¶¶ 22, 24 and Exhibit H thereto); for Ogilvie & Brewer LLP, $677,670.00 for attorney's fees, reflecting over 900 hours of attorney and paralegal time (Ogilvie Decl. at ¶ 3), and costs of

12

$12,465.42 (Ogilvie Decl. at ¶ 40 and Exhibit 2 thereto).

The lodestar analysis is generally considered the appropriate method of determining attorneys' fees in federal consumer protection statutory fee-shifting cases such as this case because the shifting of fees serves the public policy of encouraging private enforcement of the substantive rights created by Congress.  Manual for Complex Litigation § 24.13 (3d ed. 1995).

### 1.     Hours Expended And Sufficiency Of Lodestar Documentation

The attorneys, paralegals, and staff at Francis & Mailman, P.C. and Ogilvie & Brewer LLP who worked on this case all kept detailed time records through the use of computerized billing software, tracking the tasks completed, the date the work was completed, and specifying the nature of the work.  Francis Decl. at ¶ 11; Ogilvie Decl. at ¶ 15.  In support of this Fee Petition, Plaintiff's counsel submit the time records which detail their work on this matter.  Francis Decl. at Exhibits B, C, D, and E; Soumilas Decl. at Ex. A; Declaration of David A. Searles Decl. at Ex. A; Brennan Decl. at Ex. A; Declaration of Jordan M. Sartell Decl. at Ex. A; Ogilvie Decl. at Ex. 1.

 This submission provides the necessary degree of specificity required in order to evaluate a fee petition.  *See Hensley*, 461 U.S. at 437, n.12 (noting that counsel are "not required to record in great detail how each minute of his time was expended," but should "identify the general subject matter of his time expenditures."). The declarations of counsel submitted herewith also set forth the basis for the division of labor among the attorneys and paralegals in an efficient manner.  *See* Declarations of counsel.  There was no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433.  All the time submitted was reasonably necessary to achieve the successful outcome for the Plaintiff and the Class against Defendant Trans Union.

Several courts in the Northern District of California have had occasion to apply the *Hensley* analysis to fee claims of prevailing parties under the FCRA and other consumer protection

litigation.  *See Lopez v. CIT Bank, N.A.*, 2016 WL 3163175, at *3-11 (N.D. Cal. June 7, 2016) (citing *Hensley* and granting plaintiff's motion for attorneys' fees in case under FCRA); *Smith v. Citifinancial Retail Servs.*, 2007 WL 2221072, at *1 (N.D. Cal. Aug. 2, 2007) (same); *Long v. Nationwide Legal File & Serve, Inc.*, 2014 WL 3809401, at *4-14 (N.D. Cal. July 23, 2014) (citing *Hensley* and granting attorneys' fees to prevailing plaintiff under the Fair Debt Collection Practices Act); *Alvarado v. Hovg, LLC*, 2016 WL 5462429, at *3 (N.D. Cal. Sept. 29, 2016) (same).

Plaintiff's counsel handled this matter in a streamlined and cost-effective manner.  The attorneys apportioned tasks and assignments to avoid duplicative work, and achieved excellent results in all phases of litigation while incurring a relatively low lodestar.[2]

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)

### 2.    Hourly Rates

The hourly rates charged for Plaintiff's counsel here are reasonable and appropriate in the San Francisco legal market and in light of counsel's qualifications and experience.  *See* Francis Decl. at ¶¶ 19-21 and Exhibit F and G thereto; Ogilvie Decl. at ¶¶ 36-39; Declaration of Richard M. Pearl ("Pearl Declaration) filed herewith.

In support of the hourly rates of Andrew J. Ogilvie and Carol M. Brewer, Plaintiff's counsel have submitted the November 28, 2017 Declaration of Richard M. Pearl.  Mr. Pearl is a well-recognized expert in the market rates charged by attorneys in California and the San Francisco Bay

---

[2]    By comparison, a class action under the Fair Labor Standards Act which went to trial in this District approximately eight months before this case, and also resulted in a $60 million judgment in favor of the plaintiff and the class.  *Ridgeway v. Wal-Mart Stores, Inc.*, ___ F. Supp. 3d ___, 2017 WL 4071293, at *2 (N.D. Cal. Sept. 14, 2017).  In that case, class counsel spent over 10,000 hours of attorney and paralegal time, incurring over $7 million in lodestar.  *Id.*  Class Counsel here achieved a similar result with substantially less time.

