STROOCK & STROOCK & LAVAN LLP
STEPHEN J. NEWMAN (State Bar No. 181570)
CHRISTINE E. ELLICE (State Bar No. 276181)
2029 Century Park East, Suite 1800
Los Angeles, California  90067-3086
Telephone:    310-556-5800
Facsimile:    310-556-5959
Email: lacalendar@stroock.com

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY
BRUCE S. LUCKMAN (Admitted *Pro Hac Vice*)
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone:    856-662-0700
Email: bluckman@shermansilverstein.com

Attorneys for Defendant
  TRANS UNION LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ, on behalf of himself and all others similarly situated , <br><br> Plaintiff, <br><br> vs. <br><br> TRANS UNION, LLC, <br><br> Defendant. | Case No. 3:12-cv-00632-JSC <br><br> [Assigned to the Honorable Jacqueline Scott Corley] <br><br> **TRANS UNION LLC'S OPPOSITION TO MOTION AND SUPPLEMENTAL MOTION OF PLAINTIFF AND CLASS COUNSEL FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES** <br><br> Date:  October 22, 2020 <br> Time:  2:00 pm <br> Place:  Courtroom F |

LA 52332776

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ..................................................................................................2

    A.   The Judgment ...........................................................................................2

    B.   The Original Fee Stipulation ....................................................................3

    C.   The Ninth Circuit Reduces Class Members' Recovery by Approximately One-Third and Stays its Mandate Pending Certiorari Proceedings. ...........3

III.  ARGUMENT .......................................................................................................4

    A.   Determination of Fees Is Premature Before the Supreme Court Rules. ......4

    B.   Class Counsel's Requested Lodestar Is Excessive. ....................................4

        1.   Legal Standard ..............................................................................4

        2.   Class Counsel's Billing Records Do Not Support the Claimed Fees. ..............................................................................................5

        3.   The Lodestar Claimed for Pre-Judgment Work Also Should Be Reduced. ........................................................................................8

            a.   Excessive, Redundant, or Otherwise Unnecessary Time Should Be Excluded. ..........................................................8

            b.   Overstaffing and Duplicative Work .....................................9

            c.   Failure To Assign Appropriate Level of Timekeeper and Excessive Billing for Clerical and Non-Legal Tasks ........10

            d.   Block Billing ......................................................................11

            e.   Bill Padding and Excessive Itemization of Work Taking Less Than the Billing Increment ........................................11

            f.   Excessive Travel Time .......................................................12

            g.   Vague Billing Entries .........................................................13

        4.   The Lodestar Should Be Reduced To Account for Excessive "Fees on Fees." ..............................................................................14

        5.   The Claimed Hourly Rates Should Be Reduced. .........................15

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

-i-

LA 52332776

C.    Class Counsel's Request for Fees From the Class's Recovery in Addition to its Recovery Pursuant to Fee-Shifting Is Excessive. ..............................17

    1.    Class Counsel's Common Fund Theory Suffers From Numerous Defects. ...................................................................................................17

    2.    There Is No "Common Fund" Here, and No Sound Justification for Additional Payments From Any Such Fund. ........................................19

    3.    Class Counsel's Proposed Calculation of the Size of the Supposed Common Fund Is Excessive. ...........................................21

    4.    Class Counsel's Request for 28.5% of Any Common Fund Improperly Exceeds the Ninth Circuit Presumptive Maximum of 25%. .....................................................................................................24

IV.    CONCLUSION ...............................................................................................25

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

TRANS UNION'S OPPOSITION TO ATTORNEYS' FEE MOTIONS
Case No. 3:12-CV-00632-JSC

LA 52332776

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ackerman v. W. Elec. Co.,
643 F. Supp. 836 (N.D. Cal. 1986), aff'd, 860 F.2d 1514 (9th Cir. 1988)..................................6

Apple, Inc. v. Samsung Elecs. Co.,
No. C 11-1846 LHK PSG, 2012 WL 5451411 (N.D. Cal. Nov. 7, 2012)...................................5

Baker v. Wash. Mut. Fin. Grp., LLC,
No. CIVA 104CV137WJG-JMR, 2007 WL 571103 (S.D. Miss. Feb. 20, 2007).......................12

Bell v. Farmers Ins. Exch.,
115 Cal.App.4th 715 (2004) .................................................................................................22

In re Bluetooth Headset Prod. Liab. Litig.,
654 F.3d 935 (9th Cir. 2011) ...............................................................................................24

Brandt v. Columbia Credit Servs., Inc.,
No. C17-703RSM, 2018 WL 4963109 (W.D. Wash. Oct. 15, 2018) ......................................7

Brytus v. Spang & Co.,
203 F.3d 238 (3d Cir. 2000) .................................................................................................20

Chalmers v. City of L.A.,
796 F.2d 1205 (9th Cir. 1986) ................................................................................................9

City of Burlington v. Dague,
505 U.S. 557 (1992) ..............................................................................................................20

Commissioner v. Jean,
496 U.S. 154 (1990) ..............................................................................................................14

Cortez v. Vieira Custom Chopping, Inc.,
No. 117CV01647DADSKO, 2020 WL 4369101 (E.D. Cal. July 30, 2020)..............................24

Cruz v. Alhambra Sch. Dist.,
601 F. Supp. 2d 1183 (C.D. Cal. 2009).................................................................................25

Davis v. Prison Health Servs.,
No. C 09-2629 SI, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) ..........................................13

Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.,
886 F.2d 1545 (9th Cir. 1989) ................................................................................................6

Giovannoni v. Bidna & Keys,
255 F. App'x 124 (9th Cir. 2007)............................................................................................8

TRANS UNION'S OPPOSITION TO ATTORNEYS' FEE MOTIONS
Case No. 3:12-CV-00632-JSC

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

Guadarrama v. Chadorbaff,
  No. SACV170645DOCJDEX, 2018 WL 5816198 (C.D. Cal. June 25, 2018) ............................5

Haggart v. Woodley,
  809 F.3d 1336 (Fed. Cir. 2016) ......................................................................................20

Hensley v. Eckerhart,
  461 U.S. 424 (1983) .................................................................................................6, 8

Intel Corp. v. Terabyte Int'l, Inc.,
  6 F.3d 614 (9th Cir. 1993) ..........................................................................................5, 7

Jacobson v. Persolve, LLC,
  No. 14-cv-00735, 2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) ..................................11

Johnson v. Georgia Highway Express, Inc.,
  488 F.2d 714 (CA5 1974)............................................................................................10

Kallas v. Bechtel Nev. Corp.,
  No. CV-S-01-0602 RLH, 2004 WL 1212102 (D. Nev. May 27, 2004)........................7

Kochenderfer v. Reliance Standard Life Ins. Co.,
  No. 06-CV-620 JLS(NLS), 2010 WL 1912867 (S.D. Cal. Apr. 21, 2010).................15

Laffitte v. Robert Half Int'l Inc.,
  1 Cal. 5th 480, 489 (2016)...........................................................................................20

McKeage v. TMBC, LLC,
  847 F.3d 992 (8th Cir. 2017) .......................................................................................20

Mendez v. Cty. of San Bernardino,
  No. CV 04-7131 SVW (RCX), 2009 WL 10714986 (C.D. Cal. July 1, 2009)..........17

Missouri v. Jenkins by Agyei,
  491 U.S. 274 (1989) ....................................................................................................10

Moore v. Bank of Am., N.A. (USA),
  No. 03-CV-0520 IEG (BLM), 2005 WL 8173189 (S.D. Cal. Oct. 6, 2005), aff'd,
  245 F. App'x 613 (9th Cir. 2007)................................................................................14

Norris v. Sysco Corp.,
  191 F.3d 1043 (9th Cir. 1999) .....................................................................................13

Perdue v. Kenny A. ex rel. Winn,
  559 U.S. 542 (2010) ........................................................................................5, 18, 23

Ramirez v. Trans Union, LLC,
  951 F.3d 1008 (9th Cir. 2020) .......................................................................................3

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

-iv-

LA 52332776

Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,
281 F. Supp. 3d 833 (N.D. Cal. 2017)..................................................................12, 15, 22

