UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO L. RAMIREZ, <br><br> Plaintiff, <br><br> v. <br><br> TRANS UNION, LLC, <br><br> Defendant. | Case No. 12-cv-00632-JSC <br><br> **ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL** <br><br> Re: Dkt. Nos. 404, 415 |

Plaintiff Sergio Ramirez filed this class action alleging that Defendant Trans Union violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., through its OFAC Name Screen Alert. The OFAC Name Screen Alert or OFAC Alert is a service Trans Union provides to its customers which identifies persons whose names match individuals (known as Specially Designated Nationals or SDNs) on the United States government's list of terrorists, drug traffickers, and others with whom Americans are prohibited from doing business. After a jury returned a verdict in Plaintiff's favor, Trans Union appealed and the Ninth Circuit Court of Appeals affirmed the verdict except for the amount of punitive damages. The Supreme Court subsequently reversed the Ninth Circuit's finding that all class members had Article III standing and remanded the action to this Court. Following remand, the parties' participated in a mediation and reached a class-wide settlement. Plaintiff now moves for preliminary approval of the class action settlement. (Dkt. No. 404.) Having considered Plaintiff's motion, his supplemental submission in response to the Court's order, and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the July 28, 2022 hearing, and GRANTS the motion for preliminary approval.

**BACKGROUND**

Sergio Ramirez brought this action on behalf of himself and a putative class alleging that over a six-month period in 2011 Trans Union violated three FCRA requirements: (1) that credit reporting agencies establish "reasonable procedures" to ensure the "maximum possible accuracy" of information provided about consumers under 15 U.S.C. § 1681e(b); (2) that credit reporting agencies "clearly and accurately" disclose "all information in the consumers file at the time of [a] request" under § 1681g(a), and (3) that credit reporting agencies provide a statement of consumer rights with each such disclosure under § 1681g(c).

In July 2014, the Court certified a Rule 23(b)(3) class of "all natural persons in the United States and its Territories to whom Trans Union sent a letter similar in form to the March 1, 2011 letter Trans Union sent to Plaintiff regarding 'OFAC (Office of Foreign Assets Control) Database' from January 1, 2011 - July 26, 2011." (Dkt. No. 140.) Before trial, the parties stipulated that the class contained 8,185 individuals, 1,853 of whom had their credit reports requested by a third-party creditor during the class period. (Dkt. No. 289.)

Following a weeklong trial, the jury reached a verdict in favor of Plaintiff and the class and awarded over $60 million in statutory and punitive damages. (Dkt. Nos. 305, 306.) Trans Union appealed and the Ninth Circuit Court of Appeals affirmed the jury's verdict, except as to punitive damages which it reduced to $3,936.88 per class member (from $6,353.08 per class member). *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1031 (9th Cir. 2020). The Supreme Court then granted Trans Union's petition for certiorari and reversed in part. In particular, the Supreme Court held that "the 6,332 class members whose credit reports were not provided to third-party businesses did not suffer a concrete harm and thus do not have standing as to the reasonable-procedures claim" and that none of the class members had standing to pursue the disclosure claims because they had not "suffered a concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021). The Ninth Circuit remanded the case to this Court for further proceedings consistent with the Supreme Court's decision. *Ramirez v. Trans Union LLC*, 9 F.4th 1201 (9th Cir. 2021).

On remand, the parties agreed to participate in mediation and with the assistance of the Honorable Morton Denlow (Ret.) reached a class-wide resolution of this action.

# THE SETTLEMENT AGREEMENT

### A. The Class

The Settlement Class is composed the two categories of individuals: (1) the 1,853 class members Trans Union identified in its pre-trial stipulation as individuals for whom Trans Union had delivered a credit report containing OFAC data to a third-party, and (2) class members from the remaining group of 6,332 individuals not identified in the stipulation who submit a claim demonstrating publication of OFAC data to a third-party during the class period. (Dkt. No. 404-1, The Settlement Agreement at §§ 1(jj)-(mm)).