14

Area in particular, based upon his substantial experience in attorney fee litigation, discussions with others in the profession, declarations and fee applications in his own and other cases, and surveys, articles, and treatises on the subject.  Pearl Decl. at ¶¶ 2-9; *Nagy v. Grp. Long Term Disability Plan for Employees of Oracle Am., Inc.*, 2017 WL 725740, at *3 (N.D. Cal. Jan. 17, 2017); *Ridgeway*, 2017 WL 4071293, at *4.  Mr. Pearl's analysis accounts for the non-contingent market rates charged for similar services with reasonably similar qualifications and experience to Mr. Ogilvie and Ms. Brewer in the San Francisco Bay Area, as well as his personal experience with their legal work as co-counsel.  Pearl Decl. at ¶¶ 10-11.  The hourly rate charged by Mr. Ogilvie and Ms. Brewer is $790 per hour.

In support of the hourly rates charged by the attorneys of Francis & Mailman, P.C., Plaintiff's counsel has submitted the December 12, 2017 expert report of Jeffrey D. Polsky, Esquire, recommending hourly rates to be charged by Francis & Mailman, P.C. in this litigation in light of the prevailing market hourly billing rates for legal services in San Francisco.[3]  Polsky Report, Ex. G to Francis Decl.   Plaintiff's counsel also submits the December 12, 2017 expert report of Abraham C. Reich, Esquire, proposing hourly rates to be charged by Francis & Mailman, P.C. in this litigation in light of the Polsky Report, as well as the experience, reputation, and ability of the lawyers involved, the difficulty of the questions involved in the litigation, the necessary skill needed to perform the legal service properly,  and the result obtained, and finding that the rates charged are appropriate  Francis Decl. at Ex. F.  Mr. Reich is the Co-Chair and Partner of the law firm of Fox Rothschild, LLP, and has practiced law for over 30 years, and he has had direct involvement in setting and establishing the hourly rates charged by the partners and associates of Fox Rothschild,

---

[3] It is well established that appropriate hourly rates are "the prevailing market rate in the relevant community," and that the relevant community is the forum in which the district court sits. *Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 978-79 (9th Cir. 2008) (reversing order awarding less than half of attorneys' fees sought in FDCPA case because the district court failed to consider prevailing hourly rates within that district).

LLP.  *Id.*  Francis & Mailman has set its regular hourly rates based upon Mr. Reich's independent

analysis for several years.  Francis Decl. ¶ 21.  Mr. Reich's analysis also accounts for the experience

and specialization of Francis & Mailman attorneys in the practice of fair credit reporting litigation.

*Id* at Exhibit F.   Francis & Mailman hourly rates as set by Mr. Reich have been approved by courts

across the country.  Francis Decl. ¶ 21; *See Carter v. Shalhoub Management Company Inc.*, No.

15-cv-1531 (C.D. Cal. Mar. 15, 2017) (ECF 69) (granting firm's fee petition in full, including 33%

of fund); *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (affirming fee award approving

hourly rates); *Flores v. Express Services Inc.,* 2017 WL 1177098, at *4 (E.D. Pa. March 29, 2017)

(approving hourly rates and granting multiplier of 4.6).

The hourly rate charged by Mr. Francis in this matter is $775; for Mr. Soumilas is $725, for

Mr. Searles is $925; for Ms. Brennan is $400; for Mr. Sartell is $350; for Mr. Gorski is $450; for

Ms. Novak is $425; for paralegals is $200.[4]

Furthermore, these fees are reasonable in light of the contingent nature of the fee agreement

and the fact that none of Plaintiff's counsel has received any payment for their services.  As Judge

Posner of the Seventh Circuit Court of Appeals has observed:

> A contingent fee must be *higher* than the fee for the same legal services as they are
> performed. The contingent fee compensates the lawyer not only for the legal
> services he renders, but also for the loan of those services. The implicit interest rate
> on such a loan is higher because the risk of default (the loss of the case, which
> cancels the debt of the client to the lawyer) is much higher than that of a
> conventional loan.