Ridgewayv. Wal-Mart Stores Inc.,
269 F. Supp. 3d 975 (N.D. Cal. 2017)..........................................................................22, 24

Rodman v. Safeway Inc.,
No.11-cv-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) .........................................24

Saldana-Neily v. Taco Bell of Am., Inc.,
No. C04-04571, 2008 WL 793872 (N.D. Cal. Mar. 24, 2008) .........................................................8

Schwarz v. Sec'y of Health & Human Servs.,
73 F.3d 895 (9th Cir. 1995) ...............................................................................................7

Shaw v. Credit Collection Servs.,
No. 09CV0883-LAB (CAB), 2009 WL 4981620 (S.D. Cal. 2009) ...............................................8

Sobel v. Hertz Corp.,
53 F. Supp. 3d 1319...........................................................................................................22

Staton v. Boeing Co.,
327 F.3d 938 (9th Cir. 2003) ......................................................................................22, 23

Stonebrae, L.P. v. Toll Bros.,
No. C-08-0221, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011), aff'd, 521 F.
App'x 592 (9th Cir. 2013) .................................................................................................9

Tenorio v. Gallardo,
No. 116CV00283DADJLT, 2019 WL 3842892 (E.D. Cal. Aug. 15, 2019).............................6, 7

Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc,
731 F. Supp. 2d 937 (N.D. Cal. 2010)..........................................................................16

Thompson v. Gomez,
45 F.3d 1365 (9th Cir. 1995) ...........................................................................................14

Trevino v. Gates,
99 F.3d 911 (9th Cir. 1996) ...............................................................................................7

Trustees of the N. Cal. Tile Indus. Pension Trust Fund v. Premier Stone & Tile, Inc.,
No. 14-CV-03560-WHO, 2016 WL 1182060 (N.D Cal. Mar. 28, 2016) .................................11

Van Gerwen v. Guar. Mut. Life Co.,
214 F.3d 1041 (9th Cir. 2000)..........................................................................................21

Vesecky v. Wilshire Aspirations, LLC,
No. 11-1180, 2012 WL 715564 (D. Ariz. March 6, 2012)..............................................................8

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

-v-

TRANS UNION'S OPPOSITION TO ATTORNEYS' FEE MOTIONS
Case No. 3:12-CV-00632-JSC

LA 52332776

Welch v. Metro. Life Ins. Co.,
    480 F.3d 942 (9th Cir. 2007) ...................................................................................5, 11, 16

White, et al. v. Experian Information Solutions, Inc. et al.,
    No. 05-cv-1070 DOC (S.D. Cal.) ......................................................................1, 2, 16, 17

**Statutes**

15 U.S.C. § 1681n(a)(3) ...........................................................................................................4, 17

15 U.S.C. § 1681o(a)(2) ................................................................................................................4

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................18, 22, 23

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

TRANS UNION'S OPPOSITION TO ATTORNEYS' FEE MOTIONS
Case No. 3:12-CV-00632-JSC

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

## I.    INTRODUCTION

Trans Union, LLC ("TransUnion") opposes the Motion and Supplemental Motion of Plaintiff and Class Counsel for Award of Attorneys' Fees (collectively, the "Motion"). Plaintiff's submission fails to support fees greater than $2,092,340.25. More importantly, a determination of TransUnion's fee liability is premature because the Ninth Circuit has stayed its mandate while TransUnion pursues certiorari in the Supreme Court.

The defects in the Motion are legion. The proposed lodestar overstates both hours and the prevailing hourly rate. Indeed, there is no question that the rates sought by Class Counsel are unreasonably high. The rates requested in the present application ***exceed by 32%*** rates recently requested by the Francis Mailman Soumilas law firm in a more complex class action litigation under the FCRA in federal court in California involving a ten-million member class, <u>White, et al. v. Experian Information Solutions, Inc. et al.</u>, No. 05-cv-1070 DOC (MLGx) (C.D. Cal.). The hourly rates claimed here are grossly excessive and should be reduced. But even if the inflated hourly rates were valid, the billing records submitted with the Motion still would not support the $4 million demand made of TransUnion. Detailed analysis of the billing records shows numerous instances of overstaffing, improper block billing, vague time descriptions, staffing tasks to inappropriate seniority levels, excessive travel time and other well-recognized reasons to disallow time claimed in a fee application. Moreover, 800 hours are claimed for appellate work, which involved drafting one brief and appearing at one oral argument, the result of which was a one-third reduction in the judgment. The evidence does not support the fee liability Class Counsel seek to impose on TransUnion.

Further, and more egregiously, Class Counsel essentially ask to be paid multiple times: once pursuant to the fee-shifting provision of the FCRA, and again as a percentage of the class member awards, which Class Counsel mischaracterize as a "common fund." This theory, however, is legally insupportable. The judgment creates no common fund, but rather awards a fixed amount per class member. Class Counsel's common fund strategy also is improper because it rests on an unprecedented methodology, whereby they ask for lodestar fees awarded pursuant to fee-shifting,

-1-

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

as well as other items outside the jury award, such as out-of-pocket costs, to be *added* to the common fund calculation before applying their requested payment percentage.  This blatant "double dipping" is not only unsupported by law but also further illustrates the grossly excessive nature of the entire fee request.

But Class Counsel do not stop there.  They also seek *28.5%* of the inflated "common fund" when the presumptive maximum even for proper common fund cases is only 25%.  Not satisfied with their double dip, they seek an excessive percentage to triple dip against the Class for their own financial benefit.  The Court should reject this approach as abusive and contrary to law.

Class Counsel's request also ignores the most salient events in the post-judgment history of this case.  While the appeal was pending, TransUnion and Plaintiff stipulated that if the judgment were fully affirmed, TransUnion's maximum fee and cost liability – *including for all going-forward appellate work* – would be approximately $3.25 million.  Since then, the Ninth Circuit reduced the Class's recovery by approximately one-third.  Class Counsel now, remarkably, seek to impose *more* fee liability on TransUnion even though they achieved a *worse* result for the Class in the appeal.  Their primary justification for doing so is their claim that prevailing 2020 hourly rates (in the midst of a global pandemic causing layoffs and cutbacks in all industries, including law firms) greatly exceed prevailing rates in 2017, when the judgment was entered.  This claim, however, is false, as shown by their own recent fee application seeking lower rates in the White class action.  No sound legal or factual basis supports such a massive inflation in the fee request, and the Court should not tolerate such a patently inappropriate fee claim.

## II.   BACKGROUND

### A.   The Judgment

On June 20, 2017, the jury in this action returned a verdict of $984.22 in statutory damages and $6,353.08 in punitive damages for each of the 8,185 class members.  (ECF Nos. 305, 306).  On November 16, 2017, this Court entered the Amended Judgment in favor of Plaintiff and the Class "in the amount of $984.22 in statutory damages per class member and $6353.08 in punitive damages per class member."  (ECF No. 347.)  The Amended Judgment further stated that "the Certified Class consists of 8,185 consumers."  (Id.)  The Amended Judgment does not describe a

-2-

LA 52332776

fund for the benefit of the undifferentiated Class as a whole, but rather sets forth a specific award for each of the Class Members.

## B.    The Original Fee Stipulation

On December 15, 2017, Plaintiff and Class Counsel filed their Motions for Awards of Attorneys' Fees and Reimbursement of Costs and Expenses (ECF No. 353) (the "Original Fee Motion"). On January 26, 2018, the parties filed their Joint Stipulation Regarding Motions for Attorneys' Fees and Costs (ECF No. 355) (the "Stipulation"). The Stipulation contemplated agreement among the Parties as to a fixed amount of attorneys' fees and costs – ***including for all going-forward appellate work*** – that would be added to the Amended Judgment, which would then become a "Second Amended Judgment." In the event of any appellate outcome short of full affirmance, the Stipulation would not be "effective" or otherwise bind the parties. (See Stipulation, ¶ 6.) The Court never entered the Stipulation as an order. The Stipulation contemplated filing of an ***amended*** fee petition, which "may include requests for attorneys' fees or costs incurred in connection with appellate proceedings." (Stipulation, ¶ 8(a).)[1]

## C.    The Ninth Circuit Reduces Class Members' Recovery by Approximately One-Third and Stays Its Mandate Pending Certiorari Proceedings.