### B. The Payment Terms

The Settlement Agreement requires Trans Union to establish a Settlement Fund of $9,000,000. (*Id*. at § 3(a).) An initial deposit of $30,000.00 will be paid to the Settlement Administrator within 15 business days following the entry of the preliminary approval order, and the balance of $8,970,000.00 will be paid to the Settlement Administrator following Final Approval. (*Id*. § 3(a)(ii).) From the Settlement Fund, the parties have agreed that payments will be made as set forth below:

- Class Counsel may request an award of attorneys' fees and costs not to exceed $4.5 million and an individual settlement and service award for Mr. Ramirez of $75,000. (*Id*. at § 8.)
- The costs of notice and settlement administration, which are estimated at $70,000. (*Id.* at § 3(b)(iv); Dkt. No. 404 at 25.)
- Each Settlement Class member shall be entitled to a pro rata share of all the funds remaining in the Settlement Fund after payments of the above amounts. (Dkt. No. 404-1 at § 9(a).) If these amounts are approved by the Court, counsel estimates that based on a 5% claim rate for those Settlement Class Members required to submit a claim, Settlement Class Members would receive approximately $2,000 each. (Dkt. No. 404 at 24.)

### C. Scope of Release

Each Settlement Class Member who receives a payment under the Settlement Agreement

1  will release any and all claims for actual, statutory, and punitive damages under the FCRA as set
2  forth in 15 U.S.C. §§ 1681e(b), 1681g(a)(1), and 1681g(a)(3), and for actual, statutory, and
3  punitive damages and injunctive relief under the CCRAA as set forth in Cal. Civ. Code §§
4  1785.10, 1785.14(b), and 1785.31. (Dkt. No. 404-1 at § 10(a).)  Mr. Ramirez will provide a
5  general release of any and all claims known and unknown that would have been asserted or which
6  may arise in the future.  (*Id*. at § 10(b).)  In addition, Mr. Ramirez and Settlement Class Members
7  waive "any and all rights" under California Civil Code § 1542 which excludes from release those
8  claims which are unknown at the time of the release. (*Id*. § 10(c).)

### D. Notice

After a competitive bidding process, Plaintiff selected Continental DataLogix, LLC as the Settlement Administrator.  (*Id.* at § 1(ii); Dkt. No. 415-1, Soumilas Decl. at ¶ 22.)  The team at Continental DataLogix is the same team that previously provided Court-approved litigation notice in this action.  (Dkt. No. 415-1 at ¶ 26.)  Within 5 days of this Order, Trans Union will provide the Settlement Administrator with updated mailing address information for all 8,185 individuals identified in the parties' pre-trial stipulation. (Dkt. No. 404-1 at § 4(c).)  The Settlement Administrator shall review and update these addresses through the National Change of Addresses Database. (*Id*.)  Within 30 days of entry of the Preliminary Approval Order, the Settlement Administrator will mail and email notice to each of these individuals.  (*Id*. at § 4(d), (f).)  The Settlement Administrator will use Accurint, a batch service offered by LexisNexis "to identify an email address for each Settlement Class Member" and send copies of the notices by email.  (*Id.* at § 4(f); Dkt. No. 415-1, Soumilas Decl. at ¶ 31.)  For any notices returned by mail as undeliverable, the Settlement Administrator will do address tracing with USPS and with a commercial search form if no address exists with the USPS, and then remail notice.  (*Id*. at § 4(d).)

In addition, the Settlement Administrator shall create a website: www.RamirezTUSettlment.com and toll-free number.  (*Id.* at § 4(b).)  The toll-free number will be staffed by live operators and "shall be capable of providing general information, in English and in Spanish, concerning deadlines for objecting to the Settlement, and the dates of relevant Court proceedings, including the Final Approval Hearing."  (*Id*.; Dkt. No. 415-1, Soumilas Decl. at ¶

28.)

The parties have revised the form notice to provide different forms of notice to those class members who do not need to submit a claim form, and those that do.  (Dkt. Nos. 415-3; 415-5.)

**E. Objections**

Any member of the Settlement Class can object to the Settlement or the Fee Petition.  (Dkt. No. 404-1 at § 6.)

**DISCUSSION**

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

**I. Class Certification**

A court may preliminarily certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23. Here, the Court already certified a class under Rule 23(b)(3). (Dkt. No. 140.) Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

The Settlement Agreement narrows the class to those individuals whom Trans Union either concedes had OFAC data provided about them to a third-party or those who submit a claim form and demonstrate that they had OFAC data provided to a third-party.  These modifications are directly in response to the Supreme Court's order which held that only "class members whose credit reports were provided to third-party businesses suffered a concrete harm and thus have

5

1  standing as to the reasonable-procedures claim" and that no "class members other than the named

2  plaintiff Ramirez suffered a concrete harm" for purposes of the disclosure claims. *TransUnion*

3  *LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021). Accordingly, the Court grants preliminary

4  approval of the Settlement Class.

**II. Preliminary Approval of the Settlement Agreement**

In determining whether a class action settlement agreement is fair, adequate, and reasonable to all concerned, courts generally consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *Bluetooth* red-flag factors to post-class certification settlement approvals). The *Bluetooth* court identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. (internal quotation marks and citations omitted).