---

[4] The Pearl Declaration provides further support for the reasonableness of the proposed
California hourly rates for the attorneys of Francis & Mailman. Indeed, the case law and hourly
rate information therein suggests that the attorneys of Francis & Mailman could command hourly
rates even higher than those requested here. For example, the Pearl Declaration indicates that an
attorney such as Mr. Francis, with 22 years of experience, could command an hourly rate of  $800-
1,000 in the San Francisco market. Pearl Decl. at pp. 9, 15-20 (2016 rates of Morrison & Foerster,
Munger Tolles & Olson LLP, and Paul Hastings LLP).  Mr. Soumilas, with 19 years of experience,
would merit an hourly rate of $800-900.  *Id.* (2016 rates of Morrison & Foerster and Jones Day).
Ms. Brennan, with four years of experience, would command an hourly rate of $400-500. *Id.* (2016
rates of Jones Day and Gibson Dunn & Crutcher LLP).

16

Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992) (emphasis added).  *See also* Reich Report, Francis Decl. Ex. F (discussing relevance of contingent representation to setting of hourly rate).

### 3.    Preparation of Fee Petition

Plaintiff is entitled to recover for the time spent by counsel in preparing the fee application. *Clark*, 803 F.2d at 992; *Rodgers v. Claim Jumper Restaurant, LLC*, 2015 WL 1886708, at *9 (N.D. Cal. Apr. 24, 2015).   Plaintiff has included in his submission counsel's time spent in preparing the instant petition.  The time spent by counsel in researching, drafting, and revising this Fee Petition was reasonably expended.  Plaintiff's counsel has expended approximately 125 hours of attorney and paralegal time to date, and requests compensation for 102.5 hours of anticipated time expected to be spent preparing a reply in further support of the Fee Petition. *See* Francis Decl. at ¶ 12(k) and Exhibit B thereto; Soumilas Decl. at ¶ 5(o) and Exhibit A thereto; Brennan Decl. at ¶ 4(i) and Exhibit A thereto.

### 4.    Costs

An award of reasonable fees should also include reimbursement for litigation expenses reasonably incurred in prosecuting the case. *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1419-20 (1991).  Plaintiff and the Class are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, depositions, travel, mediation and other litigation-related expenses that would typically be billed to paying clients. *See Grove*, 606 F.3d at 579-82 (FCRA fee-shifting provision entitles prevailing plaintiff to recover non-taxable litigation expenses); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).[5]   Class

---

[5]      Should this Court in its discretion under *Grove* decline to order Trans Union to pay all of the costs associated with this litigation, Class Counsel respectfully requests that any costs not

17

Counsel has reviewed accounting records and invoices and can attest to the appropriateness and necessity of the expenses.  Francis Dec., ¶¶ 23-26; Ogilvie Decl. ¶¶ 40-31.  The requested expenses and costs are the type routinely billed by attorneys in such litigation and are reasonable.  *Id.*

**B.      Class Counsel Are Entitled To Attorneys' Fees In the Amount of 28.5% Of The Common Fund Created By The Judgment, Post-Judgment Interest, and The Fee-Shifted Attorneys' Fees And Costs Of the Action, As Well As Reimbursement Of Their Nontaxable Costs**

When attorneys' fees and costs are added to the judgment in this matter as set forth above, the common fund available to Plaintiff and the Class as the prevailing parties in this matter reaches $63,310,519.66, plus any post-judgment interest.  In recognition of the substantial efforts and risks undertaken to achieve this excellent result, Class Counsel seek reasonable attorneys' fees in the form of 28.5% of this common fund, and reimbursement of expenses pursuant, to Fed. R. Civ. P. 23(h).

### 1.      The Requested Percentage of the Common Fund Is Warranted Here

In the Ninth Circuit, the typical range of acceptable attorneys' fees in common fund class cases is 20% to 33 1/3% of the total settlement value, with 25% considered to be the "benchmark." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Six (6) Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Rodriguez v. D.M. Camp & Sons*, No.: 1:09-cv-00700-AWI-JLT, 2013 WL 2146927, at *13 (E.D. Cal. May 15, 2013) ("In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark" and granting fee request of 30% of $675,000 common fund).

"However, in most common fund cases, the award exceeds [the 25%] benchmark." *In re*

---

recovered from Trans Union be reimbursed to Class Counsel from the common fund. *Gutierrez*, 2015 WL 2438274, at *9 (awarding expenses of litigation from the common fund).

MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR ATTORNEYS' FEES AND EXPENSES

1
2
3
4

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (*citing In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."))[6]

5
6
7
8
9
10
11
12

    As the Ninth Circuit has held, "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases.  Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  Thus, in *Vizcaino*, the Ninth Circuit approved an award of attorneys' fees amounting to 28% of the $96,885,000 settlement in that case, which was based on the district court's consideration of factors including the excellent results achieved by counsel, the risky nature of the representation, the benefits generated for the

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[6]    *See also Johnson v. General Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Ca. June 17, 2003) (awarding fees amounting to "30% of the total settlement fund" and observing that "[o]ther courts have regularly awarded fee amounts above the benchmark in common fund cases.") (*citing Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.  However, the exact percentage varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark.") (internal quotation marks and citations omitted)); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *19 (E.D. Cal. June 11, 2012) (approving attorney fee award that represented 32.1% of the total class settlement amount); *Franco v. Ruiz Foods Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801 at *18 (E.D. Cal. Nov. 27, 2012) (holding attorney's fees award of 33 percent of the total class settlement amount as fair and reasonable); *Adoma v. Univ. of Phoenix, Inc.*, No. CIV. S-10-0059 LKK/GGH, 2012 WL 6651141 (E.D. Cal. Dec. 20, 2012) (approving attorneys' fees award that represented 29% of the common fund); *Hofstetter v. Chase Home Finance, LLC*, No. C 10-1313 WHA, 2011 WL 5545912 at *2 (N.D. Cal. Nov. 14, 2011) (granting attorney's fee award that represented 32 percent of class settlement); *Knight v. Red Door Salons, Inc.*, No. 08-01520-SC, 2009 WL 248367 at *5 (N.D. Cal. Feb. 2, 2009) (awarding fees amounting to 30% of common fund); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403 at *19-21 (C.D. Cal. 2005) (awarding fees amounting to one-third of the common fund and citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re Public Ser. Co. of New Mexico*, No. 91-00536-M, 1992 WL 278452 at *1, *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-00979-G-CM, 1991 WL 427893 at *1, *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, No. 89-00090-E-M, 1990 WL 454747 at *1, *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% attorneys' fee plus expenses)).

19

class in that case "beyond the cash settlement fund," the market rate for such contingency representation, and the length and expense of the litigation. *Id*. at 1048-50;

The requested percentage of the common fund is warranted here in light of the excellent results Class Counsel obtained in this litigation.  Class Counsel brought this case to trial, where Plaintiff and the Class prevailed on each of the three counts presented to the jury.  Dkt. No.  305. The jury awarded $984.22, which is over 98% of the statutory damages available under the FCRA. Furthermore, Class Counsel's efforts led to an award of punitive damages to each class member, a result that is even more rare in class action cases.

Importantly, this is one of only two FCRA class actions ever to go to trial, and the only one to result in a class-wide judgment.  *See Ashby v. Farmers Ins.  Co. of Oregon*, No. 01-cv-1446-BR (D. Or. Jun. 22, 2009) at Dkt. No. 605 (jury verdict in favor of defendant).  Even beyond the realm of the FCRA, class action litigation rarely proceeds to trial.  Class counsel thus undertook a substantial investment in litigating this case for over six years, against a defendant with no apparent interests in a settlement, and then took an even greater risk by proceeding to the uncertainties of trial. Class Counsel furthermore successfully defended the judgment from Trans Union's post-trial attack. This case is a far cry from a class action which settled following depositions or motion practice, or even after class certification.

In light of the clear and unprecedented success achieved by Class Counsel here, the duration and expense associated with this litigation, which was undertaken on a contingency basis, and the risks associated with taking the case to trial, the 28.5% requested by Class Counsel here is reasonable.

## 2.    A Multiplier Cross-Check Confirms That The Requested Fee Is Reasonable

An attorney fee award of $18,043,498.10, or 28.5% of the common fund, results in a multiplier of 5.82.   A reasonable fee may include "an appropriate positive multiplier reflecting a

20

host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment…." *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1029).  *See also In re Washington Public Power Supply System Secs. Litig.*, 19 F.3d 1291, 1299-1302 (9th Cir. 1994) (holding district court abused its discretion in failing to apply risk multiplier to lodestar).  The benefit obtained for the class is the "foremost" consideration in determining whether a multiplier is reasonable.  *In re Bluetooth*, 654 F.3d at 941 (citing *Hensley*).