On February 27, 2020, the Ninth Circuit held that the punitive damages portion of the jury's verdict exceeds the constitutional maximum 4:1 ratio of punitive to compensatory damages. Ramirez v. Trans Union, LLC, 951 F.3d 1008 (9th Cir. 2020). The per class member punitive damages award was reduced from $6,353.08 to $3,936.88. The per class member statutory damages award was upheld. Thus, the total award per class member was reduced from $7,327.30 to $4,921.10, a reduction of nearly 33%.

On September 2, 2020, TransUnion filed its petition for writ of certiorari in the Supreme Court (docketed on September 8, 2020, Case No. 20-297), and the Ninth Circuit's mandate remains stayed pending completion of those proceedings.

---

[1] Notably, Class Counsel present what is described as a "Supplemental" rather than an "Amended" motion, in which they seek to revise upward the hourly rates for the work previously presented. This Supplemental Fee Motion presumably is to be read in tandem with, rather than in place of, the Original Fee Motion, contrary to the meaning of an "amended" motion. Nothing in the Stipulation suggests that this attempt to recast the original motion would be permissible.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

## III.   ARGUMENT

### A.   Determination of Fees Is Premature Before the Supreme Court Rules.

As noted above, TransUnion's petition for certiorari has been docketed with the Supreme Court and the Ninth Circuit has stayed its mandate pending completion of Supreme Court proceedings.  Accordingly, this Court should not act on the pending fee application until after the Supreme Court acts and the Ninth Circuit chooses to confer all jurisdiction back on this Court via issuance of its mandate.

Plaintiff and Class Counsel seem to agree that nothing can be finally determined with respect to attorneys' fees at present.  When examined closely, the Supplemental Fee Petition actually asks this Court to do nothing at this moment.  According to Plaintiff and Class Counsel, the Supplemental Fee Motion serves only to "update the Court regarding attorneys' fees and costs so that this matter may proceed efficiently following resolution of Trans Union's anticipated petition for certiorari."  (Supp. Fee Mot., 2.)  Moreover, even if the lodestar value of Class Counsel's time could be calculated now, Class Counsel also seek a portion of Class Members' awards.  Indeed, the payment to Class Counsel from Class Member awards, if allowed, would be the largest financial component of Class Counsel's requested compensation.  The Class Member awards, however, are not final until the Supreme Court acts on the certiorari petition, and accordingly it would be inappropriate for the Court to award Class Counsel a portion of them.  Resolution of all fee issues should be deferred until after the Ninth Circuit issues its mandate.

### B.   Class Counsel's Requested Lodestar Is Excessive.

#### 1.   Legal Standard

The FCRA permits Plaintiff to recover "the costs of the action together with reasonable attorney's fees as determined by the court" in case of a "successful action" against a consumer reporting agency under the Act.  15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2).  In calculating the attorney's fees award under a federal fee-shifting statute like the FCRA, the district court

> establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed.  In determining the appropriate

-4-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

lodestar amount, the district court may exclude from the fee request any hours that are "excessive, redundant or otherwise unnecessary." In addition to setting the number of hours, the court must also determine a reasonable hourly rate, "considering the experience, skill, and reputation of the attorney requesting fees.

Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945-946 (9th Cir. 2007) (citations omitted). After the lodestar is determined, the Court may further apply an across-the-board reduction, in light of the results obtained and other factors, as described below. See Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 622 (9th Cir. 1993); Guadarrama v. Chadorbaff, No. SACV170645DOCJDEX, 2018 WL 5816198, at *6 (C.D. Cal. June 25, 2018) (exercising "discretion to impose a 10 percent haircut on the lodestar").

Pursuant to Supreme Court precedent regarding fee-shifting statutes, there is a "strong presumption" that the lodestar figure is reasonable. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010) (reaffirming longstanding rule that when calculating attorneys' fees under federal fee-shifting statutes, the lodestar, the number of hours worked multiplied by the prevailing hourly rates, may not ordinarily be increased due to superior performance and results, but may only be enhanced in extraordinary circumstances). Under this standard, enhancement of the lodestar is allowed only in "rare" and "exceptional" circumstances. Id. at 552.

Here, Class Counsel seeks to require TransUnion to pay only the lodestar amount, with no enhancement. Class Counsel's total fee request of $3,831,467.50 reflects 5,718.9 hours of work at an average rate of roughly $670 per hour. As shown below, both the total hours and the hourly rate are excessive and should be reduced. ***To the extent the Court acts on the Fee Motion, TransUnion respectfully suggests that the more appropriate figure is $2,092,340.25, which reflects 4,598.55 hours of work at an average hourly rate of $455.***

### 2.  Class Counsel's Billing Records Do Not Support the Claimed Fees.

Plaintiff and Class Counsel, as the ones seeking fees, "bear[] the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." Welch, 480 F.3d at 945-946 (9th Cir. 2007). Importantly, "parties are subject to a reduction in the hours awarded when they fail to provide adequate documentation, notably contemporaneous time records." Apple, Inc. v. Samsung Elecs. Co., No. C 11-1846 LHK PSG,

-5-

LA 52332776

2012 WL 5451411, at *3 (N.D. Cal. Nov. 7, 2012); see also, Hensley v. Eckerhart, 461 U.S. 424, 438 n.13 (1983) (noting with approval the district court's 30% reduction in an attorneys' fee award in part due to counsel's failure to keep contemporaneous time records); Frank Music Corp. v. Metro–Goldwyn–Mayer Inc., 886 F.2d 1545, 1557 (9th Cir. 1989) ("The lack of contemporaneous records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation."); Ackerman v. W. Elec. Co., 643 F. Supp. 836, 865 (N.D. Cal. 1986), aff'd, 860 F.2d 1514 (9th Cir. 1988) ("The percentage reduction method used by defendant to determine the number of hours reasonably expended has been employed by a number of courts, especially when contemporaneous records are seriously deficient or nonexistent.") (citation omitted).  A percentage reduction to the lodestar should be applied here because Class Counsel fails to meet their burden of establishing the reasonableness of their claimed hours and rates, particularly with respect to the fees sought in connection with the work performed on appeal.

*The most obvious example of excessive time pertains to time spent on the appeal*, which resulted in an approximately $20 million reduction in the verdict.  Class Counsel seek fees for 811.6 hours of work purportedly performed after they filed their original Fee Motion in December 2017.  Presumably this relates entirely to the appellate proceedings, in which they submitted one brief and appeared at one oral argument.  The actual work performed, however, remains unknown because Class Counsel did not submit adequate documentation supporting this time (which they value at more than $400,000).  Although Class Counsel submitted itemized billing entries in support of their original Fee Motion, this time around, Class Counsel simply submitted declarations providing a summary narrative of the work they performed post-trial.  (See ECF No. 368-2 (Declaration of James A. Francis) at ¶ 4; ECF No. 368-3 (Declaration of Andrew J. Ogilvie) at ¶¶ 3-7.)  In so doing, Class Counsel restrict this Court's ability to assess the reasonableness of the additional charges claimed in their Supplemental Motion.  See Tenorio v. Gallardo, No. 116CV00283DADJLT, 2019 WL 3842892, at *6 (E.D. Cal. Aug. 15, 2019) (finding "that the billing records provided by Mallison & Martinez are not sufficiently specific to allow a determination of whether the time expended on the stated tasks was reasonable.").

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

-6-

LA 52332776

The Court should not accept Class Counsel's summary declarations and should impose an across-the-board 50% reduction to the hours charged after the filing of the original Fee Motion, resulting in a lodestar reduction of **405.8 hours**.[2]  See Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 623 (9th Cir. 1993) (explaining that particularly where "the requesting party submits mere summaries of hours worked," it is inappropriate for the district court to award fees "without elaboration" and the specific hours claimed must be made available); Brandt v. Columbia Credit Servs., Inc., No. C17-703RSM, 2018 WL 4963109, at *3 (W.D. Wash. Oct. 15, 2018) (reducing billing by 50% because "billing records are insufficient to meet Plaintiff's burden to support the hours billed"); Tenorio, 2019 WL 3842892, at *6 ("Because these records are not specific enough to allow the court to determine if the time attorney time spent was reasonable, the attorney time sought to be compensated will be subject to a reduction.").