The Court cannot, however, fully assess such factors until the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652,

6

665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be potentially fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

### A. The Fairness Factors

#### 1. Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396. Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*.

Given the procedural posture of this case, this first factor is easily met. The parties engaged in substantial discovery and motion practice, tried the case to a jury, and fully exhausted any appeal of the jury's verdict. Further, while Plaintiff and the class members' Article III standing was the subject of continual motion practice, in light of the Supreme Court's ruling the law is clear as to which class members have standing to pursue a reasonable procedures claim here. As such, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations. This factor thus weighs in favor of preliminary approval.

#### 2. Obvious Deficiencies

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement." *See Harris*, 2011 WL 1627973, at *8. Here, while the Court initially highlighted some concerns regarding the Settlement Agreement, Plaintiff's supplemental submission (Dkt. No. 415) has addressed all these concerns such that the Court finds no obvious deficiencies on the face

of the Settlement Agreement that would preclude preliminary approval.

### 3. Lack of Preferential Treatment

The Court must next examine whether the Settlement Agreement "provides preferential treatment to any class member." *See Villegas*, 2012 WL 5878390, at *7. Under the Agreement, all class members are treated the same in that each will receive the same pro rata monetary distribution from the Settlement Fund based on how many class members submit claims.

The Settlement Agreement also provides for an Individual Settlement and Service Award of $75,000 for Mr. Ramirez. (Dkt. No. 404-1 at § 3(b)(ii).) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id*. at 958-59. Although service awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (internal quotation marks and citation omitted).

Plaintiff maintains that a $75,000 award is appropriate here because this is the same amount the Court previously approved. (Dkt. No. 404 at 25.) Following the jury verdict in Plaintiff's favor, the Court approved Plaintiff's request for a $75,000 award given Mr. Ramirez's extensive participation in the case, the risk and loss of income he experienced as a result of his participation, and because it was less than one percent of the total damages award. (Dkt. No. 345.) The Court will defer ruling on the appropriateness of the amount of the requested settlement and service award until final approval. However, at this stage, given the unique posture of this action, there is no indication that the service award in general constitutes "preferential treatment" such

that it would defeat preliminary approval.

**4. Range of Possible Approval**

In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider Plaintiffs "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial") (internal quotation marks and citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Here, the Settlement Agreement provides that class members will receive a pro rata share based on how many class members submit claims. Class counsel estimates that there will be a five percent claims rate for those class members who do not automatically receive a distribution, which would yield approximately 2,170 total Settlement Class Members and an individual recovery in excess of $2,000 each. (Dkt. No. 404 at 24.) Under the FCRA a prevailing plaintiff may obtain statutory damages of $100-$1,000. *See* 15 U.S.C. § 1681n(a)(1)(A). Plaintiff maintains that a likely recovery of $2,000 is well in excess of this amount and thus would include punitive damages which compares favorably to recoveries in other FCRA actions. (Dkt. No. 404 at 33 (citing *Patel v. Trans Union, LLC*, No. 3:14-cv-0522-LB (N.D. Cal.) at ECF 159 p. 6 ($1,100 payments for successful claimants); *Leo v. AppFolio, Inc*, No. 3:17-cv-05771-RJB (W.D. Wash.) at ECF 62 p. 7 ($425 for successful claimants).).

In evaluating the reasonableness of this recovery, the Court considers the risks of continued litigation. If the litigation continued, Trans Union has argued that it would seek decertification of the entire class and that Mr. Ramirez should be replaced as the class representative. (Dkt. No. 390 at 12-13.) In addition, there would be a new trial and the potential of the imposition of substantial additional appellate costs—Trans Union previously submitted a

9

1  bill of costs for over $1 million which Plaintiff contends "could be imposed on members of any

2  remaining class if litigation continues." (Dkt. No. 404 at 32 (citing Dkt. No. 382).)

3  On balance, the risks and costs of continued litigation balanced against the substantial

4  monetary relief here, warrant preliminary approval and comment from class members.

\*\*\*

6  Accordingly, consideration of the fairness factors warrants preliminary approval of the

7  Settlement Agreement.

**B. Class Notice Plan**

9  For any class certified under Rule 23(b)(3), class members must be afforded "the best

10 notice that is practicable under the circumstances, including individual notice to all members who

11 can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly

12 state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

17 Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the

18 settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

19 forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotation marks and citation omitted).