Appropriate multipliers can range from 2 to 4 or even higher.  *Gutierrez*, 2015 WL 2438274, at *7 (quoting *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal. Ct. App. 2001). The Ninth Circuit has previously conducted a survey of multipliers in common fund cases which demonstrates the range of reasonableness.  *See Vizcaino*, 290 F.3d 1043.  As recently summarized by Judge Koh of this Court, "[i]n 83% of the settlements (20 of 24), the multiplier ranged from 1.0–4.0, and in 54% of the settlements (13 of 24), the multiplier was in the 1.5–3.0 range." *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *11 (N.D. Cal. Sept. 2, 2015).  In some instances, where the case went to trial and class counsel defended the judgment from post-trial attack, courts have approved multipliers as high as 5.5.  *See Gutierrez*, 2015 WL 2438274, at *7 (performance of counsel at and after trial a factor in awarding a 5.5 multiplier).

Here, the resulting 5.82 multiplier is entirely justified by the substantial benefit obtained for the class here, amounting to over $7,000 per class member.[7]  As discussed above, the Class prevailed on all three counts brought to trial, and the jury awarded punitive damages, on top of over 98% of the available statutory damages. Furthermore, the considerable time and effort Class

---

[7]   If Plaintiff's requested fee is awarded in full, Class Counsel estimates that class members would each recover in excess of $5,000, even after the payment of the requested attorneys fees, reimbursement of expenses, the $75,000 service award to Mr. Ramirez, and the costs of administration.

21

Counsel have spent in litigating this case against a large and well-financed opponent, including opposing a motion to dismiss, a motion for judgment on the pleadings, several challenges to class certification including a Rule 23(f) appeal to the Ninth Circuit, and defended the standing of Plaintiff and class members indicates that a substantial multiplier is appropriate here. *See In re High-Tech Employee*, 2015 WL 5158730, at *10 (recognizing that four-year litigation against "well-financed, large technology companies" which resulted in a settlement merited a positive multiplier). The enormous risk undertaken by Class Counsel, their efficiency in litigating this matter, and the outstanding result obtained justify a multiplier lodestar of here.

Thus, a comparison the lodestar of Plaintiff's counsel, adjusted with an appropriate multiplier, confirms that the requested fee is appropriate. Indeed, the fact that the requested award is only slightly above the 25% benchmark, and lower than the percentages approved in cases with far less risk, underscores the reasonableness of Class Counsel's fee request here.

### 3.    Class Counsel Is Entitled To Recover Expenses Associated With The Litigation

As discussed above, a reasonable fee award includes reimbursement for litigation expenses reasonably incurred in prosecuting the case. *Beasley*, 235 Cal. App. 3d at 1419-20. Class Counsel are entitled to reimbursement from the common fund all reasonable out-of-pocket litigation expenses and costs incurred in the prosecution of the claims here that would typically be billed to paying clients. *See Grove*, 606 F.3d at 579-82; *Gutierrez*, 2015 WL 2438274, at *9 (awarding expenses of litigation to class counsel from the common fund). The expenses of this litigation were reasonably incurred and are of the type that would typically be billed to a paying client. Francis Decl. at ¶ 24; Ogilvie Decl. at ¶¶ 40-41. Class Counsel therefore respectfully request that the Court award them the reasonable expenses of this litigation in addition to the reasonable fee requested.

1

#### IV.    CONCLUSION

2        For all of the reasons set forth above, the Motions for Awards of Attorneys' Fees and

3    Expenses should be granted.  $3,254,719.16 in attorney's fees and litigation costs should be added

4    to the judgment and paid by Defendant Trans Union, LLC, and Class Counsel should be awarded

5    attorneys' fees from the resulting common fund in the amount of $18,043,498.10, and costs in the

6    amount of $152,073.16.

7

8    Dated: December 15, 2017              Respectfully Submitted,

9

10                                          **FRANCIS & MAILMAN, P.C.**

11                            By:    /s/ *John Soumilas*
                                     James A. Francis (*pro hac vice*)
12                                   John Soumilas (*pro hac vice*)
                                     David A. Searles (*pro hac vice*)
13                                   Land Title Bldg, Suite 1902
                                     100 South Broad Street
14                                   Philadelphia, PA 19110

15                                   Andrew J. Ogilvie (SBN 57932)
16                                   Carol M. Brewer (SBN 214035)
                                     **OGILVIE & BREWER LLP**
17                                   4200 California Street, Suite 100
                                     San Francisco, CA 94118
18

19                                   *Attorneys for Plaintiff Sergio L. Ramirez*
20                                   *And the Certified Class*

21

22

23

24

25

26

27

28
                                          23