Allowing more than 400 hours for one brief and one oral argument session is more than generous, in light of the result obtained on appeal.  See Trevino v. Gates, 99 F.3d 911, 926 (9th Cir. 1996) ("[w]hen a party meets with partial success on appeal, we have deemed it proper to award fees only for those claims successfully defended on the merits"); see also Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 905-906 (9th Cir. 1995) ("Once a district court concludes that a plaintiff has pursued unsuccessful claims that are unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all hours spent litigating the unsuccessful claims.").  The Court "necessarily has discretion" either to "attempt to identify specific hours that should be eliminated" or to "simply reduce the award to account for the limited success."  Id. at 904; see also Kallas v. Bechtel Nev. Corp., No. CV-S-01-0602 RLH, 2004 WL 1212102, at *5 (D. Nev. May 27, 2004) ("[I]t is eminently unfair, unjust, and unreasonable for Defendant to have to pay attorney's fees to Plaintiff … for those claims on which Defendant prevailed.").  An overall 50% reduction of the time claimed for the appeal is appropriate here.

---

[2] The sufficiency of Class Counsel's billing records is further called into question by the amount of "anticipated" or "estimated" time billed but not actually performed.  For example, Class Counsel includes 117.5 hours of time entries for additional "anticipated" or "expected" fee-related work not yet performed.  (See infra Section III.B.4.)

-7-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

### 3. The Lodestar Claimed for Pre-Judgment Work Also Should Be Reduced.

#### a. Excessive, Redundant, or Otherwise Unnecessary Time Should Be Excluded.

In calculating the number of hours reasonably expended, the Court should exclude hours that are "excessive, redundant, or otherwise unnecessary. . . ." Hensley, 461 U.S. at 434. "Excessive, redundant, or otherwise unnecessary" work or "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." Hensley, 461 U.S. at 434 (emphasis added) (citation omitted); see Saldana-Neily v. Taco Bell of Am., Inc., No. C04-04571, 2008 WL 793872, at *9-10 (N.D. Cal. Mar. 24, 2008); see also Vesecky v. Wilshire Aspirations, LLC, No. 11-1180, 2012 WL 715564, at *10 (D. Ariz. March 6, 2012) ("The fee applicant should exercise billing judgment with respect to the number of hours worked and billed. … Billing judgment consists of winnowing hours actually expended down to hours reasonably expended.") (citations omitted). The Court should assess the reasonableness of the fees in light of counsel's experience. Put simply, with great experience, should come great efficiency. See Shaw v. Credit Collection Servs., No. 09CV0883-LAB (CAB), 2009 WL 4981620, at *3 (S.D. Cal. 2009) (attorney can "reasonably be expected to be highly efficient in bringing cases" in her area of specialty). "[A] court is not required to set forth an hour-by-hour analysis of the fee request and may instead reduce the award on a percentage basis so long as there is a concise but clear explanation of the court's reasons for choosing a given percentage reduction." Saldana-Neily v. Taco Bell of Am., Inc., No. C04-04571, 2008 WL 793872, at *10 (N.D. Cal. Mar. 24, 2008); see also, e.g., Giovannoni v. Bidna & Keys, 255 F. App'x 124, 125-26 (9th Cir. 2007) (affirming "across-the-board" 50% reduction).

Here, Class Counsel claims to have exercised billing judgment, but the evidence shows the opposite is true. The Court need not look deep into the billing records to see the undeniable inefficiencies, excesses, duplication and unnecessary billing entries. Plainly, Class Counsel billed time to this case without restraint. The Fee Motion includes a substantial number of fee entries that should be reduced on each one of these bases.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

### b.      Overstaffing and Duplicative Work

Class Counsel seeks recovery for apparently overlapping efforts, wherein excessive days were frequent and several attorneys billed to nearly identical tasks.  Importantly, the hours claimed to have been expended by counsel may be reduced by the court "if the case was overstaffed and hours [were] duplicated."  Chalmers v. City of L.A., 796 F.2d 1205, 1210 (9th Cir. 1986).  The risk of duplication is particularly acute where multiple law firms are involved.  "[C]ounsel seeking fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and duplicative efforts engendered by multiple counsel and law firms."  Stonebrae, L.P. v. Toll Bros., No. C-08-0221, 2011 WL 1334444, at *12 (N.D. Cal. Apr. 7, 2011), aff'd, 521 F. App'x 592 (9th Cir. 2013) (reducing one law firm's hours by 50% as duplicative of hours expended by other firm).

TransUnion has identified 592.75 hours billed by Class Counsel as to which there is a high likelihood that they engaged in duplicative work, most notably for correspondence and conferences among several various attorneys working on this matter, as well as attendance by multiple attorneys at court proceedings and depositions.  (See Ex. B to Declaration of Stephen J. Newman ("Newman Decl.") (itemizing likely duplicative hours billed).)  One example of this is attendance by multiple attorneys at trial.  Class Counsel billed time for the three attorneys who tried the case and sat at counsel table (Soumilas, Francis, and Brewer) *in addition* to the time of their most junior lawyer, Ms. Brennan (45.7 hours) and their most senior lawyer, Mr. Ogilvie (41.25 hours), both of whom merely observed the trial from the gallery and never made a formal appearance during the proceedings.  Indeed, their billing entries are notoriously vague and do not describe any specifics of how they assisted the trial team.  Even if such time could be substantiated, it is customary for some or all of such time to be written off and not charged to a paying client, particularly for a junior attorney who attends trials, depositions, and hearings for training purposes.  Because of the likelihood of duplication with respect to these hours, it is appropriate for the Court to reduce them by at least 20%, which would result in a lodestar reduction of approximately **118.55 hours**.[3]

---

[3] Many of Class Counsel's time entries violate more than one of the principles discussed herein.  In an effort to avoid duplicative reductions, even if a single time entry could be claimed more than

-9-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

c.    **Failure To Assign Appropriate Level of Timekeeper and Excessive Billing for Clerical and Non-Legal Tasks**

Class Counsel's claimed lodestar also should be reduced significantly because much of their time was spent on tasks that could have been performed either by clerical staff or by less experienced lawyers charging lower hourly rates, or was simply not legal work.  Class Counsel is not entitled to any compensation for the purely clerical work its lawyers performed, and only much reduced hourly rates should be applied to work associates could have performed.

As explained by the Supreme Court,

[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.  What the court in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (CA5 1974), said in regard to the work of attorneys is applicable by analogy to paralegals:  "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.  Such non-legal work may command a lesser rate.  Its dollar value is not enhanced just because a lawyer does it.

Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n. 10 (1989).

Here, Class Counsel repeatedly charged roughly 68.15 hours of time for non-legal and clerical tasks.  (See Ex. C to Newman Decl. (itemizing billing entries for clerical tasks).)[4]  No fees should be awarded for this time, and therefore the lodestar should be reduced by **68.15 hours**.

Many other tasks could have been performed by less experienced lawyers than Francis, Soumilas, Searles, Ogilvie and Brewer.  These attorneys spent significant amounts of time, for example, drafting routine motions and basic written discovery requests, performing legal research and the like.  (See generally Ex. D to Newman Decl. (itemizing billing entries of work that could have been performed by lower-level attorney).)  TransUnion has identified 186.85 hours of work that could have been done by less experienced lawyers performing it at lower rates (see id.) and

---

once as a reduction, TransUnion accounted for that entry in *a single category*, with the exception of combined block billing and travel, as discussed further below.

[4] An example of a non-legal task can be found in Ms. Brewer's June 21, 2017 time entry:  "Talk to reporter at Review about trial outcome."  Neither TransUnion nor the Class should be charged for Class Counsel's public relations efforts.

TRANS UNION'S OPPOSITION TO ATTORNEYS' FEE MOTIONS
Case No. 3:12-CV-00632-JSC

LA 52332776

submits that the Court should apply a 20% discount to these hours, for a lodestar reduction of roughly **37.4 hours**.