20 As discussed above, class members will receive mail and email notice. In response to the

21 Court's concerns, Plaintiff submitted Revised Notices. Class members who are not required to

22 submit a claim form because they are part of the stipulation subgroup will receive one claim form

23 and class members who need to submit a claim form to demonstrate that OFAC data was shared

24 with a third-party will receive a different notice. (Dkt. No. 415-3; Dkt. No. 415-5.) The Revised

25 Notices clarify that members of the stipulation sub-group do not need to submit a claim form and

26 that class members will have the opportunity to review and object to counsel's request for

27 attorneys' fees and costs in addition to the opportunity to object to the settlement itself. The

28 Revised Notices adequately address the Court's concerns; however, the Notices shall be amended

to reflect the schedule as approved by the Court in the Conclusion section, which among other things, provides additional time for class members to review counsel's request for attorneys' fees and costs.

In sum, these procedures appear sufficient to ensure that class members receive adequate notice of the settlement and an opportunity to object. Accordingly, the Revised Notices and notice plan support preliminary approval.

**C. Attorneys' Fees**

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Staton*, 327 F.3d at 963 ("[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that

the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

As previously discussed, the Settlement Agreement provides for a maximum award of $4,500,000 to Class Counsel in fees (one-half of the Settlement Amount). (Dkt. No. 404-1 at § 3(b)(iii).) Given the unique posture of this case the Court finds that while this amount is high, it does not preclude preliminary approval of the settlement. Further, the amount is well-below Class Counsel's lodestar, which as of May 2022 was at least $6,089,850.75. (Dkt. No. 415-1 at ¶ 15.) Class Counsel attests that they will provide an updated, detailed breakdown of their lodestar with their motion for attorneys' fees. (*Id*. at ¶ 18.)

Accordingly, Plaintiff shall submit a motion for attorneys' fees including declarations and detailed billing records so that the Court may determine an appropriate lodestar figure, and to allow class members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice).

### D. Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted). To that end, district courts in this circuit regularly award litigation costs and expenses in wage-and-hour class actions. *See, e.g., id.*; *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2014 WL 324262, at

*2 (N.D. Cal. Jan. 29, 2014); *LaGarde v. Support.com, Inc.*, No. C 12-0609, 2013 WL 1283325, at *13 (N.D. Cal. Mar. 26, 2013). Here, the Settlement Agreement provides that Plaintiff's litigation expenses can also be recovered out of the $4,500,000 allocated for attorneys' fees and that the costs of settlement administration will be deducted from the total Settlement Amount. (Dkt. No. 404-1 at §§ 3(b)(iii)-(iv).)  Plaintiff's counsel is instructed to submit an itemized summary of each category of costs with its motion for attorneys' fees so that the Court can determine whether such costs are reasonable expenses incurred for the benefit of the class.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' motion for preliminary approval of the class action settlement as follows:

1. The Court modifies the class definition as follows:  The Settlement Class includes (1) the 1,853 class members Trans Union identified in its pre-trial stipulation as individuals for whom Trans Union had delivered a credit report containing OFAC data to a third-party, and (2) any class members from the remaining group of 6,332 individuals not identified in the stipulation who submit a claim demonstrating publication of OFAC data to a third-party during the class period.

2. The Court appoints Continental DataLogix, LLC as the Settlement Administrator for providing Class Notice and otherwise assisting in administration of the Settlement.

3. Within 5 days of this Order, Trans Union shall provide the Settlement Administrator with updated mailing address information for class members.

4. Within 15 days of the date of this Order, Trans Union shall transfer $30,000 to the Settlement Administrator to establish the Settlement Fund.

5. Within 30 days of the date of this Order, the Settlement Administrator shall provide notice to the class in accordance with the Notice Plan.

6. Within 30 days of the mailing of Notice, the Settlement Administrator shall file a declaration attaching a copy of the notices ultimately sent to the class and describing the notice process.

7. Class Counsel shall file a motion for attorneys' fees and costs by October 20, 2022.

8. The deadline for class members to object to the Settlement Agreement and/or Class Counsel's motion for attorneys' fees and costs is November 18, 2022.

9. Plaintiff shall file his Motion for Final Approval by December 1, 2022. The motion shall include the information suggested by the Northern District of California Procedural Guidance for Class Action Settlements.

10. The parties shall appear before this Court for a final approval hearing on December 15, 2022 at 9:00 a.m. in Courtroom 8, 450 Golden Gate Ave., San Francisco, California.

This Order disposes of Docket No. 404.

**IT IS SO ORDERED.**

Dated: July 19, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge

14