### d.    Block Billing

Class Counsel's fee request also is inflated because they engaged in the disfavored practice of "block-billing"—i.e., the lumping together of multiple tasks in a single time entry.  The June 9, 2017 time entry taken from Class Counsel's billing records serves as an illustration:

> 15.5 hours (John Soumilas) – finalize and file stip re net worth; finalize and file stip re Norge/Ex. 34 and 35; finalize opening statement; update status of trial notebook; review notes for voir dire; update voir dire plan; outline; research counties in ND Cal for demographic info on possible jurors; review outlines for first 4 witnesses; review material to be shipped to San Fran for trial; meet with co  counsel re logistics of war room, travel, trial material needed for 2 week trial; review correspondence from D counsel; update list of items to complete before trial/ bring to attention of judge; practice parts of opening; coordinate exhibit use with tech and co   counsel; notes for closing.

(Ex. E to Newman Decl. (itemizing block billing entries).)  In total, these block bills account for at least 946.85 of the claimed hours.  (See id.)  The law in the Ninth Circuit is clear that district courts have authority "to reduce hours that are billed in block format," because block billing makes it hard to determine whether claimed hours are reasonable by making it "more difficult to determine how much time was spent on particular activities."  Welch, 480 F.3d at 948.  Accordingly, TransUnion submits that it would be appropriate for the Court to apply a reduction of 20% reduction to the block billed time entries, for a lodestar reduction of **189.4 hours**.  See Trustees of the N. Cal. Tile Indus. Pension Trust Fund v. Premier Stone & Tile, Inc., No. 14-CV-03560-WHO, 2016 WL 1182060, at *8 (N.D Cal. Mar. 28, 2016) (reducing fee request by 20% across the board due to block billing which made it impossible to address inefficiencies, including multiple attorneys billing for the same task, and too much work being performed by an extremely experienced lawyer billing at a high hourly rate rather than by associates).

### e.    Bill Padding and Excessive Itemization of Work Taking Less Than the Billing Increment

Courts also disfavor "excessive accumulation of 0.1 hour entries in reviewing . . . routine documents and court communications."  Jacobson v. Persolve, LLC, No. 14-cv-00735, 2016 WL 7230873, at *10 (N.D. Cal. Dec. 14, 2016).  Yet, Class Counsel have broadly engaged in this

-11-

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

practice, billing 0.1 hours for tasks such as reviewing ECF notices and correspondence and other house-keeping tasks (such as formatting and saving documents). (See generally Ex. F to Newman Decl. (itemizing 0.1 hour billing entries).) Indeed, there are a total of 328 "0.1 hour" billing entries in the records submitted by Class Counsel in support of their original Fee Motion. (See id.) It would be appropriate for the Court to apply a 50% discount to these unnecessarily claimed hours, which would result in a lodestar reduction of **15.55 hours**.

### f.    Excessive Travel Time

The lodestar also should be reduced for excessive travel time. "Courts typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time." Baker v. Wash. Mut. Fin. Grp., LLC, No. CIVA 104CV137WJG-JMR, 2007 WL 571103, at *12 (S.D. Miss. Feb. 20, 2007) (citations omitted). Here, Class Counsel has charged their full hourly rate for at least 161.5 hours traveling to and from hearings, depositions, mediation and trial, without indicating whether Class Counsel attempted to perform billable work for their clients during those travel periods. (See Ex. G to Newman Decl. (itemizing billing entries describing only travel).) The amount of time billed on travel is particularly high because Class Counsel elected to send multiple attorneys from Philadelphia, in addition to local counsel, to many of the depositions in Chicago and hearings in San Francisco. Yet, Class Counsel fails to justify the attendance of so many attorneys at hearings and depositions. See Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) (finding "unreasonable the attendance of four attorneys at … motion hearing and five attorneys at … mediation. The corresponding travel time is also unreasonable, and the Court will disallow the time spent on out-of-town travel by two attorneys for both of these events"). These hours are excessive, and it would be appropriate for the Court to reduce them by 50% for a lodestar reduction of approximately **80.75 hours**.

Moreover, as discussed above, Class Counsel's improper block-billing practice makes it impossible to tell how long Class Counsel actually spent traveling, since many of their billing entries (accounting for 506.2 hours) include travel time in one undifferentiated time entry with other tasks such as taking depositions, preparing for hearings and the like. (See Ex. H to Newman

-12-

LA 52332776

Decl. (itemizing specific block billed entries which include travel).)  Accordingly, it would be appropriate for the Court to reduce these hours by 20% for a lodestar reduction of roughly **101.2 hours**.[5]

### g.      Vague Billing Entries

The Ninth Circuit holds that when faced with deficient and vague billing records, a district court may be justified in denying fees altogether.  See Norris v. Sysco Corp., 191 F.3d 1043, 1052 (9th Cir. 1999) ("The deficient presentation by Norris might well have justified the district court in throwing up its hands and refusing to award any fees whatsoever.").  Deficiencies in documentation are cause for reduction even if not outright denial of fees.  See Davis v. Prison Health Servs., No. C 09-2629 SI, 2012 WL 4462520, at *12 (N.D. Cal. Sept. 25, 2012) (imposing an across-the-board 10% reduction on requested time to account for vague billing entries).

The billing records submitted by Class Counsel are riddled with vague entries lacking any meaningful description whatsoever.  By way of example, Class Counsel's billing records include entries such as "Review correspondence," "Review Filing," "Review court's order," "Review ecf" and "Review emails."  (See Ex. I to Newman Decl. (itemizing vague billing entries).)  TransUnion has identified vague billing entries accounting for 42.6 hours of work in the records submitted in connection with the original Fee Motion.  (See id.)  These vague billing entries impedes the Court's ability to assess the reasonableness of the time spent in connection with the claimed work.  Therefore, it is appropriate for the Court to apply a 20% across-the-board discount to these entries, which would result in a lodestar reduction of **8.5 hours**.  Additionally, TransUnion has identified two entries in Class Counsel's billing records for which there is *no* description whatsoever.  (ECF No. 353-5 at 18 (no description for 4.5 hours billed by Brennan on 8/4/2017); ECF No. 353-4 at 10

---

[5] As set forth above, where a single time entry could be claimed more than once as a reduction, TransUnion accounted for that entry only in a single category.  However, with respect to those entries containing both block billing and travel, TransUnion considered these entries as violations in both the "Block Billing" and "Travel" categories.  But while travel may be subject to a 50% reduction, where it is included in a block billing entry, the time cannot be differentiated from the other items, and thus cannot be reduced by 50% as is warranted.  Therefore, it is equitable for those block billing entries containing travel time to be reduced by 20% twice, once as "Block Billing," and again as "Block Billed Entries Including Travel Time," as shown on Exhibit H to the Newman Declaration.

TRANS UNION'S OPPOSITION TO ATTORNEYS' FEE MOTIONS
Case No. 3:12-CV-00632-JSC

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

(no description for 2.5 hours billed by Searles on 5/7/2017).)  The lodestar therefore should be further reduced by **7 hours**.

### 4.    The Lodestar Should Be Reduced To Account for Excessive "Fees on Fees."

Class Counsel also seek excessive amounts for "fees-on-fees"—i.e., fees for time spent working on the Fee Motion.  While Class Counsel may recover reasonable attorneys' fees for fee-related motions, the Court still has the ability to distinguish between reasonable and unreasonable attorney fee charges and has the discretion to disallow the latter.  See Moore v. Bank of Am., N.A. (USA), No. 03-CV-0520 IEG (BLM), 2005 WL 8173189, at *8 (S.D. Cal. Oct. 6, 2005), aff'd, 245 F. App'x 613 (9th Cir. 2007) ("The almost four hundred hours spent on the fees motion … is unreasonable. Accordingly, the Court reduces the number of hours recoverable by plaintiff's attorneys for work on their motion for fees and costs by fifty percent" and "reduces plaintiff's 'fees-on-fees' request by another fifteen percent for the reasons discussed supra with respect to the lodestar calculation.").

Here, Class Counsel charged 293.3 hours on their Fee Motion, which is excessive.  (See Ex. J to Newman Decl. (itemizing billing entries related to Fee Motion).)  Included in the requested fees are over 117.5 hours for additional "anticipated" or "expected" fee-related work, not yet performed, in response to this Opposition.  (See id. (four billing entries for 12/15/2017; billing entry for 3/8/2018).)  Further, Class Counsel at multiple firms billed time for legal research on the Fee Motion, yet their vague time entries impede this Court's ability to assess whether this work was duplicative.  Class Counsel should not be rewarded for submitting imprecise time records.  Accordingly, the requested fees-on-fees time should be wholly disallowed or significantly reduced.

Moreover, "the relative degree of success in litigating for merits fees should bear upon the size of the fees-on-fees award . . . " Thompson v. Gomez, 45 F.3d 1365, 1368 (9th Cir. 1995).  "Exorbitant, unfounded, or procedurally defective fee applications—like any other improper position that may unreasonably protract proceedings—are matters that the district court can recognize and discount." Commissioner v. Jean, 496 U.S. 154, 163 (1990).  As discussed herein, Class Counsel's fee request is based on a flawed methodology, exorbitant and unfounded, and their unreasonable position has protracted fees proceedings well beyond what is warranted.

-14-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

For these reasons, it is appropriate for the Court to apply at least a 30% reduction to the hours spent by Class Counsel in pursuit of "fees on fees," resulting in a lodestar reduction of at least **88 hours**.

### 5.      The Claimed Hourly Rates Should Be Reduced.

Class Counsel seeks to artificially enhance the lodestar amount by applying, to the entirety of the work performed in this litigation, what they say are their 2020 hourly rates, even though almost all of the work occurred in 2017, and much of the work was incurred as early as 2012.  (See Suppl. Mot. 6-7.)  This claim for higher rates explains much of the discrepancy between the original Stipulation of approximately $3.25 million and the current demand of more than $4 million.

The newly-claimed hourly rates for the primary billing attorneys for the Class are: Searles – $980 (up from $925 in December 2017); Oglivie – $840 (up from $790); Brewer – $840 (up from $790); Francis – $825 (up from $775); Soumilas – $750 (up from $725); Brennan – $425 (up from $400); Sartell – $370 (up from $350); Paralegal – $240 (up from $200).[6]  (Compare ECF Nos. 368-2 at ¶ 8 and 368-3 at ¶ 1 with ECF Nos. 353-2 at ¶ 19 and 353-7 at ¶ 3.)  These rates are completely arbitrary and no competent evidence is presented to support them.  (See ECF No. 368-3 at ¶ 1 ("the hourly rates that *we believe are appropriate at this time*") (emphasis added); ECF No. 368-2 at ¶ 8 ("2020 hourly rate charged by me in this matter is $825; for Mr. Soumilas is $770, for Mr. Searles is $980; for Ms. Brennan is $425").)  Most significantly, the requested rate increases fail to consider the market impact of the ongoing COVID-19 pandemic, which is resulting in rate reductions and reduced attorney compensation across the entire industry.  (See Newman Decl., Ex. L (Law360, "Coronavirus: How Law Firms Are Handling The Down Turn") and Ex. M (Law360, "What GCs Want From Outside Counsel As Virus Rages On").)  Putting aside whether it is appropriate for Class Counsel to seek even 2017 rates for work beginning as early as 2012, it is particularly inappropriate for them to seek a raise above 2017 rates at a time when compensation is being reduced across all sectors of the economy.  See Kochenderfer v. Reliance Standard Life Ins.

---

[6] Even the claimed 2017 paralegal rate of $200 is excessive.  See Reyes, 281 F. Supp. 3d at 853 (reducing, in 2017, claimed hourly rate for paralegal work from $350 to $125).

-15-

LA 52332776

Co., No. 06-CV-620 JLS(NLS), 2010 WL 1912867, at *4 (S.D. Cal. Apr. 21, 2010) (finding increase in rates during 2008 financial crisis was unjustified as "[a]t that time the American economy was struggling, to say the least.  The legal market has been no better off with substantial downward pressure on lawyers' hourly rates.  ***The suggestion that a paying client would accept a fee hike during the midst of the most difficult economic period in recent memory is frankly absurd***.") (emphasis added).

The present fee request also is inconsistent with a recent fee request made by many of the same attorneys in comparable class action litigation under the FCRA in federal court in California.  Notably, just as recently as July 2020, the Francis Mailman Soumilas firm submitted a declaration in support of fees they requested for themselves in White v. Experian Information Solutions, Inc., No. 05-cv-1070 DOC (MLGx) (C.D. Cal.), a more complex FCRA action which involved a more than ten-million person class.  The July 2020 declaration stated the hourly rates for Searles, Francis and Soumilas as $725, $605 and $495, respectively, figures falling well below even what they describe to this Court as their 2017 rates.  (See Ex. K to Newman Decl.)  If the White rates were to be applied to the hours of these attorneys' work sought now in this case, the claimed lodestar amount for just these attorneys would be reduced from $2,396,478 to $1,637,398.  This represents a roughly 32% discount on the fees claimed now for these attorneys' work.  This Court should use the White fee application as a guidepost here for the request made here as to all of Class Counsel, and accordingly reduce all claimed hourly rates by 32%.  In awarding fees, the Court determines hourly rates "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Welch, 480 F.3d at 946.  Like this case, the White case was pursued in federal court on behalf of a class of FCRA plaintiffs; indeed, the class there was significantly larger (over ten million consumers).  There is no justification to allow significantly higher rates in the present litigation than were submitted just three months ago in White.

Class Counsel assert that they automatically have the right to an inflationary rate increase simply due to the passage of time.  Not so.  Whether to award attorneys' fees based on current rather than historical rates is within the discretion of the court.  See, e.g., Theme Promotions, Inc.

-16-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

v. News Am. Mktg. FSI, Inc, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010).  Calculating the lodestar at Class Counsel's hourly rates in 2017 (the filing of the original Fee Motion) already results in a substantial rate enhancement for the work performed between 2012 and 2016 (and as noted above, enhances rates even above what was claimed in 2020 for their work on the White litigation). Nothing justifies any discretionary increase, even if 2020 rates are in fact as high as they claim (and as discussed above, market rates have not risen, but in fact have fallen industry-wide due to the pandemic).  See Mendez v. Cty. of San Bernardino, No. CV 04-7131 SVW (RCX), 2009 WL 10714986, at *5–6 (C.D. Cal. July 1, 2009) (while Plaintiff could have sought fees at rates at time of fee motion, rates from the year the trial took place was "reasonable assessment of the appropriate billing rates").  ***Based on the evidence of what certain of Class Counsel's submitted <u>recent</u> rates actually are, as well as the prevailing economic conditions, the Court should apply an across-the-board reduction of at least 32% in the claimed hourly rates for all timekeepers submitted, resulting in an average rate of $455 (weighted by time billed) across all timekeepers***.  Even this reduced hourly rate is high.  By way of comparison, Stroock's weighted average rate across all timekeepers for this litigation is less than $420.  (Newman Decl. ¶ 16.)

In sum, to reflect a reasonable lodestar, the 5,718.9 hours claimed by Class Counsel should be reduced by:  405.8 hours to account for the lack of billing records for time spent after the filing of the original Fee Motion; 88 hours to account for excessive "fees on fees"; and 626.55 hours to account for other excessive, redundant and/or unnecessary work—resulting in a total lodestar reduction of 1,120.35 hours.  Further, the hourly rates claimed by Class Counsel should be discounted by 32% to compare with the hourly rates charged by Class Counsel in White, which would result in an average hourly rate of $455, and an adjusted lodestar of **$2,092,340.25** when applied to the number of hours reasonably performed.

**C.   Class Counsel's Request for Fees From the Class's Recovery in Addition to its Recovery Pursuant to Fee-Shifting Is Excessive.**

**1.   Class Counsel's Common Fund Theory Suffers From Numerous Defects.**

Class Counsel seeks recovery of attorneys' fees under two separate theories:  (1) recovery of reasonable attorneys' fees calculated based on the lodestar method to be paid directly by

-17-

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

TransUnion pursuant to 15 U.S.C. § 1681n(a)(3); *and* (2) a percentage of the recovery by the Class. In so doing, Class Counsel boldly asks this Court to award it *two* attorneys' fees awards (with both awards being grossly inflated for the reasons discussed herein) notwithstanding a well-established legal framework that mandates the election of one method over the other.

The Court should reject Class Counsel's request to be paid a portion of the Class Members' recovery on a "common fund" theory.[7] The lodestar figure is the presumptively reasonable method for calculating attorneys' fees under federal fee-shifting statutes, as this is deemed to fully compensate plaintiff's counsel, including compensation for the risk of taking on a contingency case. See Perdue, 559 U.S. at 554. The "common fund" aspect of Class Counsel's application suffers from multiple defects even beyond this basic compensation principle. No federal precedent allows attorneys who obtain discrete per-class member awards, in a case where statutory fee-shifting provides the manner of compensation, to convert these awards to a "common fund" from which they can then double-dip. Indeed, no "common fund" exists at all without an express lump-sum judgment awarded to a class as a whole, or without a negotiated settlement that is approved, after notice to the class and an opportunity to be heard pursuant to the procedures set forth in Federal Rule of Civil Procedure 23(e) & (h). Class Counsel propose here a completely new method of compensation. However, as explained in the Advisory Committee Notes to Federal Rule of Civil Procedure 23(h), the federal class action rule "does not undertake to create new grounds for an award of attorney fees or nontaxable costs. Instead, it applies when such awards are authorized by law or by agreement of the parties." There is no common fund here at all and no basis for the Court to accept Class Counsel's novel approach. The verdict and judgment in this case do not describe an undifferentiated sum awarded to a large but not precisely calculated class of people. The judgment entered here was a per class-member damages award, based on admission into the record of a specific list of a specific number of class members.[8]

---

[7] At a minimum, Class Members should be given notice and an opportunity to be heard on Class Counsel's request, and Class Counsel should bear the cost of such notice, because they are the ones seeking to reduce the Class Members' recovery on this basis.

[8] At trial, the class list was admitted into evidence but to protect class members' privacy it was not published to the jury.

-18-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

Plaintiff also impermissibly seeks to increase the "common fund" over the amount awarded by the jury by retroactively adding amounts to the already-entered judgment such as the lodestar award pursuant to fee-shifting, notice costs, and post-judgment interest that have no place in a judgment. Plaintiff cites no support for this novel approach of amending a judgment to increase it by post-judgment awards that are ancillary to the jury's verdict and not related to its findings of fact. Doing this has the effect, as a matter of arithmetic, of shifting an even greater portion of the Class Members' awards to Class Counsel than occurs in scenarios where a common fund approach would be appropriate. There is no precedent for the method Plaintiff proposes now, which double-dips into the requested common fund to Class Members' financial detriment. Even worse, Class counsel then seeks 28.5% of that increased amount, more than the Ninth Circuit presumptive maximum of 25% for true common fund cases and settlements. Class Counsel's approach improperly prioritizes their own financial gain over the interests of the Class, and lacks sound legal justification.

### 2. There Is No "Common Fund" Here, and No Sound Justification for Additional Payments From Any Such Fund.

In an attempt to increase their own recovery beyond what the standard lodestar analysis will provide, Class Counsel attempt improperly to import concepts of settlement common funds into a litigated case where no common fund was created. The verdict described individual amounts to each class member; nothing is held in common by the Class. The jury returned a verdict of statutory damages of $984.22 and punitive damages of $6,353.08 for each of the 8,185 Class members, whose names were earlier entered into the record at trial. The Court entered judgment consistent with this verdict, i.e., on a **per Class Member** basis. The Ninth Circuit reduced the punitive damages award to $3,936.88, again on a per Class Member basis. At no time was an undifferentiated total sum found to be owed to a class of indeterminate size.

Common fund analysis is typically used in class settlements when class member identities and ultimate class size are not precisely known. For example, classes like "all persons who purchased peas from Ned's Market between January 1 and March 31, 2017" or "all persons residing within one mile of the Acme Cement Factory as of June 1, 2018" may lend themselves to

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

-19-

LA 52332776

creation of a common fund, as some degree of class member self-identification may be necessary after the overall impact on the undifferentiated class is assessed. A fund is created, and class members then are identified specifically via a claims process and paid out of the fund. But there is no such fund here and one was never created.

Moreover, lodestar fee-shifting procedures and common fund procedures are identified as *alternative* methods of compensation. When the underlying statute shifts the lodestar fee onto the defendant, there is no reason also to award class counsel fees on a common fund theory. See Brytus v. Spang & Co., 203 F.3d 238, 246 (3d Cir. 2000) (rejecting additional payment to counsel out of common fund in light of fee-shifting because "plaintiffs paid nothing toward counsel's fee, as that was received from [Defendant]" and therefore "the class members may have been enriched, but their enrichment was not at the expense of either the litigating parties or their counsel."); see also City of Burlington v. Dague, 505 U.S. 557, 562 (1992) (holding that enhancements for contingency fee arrangements in fee-shifting cases are unwarranted even to account for "risk of loss" because doing so duplicates factors already subsumed in the lodestar); Laffitte v. Robert Half Int'l Inc., 1 Cal. 5th 480, 489 (2016) ("Class action litigation can result in an attorney fee award pursuant to a statutory fee shifting provision *or* through the common fund doctrine when, as in this case, a class settlement agreement establishes a relief fund from which the attorney fee is to be drawn.") (emphasis supplied). Even if Class Counsel had established that the judgment here creates a common fund, "[t]he fact that a common fund has been created is not sufficient to establish a finding that the common fund doctrine must be applied when awarding attorney fees . . ." where fee-shifting is available. Haggart v. Woodley, 809 F.3d 1336, 1356 (Fed. Cir. 2016); see also McKeage v. TMBC, LLC, 847 F.3d 992, 1004 (8th Cir. 2017) ("Payment of attorneys' fees under the fee-shifting provision accommodates both concerns underlying the common fund doctrine: First, lawyers are able to recoup reasonable compensation. Second, there is no risk that named plaintiffs alone will be required to pay the class's lawyers, thereby unjustly enriching passive class members . . . .").

The lodestar method of calculation provides Class Counsel with full and fair compensation. The Class is not unjustly enriched because the lodestar calculates the fair value of Class Counsel's

-20-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 52332776

services, and there is no justification to deplete Class Members' recoveries for the sake of over-compensating Class Counsel above and beyond the presumptively fair lodestar method. No evidence supports the enhancement Class Counsel seek, at Class Members' expense, over a properly-calculated lodestar. See Van Gerwen v. Guar. Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (holding that "a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare'" and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.").

### 3. Class Counsel's Proposed Calculation of the Size of the Supposed Common Fund Is Excessive.

Class Counsel's proposed calculation of the size of the common fund, also is excessive. If there is a common fund, it should be calculated based simply on the value of the verdict, as reduced by the Ninth Circuit, without any additional items considered. Adding lodestar fees, compensable costs or any other item before calculating Class Counsel's (already excessive) 28.5% has the practical effect of diverting more than 28.5% of the verdict's value to Class Counsel. Particularly egregious is the attempt to include cost recovery in the size of the "fund," as doing so effectively requires Class Members to pay Class Counsel a profit mark-up on what should be a straight reimbursement.

Class Counsel seek to include everything they can in the fund, regardless of whether it is proper to do so, and they seek to avoid a final calculation of the fund until it is at its maximum, so that their own recovery can be enhanced. See Supp. Fee Mot., p. 8 ("The total amount of this common fund is to be calculated later . . . Plaintiff and the Class will promptly propose an appropriate amount of notice costs and interest to be added to the judgment ..."). To the extent any common fund exists, it is the amount determined to be owed to Class Members, not ancillary amounts that never go to class members, such as reimbursement of Class Counsel for out-of-pocket costs or payment of their attorneys' fees based on a properly-calculated lodestar. By including these additional items in the base calculation of the common fund, Class Counsel seek, as a practical matter more than 28.5% of each Class Member's jury award. The Court should rule that,

-21-

LA 52332776

if a common fund theory is allowed, the calculation of the fund should be limited to the verdict and judgment amounts, as reduced by the appellate court.

Class Counsel's authorities do not support their proposed inflated calculation of the size of the common fund.  None of the cases cited in the Fee Motion provide any precedent for the "hybrid action" model Class Counsel seemingly invented out of whole cloth.  Rather, in the few cases "brought under a fee-shifting statute, but brought to judgment as a common fund," as Plaintiff describes the instant case, courts have allowed an award consisting of a percentage of the class's recovery (subject to the Ninth Circuit 25% benchmark) with an *offset* for any direct payment of reasonable attorneys' fees subject to fee-shifting, or structured differently but to the same effect, with a direct payment of fees calculated under the lodestar method with a supplement from the class's recovery up to the applicable benchmark.  See Ridgeway v. Wal-Mart Stores, Inc., 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (finding plaintiffs' counsel were entitled to $15,200,002.90 in fees from the common fund *offset* by the attorneys' fees from defendant); Sobel v. Hertz Corp., 53 F. Supp. 3d 1319, 1325 (approving plaintiffs' lodestar fee in the amount of $3,135,269 to be drawn from the common fund in addition to the $3,1,35,269 to be paid by defendant pursuant to the fee-shifting statute); Reyes, 281 F. Supp. 3d at 850 (N.D. Cal. 2017) (explaining in the settlement context that "class counsel may be awarded fees from the common fund *in addition* to any award under ERISA's fee-shifting statute.") (emphasis added); Bell v. Farmers Ins. Exch., 115 Cal.App.4th 715, 725-26 (2004) (trial court approved plan for statutory attorneys' fees to be offset against attorneys' fees payable from common fund).  In short, there is no precedent in the FCRA, under Rule 23, or any Ninth Circuit or California case law for doing what Class Counsel suggests; that is, adding the lodestar amount, out-of-pocket costs and other items to the common fund to create an enhanced fund, and then seeking a percentage of that artificially inflated fund.

Class Counsel's statement that in cases such as these, "courts should first award attorneys' fees and costs to Plaintiff and the Class as the prevailing party under the FCRA, and then apply the common fund doctrine to the resulting judgment" is a gross misstatement of the law.  (Mot., p. 12.)  Indeed, the case relied upon by Class Counsel for this proposition, Staton v. Boeing Co., 327 F.3d 938, provides no such authority.  Rather, Staton, a case in which a *settlement* was reached on

-22-

LA 52332776

behalf of a class clarified only that an analysis of the mechanics of class action settlement procedure should provide comfort that a court may *elect* between fee-shifting and common fund procedures when awarding fees. The <u>Staton</u> court reasoned that:

> Application of the common fund doctrine to class action settlements does not compromise the purposes underlying fee-shifting statutes. In settlement negotiations, the defendant's determination of the amount it will pay into a common fund will necessarily be informed by the magnitude of its potential liability for fees under the fee-shifting statute, as those fees will have to be paid after successful litigation and could be treated at that point as part of a common fund against which the attorneys' fees are measured. Conversely, the prevailing party will expect that part of any aggregate fund will go toward attorneys' fees and so can insist as a condition of settlement that the defendants contribute a higher amount to the settlement than if the defendants were to pay the fees separately under a fee-shifting statute.

<u>Id.</u>, at 968-69.

Thus, the <u>Staton</u> court did *not* (as Class Counsel states) hold that fees paid after successful litigation could be treated at that point as part of a common fund. What the <u>Staton</u> court said should be evaluated in context, as shown above. <u>Staton</u> confirms that the only characteristic unique to the "hybrid" action Class Counsel describes is that it allows the parties to choose between *either* fee-shifting or a percentage of fund:

> [I]n a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case [and] [i]n the course of judicial review, the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles. Alternatively, the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles.

<u>Id.</u> at 972.

Critically, these alternative approaches are merely described as permissible when both sides agree to a settlement (and when the settlement is noticed for approval under Rule 23 procedures). Nothing in <u>Staton</u> suggests that both approaches should be employed in a case litigated to judgment. In such circumstances, the basic rule applies, as set forth by the Supreme Court in <u>Perdue</u>: counsel are fully compensated by their lodestar, without a multiplier, and without a profit mark-up on their out-of-pocket compensable costs. The approach invented by Class Counsel plainly serves their own interest by increasing the amount from which they seek a percentage. By

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

-23-

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

enlarging the pie, Class Counsel necessarily increase their own distribution.  This is in direct conflict with the interest of the Class, for whom Class Counsel are fiduciaries and are duty-bound to protect.  Under Class Counsel's approach, they improperly seek to divert millions of dollars to themselves from the Class Member awards.

### 4. Class Counsel's Request for 28.5% of Any Common Fund Improperly Exceeds the Ninth Circuit Presumptive Maximum of 25%.

Class Counsel also seek an inflated percentage of their inflated calculation of the size of the common fund.  This is improper, and further counsels rejection of their request.  It is well-established that in the Ninth Circuit, absent unique circumstances, fees should not exceed 25%.  See, e.g., In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011) (explaining "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"); Ridgeway, 269 F. Supp. 3d at 1000 ("The Court finds that a reasonable percentage of the common fund is 25 percent."); Cortez v. Vieira Custom Chopping, Inc., No. 117CV01647DADSKO, 2020 WL 4369101, at *6 (E.D. Cal. July 30, 2020) (noting "benchmark for reasonable fee awards in the Ninth Circuit" is 25%).

Even in light of this standard, courts may adjust counsel's recovery downward as the size of the fund increases, to avoid unwarranted windfalls.  See, e.g., In re Bluetooth Headset Products Liability Litigation, 654 F.3d at 942 (suggesting downward departure from the benchmark to prevent counsel from obtaining "windfall profits"); Rodman v. Safeway Inc., No.11-cv-03003-JST, 2018 WL 4030558, *10-11 (N.D. Cal. Aug. 22, 2018).  Class Counsel offer no good explanation why they even reach the 25% Ninth Circuit presumptive maximum, much less exceed it.  One-fourth of the sum of the class member awards is more than $10 million, which is two-and-a-half times their already-inflated lodestar claim of approximately $4 million, and approximately five times the properly-calculated $2 million lodestar, as described above in detail.  Class Counsel's proposed request for 28.5% would give them almost a million-and-a-half dollars more in compensation, at Class Members' expense, when compared to the standard 25%.  Even that 25% percent would fail a lodestar cross-check in a proper common fund case; the requested 28.5% fails even more dramatically.

TRANS UNION'S OPPOSITION TO ATTORNEYS' FEE MOTIONS
Case No. 3:12-CV-00632-JSC

LA 52332776

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

Moreover, as noted above, if 28.5% is calculated against a common fund that also includes the lodestar fee and other items like out-of-pocket costs, the additional amount taken from the sum of class member awards is even larger. Including lodestar attorneys' fees and other items into the basic calculation of the size of the supposed common fund allows Class Counsel to double-dip into the Class Members' awards. Allowing Class Counsel to take from the Class an additional 3.5% premium above the Ninth Circuit's guideline turns that already improper double-dip into an unheard-of triple-dip. Based on the proof described earlier of how severely the lodestar figure is inflated, any percentage allowed against any common fund should be drastically deflated.

The evidence simply does not support any enhancement like what Class Counsel seek here. See Cruz v. Alhambra Sch. Dist., 601 F. Supp. 2d 1183, 1196-97 (C.D. Cal. 2009) (refusing to apply enhancement for excellent results and further noting that "blanket assertions that the results here are better than results in other cases is not 'specific evidence' showing that the results achieved in this case would not have been achieved by other similarly paid attorneys"). The fee request is excessive and should be denied or significantly reduced.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Motion, should defer action on any fee and cost request until after Supreme Court proceedings are completed and, at the appropriate time, award only such fees and costs as are justified by the evidence and the law.

Dated:  September 14, 2020

STROOCK & STROOCK & LAVAN LLP
STEPHEN J. NEWMAN
CHRISTINE E. ELLICE


By:        */s/ Stephen J. Newman*
                Stephen J. Newman

Attorneys for Defendant
    TRANS UNION LLC

-25-

LA 52332776

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020, a copy of the foregoing **TRANS UNION LLC'S OPPOSITION TO MOTION AND SUPPLEMENTAL MOTION OF PLAINTIFF AND CLASS COUNSEL FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES** was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

_/s/ Stephen J. Newman_
Stephen J. Newman

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

CERTIFICATE OF SERVICE
Case No. 3:12-CV-00632-JSC

LA 52332776